Jeffrey L. Kessler (admitted *pro hac vice*)
jkessler@winston.com
David G. Feher (admitted *pro hac vice*)
dfeher@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 294- 6700
Facsimile: (212) 294-4700

Cardelle B. Spangler (admitted *pro hac vice*)
cspangler@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Jeanifer E. Parsigian (SBN: 289001)
jparsigian@winston.com
**WINSTON & STRAWN LLP**
101 California St., 35th Floor
San Francisco, California 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA -WESTERN DIVISION

| | |
|---|---|
| ALEX MORGAN, et al., | **Case No. 2:19-cv-01717-RGK-AGR** |
| Plaintiffs/Claimants, | Assigned to: Judge R. Gary Klausner |
| v. | **NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION** |
| UNITED STATES SOCCER FEDERATION, INC., | Date: October 21, 2019 |
| Defendant/Respondent. | Time: 9:00AM |
| | Place: Courtroom 850 |

1

## **NOTICE OF MOTION**

2   **PLEASE TAKE NOTCE** that on October 21, 2019 at 9:00 a.m. in the
3   Courtroom of the Honorable R. Gary Klausner, Plaintiffs Alex Morgan, et al., through
4   their attorneys and on behalf of themselves and all others similarly situated, will and
5   hereby do move the Court for class certification under Federal Rule of Civil Procedure
6   23 and conditional collective action certification under Fair Labor Standards Act
7   ("FLSA") section 216(b).  This motion is based on this Notice of Motion and Motion,
8   the accompanying Memorandum of Points and Authorities, declarations, and exhibits
9   thereto, and such other information as may be presented to the Court at the time of the
10   hearing.

11   Plaintiffs request that this Court certify a class under Federal Rule of Civil
12   Procedure 23(b)(2) of all United States Senior Women's National Soccer Team
13   ("WNT") players through the date of final judgment in this case, or the resolution of
14   final judgment in this case, or the resolution of any appeals therefrom, whichever is
15   later.  Plaintiffs also request that this Court certify a class under Federal Rule of Civil
16   Procedure 23(b)(3) of all WNT players who were members of the WNT at any time
17   from February 4, 2015 through the date of class certification. Plaintiffs also request that
18   this Court appoint Plaintiffs Alex Morgan, Megan Rapinoe, Carli Lloyd, and Becky
19   Sauerbrunn as class representatives for both classes and appoint Winston & Strawn LLP
20   as class counsel under Federal Rule of Civil Procedure 23(g) for both classes.

21   Plaintiffs also seek conditional certification of an opt-in collective action under
22   29 U.S.C. § 216(b) consisting of all WNT players who were members of the WNT at
23   any time from March 8, 2016 through the present.

24   This motion is made following the conference of counsel pursuant to Local Rule
25   7-3, which took place on August 23, 2019.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: September 11, 2019

WINSTON & STRAWN LLP

By: /s/ Jeffrey L. Kessler
Jeffrey L. Kessler
David G. Feher
Cardelle B. Spangler
Diana Hughes Leiden
Jeanifer E. Parsigian

Attorneys for Plaintiffs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.      INTRODUCTION ............................................................................................ 1

II.     STATEMENT OF FACTS .............................................................................. 3

III.    PROPOSED CLASSES AND REPRESENTATIVE PLAINTIFFS ................. 5

IV.     LEGAL STANDARDS .................................................................................... 8

        A.     Class Certification Under Federal Rule 23. .............................................. 8

        B.     Conditional Collective Class Certification Under the FLSA .................... 8

V.      ARGUMENT .................................................................................................... 9

        A.     Rule 23 Class Certification Is Appropriate. ............................................. 9

               1.     The classes meet the Rule 23(a) requirements. ............................. 9

                      (a)    The class is identifiable and ascertainable. ......................... 9

                      (b)    The classes are sufficiently numerous. ............................... 10

                      (c)    The class members' claims present common questions of
                             fact and law. ......................................................................... 11

                      (d)    The factual and legal claims asserted are typical for all
                             members of the proposed classes, each of whom has the
                             same claims as the proposed class representatives. ............ 12

                      (e)    Plaintiffs and their counsel are adequate. ............................ 13

               2.     Plaintiffs' Proposed Classes Meet Rule 23(b)(2) and Rule 23(b)(3)
                      Requirements. ................................................................................. 14

                      (a)    The Court Should Certify Injunctive Relief Claims under
                             Rule 23(b)(2). ....................................................................... 15

                      (b)    The Court Should Certify Claims for Back Pay and Punitive
                             Damages under Rule 23(b)(3). ............................................. 15

                             (i)    Common issues predominate here. ........................... 16

                             (ii)   A class action is far superior to individual lawsuits. 17

B.    Conditional Class Certification Under Section 216(b) Is Also

Warranted. ................................................................................18

VI.    CONCLUSION ................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
  731 F.3d 952 (9th Cir. 2013) ................................................................. 11

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................... 15, 17

*In re Banc of California Securities Litig.*,
  326 F.R.D. 640 (C.D. Cal. May 31, 2018) ............................................. 10

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ................................................................. 8

*Campbell v. City of Los Angeles*,
  903 F.3d 1090 (9th Cir. 2018) ......................................................... 9, 19

*Campbell v. Vitran Express Inc.*,
  2015 WL 7176110 (C.D. Cal. Nov. 12, 2015) ...................................... 12

*Carter v. Anderson Merchandisers*,
  2010 WL 1946784 (C.D. Cal. May 11, 2010) ........................................ 19

*In re ConAgra Foods, Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014) ........................................................... 15

*Davidson v. O'Reilly Auto Enter., LLC*,
  2017 WL 8292782 (C.D. Cal. Dec. 15, 2017) ........................................ 11

