1  Seyfarth Shaw LLP
   Ellen E. McLaughlin *(Admitted Pro Hac Vice)*
2  E-mail:  emclaughlin@seyfarth.com
   Noah A. Finkel *(Pro Hac Vice Admission*
3  *Anticipated)*
   E-mail: nfinkel@seyfarth.com
4  Brian M. Stolzenbach *(Admitted Pro Hac Vice)*
   E-mail:  bstolzenbach@seyfarth.com
5  Cheryl A. Luce *(Admitted Pro Hac Vice)*
   E-mail:  cluce@seyfarth.com
6  233 South Wacker Drive, Suite 8000
   Chicago, Illinois 60606-6448
7  Telephone:   (312) 460-5000
   Facsimile:    (312) 460-7000
8
   SEYFARTH SHAW LLP
9  Kristen M. Peters (SBN 252296)
   E-mail:  kmpeters@seyfarth.com
10 2029 Century Park East, Suite 3500
   Los Angeles, California 90067-3021
11 Telephone:   (310) 277-7200
   Facsimile:    (310) 201-5219
12
13 SEYFARTH SHAW LLP
   Chantelle C. Egan (SBN 257938)
14 cegan@seyfarth.com
   560 Mission Street, 31st Floor
15 San Francisco, California 94105
   Telephone:   (415) 397-2823
16 Facsimile:    (415) 397-8549

17 Attorneys for Defendant
   UNITED STATES SOCCER FEDERATION,
18 INC.

19              UNITED STATES DISTRICT COURT

20              CENTRAL DISTRICT OF CALIFORNIA

21

22 | ALEX MORGAN, et al., | Case No. 2:19-cv-01717-RGK-AGR |

23 |           Plaintiffs, | **DEFENDANT UNITED STATES** |
                          | **SOCCER FEDERATION, INC.'S** |
24 |           v. | **OPPOSITION TO PLAINTIFFS'** |
                 | **MOTION FOR CLASS** |
25 | UNITED STATES SOCCER | **CERTIFICATION** |
   | FEDERATION, INC., | |
26 |           Defendant. | Complaint Filed:  March 8, 2019 |

27 | | Date: October 21, 2019 |
      | Time:  9:00 AM |
28 | | Place: Courtroom 850 |

1

**TABLE OF CONTENTS**

2

Page

3

I.      INTRODUCTION ............................................................................................. 1

4

II.     FACTUAL BACKGROUND ........................................................................... 2

5

6

        A.     The Members of the Men's and Women's Teams Separately
               Negotiated for Fundamentally Different Compensation Structures. ........... 2

7

        B.     The Proposed Class Representatives Each Individually Earned More
               Total Compensation Than Any Single MNT Player During the
               Limitations Period ...................................................................................... 3

8

9

III.    THE CLASS REPRESENTATIVES LACK STANDING. .................................. 5

10

        A.     Plaintiffs Fail to Establish That the Class Representatives Suffered
               Concrete and Particularized Injuries Necessary to Represent a Class
               Seeking Monetary Relief. ........................................................................... 6

11

12

        B.     The Class Representatives Made More Than Every MNT Player and
               Therefore Lack Standing for the Claimed Monetary Relief. ........................ 8

13

        C.     The Class Representatives State a Mere Hypothetical Prospective
               Injury and Lack Standing for the Claimed Injunctive Relief. ...................... 9

14

15

IV.    PLAINTIFFS' PROPOSED CLASS DOES NOT MEET THE RULE 23(A)
       REQUIREMENTS ............................................................................................11

16

        A.     Plaintiffs Fail to Establish That the Class Is So Numerous That
               Joinder is Impracticable. ............................................................................11

17

18

        B.     The Proposed Class Representatives Are Inadequate to Represent the
               Interests of the Class. .................................................................................13

19

V.     PLAINTIFFS' PROPOSED CLASS DOES NOT MEET THE RULE
       23(B)(2) REQUIREMENTS. ...........................................................................15

20

21

VI.    PLAINTIFFS' PROPOSED CLASS DOES NOT MEET RULE 23(B)(3). ..........16

22

VII.   CONCLUSION ................................................................................................19

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arevalo v. Bank of Am. Corp.*,
   850 F. Supp. 2d 1008 (N.D. Cal. 2011)........................................................8

*Baughman v. Roadrunner Commc'ns, LLC*,
   No. CV-12-565-PHX-SMM, 2014 WL 4259468 (D. Ariz. Aug. 29, 2014)...............18

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975).........................................................18, 19

*Chapman v. Pier 1 Imports (U.S.), Inc.*,
   631 F.3d 939 (9th Cir. 2011).............................................................6

*Cholakyan v. Mercedes-Benz USA, LLC*,
   No. CV-10-05944-MMM-JCX, 2012 WL 12861143 (C.D. Cal. Jan. 12,
   2012) ...................................................................................5

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)....................................................................11

*Cooper v. S. Co.*,
   390 F.3d 695 (11th Cir. 2004).........................................................17

*Davis v. Team Elec. Co.*,
   520 F.3d 1080 (9th Cir. 2008)..........................................................7

*East Tex. Motor Freight System, Inc. v. Rodriguez*,
   431 U.S. 395 (1977)...................................................................13

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011).....................................................*passim*

*Evans v. Linden Research, Inc.*,
   No. 11-cv-1078, 2012 WL 5877579 (N.D. Cal. Nov. 20, 2012)....................7, 10

*Freyd v. Univ. of Oregon*,
   384 F. Supp. 3d 1284 (D. Or. 2019)...................................................17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998).....................................................13, 16

ii

*Hoffman v. Blattner Energy, Inc.*,
　315 F.R.D. 324 (C.D. Cal. 2016) ...................................................................8

*Horton v. Jackson Cnty. Bd. Of Cnty. Comm'rs*,
　343 F.3d 897 (7th Cir. 2003) ......................................................................12

