Jeffrey L. Kessler (admitted *pro hac vice*)
jkessler@winston.com
David G. Feher (admitted *pro hac vice*)
dfeher@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 294- 6700
Facsimile: (212) 294-4700

Cardelle B. Spangler (admitted *pro hac vice*)
cspangler@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Jeanifer E. Parsigian (SBN: 289001)
jparsigian@winston.com
**WINSTON & STRAWN LLP**
101 California St., 35th Floor
San Francisco, California 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA -WESTERN DIVISION**

| | |
|---|---|
| ALEX MORGAN, et al.,<br><br>Plaintiffs/Claimants,<br><br>v.<br><br>UNITED STATES SOCCER FEDERATION, INC.,<br><br>Defendant/Respondent. | **Case No. 2:19-cv-01717-RGK-AGR**<br><br>Assigned to: Judge R. Gary Klausner<br><br>**REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date: October 21, 2019<br>Time: 9:00AM<br>Place: Courtroom 850 |

## I. INTRODUCTION

Having already conceded that "the primary issues to be litigated … are ***nearly identical***" for each class member (Dkt. 54 at 4 (emphasis added)), the United States Soccer Federation ("USSF") does not even contest conditional certification of this case as a collective action under the Equal Pay Act (Dkt. 67 at 2, n.1), and makes only the most perfunctory effort to argue that the requirements of Rule 23 have not been met. Instead, it primarily devotes its class opposition to an utterly frivolous "standing" argument against the four class representatives based on the illogical proposition that a female soccer player does not suffer any injury from a discriminatory compensation policy in favor of the male soccer players so long as she can achieve an equal amount of total compensation by playing in many more games and being far more successful in those games than her male counterparts have been. This type of argument—based on a comparison of "total remuneration" where there are discriminatory rates of pay—has been squarely rejected "[a]s a matter of common sense" because it would lead to an "absurd result." *Ebbert v. Nassau Cnty.*, 2009 WL 935812, at *3 (E.D.N.Y. 2009). As explained by the court in *Ebbert*:

> [T]otal remuneration ***cannot be the proper point of comparison*** [because i]f it were, an employer who pays a woman $10 per hour and a man $20 per hour would not violate the EPA … as long as the woman negated the obvious disparity by working twice as many hours."

*Id.* (emphasis added). This would be an "absurd result" that "Congress could [not] have intended." *Id.*

It is precisely this absurd result that the USSF advocates for as the basis for its "standing" argument against the class representatives. Over the class period, the WNT has played far more games than the MNT and amassed a far higher win percentage, including earning two World Cup championships. *See* Declaration of Rebecca Roux ("Roux Decl.") ¶ 3. This is the only reason why the four WNT class representatives were able to earn more total compensation than members of the MNT—they worked in

1  far more games, had far greater success and thus were able to earn more money in salary
2  and bonuses even under the indisputably discriminatory set of the USSF's
3  compensation policies. This is not equal pay under either Title VII or the Equal Pay
4  Act, both of which require equal pay for equal work.

5  Under the correct equal pay standard that requires that male and female
6  employees be compensated at an equal rate of pay for the same work, *Bence v Detroit*
7  *Health Corp.*, 712 F.2d 1024, 1027–28 (6th Cir. 1983), all of the WNT players,
8  including the four proposed class representatives, have suffered a concrete economic
9  injury as they would have earned millions more had they been paid in accordance with
10 the terms of the men's compensation policy. *See* Roux Decl. ¶ 4. This clear economic
11 injury to each of the class representatives from the USSF's gender pay discrimination
12 will be proven at trial and unquestionably provides them with Article III standing as
13 well as a common interest with the rest of the class to aggressively pursue these claims.

14 Equally frivolous is the USSF's position that the more than 50 putative class
15 members are not sufficiently "numerous" and should instead be required to join together
16 in fifty separate individual actions. Rule 23 does not require such an inefficient result,
17 which would eviscerate the very judicial economy it is designed to provide and cause
18 this Court to exchange an efficient class action trial of five to seven days presenting
19 common issues for an unruly consolidated trial of fifty separate claims lasting months
20 in which the players would each have to present their individual claims over and over
21 again despite their overwhelming commonality. Nor are there any demonstrated
22 conflicts among the class members or class representatives that would render the far
23 more efficient procedures of a Rule 23 certification unavailable in this case.

