1 | Jeffrey L. Kessler (admitted *pro hac vice*)
jkessler@winston.com
2 | David G. Feher (admitted *pro hac vice*)
dfeher@winston.com
3 | **WINSTON & STRAWN LLP**
200 Park Avenue
4 | New York, New York 10166
Telephone: (212) 294- 6700
5 | Facsimile: (212) 294-4700

6 | Cardelle B. Spangler (admitted *pro hac vice*)
cspangler@winston.com
7 | **WINSTON & STRAWN LLP**
35 West Wacker Drive
8 | Chicago, Illinois 60601
Telephone: (312) 558-5600
9 | Facsimile: (312) 558-5700

10 | Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
11 | **WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
12 | Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
13 | Facsimile: (213) 615-1750

14 | Jeanifer E. Parsigian (SBN: 289001)
jparsigian@winston.com
15 | **WINSTON & STRAWN LLP**
101 California St., 35th Floor
16 | San Francisco, California 94111
Telephone: (415) 591-1000
17 | Facsimile: (415) 591-1400

18 | Attorneys for Plaintiffs

19 | **UNITED STATES DISTRICT COURT**

20 | **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEX MORGAN, et al., | **Case No. 2:19-CV-01717-RGK-AGR** |
| Plaintiffs/Claimants, | Assigned to: Judge R. Gary Klausner |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES FILED PURSUANT TO COURT ORDER (DOC. NO. 91)** |
| UNITED STATES SOCCER FEDERATION, INC., | |
| Defendant/Respondent. | |

## I. INTRODUCTION

Defendant USSF served all twenty-eight Plaintiffs with a request for production of documents seeking: "All documents reflecting, referring to, or otherwise relating to income Plaintiff has received from any source since April 19, 2014, including but not limited to Plaintiff's state and federal tax returns since 2014 and all documents showing compensation Plaintiff earned playing soccer for teams outside of the United States."

In meet and confer discussions regarding Plaintiffs' objections to this request based on relevance, breadth, burden, privacy, and proportionality, USSF said it is not interested in income if Plaintiffs, professional athletes who play soccer for a living, "worked at The Gap." USSF still seeks, and now moves to compel, production of "documents related to Plaintiffs' income from their soccer-related activities *outside the scope of their employment* with USSF." *See* Doc. No. 91 ¶ 6. But, Plaintiffs' income from soccer-related activities outside the scope of their employment such as income from playing on other professional teams, sponsorship money, and appearance fees, is wholly irrelevant to the claims and defenses in this lawsuit and it would be extremely burdensome and an unwarranted invasion of personal privacy for each of the Plaintiffs to have to produce these personal financial materials.

Plaintiffs' claims arise under the Equal Pay Act and Title VII, and under both, the controlling issue is whether an *employer*, here USSF, pays its female employees, members of the U.S. Women's National Soccer Team ("WNT"), less than it pays its male employees, members of the U.S. Men's National Soccer Team ("MNT"), for substantially equal work. That fact is self-evident from their respective bargaining agreements, which require nearly identical job duties from the MNT players and WNT players, yet provide a lower rate of pay for the WNT players than for the MNT players.

Any other sources of income for Plaintiffs relating to soccer from other jobs or from other employers or sponsors other than USSF would have no relevance to the pay discrimination analysis as the only relevant comparison is between the rate of compensation paid by a single employer, USSF, to the members of the WNT and the

MNT.  The same would be true in any other case involving discriminatory pay claims against a common employer—a plaintiff's income from a different job for a different employer, or income from non-employment sources, would be irrelevant, overly burdensome, and thus, clearly not proportionate to the needs of the case.

Against this lack of relevance, the Court must then weigh the burdens and invasion of personal privacy which this discovery would impose on each of the 28 individual Plaintiffs.  USSF's request would require the individual Plaintiffs to pore through countless documents and financial records relating to promotional appearances and sponsorships that each may have arranged separate and apart from their employment with USSF, as well as produce their highly private individual tax documents, a category of harassing discovery that courts have generally recognized should be required to be produced only upon a showing of "compelling need."  *See Zuniga v. Western Apartments*, 2014 WL 2599919, at *11 (C.D. Cal. Mar. 25, 2014) (denying motion to compel tax returns and emphasizing the "public policy against unnecessary public disclosure" of tax returns).  The requested discovery would also require the WNT players to produce employment documents from any separate soccer jobs for teams in the National Women's Soccer League ("NWSL") or other professional leagues, all of which would be unrelated to the issues in this litigation.  And, in the case of the NWSL, USSF already has access to the league's records.  Plaintiffs should not be forced to bear these discovery burdens and invasions of privacy when the documents being sought have no relevance to the discrimination analysis.

