SEYFARTH SHAW LLP
Ellen E. McLaughlin (Admitted Pro Hac Vice)
E-mail:  emclaughlin@seyfarth.com
Noah Finkel (Admitted Pro Hac Vice)
E-mail:  nfinkel@seyfarth.com
Brian Stolzenbach (Admitted Pro Hac Vice)
E-mail:  bstolzenbach@seyfarth.com
Sharilee Smentek (Admitted Pro Hac Vice)
E-mail:  ssmentek@seyfarth.com
Cheryl A. Luce (Admitted Pro Hac Vice)
E-mail:  cluce@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

Kristen M. Peters (SBN 252296)
E-mail:  kmpeters@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
Facsimile:  (310) 201-5219

Chantelle C. Egan (SBN 257938)
cegan@seyfarth.com
Giovanna A. Ferrari (SBN 229871)
gferrari@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:  (415) 397-2823
Facsimile:  (415) 397-8549

Kyllan Kershaw (Admitted Pro Hac Vice)
kkershaw@seyfarth.com
1075 Peachtree Street, NE, Suite 2500
Atlanta, GA 30309
Telephone:  (404) 885-1500
Facsimile:  (404) 892-7056

Attorneys for Defendant
UNITED STATES SOCCER FEDERATION, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| ALEX MORGAN, et al. | Case No. 2:19-cv-01717-RGK-AGR |
|---|---|
| Plaintiffs, | **DEFENDANT'S OPPOSITION TO PLAINTIFFS'** *EX PARTE* **APPLICATION FOR AN ORDER** |

1

|  |  |
|---|---|
| v.<br><br>UNITED STATES SOCCER FEDERATION, INC.<br><br>Defendant. | **AUTHORIZING ELECTRONIC AND TEXT NOTIFICATIONS AND SETTING MARCH 30, 2020 AS OPT-IN DEADLINE FOR FLSA CONDITIONAL CLASS**<br><br>Judge: Hon. R. Gary Klausner<br><br>Complaint Filed: March 8, 2019 |

## I.   INTRODUCTION

Defendant United States Soccer Federation, Inc. ("Defendant" or "U.S. Soccer") offered to rectify the issues Plaintiffs identify related to the delivery of notice to the specific players that Plaintiffs identified as not receiving notice. Despite such offer, Plaintiffs filed an *ex parte* application for an order authorizing email and text message notifications and extending the opt-in deadline for *all* members of the putative collective action. Plaintiffs improperly wield the *ex parte* application procedure to address an issue of notice that will neither result in irreparable prejudice, nor create a crisis warranting immediate relief. An *ex parte* application for relief is reserved solely for rare and exceptional circumstances. By contrast, this issue involves a dispute reasonably resolvable through regularly noticed motion procedures.

Even if this were not an *ex parte* application, Plaintiffs' request should be denied. U.S. Soccer unequivocally committed to sending notice to updated mailing addresses and by email to individuals who failed to receive the initial postal mail deliveries. Plaintiffs identified sixteen players for whom the collective action notices were returned as undeliverable or who otherwise reported that the notices were not delivered. U.S. Soccer remains committed to transmitting notice and consent forms to these sixteen players via email and updated mailing addresses. Beyond these identified players, there is no proof that the other deliveries were unsuccessful. By Plaintiffs' own estimation, thirty-four players opted into the collective action and returned their consent forms. Of the remaining potential opt-in plaintiffs, the law presumes that notice was delivered if it was dispatched to their designated address and not returned to the sender as undeliverable

2

1  under the mailbox rule. *Mahon v. Credit Bureau of Placer Cty. Inc.*, 171 F.3d 1197, 1202
2  (9th Cir. 1999), *as amended on denial of reh'g and reh'g en banc* (Apr. 28, 1999). Indeed,
3  Plaintiffs originally requested mail service, which is typically sufficient to notify
4  prospective collective and class members. Without any evidence other service
5  deficiencies, there is no basis for additional email and text message notice to all
6  Plaintiffs, which would unduly delay the resolution of who has opted into the collective
7  action until a date that just weeks before the pretrial conference in this matter. For the
8  foregoing reasons, the Court should deny Plaintiffs' *ex parte* application and deny
9  Plaintiffs' underlying motion for relief.