*Edwards v. City of Long Beach*,
  467 F. Supp. 2d 986 (C.D. Cal. 2006) .................................................... 18

*Ernst v. ZogSports Holdings LLC*,
  2019 WL 1435933 (C.D. Cal. Feb. 21, 2019) ................................*passim*

*Gardner v. Shell Oil Co.*,
  2011 WL 1522377 (N.D. Cal. Apr. 10, 2011) ........................................ 10

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ................................................................ 12

*Jensen v. SECORP Indust.*,
   2018 WL 5961287 (C.D. Cal. Aug. 23, 2018) ................................................. 10, 12

*Karam v. Corinthian Colls., Inc.*,
   2017 WL 4070889 (C.D. Cal. July 7, 2017) ........................................................ 13

*MacRae v. HCR Manor Care Servs., LLC*,
   2018 WL 8064088 (C.D. Cal. Dec. 10, 2018)................................................ 14, 16

*Martinez v. Flower Foods, Inc.*,
   2016 WL 10746664 (C.D. Cal. Feb. 1, 2016) ...................................................... 8, 9

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ................................................................................ 8

*Misra v. Decision One Mortg. Co., LLC*,
   673 F. Supp. 2d 987 (C.D. Cal. 2008) ................................................................. 9

*Mitchell v. Acosta Sales, LLC*,
   841 F. Supp. 2d 1105 (C.D. Cal. 2011) ........................................................ 2, 9, 19

*O'Connor v. Boeing N. Am., Inc.*,
   184 F.R.D. 311 (C.D. Cal. 1998)........................................................................ 10

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .............................................................................. 13

*Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*,
   2014 WL 4627271 (C.D. Cal. Sept. 8, 2014) ....................................................... 9

*Vinole v. Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009) .............................................................................. 17

*Wal-Mart v. Dukes*,
   564 U.S. 338 (2011).................................................................................... 11, 15

*Webb v. Alpha & Omega Servs. Inc.*,
   2016 WL 9110160 (C.D. Cal. Dec. 14, 2016)..............................................*passim*

*Wolin v. Jaguar Land Rover N. Am. LLC*,
   617 F.3d 1168 (9th Cir. 2010) ............................................................................ 12

*Wynn v. Nat'l Broad. Co., Inc.*,
   234 F. Supp. 2d 1067 (C.D. Cal. 2002) .............................................................. 19

**Statutes**

29 U.S.C. § 216(b) ..................................................................................*passim*

Equal Pay Act, 29 U.S. C. Section 206(d) et. seq. ........................................................ 8

**Other Authorities**

Fed. R. Civ. P. 23 ...................................................................................*passim*

U.S. Soccer website, USWNT Lineups, available at
   https://www.ussoccer.com/uswnt-lineups (September 4, 2019) ............................ 10

1   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2   **I.   INTRODUCTION**

3       Plaintiffs move for certification of classes under Rules 23(b)(2) and 23(b)(3) for

4   their Title VII claims and certification of a collective action under 29 U.S.C. § 216(b)

5   for their FLSA claim.[1]  Critically, Defendant U.S. Soccer Federation ("USSF") has

6   already affirmatively admitted that the proposed class members' claims are

7   "substantially similar"' and that "[i]t is clear that the primary issues to be litigated …

8   are ***nearly identical***" in its motion to transfer this case to join it with the claims of an

9   absent class member.  Dkt. 46-1 at 4 (emphasis added).  USSF also told this Court that

10  "proceeding with two cases simultaneously will result in a significant waste of the

11  Court's resources and cause significant prejudice to U.S. Soccer, requiring it to defend

12  against virtually identical claims in two different forums."  Dkt. 46-1 at 1.  The reason

13  for these admissions is clear:  USSF has applied uniform (and gender discriminatory)

14  compensation policies, embodied in written agreements, to all the members of the

15  WNT, and all the members of the Senior Men's National Team ("MNT")—providing a

16  textbook example of a gender discrimination case in which common issues predominate

17  and class certification and collective action certification are warranted.

18      Consistent with USSF's admissions of uniform treatment of class members,

19  establishing that Plaintiffs' proposed classes meet the requisite statutory requirements

20  is straightforward.  The classes readily satisfy Rule 23(a)'s threshold requirements of

21  numerosity, commonality, typicality, and adequacy of representation.  A Rule 23(b)(2)

22  class should be certified because USSF discriminates "on grounds that apply generally"

23

24  [1] Plaintiffs seek certification of a Rule 23(b)(2) class of all WNT players who are
25  members of the WNT through the date of final judgment, or the date of the resolution
    of any appeals therefrom, whichever is later, and a Rule 23(b)(3) class of all WNT
26  players who were members of the WNT at any time from February 4, 2015 through the
    date of class certification.  Plaintiffs also seek conditional certification of an opt-in
27  collective action of all WNT players who were members of the WNT at any time from
28  March 8, 2016 through the present.

toward all class members and that discrimination can be resolved in one fell swoop through injunctive or declaratory relief "respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Similarly, a Rule 23(b)(3) class should be certified respecting back pay and punitive damages claims because resolving them on a class basis will predominantly depend on common questions of fact and law, and a class action is superior to any other judicial means of resolving these claims. Fed. R. Civ. P. 23(b)(3); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 484 (C.D. Cal. 2006). Finally, a Section 216(b) class should be certified because the class members are "similarly situated," which, at this stage, requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Mitchell v. Acosta Sales, LLC*, 841 F. Supp. 2d 1105, 1115 (C.D. Cal. 2011).

All class members have been or remain subject to their common employer's uniform discriminatory practices. And the answers to common questions of both law and fact will dictate resolution of this action. In short, the named plaintiffs' claims and the claims of every other person in the classes will succeed or fail for the same reasons.