*Krause v. Nevada Mut. Ins. Co.*,
　No. 2:12-CV-342 JCM CWH, 2015 WL 3903587 (D. Nev. June 24,
　2015) ...........................................................................................................17

*Labou v. Cellco P'ship*,
　No. 2:13-CV-00844-MCE, 2014 WL 824225 (E.D. Cal. Mar. 3, 2014) ...................13

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
　350 F.3d 1018 (9th Cir. 2003) ......................................................................6

*In re Literary Works in Elec. Databases Copyright Litig.*,
　654 F.3d 242 (2d Cir. 2011) ........................................................................14

*Lujan v. Defenders of Wildlife*,
　504 U.S. 555 (1992) ....................................................................................5

*McDonnell Douglas Corp. v. Green*,
　411 U.S. 792 (1973) ..................................................................................17

*Miranda v. B & B Cash Grocery Store*, Inc.,
　975 F.2d 1518, 1529 (11th Cir. 1992) ..........................................................17

*Moore v. Apple Inc.*,
　309 F.R.D. 532 (N.D. Cal. 2015) .............................................................1, 5

*Nelsen v. King Cnty.*,
　895 F.2d 1248 (9th Cir. 1990) .....................................................................6

*Pelekai v. Raytheon Constructors, Inc.*,
　74 F. App'x 790 (9th Cir. 2003) ...................................................................5

*Perez v. Wells Fargo & Co.*,
　No. 14-CV-0989-PJH, 2016 WL 4180190 (N.D. Cal. Aug. 8, 2016) ...................11

*Reece v. Martin Marietta Techs., Inc.*,
　914 F. Supp. 1236 (D. Md. 1995) ................................................................17

iii

*Romero v. Securus Techs., Inc.*,
    216 F. Supp. 3d 1078 (S.D. Cal. 2016) ..................................................8

*Schlaud v. Snyder*,
    785 F.3d 1119 (6th Cir. 2015).............................................................15

*Simon v. Eastern Kentucky Welfare Rights Org.*,
    426 U.S. 26 (1976)...............................................................................6

*Spokeo, Inc. v. Robins*,
    --- U.S. ---, 136 S. Ct. 1540 (2016) ...........................................1, 5, 6, 7

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)...............................................................13

*Turner v. A. B. Carter, Inc.*,
    85 F.R.D. 360 (E.D. Va. 1980) ...........................................................14

*Valenzuela v. Union Pac. R.R. Co.*,
    No. CV-15-01092-PHX-DGC, 2017 WL 679095 (D. Ariz. Feb. 21, 2017)...............11

*Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*,
    350 F.3d 1181 (11th Cir. 2003)...........................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..................................................................5, 15, 16

*Wood v. City of San Diego*,
    678 F.3d 1075 (9th Cir. 2012)...............................................................5

*Young v. Covington & Burling L.L.P.*,
    740 F. Supp. 2d 17 (D.D.C. 2010) .........................................................8

**Statutes**

29 U.S.C. § 206(d) ....................................................................................1

42 U.S.C. § 2000e .....................................................................................1

42 U.S.C. § 2000e-2(a) .............................................................................7

**Rules**

Fed. R. Civ. P. 12(b)(1)............................................................................9

iv

Fed. R.Civ. P. 23...................................................................................................*passim*

**Other Authorities**

W. Rubenstein, A. Conte, and H. Newberg, *Newberg on Class Actions*
    (5th ed. 2012)...................................................................................12, 15

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# I.   INTRODUCTION

Plaintiffs' motion for class certification should be denied because the proposed Class Representatives Alex Morgan, Megan Rapinoe, Carli Lloyd and Becky Sauerbrunn were paid more than even the highest-earning MNT members and therefore have suffered no injury. Even if they had, they fail to meet their burden of demonstrating a basis for certification under Federal Rule of Civil Procedure 23(a) and 23(b). Plaintiffs, who are current and former members of the U.S. Women's National Team ("WNT") assert that the United States Soccer Federation, Inc. ("U.S. Soccer") violated the pay discrimination provisions of Title VII to the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII") and the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"). Plaintiffs also claim that they were subjected to discriminatory terms and conditions of employment under Title VII. Noticeably absent from Plaintiffs' motion for class certification is any evidentiary proof showing that the proposed Class Representatives meet the Article III constitutional standing requirements. Plaintiffs cannot meet these requirements, as shown by the evidence U.S. Soccer attaches to this Opposition showing that the Class Representatives made more than any other relevant U.S. Men's National Team ("MNT") player.

Standing is a jurisdictional requirement and requires the Plaintiffs, as the parties invoking federal jurisdiction, to *prove* that the proposed Class Representatives suffered an injury that is "concrete" and "de facto," meaning that it must actually exist. *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1548 (2016), as revised (May 24, 2016). When a challenge to standing is made in opposition to a motion for class certification, it should be addressed before analyzing whether the proposed class meets the class certification requirements. Rather, Plaintiffs must show standing "through evidentiary proof." *Moore v. Apple Inc.*, 309 F.R.D. 532, 539-40 (N.D. Cal. 2015) (quoting *Evans v. Linden Research, Inc.*, No. 11-cv-1078, 2012 WL 5877579, at *6 (N.D. Cal. Nov. 20, 2012) (at class certification, "Plaintiffs must demonstrate, not merely allege, that they have suffered an injury-in-fact to establish Article III standing to bring the claims asserted on behalf of the [class].")). Because of the lack of proof showing the Class

1

Representatives suffered any injury that could be remedied by this Court's adjudication of their Title VII claims, Plaintiffs' motion for class certification should be denied.