24 Finally, the USSF's arguments against the Rule 23(b) certification requirements
25 are equally misguided. Plaintiffs are seeking injunctive relief requiring at least equal
26 terms and conditions of employment with the MNT on a common basis for all of the
27 players on the WNT—exactly the type of common remedy against a common
28 employment policy warranting a Rule 23(b)(2) certification. Similarly, Plaintiffs have

shown that common issues predominate regarding their liability and damages claims and that they satisfy all Rule 23(b)(3) certification requirements.

## II. ARGUMENT

### A. Under the legally relevant equal "pay rate" standard, the class representatives have suffered injuries in fact conferring Article III standing.

While the USSF's argument regarding standing is nothing more than a disguised merits challenge on the common question of its gender discrimination, Plaintiffs have shown that Alex Morgan, Megan Rapinoe, Carli Lloyd, and Becky Sauerbrunn each suffered injury conferring them with Article III standing to pursue Title VII and Equal Pay Act claims individually and on behalf of the class. *See Munoz v. 7-Eleven, Inc.*, 2018 WL 5880076, at *3 (C.D. Cal. Oct. 18, 2018) ("[I]n a class action, standing is satisfied if at least one named plaintiff meets the requirements' of Article III."). Their injuries are tangible, directly traceable to the USSF's discriminatory compensation policies, and can be redressed by this Court. *See id.*

The USSF's argument to the contrary ignores the applicable legal standard governing EPA and Title VII claims, which looks to whether there is an equal pay rate for different genders as being dispositive, not the total compensation. *See Bence*, 712 F.2d at 1027–28; *EEOC v. Kettler Bros. Inc.*, 846 F.2d 70, 1988 WL 41053, at *3 (4th Cir. 1988) (unpublished) (applying *Bence* to Title VII and EPA claims and holding that the effective pay rate, not the total amount of compensation is the appropriate comparator); *Ebbert*, 2009 WL 935812, at *3 (same). The USSF's claim that the four class representatives have not suffered any injury to confer standing is based on the illogical and "absurd" claim that a discriminatory pay rate does not cause injury so long as the women being discriminated against work much more and achieve better results to earn a comparable amount of pay. *See Ebbert*, 2009 WL 935812, at *3. The USSF has not cited a single case that has accepted such an argument, and with good reason. It would render the Equal Pay Act and Title VII a nullity if discriminatory pay rates

could be defended on the ground that the victims of the discrimination could just work more and perform better in order to achieve the same total compensation as their favored counterparts.

Applying the correct legal standards for rate of pay discrimination, it is evident that the total compensation comparisons presented by the USSF are meaningless. *See Bence*, 712 F.2d at 1027–28. The figures the USSF cynically compares include total pay of selected players on the MNT and WNT, irrespective of number and outcome of games played (including the fact that the WNT won two World Cup championships during this period while the MNT did not even qualify for the most recent one). As described in the Roux Declaration, the WNT played far more games, with much greater success, during this period, which is the only reason why the four proposed class representatives were able to earn a higher total compensation than the men they have been compared to on the MNT. *See* Roux Decl. ¶¶ 3–4.

The correct injury analysis is whether the plaintiffs would have earned more compensation under the pay rate policy of the MNT than they actually received under the pay rate policy of the WNT. And the undeniable answer, shown below for the four proposed class representatives, is yes[1], as each of them would have earned at least $2.5 million more over the same period had they been compensated under the MNT policy.

| Comparison of WNT Players' Pay Under WNT Rate Versus Under MNT Rate from March 30, 2014 Through October 7, 2019 | | |
|---|---|---|
| **Player** | **Pay Under WNT Rate** | **Pay Under MNT Rate** |
| Alex Morgan | $ 1,201,449.64 | $ 4,104,920.65 |
| Megan Rapinoe | $ 1,159,099.64 | $ 3,722,625.00 |
| Carli Lloyd | $ 1,204,049.64 | $ 4,168,420.65 |
| Becky Sauerbrunn | $ 1,188,249.64 | $ 4,172,670.65 |

Roux Decl. ¶ 4. These are calculable, concrete, and certain injuries that stem from the

---

[1] Plaintiffs already demonstrated in their motion for class certification that the WNT and MNT each have common, but discriminatory, pay policies, set forth in separate CBAs with the USSF that apply to all members of the WNT and MNT respectively. Dkt. 64 at 3–5.