While USSF may be seeking these documents to argue that the WNT players already make enough money from other employers or endorsements, and should not be entitled to seek more here, such arguments have no place in this litigation.  Nor does any argument that any particular WNT player as an individual has received less in endorsements bear on the litigation, and in fact, would represent just the sort of "unfair exploitation of [women as] cheap labor" based on perceived "lower bargaining power" that the Equal Pay Act is intended to correct.  *Corning Glass Works v. Brennan*, 417

U.S 199, 206 (1974). Simply put, there is no legitimate justification for why the requested harassing and burdensome discovery of soccer compensation from non-USSF sources is relevant to any claims or defenses in this lawsuit. It thus should not be permitted under the proportionality test of the Federal Rules. *See* Fed. R. Civ. P. 26(b)(1).

## II.  USSF'S COMPENSATION STRUCTURE FOR THE WNT AND MNT

USSF has one compensation policy for the WNT and one compensation policy for the MNT pursuant to each team's respective collective bargaining agreements. *See* Doc. No. 64-12 ¶ 7. These collective bargaining agreements define the players' compensation for training and playing matches for the U.S. national teams, and the players' job responsibilities, including appearances and promotions for USSF. Under these agreements, while the job obligations covered in the agreements are essentially identical, the MNT players receive a flat rate of pay for each game appearance along with bonuses for ties or wins that progressively increase depending on the opponent's rank. On the other hand, the WNT players are paid by USSF at a base compensation rate, and under a bonus structure, that is significantly lower and discriminatory.

These compensation policies and payments are already in the possession of USSF and are not at issue here. This dispute is over discovering the compensation the plaintiffs receive **other than** playing for the WNT for the USSF, which has no place in this lawsuit and which would be highly burdensome and invasive to produce.

## III.  LEGAL STANDARD

Rule 26 provides parties with "efficient access to what is needed to prove a claim or defense, but eliminate[s] unnecessary or wasteful discovery." *In re Rivera*, 2017 WL 5163695, at *1 (C.D. Cal. Apr. 14, 2017). Importantly, "Rule 26(b)(1) now limits discovery to information relevant … and proportional to the needs of the case." *San Diego Unified Port Dist.*, 2017 WL 3877730, at *1 (S.D. Cal. Sept. 5, 2017). It is thus well-established that "the right to discovery … is not limitless." *In re Rivera*, 2017 WL 5163695, at *1.

USSF "bears the burden of demonstrating that the discovery it seeks is both relevant to the claims or defenses in the action and proportional to the needs of the case." *See Attia v. Google LLC*, 2018 WL 4202151, at *1 (N.D. Cal. Sept. 4, 2018). Conclusory statements regarding relevance are insufficient as a matter of law. *Stamps.com, Inc. v. Endicia, Inc.*, 2008 WL 11339110, at *1 (C.D. Cal. June 24, 2008) ("conclusory statements" that discovery is "relevant and necessary" were insufficient). USSF bears the burden of explaining precisely how the requested information is relevant, and it cannot do so here. *San Diego Unified Port Dist*, at *2 (denying motion to compel where defendant did not meet burden). Indeed, USSF has not articulated any proper or non-conclusory basis for why the Plaintiffs' soccer income from other sources is relevant here.

Moreover, even if the USSF could come forward with a persuasive argument that the requested information might have some marginal relevance (it cannot), that would still not justify ordering the production of these materials. Under the Federal Rules, if "the burden or expense of the proposed discovery outweighs its likely benefit," production should be denied as disproportional. *See* Fed. R. Civ. P. 26(b)(1).

## IV. ARGUMENT

### A. Other Soccer-Related Income is Wholly Irrelevant to Whether USSF Discriminates against the WNT Players by Paying Them Less Than Members of the MNT for Substantially Equal Work.

Plaintiffs' claims arise under Title VII and the Equal Pay Act. Under both statutes, separate sources of income are irrelevant to the issue of whether an employer discriminates on the basis of gender. Indeed, Title VII provides that "[i]t shall be an unlawful employment practice for ***an employer*** … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a) (emphasis added). Likewise, the Equal Pay Act provides that ***an employer*** cannot "discriminate … between employees on the basis of sex by paying

wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex…for equal work on jobs the performance of which requires equal skill, effort, and responsibility ...." 29 U.S.C. § 206(d)(1). The controlling issue under both statutes, therefore, is whether **USSF**—as Plaintiffs' employer—pays Plaintiffs at a lower rate and denies Plaintiffs equal conditions of employment when compared against that afforded to the MNT players.

In making this determination, courts consider a "comparison of the jobs in question" and whether "the jobs being compared are 'substantially equal.'" *Negley v. Judicial Council of California*, 2010 WL 11545605, at *6 (N.D. Cal. June 21, 2010), *aff'd*, 458 F. App'x 682 (9th Cir. 2011). Courts then consider the rate of compensation provided to the employees by the common employer. *See Bence v. Detroit Health Corp.*, 712 F.2d 1024, 1027–28 (6th Cir. 1983); *EEOC v. Kettler Bros. Inc.*, 846 F.2d 70, 1988 WL 41053, at *3 (4th Cir. 1988) (unpublished) (applying *Bence* to Title VII and EPA claims and holding that the effective pay rate ***from the same employer*** for substantially equal jobs, not the total amount of compensation, is the appropriate comparator) (emphasis added). There is no statute or case precedent indicating that it is a relevant consideration or defense to determine how much the Plaintiffs might earn from a different employer for doing a different job, or for engaging in non-employment activities (like sponsorship or licensing of IP rights).