10  **II.    PLAINTIFFS'** ***EX PARTE*** **APPLICATION FOR RELIEF IS IMPROPER**
11          Plaintiffs' *ex parte* application is the improper vehicle for resolving a dispute
12  regarding delivery of notice and consent forms. Application for *ex parte* relief is only
13  appropriate in rare circumstances to address an immediate "crisis" to the moving party.
14  *Erichsen v. Cty. of Orange*, 677 F. App'x 379, 380 (9th Cir. 2017). Plaintiffs must show
15  that (1) they will be irreparably prejudiced if the underlying motion is heard through
16  regularly noticed motion procedures, and (2) Plaintiffs are wholly without fault in
17  creating the crisis allegedly requiring *ex parte* relief, or that it resulted from excusable
18  neglect. *See MAG Aerospace Indus., LLC v. Precise Aerospace Mfg., Inc.*, No. 5:18-CV-
19  01096-RGK-JC, 2019 WL 1427272, at *1 (C.D. Cal. Jan. 25, 2019). The *ex parte* motion
20  must also show why Plaintiffs should be "allowed to go to the head of the line in front of
21  all other litigants and receive special treatment….supported by deposition transcripts or
22  by affidavits or declarations." *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F.
23  Supp. 488, 492 (C.D. Cal. 1995).
24          Plaintiffs are confronted by no "crisis," and the evidence underlying their *ex parte*
25  motion falls short of the stated requirements. As reflected in Plaintiffs' attached Exhibits
26  A and B, this issue was raised weeks ago, and U.S. Soccer heeded concerns regarding the
27  returned deliveries by verifying the payroll management software as the repository of
28  player contact information (and that contact information is provided by the players

3

themselves). U.S. Soccer agreed both to mail and to email the collective action notices to the sixteen players identified by Plaintiffs who did not receive the original deliveries. Further, U.S. Soccer agreed to restart the thirty-day opt-in and opt-out deadline for these sixteen recipients. Immediate resolution of this dispute does not protect Plaintiffs or potential opt-in members from nonexistent irreparable prejudice, which is required to justify pursuing an *ex parte* motion. The very relief requested by Plaintiffs demonstrates that there is no basis for Plaintiffs' request to jump "to the head of the line." They ask that members of the potential collective be given another 60 days to opt-in, on top of the period they already have had, which would result in a new opt-in deadline of March 30, 2020. The close of discovery is February 6, 2020, however, and the deadline to file dispositive motions is February 20, 2020, with briefing to close by the end of March 2020. If Plaintiffs' position is that notice needs to go out again now to all collective action members so that collective action members may opt-in well after discovery and dispositive motion briefing has closed, then there is no reason for Plaintiffs' request to proceed on the Court's regular motion track, with ample time for Defendant to brief this matter and for the Court to consider it.

Plaintiffs fail to meet the evidentiary requirements of an *ex parte* application for relief and fail to demonstrate proof of a crisis or irreparable harm to their case. Accordingly, pursuit of this resolution through *ex parte* motion is improper, and the motion should be denied.

### III. PLAINTIFFS' REQUEST IS UNNECESSARY AND A BELATED ATTEMPT AT A SECOND OPT-IN PERIOD

Whether considered *ex parte* or as a regular motion, Plaintiffs' request should be denied because it is an attempt to increase the opt-in rate for the collective action beyond the opt-in period to which the parties previously agreed and the Court ordered.

The crux of Plaintiffs' application is that they are aware that sixteen players evidently did not receive the notices.[1] As U.S. Soccer has made clear, it is willing to send notice, by both regular and email, to anyone who did not receive it.[2] But what Plaintiffs seek is that notice be sent again to *everyone*, regardless of whether they received it the first time. Their assumption is that, because some players did not receive the notice by mail, the Court should assume that plenty of others did not as well.

Plaintiffs' assumption about regular mail runs counter to the assumption in the law. The mailbox rule provides that proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressed party within the typical, reasonable time. *Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001). The mailbox rule is a "tool for determining, in the face of inconclusive evidence, whether or not receipt has actually been accomplished." *Id*. Absent evidence that mailed documents were returned to the sender as undeliverable, there is a legal inference is that the documents were received under the mailbox rule. *Mahon*, 171 F.3d at 1202.

Plaintiffs' Exhibits A and B show that U.S. Soccer requested the names of the players who did not receive notice in an effort to remedy any inadvertent delivery issues. Plaintiffs provided a list of relevant player names, and U.S. Soccer agreed to expedite

---

[1] Two of those players, Alex Morgan and Megan Rapinoe, are class representatives in the Rule 23 class and filed consents to join the collective action with the Complaint. An additional three players, Merritt Mathias, Samantha Mewis, and McCall Zerboni, are named Plaintiffs in the case and also filed consents to join the collective action with the Complaint. Additionally, Hope Solo initiated her own Equal Pay Act lawsuit in the Northern District of California, 3:18-cv-05215, and her attorneys have participated in depositions and some court proceedings in this case. Thus, there are only nine players, not 16, to whom corrective notice should be sent.

[2] U.S. Soccer provided to Plaintiffs the last known addresses it has for each player from its payroll database, addresses which are provided to U.S. Soccer by the players themselves. Given the passage of time, it is understandable that some players have moved since then to new addresses. To the extent players have not provided U.S. Soccer with updated information, that is the fault of the players and not U.S. Soccer.

notice through email. Now, in Plaintiffs' *ex parte* motion, they request email and text message notifications to all potential opt-in plaintiffs without evidence that any players beyond the sixteen identified experienced delivery issues. The Court should follow the mailbox rule and infer that the other players received the original notice. Any additional email and text message notifications to an unspecified group of potential opt-in plaintiffs goes beyond legal notice and delivery requirements and improperly expands the notice procedures requested by Plaintiffs and approved by this Court.