Indeed, this is precisely the kind of case for which Rule 23 and Section 216(b) most clearly apply: a circumstance where USSF, as the common employer, has a single, common policy—one enshrined in separate written contracts with the members of the WNT and the MNT—of providing different, and discriminatory, compensation to female members of the WNT in comparison to the compensation for the same job provided to male members of the MNT. And, the decisions and policies regarding non-compensation terms and conditions of employment challenged here, like travel and hotel accommodations and field surface, apply uniformly to members of the proposed classes because they were provided uniformly to all members of the WNT and the MNT on a team-wide basis. Indeed, the challenged discriminatory policies of the USSF at issue involved no individual decisions or discretion to differentiate between class members by the USSF. Rather, every putative class member has been and remains subject to the same discriminatory conduct and harm which is uniformly applied by the

USSF to all members of the class. It is hard to imagine a stronger basis for class certification in a gender employment discrimination case.

## II. STATEMENT OF FACTS

The facts supporting certification of the classes proposed here are not disputed. USSF admits that it implemented and maintains one compensation policy for the MNT and one compensation policy for the WNT pursuant to each team's respective collective bargaining agreements ("CBAs").[2] *See* Dkt. 42, USSF Answer, at ¶ 44. It made the same admission in its opposition to Plaintiffs' JPML motion,[3] including in two declarations under penalty of perjury from USSF's Chief Commercial and Strategy Officer, Jay Berhalter, and USSF's Managing Director of Administration, Tom King, attesting to these facts. *See* Ex. 5, Declaration of Jay Berhalter, MDL 2890, Dkt. 16-1 at ¶ 7. ("Both the WNT and MNT have … separate CBAs governing compensation to each team respectively"); Ex. 6, Declaration of Tom King, MDL 2890, Dkt. 15-1 at ¶ 6 (same). And, the teams' respective agreements also state that each of the members of

---

[2] There have been two successive collective bargaining agreements governing compensation to the WNT during the relevant time period: (1) Memorandum of Understanding between United States Soccer Federation and the U.S. Women's National Team Players Association, effective March 19, 2013 through December 31, 2016 ("WNT MOU"); and (2) the Collective Bargaining Agreement between the United States Soccer Federation and the U.S. Women's National Team Players Association, effective January 1, 2017 through December 31, 2021 ("WNT CBA"). *See* Exs. 1–2 to the Declaration of Cardelle Spangler. A single collective bargaining agreement has governed the MNT's compensation during the relevant time period: the 2011–2018 Collective Bargaining Agreement between the United States Soccer Federation and the United States National Soccer Team Players Association ("MNT CBA"). *See* Ex. 3 to the Declaration of Cardelle Spangler. As set forth in the Declaration of Mark Levinstein, the terms of the MNT CBA have continued in effect since the date that agreement expired. Unless otherwise stated herein, all exhibit references are to the Declaration of Cardelle Spangler.

[3] *See* Ex. 4, USSF's Opp. to JPML Motion, Case MDL No. 2890, Dkt. 15 at 3 ("As members of the WNT, Plaintiffs' compensation is governed by a collective bargaining agreement. Indeed, both the WNT and MNT have … separate CBAs governing compensation paid to each team respectively.")

the WNT and MNT are paid according to uniform compensation and bonus schedules set forth in those agreements. *See* Ex. 2, WNT CBA, Article 11.A ("WNT Players shall be paid the amounts set forth on the WNT CBA Financial Terms Schedule attached to this Agreement"); Ex. 3, MNT CBA, Section 3(a) <u>Compensation</u> ("In consideration of Player's agreement, as described herein, to serve as a member of the Team …, Player shall be compensated … pursuant to the 2011–2018 Men's National Team Wage, Bonus and Sponsor Appearance Fee Schedule attached hereto….").

USSF does not exercise any discretion regarding an individual player's compensation on either the WNT or the MNT, as the respective CBAs define the terms of compensation and bonuses for each member of the MNT and WNT.

The only distinction made among WNT players relating to compensation is that USSF selects certain "contracted" players who receive a uniformly specified base salary, rather than a per-game roster payment, in exchange for being available for training and games on demand, thus limiting their ability to play for professional teams internationally that might restrict their ability to be available to play for the WNT. *See* Ex. 2, WNT CBA, Article 8.  The other "non-contracted" WNT players receive a per-game roster payment for each game they play, in lieu of a base salary amount.  For each category of WNT players—contracted and non-contracted players—the per-game compensation they receive, prior to any team performance bonuses, is far less than the per-game compensation, prior to performance bonuses, received by members of the MNT.  In addition, the team performance bonuses paid to both contracted and non-contracted members of the WNT are uniform in amount and are less than the bonuses paid to members of the MNT for a comparable team performance.  All of these base salary and bonus terms are set forth in the applicable CBAs and applied to all WNT and MNT members.

In addition, the discriminatory working conditions Plaintiffs challenge are the same for all WNT players, and are inferior to the working conditions applied to all MNT

players.[4]  *See* Declaration of Alex Morgan ("Morgan Declaration") ¶ 12; Declaration of Megan Rapinoe ("Rapinoe Declaration") ¶ 12; Declaration of Carli Lloyd ("Lloyd Declaration") ¶ 12; Declaration of Becky Sauerbrunn ("Sauerbrunn Declaration") ¶ 12; Declaration of Christen Press ("Press Declaration") ¶ 12; Declaration of Jessica McDonald ("McDonald Declaration") ¶ 11.  USSF provides, among other things, travel and transportation, medical care, and training and nutrition services on a team-wide, not individual, basis to the members of the WNT and MNT.  It also controls the selection of field surfaces and the marketing and promotion of the WNT and MNT games on a team-wide basis.  The members of the MNT have received superior and discriminatory treatment across the board with respect to each of these uniformly applied working conditions.  For example, USSF has repeatedly forced the WNT to play on artificial turf, including where the turf created unsafe conditions or increased the risk of injury to WNT players, while the USSF has not scheduled MNT games at locations with artificial turf.[5]  In all of these areas, USSF has one practice for all of the members of the WNT, and a different practice for all of the members of the MNT.