Even if the proposed class meets the constitutional standing requirements (which it does not), Plaintiffs' motion for class certification of their Title VII claims must be denied because: (1) Plaintiffs fail to show that the class is so numerous that joinder is impracticable, (2) the interests of the Class Representatives inherently conflict with the interests of the putative class members, (3) a comparison between WNT players and MNT players is highly individualized, and (4) Plaintiffs' proposed injunctive relief class seeks predominantly money damages and is inappropriate for certification.[1]

## II.    FACTUAL BACKGROUND

### A.    The Members of the Men's and Women's Teams Separately Negotiated for Fundamentally Different Compensation Structures.

The WNT and MNT have organized through separate unions (each a "Players Association") and have entered into separate collective bargaining agreements ("CBAs") with U.S. Soccer that set forth their compensation and terms and conditions of employment at U.S. Soccer. (Dkt. 64, Pls.' Mtn for Class Certification (hereinafter" Pls.' Mtn.", at 3.[2]) As separate labor organizations representing players with different priorities, the Players Associations chose to negotiate significantly different compensation structures and terms of employment that reflect these priorities.

***WNT Compensation.*** Under the WNT CBAs, a core group of contracted WNT players, which includes each of the proposed Class Representatives, receive guaranteed base salaries for playing on the national team and an additional guaranteed salary for

---

[1] U.S. Soccer does not oppose Plaintiffs' request for conditional certification of an EPA collective action and requests that the parties be given seven days after the Court's ruling to discuss a mutually-agreeable notice and that, if the parties cannot reach agreement, that they submit to the Court competing proposed notices seven days thereafter.

[2] References to page numbers in Plaintiffs' Motion for Class certification cite the page number of Plaintiffs' brief and not the page number of the ECF filing. References to page numbers in the parties' exhibits cite the page number as it appears on the ECF filing.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

training and playing in the National Women's Soccer League ("NWSL"), a women's professional soccer league. (Dkt. 64-9, Pls.' Ex. 2 to Spangler Decl., at 13, 19-20.) There are two tiers of NWSL salaries that WNT players may be eligible to receive. (*Id.* at 20.) Contracted WNT players receive these salaries regardless of how many WNT (or NWSL) games they play or whether the games result in a win, loss, or draw. (*Id.* at 13, 19-20.) Contracted WNT players and some allocated NWSL players receive health, dental, vision insurance coverage, maternity and adoption leave, child care, and 401(k) benefits. (*Id.* at 21-22.) Additionally, all WNT players (contracted and non-contracted) receive bonuses for making individual match rosters and, if applicable, tournament rosters, which vary per the event and often the outcome of the match and the opponent.[3] (*Id.* at 19-20, 24.)

*MNT Compensation.* In contrast to the low-risk guaranteed salaries and benefits that the WNT negotiated, the MNT has collectively bargained for a different higher-risk, potentially high-reward "pay-for-play" compensation structure in which they receive payments for making the roster for particular matches and, if applicable, tournaments. (*See generally* Ex. 1 to Decl. of Ellen E. McLaughlin, attached as Ex. A.) MNT players do not receive guaranteed salaries; those who do not make the roster for a given match do not receive any payment for the match. (*Id.*) MNT players are eligible to receive fees and bonuses that vary depending on the event, the outcome, and the opponent. (*Id.*)

## B. The Proposed Class Representatives Each Individually Earned More Total Compensation Than Any Single MNT Player During the Limitations Period.

Plaintiffs' proposed Class Representatives each made significantly more money than the highest paid MNT player over the course of the limitations period, as demonstrated in the table below. (*See* Decl. of Pinky Raina, attached as Ex. B, ¶¶ 2-3.) In

---

[3] This section summarizes WNT compensation and benefits under the current WNT CBA effective from 2017 to 2021. The precise terms of WNT player compensation and benefits have changed during the course of the limitations period, but the general structure has remained the same. (*See generally* Dkt. 64-8, Pls.' Ex. 1 to Spangler Decl.)

3

fact, each Class Representative has generally earned more than the highest-earning MNT player:

| Class Representatives vs. Highest Earning MNT Player (Including NWSL Salaries) | | | | | |
|---|---|---|---|---|---|
| Year | Lloyd | Rapinoe | Sauerbrunn | Morgan | Highest Earning MNT Player** |
| 2014* | $ 134,800 | $ 133,450 | $ 134,800 | $ 130,750 | $ 391,847 |
| 2015 | $ 303,711 | $ 302,361 | $ 303,711 | $ 303,711 | $ 164,599 |
| 2016 | $ 174,200 | $ 145,700 | $ 176,900 | $ 172,850 | $ 179,250 |
| 2017 | $ 216,062 | $ 239,299 | $ 252,500 | $ 211,062 | $ 155,625 |
| 2018 | $ 311,478 | $ 302,640 | $ 283,390 | $ 311,890 | $ 11,250 |
| 2019*** | $ 382,395 | $ 377,046 | $ 382,326 | $ 381,762 | $ 91,396 |
| TOTAL | $1,522,646 | $1,500,496 | $1,533,626 | $1,512,025 | $ 993,967 |

Plaintiffs may claim that compensation paid for play in the NWSL should be excluded.  Setting aside that Plaintiffs' argument is incorrect as a matter of law, even if those NWSL amounts are excluded, the Class Representatives' compensation is still more than the highest-earning MNT player's compensation:[4]

| Class Representatives vs. Highest Earning MNT Player (Excluding NWSL Salaries) | | | | | |
|---|---|---|---|---|---|
| Year | Lloyd | Rapinoe | Sauerbrunn | Morgan | Highest Earning MNT Player** |
| 2014* | $ 82,800 | $ 81,450 | $ 82,800 | $ 78,750 | $ 391,847 |
| 2015 | $ 249,711 | $ 248,361 | $ 249,711 | $ 249,711 | $ 164,599 |
| 2016 | $ 118,200 | $ 89,700 | $ 120,900 | $ 116,850 | $ 179,250 |
| 2017 | $ 174,500 | $ 176,800 | $ 185,000 | $ 174,500 | $ 155,625 |
| 2018 | $ 241,838 | $ 233,000 | $ 213,750 | $ 242,250 | $ 11,250 |
| 2019*** | $ 317,848 | $ 312,499 | $ 317,779 | $ 317,848 | $ 91,396 |
| TOTAL | $1,184,897 | $1,141,810 | $1,169,940 | $1,179,909 | $ 993,967 |