USSF's discriminatory policies.[2]

The USSF's standing authorities are of no help to them because in those cases, unlike the situation here, the proposed class representatives were not subject to the common policy being challenged by the class. *See Hoffman v. Blattner*, 315 F.R.D. 324, 333 (C.D. Cal. 2016) (plaintiff lacked standing to challenge policy for on-duty meal breaks because all his meal breaks were off-duty); *Young v. Covington & Burling L.L.P.*, 740 F. Supp. 2d 17, 22 (D.D.C. 2010) (plaintiff applied for staff attorney job, so was not impacted by an allegedly racially discriminatory policy in hiring associate attorneys). In this case, the four proposed class representative have each been subject to the exact same discriminatory pay policies as the rest of the class.

Perhaps the most egregious standing argument the USSF has put forward is its comparison including the compensation that the four class members earned for working at a second independent job for a team in the NWSL. Dkt. 67 at 3–4. The notion that a woman has to work two jobs to have a chance to make what a male earns at a single job is not only legally wrong under Title VII and the Equal Pay Act, it is morally repugnant. MNT players, of course, also play for individual teams in professional leagues, but the USSF excludes any compensation the men receive from the comparison. There is simply no colorable basis for the USSF arguing that the class representatives have no injury standing because they also get paid for working a second job for an NWSL team. *See* Declaration of Alex Morgan ("Morgan Decl.") ¶ 4; Declaration of Carli Lloyd ("Lloyd Decl.") ¶ 4.

Finally, there is no merit to the USSF's argument that the class representatives lack standing to pursue an injunction. The only requirement for injunctive relief standing is that there be a "sufficient likelihood that [plaintiffs] will again be wronged in a similar way" in the future. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985

---

[2] At trial, Plaintiffs will present separate expert testimony calculating the damages suffered by the class as a whole, along with a common methodology for determining the amount of damages suffered by each class member.

(9th Cir. 2007).  Here, each of the class representatives will continue to be subject to the USSF's discriminatory policies unless an injunction is entered to end this unlawful behavior.  This includes not only the USSF's discriminatory rate of pay policies, but also the USSF's continued imposition of discriminatory working conditions regarding travel, hotels, selection of turf, marketing and medical care to which a number of players have already attested.  *See* Dkts. 64-18 at 2–5, 64-20 ¶¶ 12–19, 64-22 ¶¶ 12–19; *see also* Morgan Decl. ¶ 3; Lloyd Decl. ¶ 3.  All of this discriminatory treatment has injured the proposed class representatives, who have standing to seek an injunction against the USSF from continuing such discriminatory working conditions against the class.

### B. Plaintiffs meet the Rule 23(a) requirements.

#### 1. Numerosity is satisfied.

The USSF does not dispute that a class of approximately 50 persons has been found to meet the numerosity requirement of Rule 23(a).  *In re Banc of California Sec. Litig.,* 326 F.R.D. 640, 646 (C.D. Cal. May 31, 2018) ("It's generally accepted that when a proposed class has at least forty members, joinder is presumptively impracticable based on numbers alone.") (citing 1 William B. Rubenstein, Newberg on Class Actions § 3:12 (5th ed.)).  Instead, the USSF argues that this Court should not follow those cases because it claims it is possible to ask each putative class member to join the action to pursue her individual claim. Dkt. 67 at 12.  But this argument ignores the burden and inefficiency that the joinder of 50 different plaintiffs or more to pursue individual claims would impose on the litigants and this Court, making such joinder of claims impractical.