USSF tries to justify its document request by asserting: (1) that it needs to uncover all of Plaintiffs' other soccer-related income to accurately "compare" Plaintiffs to MNT players and (2) that Plaintiffs' non-USSF soccer-related income could factor into the revenue that the players produce for USSF. Neither argument has merit.

USSF's claim that it needs to "compare" WNT and MNT players under the law makes no sense, as the only relevant income comparison is what USSF pays each group of players for being employed on the WNT or the MNT. Any income the players make outside the scope of their employment with USSF for the national teams has no relevance to demonstrating discrimination. The applicable legal standard governing

1  EPA and Title VII discriminatory compensation claims looks to whether there is an
2  equal pay rate *from the employer* for different genders for substantially the same work.
3  It does not look to compensation paid to the employees for a wholly separate job or for
4  a separate employer, including salaries Plaintiffs receive for playing in the NWSL,
5  which is a separate job with a separate employer. Thus, the only compensation relevant
6  to Plaintiffs' claims is what USSF paid to the WNT and to the MNT for performing on
7  those teams, and that information is already in USSF's possession. Moreover, USSF's
8  claim that it is seeking to make a broader comparison with the MNT is belied because
9  it has not sought discovery from MNT players on their income from outside the MNT.

10  USSF's argument that Plaintiffs' non-USSF soccer-related income could reflect
11  the revenue that the players produce for USSF fares no better. USSF argues that this
12  information is relevant because Plaintiffs are challenging USSF's affirmative defense
13  that different revenues attributable to the teams justify different pay rates. But that
14  argument turns on revenues that the USSF receives for the performance of the MNT
15  and the WNT—not revenues that the Plaintiffs earn for activities not involving their
16  work on the WNT. Once again, all of that relevant information—concerning revenues
17  earned by the USSF—is already in USSF's possession. And USSF has not articulated
18  a coherent reason why Plaintiffs' incomes from other jobs—which Plaintiffs generate
19  on an individual basis, and which reflect the value of their personal IP or publicity rights
20  for job duties outside of the scope of their employment—would have any bearing on
21  the revenue the Plaintiffs have produced for USSF by being employed on the WNT in
22  comparison to the revenues produced for USSF by the men employed by the MNT.

23  **B.   USSF's Request is Unduly Burdensome.**

24  In addition to seeking irrelevant documents, USSF's discovery request is both
25  unduly burdensome and disproportionate to the needs of this case. *Robert Half Int'l*
26  *Inc. v. Ainsworth*, 2015 WL 4662429, at *4 (S.D. Cal. Aug. 6, 2015) ("[i]f the sought-
27  after documents are not relevant nor calculated to lead to the discovery of admissible
28  evidence, then any burden whatsoever imposed ... would be by definition 'undue'").

Here, the burden of responding to USSF's request is far greater than the sought-after documents' relevance (which is zero). To start, USSF asks Plaintiffs to gather, review, and produce years of numerous financial documents, such as pay stubs, checks, invoices, and tax returns for outside employment or endorsement opportunities that are wholly apart from their employment by USSF on the WNT. Further, a number of the Plaintiffs have played overseas during the relevant time period, and reviewing and producing those income documents could require coordinating with foreign entities to retrieve responsive documents. The scope of documents that would have to be reviewed and produced would be both extensive and intrusive, including documents relating to any compensation received by individual plaintiffs for such wide-ranging soccer-related activities as playing for another team, promotional appearances, sponsorships, fees for hosting a training camp, speaking engagements, and fees for an interview or a book deal. None of this discovery-related burden would be proportional considering the complete lack of (or at best trivial) relevance. Further, USSF already has information relating to Plaintiffs' NWSL salaries, making the burden completely unjustifiable. This burden is further exacerbated by the accelerated discovery period ordered by the Court.

Finally, Plaintiffs have substantial privacy interests in not having to produce their tax information or similar financially sensitive information absent any compelling relevance in this case. Courts have frequently recognized that such personal financial information should only have to be produced where there is a compelling and legitimate need to do so. *See Zuniga*, 2014 WL 2599919, at *11 (denying motion to compel production of tax returns); *Applied Med. Distribution Corp. v. Ah Sung Int'l Inc.*, 2015 WL 12910698, at *3 (C.D. Cal. Dec. 21, 2015) (citation omitted) (noting that the "constitutionally-based right of privacy" extends to financial documents and emphasizing that courts must balance "the need for the information sought against the privacy right asserted"). That balance does not support production here.

## V. CONCLUSION

For all of these reasons, this Court should deny USSF's motion to compel.

| | |
|---|---|
| Dated: October 28, 2019 | WINSTON & STRAWN LLP |
| | By: */s/ Jeffrey L. Kessler* |
| | Jeffrey L. Kessler |
| | David G. Feher |
| | Cardelle B. Spangler |
| | Diana Hughes Leiden |
| | Jeanifer E. Parsigian |
| | |
| | Attorneys for Plaintiffs |