Further, courts have held that "first class mail is ordinarily sufficient to notify class members who have been identified." *See Russell v. Wells Fargo & Co.*, No. C 07-3993 CW, 2008 WL 4104212, at *5 (N.D. Cal. Sept. 3, 2008). In collective actions, courts have barred additional forms of notice that are unnecessary to make contact with putative collective action plaintiffs. *See Mowdy v. Beneto Bulk Transp.*, No. C 06-05682 MHP, 2008 WL 901546, at *9 (N.D. Cal. Mar. 31, 2008). In cases where postal mail or email service was sufficient, transmission through text message was disallowed because it "may force [aggrieved] employees to incur further charges from their cellular phone service provider." *See Bakhtiar v. Info. Res., Inc.*, No. 17-CV-04559-JST, 2018 WL 3585057, at *4 (N.D. Cal. July 26, 2018).

In this case, the parties are aware of which players failed to receive notice by postal mail service, and U.S. Soccer has offered to correct these specific notice issues through email delivery to the impacted players. U.S. Soccer's proposed remedy is sufficient to ensure notice was received by all putative class and collection action members. Email or text message transmissions to players beyond these sixteen at issue goes beyond what Plaintiffs requested and what the Court agreed would be the notice and delivery requirements.

U.S. Soccer is aware of authorities allowing notice of collective action by email. Plaintiffs never requested that, however, until now. They could have done so when they filed their motion but did not. They could have done so when they moved for approval of the notice but did not. They only have asked for it after there already has been an opt-in

period of 30 days,[3] and that period has closed. An additional opt-in period for those who did not get the notice previously is sensible and something to which U.S. Soccer has agreed. An additional opt-in period for those whom the law presumes already received the notice is not and goes far beyond the relief necessary for this issue.

### IV. PLAINTIFFS' REQUESTED 60 DAYS' ADDITIONAL NOTICE WOULD UNDULY DELAY RESOLUTION OF THE SCOPE OF THE COLLECTIVE ACTION

Plaintiffs' proposal of an additional 60 days to opt into the collective action to allow time for a "reminder" notice at 30 days would unduly delay this case. Plaintiffs seek a "reminder" notice and not just the same notice that had been agreed upon by the parties, approved by the Court, and already issued. Plaintiffs also seek an opt-in period of 60 days when the original opt-in period was 30 days. There is simply no reason, especially at this late date in the litigation two weeks before discovery closes, to extend the opt-in period from 30 days to a new total of 90 days. Plaintiffs' request would stretch the resolution of the scope of the collective action to March 30, 2020—a date that falls just weeks before the April 20, 2020 pretrial conference and just over a month before trial in this matter. (Dkt. 58.) By this point, the parties would have already concluded discovery, filed dispositive motions, and made their other pretrial submissions required by the Court's schedule. Defendant would be severely prejudiced if additional individuals could opt into the collective action without having the opportunity to address their claims in their pretrial materials.

### V. ANY ADDITIONAL NOTICE SHOULD ALSO PROVIDE OPPORTUNITY TO OPT OUT OF THE RULE 23 CLASS ACTION

Plaintiffs seek only additional collective action notice pursuant to 29 U.S.C. § 216(b) in which collective action members would need to opt-in to participate. They have not sought, however, any new notice regarding the right to exclude oneself from the

---

[3] Plaintiffs suggest in footnote 2 of their motion that the 30-day opt-in period resulted from the a provision that U.S. Soccer inserted. It is true that, in negotiating the notice, U.S. Soccer proposed a 30-day opt-in period. It is also true that Plaintiffs agreed to that before Plaintiffs themselves sent out the notice.

Rule 23 opt-out class. Plaintiffs have not explained why they think another notice and opportunity to join this lawsuit is necessary, but another notice and opportunity to opt out the case is not. To the extent that the Court allows additional notice to be delivered to putative collective members and additional time to consider opting in, the Court should also allow additional notice to be delivered regarding the class action and additional time to consider opting out.

## VI. CONCLUSION

U.S. Soccer reiterates its commitment to rectifying delivery issues for the identified players and to allow thirty days for these players to opt-in and/or opt-out of the collective and class action, but U.S. Soccer opposes Plaintiffs' request for another 60 days to all players who did receive the original notice. For the reasons detailed above, U.S. Soccer respectfully requests that the Court deny Plaintiffs' *ex parte* application and deny Plaintiffs' underlying request for relief.

DATED: January 24, 2020     SEYFARTH SHAW LLP

By: */s/ Noah A. Finkel*
      Noah A. Finkel
      Seyfarth Shaw LLP

Attorneys for Defendant
UNITED STATES SOCCER FEDERATION, INC.