## III.   PROPOSED CLASSES AND REPRESENTATIVE PLAINTIFFS

The *Morgan* Plaintiffs seek certification of three classes: a Rule 23(b)(2) class seeking injunctive relief, a Rule 23(b)(3) class seeking back pay and punitive damages, and a FLSA collective class under 29 U.S.C. § 216(b).

---

[4] The CBAs contain certain provisions relating to working conditions, such as travel and transportation, medical, nutritional, and training staff, and playing surface conditions.  *See* Ex. 2, WNT CBA, Articles 6–7; Ex. 3, MNT CBA, Sections 6.7–6.8. A few of the provisions on these topics are the same or similar in both CBAs, but, the treatment and working conditions USSF has provided have, in practice, been discriminatory against the members of the WNT.  For the purposes of this motion, the controlling fact is that the female members of the WNT have all experienced the same discriminatory working conditions in their employment with USSF and there is no difference with respect to these issues among the class members.

[5] *See* Ex. 7, Comparison of Field Surfaces for WNT and MNT between January 2014 and June 2016.

- **Rule 23(b)(2) Class**: all WNT players on the team at the date of final judgment, or the date of the resolution of any appeals therefrom, whichever is later.
- **Rule 23(b)(3) Class:** all WNT players who were members of the WNT at any time from February 4, 2015 through the date of class certification.
- **FLSA Class**: all WNT players who were members of the WNT at any time from March 8, 2016 through the present.

The proposed class representatives for the Rule 23(b)(2) and Rule 23(b)(3) classes for the Title VII claims are Alex Morgan, Megan Rapinoe, Carli Lloyd, and Becky Sauerbrunn.

Alex Morgan has been a member of the WNT since 2010. Morgan Declaration ¶ 2. Morgan is a two-time World Cup Champion, Olympic Gold Medalist, and currently a Co-Captain of the team. *Id.* at ¶ 3. On March 30, 2016, almost three years prior to filing this lawsuit, Morgan filed a Charge of Discrimination with the EEOC on behalf of herself and all similarly situated current and former WNT players under Title VII and the EPA. *Id.* at ¶ 20. As part of the EEOC's investigation, she actively participated, including assisting counsel in providing further information regarding the details of the inequalities in compensation and working conditions, including, among other things, the field surfaces, access to training and medical personnel. *Id.* at ¶ 22. Morgan was involved throughout the investigation of her EEOC claims until the EEOC issued her a Notice of Right-to-Sue on February 5, 2019. *Id.* at ¶¶ 22–23.

Megan Rapinoe has been a member of the WNT since 2006. Rapinoe Declaration ¶ 2. Rapinoe is a two-time World Cup Champion, Olympic Gold Medalist, and currently a Co-Captain of the team. *Id.* at ¶ 3. On March 30, 2016, almost three years prior to filing this lawsuit, Morgan filed a Charge of Discrimination with the EEOC on behalf of herself and all similarly situated current and former WNT players under Title VII and the EPA. *Id.* at ¶ 20. As part of the EEOC's investigation, she actively participated, including assisting counsel in providing further information regarding the details of the inequalities in compensation and working conditions, including, among

1    other things, the field surfaces, access to training and medical personnel.  *Id.* at ¶ 22.

2    Rapinoe was involved throughout the investigation of her EEOC claims until the EEOC

3    issued her a Notice of Right-to-Sue on February 5, 2019.  *Id.* at ¶¶ 22–23.

4        Carli Lloyd has been a member of the WNT since 2005.  Lloyd Declaration ¶ 2.

5    Lloyd is a two-time World Cup Champion, two-time Olympic Gold Medalist, and

6    currently a Co-Captain of the team.  *Id.* at ¶ 3. On March 30, 2016, almost three years

7    prior to filing this lawsuit, Lloyd filed a Charge of Discrimination with the EEOC on

8    behalf of herself and all similarly situated current and former WNT players under Title

9    VII and the EPA.  *Id.* at ¶ 20.  As part of the EEOC's investigation, she actively

10   participated, including assisting counsel in providing further information regarding the

11   details of the inequalities in compensation and working conditions, including, among

12   other things, the field surfaces, access to training and medical personnel.  *Id.* at ¶ 22.

13   Lloyd was involved throughout the investigation of her EEOC claims until the EEOC

14   issued her a Notice of Right-to-Sue on February 5, 2019.  *Id.* at ¶¶ 22–23.

15       Becky Sauerbrunn has been a member of the WNT since 2008.  Sauerbrunn

16   Declaration ¶ 2.  Sauerbrunn is a two-time World Cup Champion and Olympic Gold

17   Medalist.  *Id.* at ¶ 3.  On March 30, 2016, almost three years prior to filing this lawsuit,

18   Morgan filed a Charge of Discrimination with the EEOC on behalf of herself and all

19   similarly situated current and former WNT players under Title VII and the EPA.  *Id.* at

20   ¶ 20.  As part of the EEOC's investigation, she actively participated, including assisting

21   counsel in providing further information regarding the details of the inequalities in

22   compensation and working conditions, including, among other things, the field surfaces,

23   access to training and medical personnel.  *Id.* at ¶ 22.  Sauerbrunn was involved

24   throughout the investigation of her EEOC claims until the EEOC issued her a Notice of

25   Right-to-Sue on February 5, 2019.  *Id.* at ¶¶ 22–23.

26       All four women are prepared to vigorously represent the interests of the members

27   of this Class.  Morgan Declaration ¶ 26; Rapinoe Declaration ¶ 26; Lloyd Declaration

28   ¶ 26; Sauerbrunn Declaration ¶ 26.