*From 3/30/2014 through 12/31/2014
**This summarizes the income earned by the single MNT Player who earned the most in the aggregate over the 2014-2019 period.
***From 1/1/19 through 9/30/19

---

[4] By providing this information, U.S. Soccer in no way concedes that this method of comparing WNT players and MNT players is appropriate for the purposes of Title VII or the EPA. Rather, this information is merely offered in support of U.S. Soccer's factual attack on the Plaintiffs' Article III standing as discussed in Part III *supra*.

## III.   THE CLASS REPRESENTATIVES LACK STANDING.

Plaintiffs' motion fails to establish that the Class Representatives have Article III standing to pursue claims for monetary or injunctive relief because they provide no proof that the Class Representatives suffered any injury.  The "rigorous analysis" of Rule 23 certification requires, at minimum, evidentiary proof that the plaintiff has standing to represent the proposed class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotations omitted) ("[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.") Plaintiffs "claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating her standing to sue at each stage of the litigation." *Wood v. City of San Diego*, 678 F.3d 1075, 1083 (9th Cir. 2012) (internal quotations omitted).

The "irreducible constitutional minimum" of standing consists of three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely (not simply speculative) to be redressed by a favorable judicial decision. *Id.* at 560-61; *Pelekai v. Raytheon Constructors, Inc.*, 74 F. App'x 790, 791 (9th Cir. 2003). Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing that the proposed Class Representatives meet these elements. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016). "Each of these elements 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *Cholakyan v. Mercedes-Benz USA, LLC*, No. CV-10-05944-MMM-JCX, 2012 WL 12861143, at *18 (C.D. Cal. Jan. 12, 2012) (quoting *Lujan*, 504 U.S. at 561). "On a motion for class certification, this means Plaintiff must show standing 'through evidentiary proof.'" *Moore v. Apple Inc.*, 309 F.R.D. 532, 539 (N.D. Cal. 2015) (quoting *Comcast*, 133 S. Ct. at 1432). Plaintiffs fail to meet their burden of establishing through evidentiary proof that the Class Representatives suffered concrete

5

injuries-in-fact, and the evidence that U.S. Soccer submits presents a factual challenge to their standing that precludes certification of the proposed class.

### A.   Plaintiffs Fail to Establish That the Class Representatives Suffered Concrete and Particularized Injuries Necessary to Represent a Class Seeking Monetary Relief.

To establish injury in fact, Plaintiffs must show that the Class Representatives suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (citing *Lujan*, 504 U.S., at 560, 112 S.Ct. 2130 (internal quotation marks omitted)). The Class Representatives must show standing with respect to each form of relief sought. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011) (citing *Lujan*). The Class Representatives do not gain standing through injuries to class members. *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 n. 20 (1976). Rather, Plaintiffs must show that the proposed Class Representatives were in fact injured by the alleged statutory violations they assert.  *Nelsen v. King Cnty.*, 895 F.2d 1248, 1249-50 (9th Cir. 1990) ("Standing is a jurisdictional element that must be satisfied prior to class certification.").  "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."  *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003).

Here, Plaintiffs fail to meet their burden of showing that the Class Representatives suffered any injuries conferring Article III standing to represent themselves and the putative class members for their claimed relief for monetary damages and injunctive relief. The existence of standing "often turns on the nature and source of the claim asserted." *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 947 (9th Cir. 2011). With respect to their claims for monetary relief, Plaintiffs must show that the Class Representatives suffered concrete injuries from U.S. Soccer's compensation practices as defined in Title VII. *See id.* (looking to the statutory definition of the relevant violation to

6

establish injury for standing purposes). Title VII makes it unlawful for an employer to discriminate against any individual with respect to her compensation. 42 U.S.C. § 2000e-2(a). Plaintiffs fail to provide any evidence that the Class Representatives were paid less than any USMNT players. *Davis v. Team Elec. Co*., 520 F.3d 1080, 1089 (9th Cir. 2008) (a violation of Title VII occurs when an individual is treated less favorably than male employees on the basis of protected category).

Plaintiffs' only evidence of injury are four identical declarations from the Class Representatives merely alleging that they suffered the following generalized, unspecified, and hypothetical injury in support of their claims for monetary relief:

> The USSF has had and continues to have a common policy applicable to me and all current and former WNT players that pays WNT players less than MNT players as set forth in the collective bargaining agreements, even though the USSF employs both MNT players and WNT players each of whom have the same or substantially similar job responsibilities.

(Lloyd, Sauerbrunn, Morgan, and Rapinoe Decls., ¶ 10.) Plaintiffs' conclusions about *potential* pay disparities, lacking particularity to the Class Representatives, are not the concrete injuries necessary to seek redress in federal court at this stage. *Spokeo*, 136 S. Ct. at 1549 (explaining that to qualify as "concrete," an injury "must actually exist" and it must be "real and not abstract"). Rather, at the class certification stage, the Class Representatives "must demonstrate, not merely allege, that they have suffered an injury-in-fact to establish Article III standing to bring the claims asserted on behalf of the [class]." *Evans v. Linden Research, Inc*., No. C 11-01078 DMR, 2012 WL 5877579, at *6 (N.D. Cal. Nov. 20, 2012) (citing *Nelsen v. King Cnty*., 895 F.2d 1248, 1249-50 (9th Cir. 1990). The Class Representatives' mere allegations that the WNT and MNT players were paid differently are not the type of "evidentiary proof" showing that they suffered a concrete injury-in-fact that is fairly traceable to U.S. Soccer.