Proceeding through a joinder of all individual claims (assuming it were possible) would expand a five to seven-day trial of class claims into a months-long affair in which each individual past, current, and future WNT member would have to testify about overlapping facts to prove individual claims.  Indeed, this is why classes with over forty members "are usually found to have satisfied the numerosity requirement," reflecting the judicial common sense that joinder of so many plaintiffs renders litigation and trials

unmanageable. *See Jensen v. SECORP Indus.*, 2018 WL 5961287, at *2 (C.D. Cal. Aug. 23, 2018). *Even if* joining all these additional plaintiffs might be possible, this would not defeat a numerosity determination where "it would be difficult and inconvenient to manage a case with so many plaintiffs, especially . . . [where] the primary legal issue facing all putative class members is the same." *Id*.

The USSF's assertion that the Equal Pay Act collective action weighs against Rule 23 class certification is unsupported. Numerous cases have certified both Rule 23 and FLSA classes. *See, e.g.*, *Ernst v. ZogSports Holdings LLC*, 2019 WL 1435933, at *7 (C.D. Cal. Feb. 21, 2019); *Webb v. Alpha & Omega Servs. Inc.*, at 2016 WL 9110160, at *7 (C.D. Cal. Dec. 14, 2016). Indeed, the USSF does not cite a single case finding that the possibility of opting into a collective action is a ground for defeating Rule 23 certification for Title VII claims, which provide for injunctive relief, as well as categories of damages, not available in an Equal Pay collective action. The need for common injunctive relief for all WNT players under Title VII is another reason why numerosity has been satisfied.

### 2. The proposed class representatives are adequate.

The Court should have no doubts about the "adequacy" of the four proposed class representatives, as they have already shown that they are ready, willing, and able to "vigorously represent the interests" of the classes. Dkts. 64–18 at ¶ 26, 64–20 at ¶ 26, 64–22 at ¶ 26, and 64–24 at ¶ 26; *see also White v. Nat'l Collegiate Athletic Ass'n*, 2006 WL 8066803, at *3 (C.D. Cal. Oct. 19, 2006). In contrast to these athletes' attestations and demonstrated commitment over years of fighting this discrimination for the entire team through an EEOC complaint and this litigation, the USSF's unsupported speculation that the class representatives "may prioritize monetary and injunctive relief that is more favorable to them than to junior, non-contracted players" (Dkt. 67 at 14) is entitled to no weight. *See In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*, 311 F.R.D. 532, 541 (N.D. Cal. 2015) ("[T]he mere potential for a conflict of interest is not sufficient … the conflict must be actual, not hypothetical.").

Indeed, courts have rejected virtually identical arguments that a class of athletes at different seniority levels will have inherent conflicts even in a sport, like professional football, where the players earn vastly different amounts of money. *See White v. Nat'l Football League*, 822 F. Supp. 1389, 1405 (D. Minn. 1993). The reason is that there, as here, the defendant "imposed various rules in [a] substantially identical manner to all players" such that "no matter what level of seniority, all class members shared a common interest in the form and substance of the [] player rules." *Id.* at 1405–06. *See also White*, 2006 WL 8066803, at *3 (certifying class over argument that varied quality of athletic skill among class members creates "an inherent conflict of interest").

Nor can the USSF defeat the proposed class by speculating that some contract players might prefer the current unlawful discrimination. Such a hypothetical possibility that some putative class members might prefer the status quo exists in virtually every case and does not prove an actual conflict supporting the denial of class certification. *See, e.g. Cooper v. IBM Pers. Pension Plan*, 2001 WL 36412295 at *5 (S.D. Ill. Sept. 17, 2001) ('While [it] may theoretically be true in every large class action [that some class members prefer the status quo], it does not prevent class certification"); *Lanner v. Wimmer*, 662 F.2d 1349, 1357 (10th Cir. 1981) (holding that a class can be certified even "if some members of the class might prefer to not have violations of their rights remedied"). Moreover, all the current WNT contracted players are named plaintiffs in this lawsuit, devastating the USSF's unfounded conjecture that they do not support the relief sought in this litigation.

What is most important, and clearly established here, for the purpose of assessing adequacy is that the proposed class representatives suffered the *same injury* as all other class members because they all were subject to the same discriminatory rate of pay and working conditions policies of the USSF. *See Byrne v. Santa Barabara Hospital*, 2017 WL 5035366, at *7 (C.D. Cal. Oct. 30, 2017) (finding adequacy requirement satisfied where class representatives "all suffered the same injury" as putative class members).