## IV.   <u>LEGAL STANDARDS</u>

### A.   **Class Certification Under Federal Rule 23.**

Class certification is appropriate under Rule 23 when each element of Rule 23(a) and one of the three Rule 23(b) prongs are satisfied.  Fed. R. Civ. P. 23; *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588-89 (9th Cir. 2012).  In deciding Rule 23 certification, courts must generally take the substantive allegations of the complaint as true.  *See Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  *Id.*  And although not explicit in the statute, parties must also show that the prospective class is identifiable and ascertainable.  *See Martinez v. Flower Foods, Inc.*, 2016 WL 10746664, at *8 (C.D. Cal. Feb. 1, 2016).

As to the two relevant Rule 23(b) prongs, Rule 23(b)(2) is met if defendant has "acted or refused to act on grounds generally applicable to the class."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(3) is satisfied when "the questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently" settling the controversy.  Fed. R. Civ. P. 23(b)(3).

### B.   **Conditional Collective Class Certification Under the FLSA.**

The Equal Pay Act, 29 U.S.C. Section 206(d) et seq., is part of the Fair Labor Standards Act, and subject to the same collective action procedures as all FLSA actions.  "Section 216(b) of the FLSA authorizes an employee to bring a collective action against an employer on behalf of 'similarly situated' employees."  *Webb v. Alpha & Omega Servs. Inc.*, 2016 WL 9110160, at *5 (C.D. Cal. Dec. 14, 2016); 29 U.S.C. § 216(b).  Although the FLSA does not define "similarly situated," in the Ninth Circuit, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share

1    a similar issue of law or fact material to the disposition of their FLSA claims."

2    *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018).  Class plaintiffs

3    may obtain conditional FLSA certification by making a "modest factual showing that

4    they and other … Defendants' employees who worked [in the same general job

5    classifications] were 'victims of a common policy or plan that violated the law.'" *Misra*

6    *v. Decision One Mortg. Co., LLC*, 673 F. Supp. 2d 987, 995 (C.D. Cal. 2008); *Mitchell*,

7    841 F. Supp. 2d at 1115.

8         As shown below, Plaintiffs have met their burden under Rule 23(b)(2), Rule

9    23(b)(3), and the FLSA for certification of an injunctive relief class, a damages class,

10   and a collective action class, respectively.

11   **V.   ARGUMENT**

12        **A.   Rule 23 Class Certification Is Appropriate.**

13             **1.   The classes meet the Rule 23(a) requirements.**

14        The proposed classes meet each of the requirements of Rule 23(a) for

15   certification.  Specifically, the membership of each class is defined and ascertainable

16   through objective criteria, the classes are sufficiently numerous, the class members'

17   claims share common issues, the named plaintiffs' claims are typical of the class, and

18   the named plaintiffs will adequately represent the interests of the class.

19                  **(a)   The class is identifiable and ascertainable.**

20        Rule 23(a) implicitly requires that a plaintiff's class definition set forth a class

21   that is ascertainable.  *See Martinez*, 2016 WL 10746664, at *8.  Ascertainability is met

22   where "the class definition describes 'a set of common characteristics sufficient to

23   allow' a prospective plaintiff to 'identify himself or herself as having a right to recover

24   based on the description.'" *Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*,

25   2014 WL 4627271, at *6 (C.D. Cal. Sept. 8, 2014) (citing *McCrary v. The Elations Co.,*

26   *LLC*, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014)).

27        Here, class members are easily identifiable as current and future members of the

28   WNT (for the injunctive class) and current and former members of the WNT during a

specific time period (for the damages class).  Indeed, USSF maintains records on its website of the roster for each WNT game since 2007, and will have payroll records that identify each of the class members as well.[6]  Both of Plaintiffs' classes have "finite parameters," *Webb*, 2016 WL 9110160, at *2, making them "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member," *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). Because class membership is determined by reference to objective criteria, the classes are ascertainable.  *See Gardner v. Shell Oil Co.*, 2011 WL 1522377 at *3 (N.D. Cal. Apr. 10, 2011).

**(b)   The classes are sufficiently numerous.**

There is "no fixed number" that satisfies Rule 23(a)(1), rather, the question is whether "the proposed class is sufficiently numerous that joinder would be impracticable." *Jensen v. SECORP Indus.*, 2018 WL 5961287, at *2 (C.D. Cal. Aug. 23, 2018) (citations omitted).  Here, the twenty-eight class members named in the complaint are similar in number to classes this Court has deemed sufficiently numerous for certification. *Id.* (certifying a Rule 23 class with thirty-one members).  And, when accounting for absent current and former WNT players, there are at least fifty class members for the 23(b)(3) class,[7] well-above the forty individuals that the Ninth Circuit has stated "usually" satisfy numerosity. *In re Banc of California Sec. Litig.,* 326 F.R.D. 640, 646 (C.D. Cal. May 31, 2018) ("It's generally accepted that when a proposed class has at least forty members, joinder is presumptively impracticable based on numbers alone.") (citing 1 William B. Rubenstein, Newberg on Class Actions § 3:12 (5th ed.)). Here, it would be impractical to join and have separate trials for each of the more than fifty members of the proposed class.  And, with respect to the injunctive class, it would

---

[6]   *See* U.S. Soccer website, USWNT Lineups, available at https://www.ussoccer.com/uswnt-lineups (September 4, 2019).

[7]   *See* U.S. Soccer website, USWNT Lineups, available at https://www.ussoccer.com/uswnt-lineups (September 4, 2019)

1    be impractical to have separate injunctions for different class members who will be
2    subject to uniform compensation terms and working conditions.