Other courts within this district have refused to certify class claims asserted by class representatives who failed to show that they were injured by the alleged statutory

violations. In *Hoffman v. Blattner Energy, Inc.*, 315 F.R.D. 324, 333 (C.D. Cal. 2016), the court denied the employee's motion for class certification of his meal period claims because he failed to present any evidence that he suffered any injuries as a result of the employer's alleged unlawful meal period practices and thus he had no standing to bring claims on behalf of others who may have taken on-duty meal breaks. *See also Young v. Covington & Burling L.L.P.*, 740 F. Supp. 2d 17, 21 (D.D.C. 2010) (plaintiff lacked Article III standing to pursue Title VII claims where she was never actually impacted by alleged discriminatory practice). Similarly here, where the Plaintiffs provide no proof of actual concrete injury that is personal to the Class Representatives, Plaintiffs have not met their initial burden and thus Plaintiffs' motion for class certification must be denied.

**B.      The Class Representatives Made More Than *Every* MNT Player and Therefore Lack Standing for the Claimed Monetary Relief.**

Nor could the Class Representatives establish any concrete injuries if they had attempted. The evidence that U.S. Soccer attaches to this Opposition shows that the Class Representatives each received more compensation than any single MNT player and were not injured by U.S. Soccer's allegedly discriminatory pay practices. This evidence presents a "factual challenge" to standing (i.e., external facts beyond the Complaint that call the Court's jurisdiction into question). A "factual challenge" differs from a "facial challenge" to standing because courts are limited to the Plaintiffs' allegations when resolving a facial challenge, and by contrast, in resolving a factual challenge, the court may consider evidence outside the complaint and ordinarily "need not presume the truthfulness of the plaintiff's allegations." *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1086 (S.D. Cal. 2016) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A factual challenge to constitutional standing involves "a jurisdictional question that can be raised at any time in the litigation and cannot be waived." *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1015 (N.D. Cal. 2011).

8

1   In support of its factual challenge to the Class Representatives' standing, U.S.

2   Soccer submits evidence showing that the four Class Representatives made more in total

3   compensation than the highest-earning MNT player during the period from 2014 to

4   present, and in each year from 2015 to present.[5] This evidence shows that the Class

5   Representatives did not suffer any monetary injuries that could be remedied by a judicial

6   determination of their Title VII and EPA claims and lack standing to assert claims on

7   behalf of themselves and the class for monetary relief.[6]

**C.     The Class Representatives State a Mere Hypothetical Prospective Injury and Lack Standing for the Claimed Injunctive Relief.**

10   To have standing for a class seeking injunctive relief, the Class Representatives

11   must show a "claimed threat of injury must be likely to be redressed by the prospective

12   injunctive relief." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979 (9th Cir. 2011).

13   The only threat of injury related to their claims for monetary relief even ***alleged*** by the

14   Class Representatives is that U.S. Soccer continues to subject them to the same allegedly

15   discriminatory compensation policies and practices as it has in the past. (Lloyd,

16   Sauerbrunn, Morgan, and Rapinoe Decls. ¶ 10.) But the ***only*** evidence in front of the

17   Court shows that the Class Representatives were paid ***more*** than MNT players, and so

18   Plaintiffs have failed to meet their burden of showing any credible threat of future injury

19   to confer standing on the Class Representatives on their claims for injunctive relief

20   related to their pay discrimination claims. Nor do Plaintiffs provide evidence supporting a

21   threatened injury arising from discriminatory terms and conditions of employment. The

---

[5] Even excluding the additional salaries that the Class Representatives earned for playing in the NWSL league, the Class Representatives made more than any other MNT player.
[6] U.S. Soccer is arguing that the Plaintiffs have not met *their burden* of showing that the Class Representatives have standing. U.S. Soccer *has not* moved to dismiss the Class Representatives' claims for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1) and its arguments permit the Court to revisit standing at a later stage in the litigation. Rather, it is the Plaintiffs who fail to meet their showing of Class Representatives' injuries under Article III at the Rule 23 stage.

9

Class Representatives' allegations regarding the injuries they suffered from having different travel accommodations, field surfaces, "and other working conditions" are generalized and hypothetical, at best. The only evidentiary proof that the Plaintiffs provide in support of their injuries related to their claims for injunctive relief to remedy the allegedly discriminatory terms and conditions of their employment is a chart comparing WNT and MNT field surfaces from January 1, 2014 (well beyond the limitations period) to July 22, 2016. Plaintiffs fail to produce any evidence about field surface conditions *after* July 22, 2016 ***because they cannot***: the WNT played on turf on only four occasions since December 17, 2015, the most recent of which was October 19, 2017. (Decl. of Jay Berhalter, attached as Ex. C, ¶ 3.) Since October 19, 2017,  the Class Representatives have played all home matches only on their preferred grass field surfaces. (*Id.*)

Further, although the Class Representatives' Declarations make generalized allegations about different terms and conditions of employment (i.e., that U.S. Soccer "has provided charter flights on numerous occasions for MNT players to travel to games" while also admitting that U.S. Soccer provides charter flights for WNT players, that U.S. Soccer "has provided better hotel accommodations for MNT players," and vague allegations about the teams' respective medical and training staff and programs), Plaintiffs fail to provide any actual evidentiary sport for these allegations. (Lloyd, Sauerbrunn, Morgan, and Rapinoe Decls., ¶¶ 14-16.) Plaintiffs even admit in their motion that some of the provisions related to the working conditions, "such as travel and transportation, medical, nutritional, training staff, and playing surface conditions … ***are the same or similar in both***" the MNT and WNT CBAs. (Pls.' Mtn at 5 n.4, emphasis added.) Completely neglecting *any* responsibility to show that they suffered actual injuries in light of these facially similar provisions, Plaintiffs insist that "the controlling fact" at this stage is that they have alleged discriminatory working conditions. *Id.* But that

10

1   is wrong. *Evans*, 2012 WL 5877579 at *6.  Plaintiffs fail to provide the evidentiary proof
2   necessary to meet the burden of demonstrating injury to the Class Representatives.