**C.     Plaintiffs meet Rule 23(b) requirements.**

### 1. Plaintiffs' injunctive class satisfies Rule 23(b)(2).

Plaintiffs' seek to "end [] USSF's discriminatory practices" going forward. Dkt. 1, ¶ 5, Prayer for Relief. This is quintessential injunctive relief warranting Rule 23(b)(2) certification. *Velez v. Novartis Pharmaceutical Co.*, 244 F.R.D. 243, 271 (S.D.N.Y. 2007) (certifying a class of women alleging gender discrimination under Rule 23(b)(2) where the plaintiffs "[sought] seek to reform defendants' practices to provide for equitable employment opportunities ***and compensation*** for women.") (emphasis added). The USSF's opposition, made without any legal support, seems to be that because the injunction would have monetary value, it is equivalent to damages relief and thus cannot be pursued through an injunctive class. This makes no sense. *All* injunctions have quantifiable value, yet Rule 23(b)(2) provides a specific, and different, mechanism for certification of an injunctive relief class.

Plaintiffs are not seeking relief in the form of back pay for the Rule 23(b)(2) class. It is separately seeking certification of a Rule 23(b)(3) damages class to pursue that relief. Courts, including in *Ellis* which the USSF cites in this portion of its opposition, have endorsed this approach. *See, e.g.*, *Ellis v. Costco*, 285 F.R.D. 492, 545 (N.D. Cal. 2012) (certifying Rule 23(b)(2) and Rule 23(b)(3) classes in a Title VII gender discrimination case).

### 2. Plaintiffs' damages class satisfies Rule 23(b)(3).

The USSF's claim that individualized inquiries predominate is quickly disposed of in a case like this, where the plaintiffs are challenging a common policy of discriminatory treatment applied to all class members. By proving that MNT players are uniformly paid under a CBA policy that provides for a higher pay rate than the pay rate applied to all WNT players, Plaintiffs will be able to show discrimination in a "single stroke, [that] would apply validly throughout the class." *Baughman v. Roadrunner Commc'ns*, 2014 WL 4259468, at *7 (D. Ariz. Aug. 29, 2014). This common issue predominates and warrants class certification under Rule23(b)(3).

Indeed, the USSF previously conceded that the claims of all WNT players are

"substantially similar" and that "the primary issues to be litigated … are nearly identical" in its motion to transfer this case to join it with the claims of an absent class member. Dkt. 54 at 4. This prior statement belies its contrary claim now and cannot be reconciled by arguing that they were made in "a different context." Dkt. 67 at 18. No matter what the context, there is only one set of true facts and the facts here are that the claims of all class members are commonly directed at the same uniform and discriminatory policies.

Incredibly, the USSF asserts, without any explanation, that the WNT Plaintiffs lack a "common formula" to "compar[e] individual WNT players and individual MNT players." Dkt. 67 at 18. It knows, however, that the two CBAs provide just such a formula, as the compensation policies in the MNT CBA applied to all of the players on that team, and the common policy of the WNT CBAs applied to all class members. These uniform employer polices provide a well-established basis for an expert to apply a common formula to assess class-wide injury and damages. *See, e.g.*, *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008) (Certification is "usually appropriate where liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established."). While each class member's damages will differ based on the number of games played and results, they will be proven through a common expert methodology based on the uniform compensation policies applied to the WNT and MNT, which is all that Rule 23(b)(3)'s predominance test requires. *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 484 (C.D. Cal. 2006).

### III. CONCLUSION

The USSF has not set forth any valid basis for denying Plaintiffs' request that this Court certify the proposed classes under Rule 23(b)(2) and Rule 23(b)(3) and the conditional collective action under FLSA Section 216(b).

| | |
|---|---|
| Dated:  October 7, 2019 | WINSTON & STRAWN LLP |
| | By: */s/ Jeffrey L. Kessler*<br>Jeffrey L. Kessler<br>David G. Feher<br>Cardelle B. Spangler<br>Diana Hughes Leiden<br>Jeanifer E. Parsigian |
| | Attorneys for Plaintiffs |