3                    (c)    **The class members' claims present common questions of**
4                            **fact and law.**

5           Rule 23(a) next specifies that there must be "questions of law or fact common to
6    the class." Fed. R. Civ. P. 23(a)(2). "[A]ll that Rule 23(a)(2) requires is a single
7    significant question of law or fact" *Abdullah v. U.S. Sec. Assocs., Inc*., 731 F.3d 952,
8    957 (9th Cir. 2013) (citations and quotation marks omitted); *see also Davidson v.*
9    *O'Reilly Auto Enter., LLC*, 2017 WL 8292782, at *3 (C.D. Cal. Dec. 15, 2017) (noting
10   the commonality requirement is "construed permissively"). This case readily satisfies
11   this standard as it presents numerous common questions of law and fact, including:
12   whether the USSF discriminates against the class by subjecting them to different
13   compensation based on their gender; whether the USSF discriminates against the class
14   by subjecting them to different working conditions based on their gender; whether the
15   class has suffered disparate impact and/or disparate treatment discrimination as a result
16   of USSF's wrongful conduct; whether there are legitimate, non-discriminatory reasons
17   for the gross disparity of compensation terms and other terms and conditions of
18   employment applied to the class and whether those reasons are pretext for unlawful
19   gender discrimination; and whether the USSF has willfully violated Title VII by
20   intentionally, knowingly, and/or deliberately subjecting WNT players to terms and
21   conditions of employment less favorable than MNT players.

22          Indeed, Plaintiffs have established commonality here simply by virtue of the fact
23   that the USSF "operate[s] under a general policy" of discrimination that has adversely
24   affected the class. *Wal-Mart v. Dukes*, 564 U.S. 338, 353 (2011). In this case, that
25   policy is embodied in written agreements that apply to all class members. The question
26   of whether that policy has an impermissible, discriminatory impact on all the class
27   members necessarily has a single answer that will "resolve the central issue[s] of
28   Defendant's liability in 'one stroke.'" *Ernst v. ZogSports Holdings LLC*, 2019 WL

1  1435933, at *3 (C.D. Cal. Feb. 21, 2019); *see also Campbell v. Vitran Express Inc.*,

2  2015 WL 7176110, at *4 (C.D. Cal. Nov. 12, 2015) (commonality met because

3  "putative class members' claims stem from the same source in that they were … all

4  subject to the same unofficial policy…").   Here, the policies at issue are not

5  "unofficial"—they are either embodied in written agreements that the USSF admits

6  apply to all class members or in working conditions uniformly applied to all class

7  members.

8                             **(d)**      **The factual and legal claims asserted are typical for all**

9                                            **members of the proposed classes, each of whom has the**

10                                            **same claims as the proposed class representatives.**

11        Rule 23(a)(3) typicality requires that "the interests of the named representative

12  align with the interests of the class."  *Wolin v. Jaguar Land Rover N. Am. LLC*, 617

13  F.3d 1168, 1175 (9th Cir. 2010).  This occurs "when each class member's claim arises

14  from the same course of events, and each class member makes similar legal arguments

15  to prove the defendant's liability."  *Ernst*, 2019 WL 1435933, at *3 (noting that this

16  analysis "tends to merge with the commonality requirement").  Thus, courts look to

17  "whether other members have the same or similar injury, whether the action is based on

18  conduct which is not unique to the named plaintiffs, and whether other class members

19  have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976

20  F.2d 497, 508 (9th Cir. 1992).  And the representative claims need only be "reasonably

21  co-extensive with those of absent class members," not "substantially identical."  *Ernst*,

22  2019 WL 1435933, at *3; *Jensen*, 2018 WL 5961287, at *2 (same).

23        All putative members here, as well as the proposed class representatives, have

24  "similar injur[ies]" and each has a claim based on conduct that is "not unique to the

25  named plaintiffs."  *Hanon*, 976 F.2d at 508.  The representatives and class members

26  have all been "injured by the same course of conduct" from their common employer,

27  the USSF.  *Id.*  Typicality is met here because all class members' claims, including the

28  claims of the proposed class representatives, are rooted in the same set of operative

facts.  *Karam v. Corinthian Colls., Inc.*, 2017 WL 4070889, at *3 (C.D. Cal. July 7, 2017) (finding typicality where claims "arise[] from the same event or practice or course of conduct" and are "based on the same legal theory."); *see also Webb*, 2016 WL 9110160, at *3 (typicality met when representative's harm and the putative class members' harm arose from the same conduct).

### (e)   Plaintiffs and their counsel are adequate.

Plaintiffs and their counsel will adequately represent the proposed classes.  Class certification requires demonstrating that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  Under Fed. R. Civ. P. 23(g), a similar standard is required of class counsel.  Adequate representation "is usually presumed in the absence of contrary evidence."  *Ernst*, 2019 WL 1435933, at *3 (citing *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008)).

Here, Plaintiffs establish adequacy under Rule 23(a)(4) by showing that (1) the proposed class representatives do not have conflicts of interest with the class, and (2) plaintiffs and their counsel will vigorously prosecute the case on behalf of the class.  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 1150 F.3d at 1020 (same).  Plaintiffs and their counsel readily meet both elements.

First, the proposed class representatives' interests do not conflict with the interests of other class members.  The class representatives and all putative members of the class have the same interest in obtaining compensation and working conditions at least equal to those the USSF affords to the MNT.  The fact that some players are on "contract" and some are not is of no moment.  The class representatives seek to achieve compensation and working conditions equal to players on the MNT regardless of whether the player is on contract or not.  Achieving equal pay for players on the WNT will not come at the expense of contracted or non-contracted players.  All will positively benefit.  Similarly, achieving equal working conditions in other areas will benefit all players on the WNT.  If, for example, the USSF must provide a charter flight for a WNT

game or must provide a natural grass surface for a game, those conditions benefit contracted and non-contracted players alike. The non-contracted players as well as contracted players have the same interests in achieving equal compensation and working conditions. *See* Morgan Declaration ¶ 11; Rapinoe Declaration ¶ 11; Lloyd Declaration ¶ 11; Sauerbrunn Declaration ¶ 11; Press Declaration ¶ 11; McDonald Declaration ¶ 10.