3   **IV.   PLAINTIFFS' PROPOSED CLASS DOES NOT MEET THE RULE 23(a)**
4   **        REQUIREMENTS.**

5          Departure from the usual rule that litigation is conducted by and on behalf of
6   individual named parties requires that Plaintiffs "affirmatively demonstrate" that the
7   proposed class has met all of the requirements of Rule 23 and is entitled to carry on
8   litigation on a representative basis through "evidentiary proof." *Comcast Corp. v.*
9   *Behrend*, 569 U.S. 27, 27, 33 (2013). "Parties seeking class certification bear the burden
10  of demonstrating that they have met each of the four requirements of Federal Rule of
11  Civil Procedure 23(a) and at least one of the prongs of Rule 23(b). *Ellis v. Comcast*
12  *Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011). Although the Ninth Circuit has
13  not articulated the standard of proof required, other district courts within the Ninth
14  Circuit have followed "the standard trend in federal courts" and the holdings in other
15  circuits that plaintiffs bear the burden of showing that the Rule 23 requirements have
16  been met by a preponderance of the evidence. *Valenzuela v. Union Pac. R.R. Co.*, No.
17  CV-15-01092-PHX-DGC, 2017 WL 679095, at *1 (D. Ariz. Feb. 21, 2017) (citing
18  *Newberg on Class Actions*, § 7:21 (2016); *Perez v. Wells Fargo & Co.*, No. 14-CV-0989-
19  PJH, 2016 WL 4180190, at *3 (N.D. Cal. Aug. 8, 2016) (citing *Dukes*, 564 U.S. at 350-
20  51). Here, Plaintiffs fail to establish by a preponderance of the evidence that the class is
21  so numerous that joinder is impracticable or that the highly paid Class Representatives
22  are adequate to represent the interests of the remainder of the proposed class.

23         **A.     Plaintiffs Fail to Establish That the Class Is So Numerous That Joinder**
24         **        is Impracticable.**

25         The proposed class lacks numerosity under Rule 23(a)(1), which is a bedrock
26  prerequisite for class treatment under either (b)(2) or (b)(3). Numerosity is not met
27  simply because there is a large number of class members.  Rather, by its text, numerosity
28

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1    is satisfied only if "the class is so numerous *that joinder of all members is impracticable*"
2    (emphasis added). Indeed, the rule's "core requirement is that joinder be impracticable."
3    W. Rubenstein, A. Conte, and H. Newberg, *Newberg on Class Actions* § 4.37 (5th ed.
4    2012). The factors at which courts look other than mere size of the putative class (which
5    U.S. Soccer estimates to be approximately 50 people) include judicial economy arising
6    from avoidance of multiple actions, geographic disbursement of class members, size of
7    individual claims, financial resources of class members, and the ability of class members
8    to attempt to vindicate their rights otherwise. *Id.*

9        Here, joinder is practicable because of the EPA claim Plaintiffs assert.  There
10   already are 28 players who have joined this case under the Equal Pay Act under which
11   they seek largely the same relief that they seek under Title VII (and they arguably could
12   become named plaintiffs under the Title VII claim through the piggyback doctrine, *see,*
13   *e.g., Horton v. Jackson Cnty. Bd. Of Cnty. Comm'rs*, 343 F.3d 897, 899 (7th Cir. 2003)).
14   Further, because U.S. Soccer does not oppose Plaintiffs' request for conditional
15   certification of their EPA claim, they will be able to send a notice inviting the same
16   people who would be part of the putative Rule 23 class to join this case as additional
17   party-plaintiffs. The notice that will go out to class members in the event that the EPA
18   claim is conditionally certified will state that all one needs to do to join this lawsuit is
19   sign a document and return it by email (for no cost). The fact is, U.S. Soccer knows the
20   identity, social security number, and has a recent address for every potential party to the
21   collective action.  *Joinder is not only practicable; it already is happening*. In addition,
22   the other factors to be considered do not support a finding that joinder is impracticable.
23   Because of the collective action device invoked by Plaintiffs, litigation of discriminatory
24   pay claims by members of the WNT are anchored in this case, and they would have no
25   difficulty in the absence of *class* certification to assert claims through a *collective* action.
26   As can be seen on the chart on page 4 of this brief, the WNT players do not lack the
27   resources to pursue this case in the absence of class certification.

28

**B.     The Proposed Class Representatives Are Inadequate to Represent the Interests of the Class.**

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must consider two issues to determine adequacy of representation: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In Title VII cases, class representatives lack adequacy if there is "a substantive issue for which there is a conflict of interest between two or more sets of employees." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (quoting *Newberg on Class Actions*, § 24.42 (3d ed.1992)). The proposed Class Representatives are inadequate for three reasons.

First, as noted above, the Class Representatives did not suffer injuries under Title VII and thus cannot represent class members who allegedly *did* suffer injuries under Title VII. "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). Accordingly, for reasons similar to why the Class Representatives lack standing as stated above, Plaintiffs fail to satisfy their burden on adequacy. *See Labou v. Cellco P'ship*, No. 2:13-CV-00844-MCE, 2014 WL 824225, at *6 (E.D. Cal. Mar. 3, 2014) ("[B]ecause Plaintiff neither possess[es] the same interest nor suffers the same injury as the majority of the proposed class, the Court finds that Plaintiff has not met her burden of satisfying the adequacy requirement under Rule 23(a)(4)").