Second, the proposed class representatives' vigor in pursuing these claims is well-established. They have been fighting this battle for equality with USSF for a prolonged period, filing complaints with the EEOC over three years ago. *See* Morgan Declaration ¶ 20; Rapinoe Declaration ¶ 20; Lloyd Declaration ¶ 20; Sauerbrunn Declaration ¶ 20. They have been outspoken advocates of equal pay for all women, and will persist until they vindicate the interests of these classes of current, former, and future teammates. They are also active participants in the union for the Women's National Team, which is also supporting them in their pursuit of this class action.

In addition, to further assist them in their pursuit of equality, Plaintiffs' counsel, Winston & Strawn LLP, has the skills, experience, and resources necessary to serve effectively as class counsel. The Winston team has a long history of representing classes of athletes in the pursuit of their legal rights, and has invested, and will continue to invest, significant resources in prosecuting this case. Declaration of Jeffrey Kessler ¶¶ 2, 4. The Winston team also has extensive experience with high-profile sports litigation, employment class actions, and complex litigation. *Id.* at ¶¶ 2, 5–14.

## 2.   Plaintiffs' Proposed Classes Meet Rule 23(b)(2) and Rule 23(b)(3) Requirements.

Moving from Rule 23(a)'s requirements to Rule 23(b) issues, Plaintiffs ask the Court to certify "the injunctive aspects of [this] suit under Rule 23(b)(2) and the damages aspects under Rule 23(b)(3), achieving both consistent treatment of class-wide equitable relief and an opportunity for each affected person to exercise control over the damages." *MacRae v. HCR Manor Care Servs., LLC*, 2018 WL 8064088, at *7 (C.D.

Cal. Dec. 10, 2018) ("[T]he Ninth Circuit has recognized that Rule 23(b)(2) and Rule 23(b)(3) are not mutually exclusive."); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014) ("[T]he court can separately certify an injunctive relief class and if appropriate, also certify a Rule 23(b)(3) damages class.").

### (a)     The Court Should Certify Injunctive Relief Claims under Rule 23(b)(2).

Rule 23(b)(2) is satisfied when defendant "has acted or refused to act on grounds that apply generally to the class," making injunctive or declaratory relief "appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  That is precisely the case here as USSF has treated every member of the proposed class in exactly the same way, making it a "prime example" of "unlawful, class-based discrimination" appropriate for certification as a Rule 23(b)(2) class.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

The challenged compensation and working conditions policies of the USSF for the WNT have been applied to the proposed class generally, caused injury to the proposed class generally, and thereby satisfy the Rule 23(b)(2) standard.  Injunctive and declaratory relief requiring equal pay and equal working conditions on a going-forward basis will provide uniform relief to all class members from the challenged conduct. Indeed, because the compensation and working conditions policies at issue apply on a team-wide basis, a single injunction covering the entire class is required to prevent the USSF from facing inconsistent obligations.

### (b)     The Court Should Certify Claims for Back Pay and Punitive Damages under Rule 23(b)(3).

Plaintiffs move for certification of their claims for back pay and punitive damages under Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Dukes*, 564 U.S. at 362 (citing Fed. R. Civ. P. 23(b)(3)).  As detailed

below, this lawsuit represents a perfect fit for Rule 23(b)(3) given the tremendous efficiencies to be gained by resolving dispositive, overlapping issues in one lawsuit and the fact that there will be a common methodology available for determining the amount of pay discrimination and damages to each class member.

### (i)      Common issues predominate here.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Ernst*, 2019 WL 1435933, at *4 (citing *Hanlon*, 150 F.3d at 1022).  Stated another way, the inquiry focuses on whether "common questions present a significant aspect of the case and [whether] they can be resolved for all members of the class in a single adjudication." *MacRae*, 2018 WL 8064088, at *8.  USSF has already admitted that "the primary issues to be litigated" for different class members are "***nearly identical***," providing "clear justification" for class treatment.  Dkt. 46-1 at 4 (emphasis added); *Ernst*, 2019 WL 1435933, at *4 (Common questions create "clear justification for handling the dispute on a representative rather than on an individual basis.")

All potential class members in this case were or are subject to the USSF's same discriminatory compensation policies, as embodied in the CBAs.  *See* Morgan Declaration ¶ 11; Rapinoe Declaration ¶ 11; Lloyd Declaration ¶ 11; Sauerbrunn Declaration ¶ 11; Press Declaration ¶ 11; McDonald Declaration ¶ 10.  This "consistent employer practice that could be a basis for consistent liability" is alone sufficient to establish predominance.  *See Kamar*, 254 F.R.D. at 399 (Certification is "usually appropriate where liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established.").  Moreover, the challenged working conditions, like team travel, hotel, field surface, medical treatment and marketing support, all are applied on a class-wide basis, providing a predominance of common class-wide issues to be determined.

While back pay damages will differ for class members depending on their employment history, there will be a common formula for determining the amount of

damages to each class member because the discriminatory compensation policies applied to the WNT and MNT were uniform for each class member.  *See* Exs. 1–3. Moreover, to the extent any individualized calculations of damages is required, it is well-established that any need to conduct individualized damages calculations is "rarely determinative under Rule 23(b)(3)."  *Negrete*, 238 F.R.D. at 487.  Here, once liability is established, damages can be calculated with an easily applied common methodology of determining what each class member's compensation would have been if she were paid under the MNT's discriminatory compensation terms.