Second, conflicts of interest preclude certification on adequacy grounds because some class members (including the Class Representatives themselves) stand to benefit if U.S. Soccer continues the challenged practice. *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1198 (11th Cir. 2003) ("A fundamental conflict

13

exists where some party members claim to be harmed by the same conduct that benefited other members of the class.") As Plaintiffs note in their motion, at least 18 of the putative class members, including the proposed Class Representatives, ***receive guaranteed salaries*** and not the high-risk, potentially high-reward match appearance fees that the MNT players receive. Indeed, the WNT, through the Players' Association, chose and agreed to be compensated in different ways than the MNT is compensated, which reflects different bargaining priorities and their desire for U.S. Soccer to pay core contracted players guaranteed sums and NWSL salaries. Although the Class Representatives seem to be claiming that the guaranteed salaries are not as favorable to them as the MNT structure, others may prefer the benefits and low risks associated with guaranteed salaries as reflected in the collective bargaining choices made by the WNT when they voted to approve the current CBA just two years ago.

Third, the Class Representatives, who are senior, contracted members of the WNT, may prioritize monetary and injunctive relief that is more favorable to them than to junior, non-contracted players. *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 251-52 (2d Cir. 2011) (class members who had several types of claims could not adequately represent those who had only one type because their "natural inclination would therefore be to favor their more lucrative" claims). Such "lack of adequate representation raises due process issues concerning the res judicata effect of a final judgment in a class action upon absent class members." *Turner v. A. B. Carter, Inc.*, 85 F.R.D. 360, 369 (E.D. Va. 1980). Yet the Class Representatives ask that U.S. Soccer be enjoined to pay the WNT class members in way that is "equal" to MNT compensation. What Plaintiffs seek—a duplicate of the MNT collective bargaining agreement—may (or may not) be better for them, but it is hard to believe it is better for a large number of the putative class members they purport to represent, including contracted players who, just two years ago, negotiated to receive guaranteed salaries rather than high-risk, pay-for-play match appearance fees. Plaintiffs insist that "[a]ll will positively benefit" from the

14

relief that they seek, which includes "achieving equal working conditions" and compensation structures on both a prospective and retroactive basis. (Pls.' Mtn at 13.) These different preferences and conflicts of interests foreclose adequacy. *See Schlaud v. Snyder*, 785 F.3d 1119, 1125 (6th Cir. 2015) (finding "clear conflict" barring class certification in case challenging union dues requirement where the proposed class included employees who voted in favor of the CBA, chose to support the union financially, and did not suffer the injury alleged by the plaintiffs).

## V.   PLAINTIFFS' PROPOSED CLASS DOES NOT MEET THE RULE 23(b)(2) REQUIREMENTS.

Plaintiffs' motion seeks a (b)(2) class on to seek relief for both their compensation and working condition claims. Specifically, Plaintiffs state: "The challenged ***compensation*** and working conditions policies of the USSF for the WNT have … caused injury to the proposed class generally." (Pls.' Mtn at 15, emphasis added.) Plaintiffs' inclusion of pay discrimination claims under the (b)(2) dooms their attempt at certification. Rule 23(b)(2) permits class actions for declaratory or injunctive relief if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Because Rule 23(b)(2) lacks the procedural protections embedded in Rule 23(b)(3), "[t]he relevant inquiry is what procedural safeguards are required by the Due Process Clause for the type of relief sought. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986-87 (9th Cir. 2011). "The absence of these protections in a class action predominantly for monetary damages violates due process." *Id.* Indeed, *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011), held that money damages are largely, if not completely, unavailable under Rule 23(b)(2) and that to the extent that they are available at all, they cannot involve any individualized assessments. W. Rubenstein, A. Conte, and H. Newberg, *Newberg on Class Actions* § 4.37 (5th ed. 2012) (collecting cases and commentary).

1    Plaintiffs' request for Rule 23(b)(2) certification unabashedly seeks money

2  damages. In their motion, they assert that "[i]njunctive and declaratory relief requiring

3  **equal pay** and equal working conditions on a going-forward basis will provide uniform

4  relief to all members from the challenged conduct." (Pls.' Mtn at 15, emphasis added.)

5  Even though Plaintiffs frame their claim for forward-looking relief for pay discrimination

6  violations as "injunctive and declaratory," what Plaintiffs truly and obviously seek are

7  back wages that are inappropriate for Rule 23(b)(2) certification under *Dukes*. In this

8  case, Plaintiffs do not even state, let alone provide, support for the notion that their

9  request for injunctive relief is not predominately for money damages. For this reason

10  alone, Plaintiffs fail to meet their burden of establishing the requirements for certification

11  of a Rule 23(b)(2) class, and their motion should be denied. Further, for the reasons stated

12  in Section VI below, Plaintiffs' claims for money damages involve highly individualized

13  assessments comparing individual class members to individual MNT players who in

14  many, if not most, cases earned less.

15  ## VI.   PLAINTIFFS' PROPOSED CLASS DOES NOT MEET RULE 23(b)(3).

16    Plaintiffs also move for class certification pursuant to Rule 23(b)(3), which

17  requires that the Court find, among other things, that "questions of law or fact common to

18  class members predominate over any questions affecting only individual members." Fed.

19  R. Civ. P. 23(b)(3). A Rule 23(b)(3) class cannot be certified here because individual

20  issues predominate. The predominance inquiry "tests whether proposed classes are

21  sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at

22  1022 (citation and internal quotation omitted). It is the Court's duty to take a close look at

23  whether common questions predominate over individual ones and whether the common

24  questions presented can be resolved for all members of a class in a single adjudication

25  *Hanlon*, 150 F.3d at 1022 (citing *Comcast*, 133 S.Ct. at 1432.).