In sum, there are numerous dispositive questions of law and fact here that apply to ***each and every*** class member.  And once answered, those results will apply to all class members.  Therefore, there is a "clear justification" for resolving this dispute on a representative, not individual, basis, and predominance is satisfied.  *Ernst*, 2019 WL 1435933, at *4.

> **(ii)    A class action is far superior to individual lawsuits.**

"Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation."  *Webb*, 2016 WL 9110160, at *5 (citation omitted).  "The overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy."  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009).

Class certification here will allow plaintiffs with similar claims to jointly bear the cost of litigation and to present their claims to the jury in an efficient and representative manner that will save the resources of the parties and the Court.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).  Absent class certification, each individual member of the class in this case would be required to present the same legal and factual arguments with the same evidence in either separate and duplicative trial proceedings or in extended consolidated trial proceedings with duplicative evidence and testimony. The result would be a waste of resources conducted at enormous expense to both the

1    judicial system and the litigants.

2          Moreover, there is a strong indication that members of the class prefer their

3    claims be litigated together, as the high number of twenty-eight named plaintiffs shows.

4    While one putative class member (Hope Solo) is pursuing her claims separately in

5    another court, no other class members have filed individual actions.[8]

6          USSF has already expressed its agreement with the principle that multiple cases

7    involving the claims of different class members would not be in either its interest, or

8    the interests of sound judicial administration, telling this Court that "proceeding with

9    two cases simultaneously will result in a significant waste of the Court's resources and

10   cause significant prejudice to U.S. Soccer, requiring it to defend against virtually

11   identical claims in two different forums." Dkt. 46-1 at 1.  As USSF made that argument

12   in the context of a single separate back pay action by one player, it follows, *a fortiori*,

13   that this conclusion would apply fifty times over in the context of the superiority of

14   certifying the proposed 23(b)(3) class here, rather than requiring each of the players to

15   pursue separate litigation.

16          **B.    Conditional Class Certification Under Section 216(b) Is Also**

17                 **Warranted.**

18          "To determine whether a collective action is appropriate, district courts must

19   evaluate whether the proposed lead plaintiffs are similarly situated to proposed

20   collective members."  *Ernst*, 2019 WL 1435933, at *6.   This entails a two-step

21   approach.  *See Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 990 (C.D. Cal.

22   2006).   "The first step is conditional notice.   The second step is a post-discovery

23   determination as to whether the case should proceed on a collective basis at trial."

24   *Webb*, 2016 WL 9110160, at *6.

25

26   [8] As a former member of the WNT, Ms. Solo is not a putative member of the Rule

27   23(b)(2) class seeking injunctive relief for which there is no opt-out right.  She retains
     a right to opt out of a certified Rule 23(b)(3) class of which she is a potential member

28   to continue pursuing her back pay claims on an individual basis.

1    The step-one analysis needed here "typically results in a conditional
2 certification." *Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal.
3 2002) (internal quotations omitted).  At this step, "the court must first decide, based
4 primarily on the pleadings and any affidavits submitted by the parties, whether the
5 potential class should be given notice of the action." *Leuthold*, 224 F.R.D. at 467;
6 *Campbell*, 903 F.3d at 1109 (same).  This determination requires "nothing more than
7 substantial allegations that the putative class members were together the victims of a
8 single decision, policy, or plan." *Mitchell*, 841 F. Supp. 2d at 1115; *Carter v. Anderson*
9 *Merchandisers*, 2010 WL 1946784, at *3 (C.D. Cal. May 11, 2010) (same).  And at this
10 early stage where the parties have limited evidence, courts apply a "lenient [standard] .
11 . . loosely akin to a plausibility standard." *Campbell*, 903 F.3d at 1109; *Webb*, 2016
12 WL 9110160, at *6 (describing standard as "fairly lenient").

13    Plaintiffs easily satisfy that standard here because all potential opt-in collective
14 action members have claims that arise from the same team-wide policies of
15 discrimination by the USSF.  The declarations of the players submitted here provide
16 evidence that each WNT player was paid pursuant to USSF's common compensation
17 policies for the WNT, and each player experienced the same team-wide working
18 conditions as a USSF employee.  *See* Morgan Declaration ¶¶ 10, 12; Rapinoe
19 Declaration ¶¶ 10, 12; Lloyd Declaration ¶¶ 10, 12; Sauerbrunn Declaration ¶¶ 10, 12;
20 Press Declaration ¶¶ 10, 12; McDonald Declaration ¶¶ 9, 11.  Based on these undisputed
21 facts, Plaintiffs have exceeded their burden in showing that all plaintiffs are similarly
22 situated to potential opt-in members for purposes of a conditional collective action
23 certification.  *See Webb*, 2016 WL 9110160, at *6 ("This requirement is met with
24 substantial allegations that potential opt-in collective members were the victims of a
25 single decision, policy, or plan.").

26 **VI.    CONCLUSION**

27    For all these reasons, the Court should grant Plaintiffs' motion to certify the
28 proposed classes under Rule 23(b)(2) and Rule 23(b)(3) and the conditional collective

1    action under FLSA Section 216(b).   It should also appoint Alex Morgan, Megan

2    Rapinoe, Carli Lloyd, and Becky Sauerbrunn as class representatives of the Rule 23

3    classes, and Winston & Strawn LLP as class counsel.

4

5    Dated:  September 11, 2019                WINSTON & STRAWN LLP

6                                             By:  */s/ Jeffrey L. Kessler*
                                                   Jeffrey L. Kessler
7                                                  David G. Feher
                                                   Cardelle B. Spangler
8                                                  Diana Hughes Leiden
                                                   Jeanifer E. Parsigian
9
                                                   Attorneys for Plaintiffs
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28