26    Individualized inquiries predominate the Court's adjudication of U.S. Soccer's

27  liability to individual class members for their Title VII pay discrimination claims. To

28

16

establish a case of wage discrimination under Title VII, a plaintiff must show that: (1) she belongs to a protected category; (2) she received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) she was qualified to receive a higher wage." *Cooper v. S. Co.*, 390 F.3d 695, 734-35 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006); s*ee also Miranda v. B & B Cash Grocery Store*, Inc., 975 F.2d 1518, 1529 (11th Cir. 1992) (applied to gender-based wage discrimination claim). In gender-based wage discrimination cases, courts have required the plaintiff to present a comparator who received higher compensation in order to establish a prima facie case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (requiring plaintiff asserting Title VII claim to identify similarly situated employees); *see also Freyd v. Univ. of Oregon*, 384 F. Supp. 3d 1284, 1294 (D. Or. 2019) (requiring plaintiff asserting Title VII wage discrimination claim to identify similarly-situated male comparators who were paid more for performing substantially equal work); *Krause v. Nevada Mut. Ins. Co.*, No. 2:12-CV-342 JCM CWH, 2015 WL 3903587, at *9 (D. Nev. June 24, 2015) ("To succeed on a Title VII claim, plaintiff must offer evidence that similarly situated individuals outside her protected class received more favorable treatment."). Additionally, the plaintiff must identify a particular male "comparator" for purposes of the inquiry, and may not compare herself to a hypothetical or "composite" male. *Reece v. Martin Marietta Techs., Inc.*, 914 F. Supp. 1236, 1240 (D. Md. 1995) (quoting S*trag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 948 (4th Cir. 1995)).

Establishing whether U.S. Soccer is liable to any individual class member is an inquiry into which players are "similarly situated" and involves a comparison of specific WNT players to specific MNT players who earned more and an adjudication of player-specific fact and legal issues. The WNT and MNT are not homogenous commodities. They embody different mixes of positions, training, skills, experience, performance, and competitive concerns that affect their job opportunities, bargaining leverage, and ability

17

1    to make match rosters consistently. Whether any one WNT player is similarly situated to
2    any one MNT player involves a fact-intensive inquiry into the individuals' skills,
3    positions, and experience that does not depend primarily on proof common to the class
4    and precludes proceeding through representative proof at trial.  Numerous factual
5    disputes concerning whether each proposed class member experienced a Title VII
6    violation would result in subjective mini-trials of each putative class member.

7        Importantly, Plaintiffs fail to identify any plausible or objective method of
8    comparing individual WNT players to individual MNT players and whether U.S. Soccer
9    is liable to individual class members, even though it is their burden to show that such
10   comparisons can be made in "a single stroke, that would validly apply across the class."
11   *Baughman v. Roadrunner Commc'ns, LLC*, No. CV-12-565-PHX-SMM, 2014 WL
12   4259468, at *7 (D. Ariz. Aug. 29, 2014). According to Plaintiffs' position on the merits
13   of their claims, the putative class members and the Class Representatives all suffered pay
14   discrimination injuries because of the mere fact that the WNT players and the MNT
15   players were provided with different compensation under their respective CBAs. These
16   allegations alone are insufficient to establish that the putative class members all suffered
17   actionable pay discrimination under Title VII, which requires a comparison to specific
18   similarly-situated male comparators who in fact earned more than each individual class
19   member.  Although Plaintiffs allege that there will be a common formula (without
20   actually ***providing*** such a formula) for determining U.S. Soccer's liability and the amount
21   of damages to each class member because the alleged discriminatory compensation
22   "policies" applied to the WNT and MNT, their proposed formula concept fails under
23   Title VII because it rests on a comparison to hypothetical male comparators that is
24   impermissible under Title VII. Rather, Title VII requires player-specific inquiries which,
25   in this case, predominate any issues of fact and law that are common to the class.

26       Plaintiffs cite *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975), for the
27   proposition that their bare allegations of pay discrimination are sufficient at the Rule 23
28

18

stage because the district court "must generally take the substantive allegations of the complaint as true" (Pls.' Mtn at 8), but the Ninth Circuit has since held that, regardless of any language in *Blackie* stating that the allegations in the complaint must be accepted as true, plaintiffs bear the burden of demonstrating that the proposed class meets the Rule 23 requirements, and that Plaintiffs' allegations regarding the merits of their claims cannot stand on their own. *Ellis*, 657 F.3d at 981. "More importantly, it is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits if they overlap with the [Rule 23] requirements." *Id* (emphasis added). Examining the merits of Plaintiffs' claims and what each class member must establish at trial, it is clear that individualized inquiries into which class members are similarly-situated to which specific MNT player predominate any issues common to the class.

Finally, Plaintiffs' argument that U.S. Soccer somehow admitted that common issues predominate with respect to their Title VII claims because it argued that the Solo action and the Morgan action allege "nearly identical" claims should be rejected. U.S. Soccer made these statements in an entirely different and, now, irrelevant context (comparing Hope Solo's claims to this case when arguing its motion to transfer venue of the *Morgan* action to the first-filed *Solo* action), and nothing about this admission concedes that Plaintiffs met their burden under Rule 23 in this case.  The application of the first-to-file rule turns, in part, on whether the issues raised by the allegations and claims in two actions are "substantially similar," which is a far cry from Rule 23(b)(3)'s "rigorous analysis" into whether individualized issues predominate.

## VII.   CONCLUSION

Because Plaintiffs fail to meet their evidentiary burden of showing that the Class Representatives suffered a concrete injury-in-fact conferring constitutional standing and that the proposed class meets the Rule 23 class certification requirements, Plaintiffs' motion for class certification should be denied.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1   DATED:  September 30, 2019          SEYFARTH SHAW LLP

2

3                                      By:  */s/ Ellen E. McLaughlin*
                                            Ellen E. McLaughlin
4                                           Noah A. Finkel
                                            Brian M. Stolzenbach
5                                           Chantelle Egan
                                            Cheryl A. Luce
6                                           Kristen M. Peters
                                       Attorneys for Defendant
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                       20