Jeffrey L. Kessler (*pro hac vice*)
jkessler@winston.com
David G. Feher (*pro hac vice*)
dfeher@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue, New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700

Cardelle B. Spangler (*pro hac vice*)
cspangler@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive, Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700

Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
Lev Tsukerman (SBN: 319184)
ltsukerman@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750

Jenifer E. Parsigian (SBN: 289001)
jparsigian@winston.com
**WINSTON & STRAWN LLP**
101 California Street, 35th Floor, San Francisco, CA 94111
Tel: (415) 591-1000
Fax: (415) 591-1400

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX MORGAN ET AL., | **Case No. 2:19-cv-01717-RGK-AGR** |
| Plaintiffs/Claimants, | Assigned to: Judge R. Gary Klausner |
| vs. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE DEFENDANT'S EXPERT TESTIMONY; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT** |
| UNITED STATES SOCCER FEDERATION, INC., | |
| Defendant/Respondent. | Date: March 30, 2020 |
| | Time: 9:00 a.m. |
| | Place: Courtroom 850 |

## NOTICE OF MOTION AND MOTION

TO THE COURT, DEFENDANT, AND ITS ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on March 30, 2020 at 9:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled court, located at 255 East Temple Street, Los Angeles, CA 90012, on the eighth floor in Courtroom 850, before the Honorable R. Gary Klausner, Plaintiffs will and hereby do move the Court for an order excluding the expert testimony of Mr. Philip A. Miscimarra, and portions of the expert testimony of Ms. Carlyn Irwin and Dr. Justin McCrary.

Plaintiffs bring this motion pursuant to Fed. R. Evid. 403 and 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), on the grounds that Defendant's proffered expert testimony does not meet the threshold requirements for admissibility. Plaintiffs' Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Jeanifer E. Parsigian and the exhibits attached thereto, and any further material and argument presented to the Court at the time of the hearing.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on February 11, 2020.

Dated:  February 20, 2020          WINSTON & STRAWN LLP

                                   By:  */s/ Jeffrey L. Kessler*
                                        Jeffrey L. Kessler
                                        Attorneys for Plaintiffs

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ........................................................................... 1

II. ARGUMENT .................................................................................. 2

    A. Mr. Miscimarra's Opinion Should Be Excluded in its Entirety ................ 3

    B. Ms. Irwin's Testimony Comparing "Total" Compensation of the WNT and MNT Should Be Excluded Because it is Inconsistent with Governing Law and Will Cause Juror Confusion ........................................................ 11

    C. Dr. McCrary's Opinions on the Non-Comparability of WNT and MNT Compensation Terms Should Be Excluded Because They Are Inconsistent with Controlling Law and Will Cause Juror Confusion ...... 13

III. CONCLUSION ............................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Gardner-Denver Co.*,
  415 U.S. 36 (1974) ................................................................................ 6

*Bence v. Detroit Health Corp.*,
  712 F.2d 1024 (6th Cir. 1983) ............................................................ 13

*In re ConAgra Foods, Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014) .......................................................... 4

*Cooper v. Brown*,
  510 F.3d 870 (9th Cir. 2007) ................................................................ 3

*Corning Glass Works v. Brennan*,
  417 U.S. 188 (1974) .............................................................................. 7

*Crow Tribe of Indians v. Racicot*,
  87 F.3d 1039 (9th Cir. 1996) ................................................................ 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ......................................................................*passim*

*Daubert II*, 43 F.3d. 1311 (9th Cir. 1995) .................................................... 3

*Ebbert v. Nassau Cnty.*,
  No. 05-CV-5445 (FB)(AKT), 2009 WL 935812 (E.D.N.Y. 2009) ........ 13

*EEOC v. Kettler Bros. Inc.*,
  846 F.2d 70, 1988 WL 41053 (4th Cir. 1988) (unpublished) ................ 13

*Hemmings v. Tidyman's Inc.*,
  285 F.3d 1174 (9th Cir. 2002) ............................................................ 15

*Highland Capital Mgmt. L.P. v. Scheider*,
  379 F. Supp. 2d 461 (S.D.N.Y. 2005) ................................................ 11

*Johns v. Bayer Corp.*,
  No. 09CV1935 AJB (DHB), 2013 WL 1498965 (S.D. Cal. Apr. 10,
  2013) .................................................................................................. 11

*Kingsbury v. U.S. Greenfiber, LLC*,
  No. CV 08-00151 DSF, 2013 WL 7018657 (Nov. 5, 2013) ............................ 12, 13

*Laffey v. Northwest Airlines Inc.*,
  567 F.2d 429 (D.C. Cir. 1976) ................................................................. 7

*Marshall v. Western Grain Co., Inc.*,
  838 F.2d 1165 (11th Cir. 1988) ............................................................ 6

*Metro. Life Ins. Co. v. Massachusetts*,
  471 U.S. 724 (1985) ............................................................................ 6

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
  523 F.3d 1051 (9th Cir. 2008) ......................................................... 4, 15

*Northwest Adm'rs, Inc. v. Truck-A-Way*,
  992 F.2d 1219 (9th Cir. 1993) ............................................................ 8

*Nottelson v. Smith Steel Workers D.A.L.U. 19806, AFL-CIO*,
  643 F.2d 445 (7th Cir. 1981) .............................................................. 6

*Ollier v. Sweetwater Union High Sch. Dist.*,
  768 F.3d 843 (9th Cir. 2014) ............................................................. 3

*Pacific Maritime Ass'n v. Int'l Longshoremen and Warehousemen's Union*,
  304 F. Supp. 1315 (N.D. Cal. 1969) .................................................... 8

*PharmaStem Therapeutics, Inc. v. Viacell, Inc.*,
  491 F.3d 1342 (Fed. Cir. 2007) ........................................................ 11

*Robinson v. Entex, Inc.*,
  No. CIV.A. CA3-87-1508-D, 1990 WL 517060 (N.D. Tex. Aug. 10, 1990) ................................................................................................... 14

*Stephens v. Union Pac. R.R. Co.*,
  935 F.3d 852 (9th Cir. 2019) ............................................................. 9

*Thibodeaux-Woody v. Houston Cmty. Coll.*,
  593 Fed. Appx. 280 (5th Cir. 2014) .................................................... 7

*Treadaway v. Societe Anonyme Louis-Dreyfus*,
  894 F.2d 161 (5th Cir. 1990) ............................................................ 14

*United States v. 87.98 Acres of Land More or Less in the Cty. of Merced*,
530 F.3d 899 (9th Cir. 2008) ................................................................. 9, 13

*United States v. Lukashov*,
694 F.3d 1107 (9th Cir. 2012) ...................................................................... 11

*United States v. Seschillie*,
310 F.3d 1208 (9th Cir. 2002) ...................................................................... 11

*Viveros v. Donahoe*,
No. CV 10-08593 MMM ............................................................................ 15

*Wright v. Universal Maritime Serv. Corp.*,
525 U.S. 70 (1998)......................................................................................... 6

**Statutes**

29 U.S.C. § 206(d)(1) .................................................................................... 13

Equal Pay Act .....................................................................................*passim*

National Labor Relations Act ........................................................... 1, 4, 6, 8

**Other Authorities**

29 C.F.R. § 1620.10.................................................................................. 15

29 C.F.R. §§ 1620.10-11.......................................................................... 15

29 C.F.R. § 1620.23 .................................................................................. 6

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

USSF offers three experts—Mr. Philip A. Miscimarra, Ms. Carlyn Irwin, and Dr. Justin McCrary—whose opinions are wholly or, in significant part, irrelevant to the issues at hand, contrary to governing legal standards and virtually certain to engender juror confusion and needlessly complicate and prolong the trial.  This testimony thus fails to meet the threshold requirement of Rule 702[1] that it assist "the trier of fact … to determine a fact in issue."  Moreover, because this testimony misstates the law and will only serve to confuse and mislead the jury, it should be excluded under a combination of Rule 403, Rule 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

First, Mr. Miscimarra's report is pure legal advocacy in the guise of expert testimony and should be excluded in its entirety.  *See* Ex. 1, Miscimarra Report ("Miscimarra Rep.").[2]  Mr. Miscimarra, a law firm partner who, according to his disclosures, has never served as a testifying expert witness, offers nothing more than impermissible legal opinions about collective bargaining and the National Labor Relations Act that are irrelevant to the Equal Pay Act ("EPA") and Title VII issues in this case.  Moreover, when it is not seeking to confuse the jury with erroneous legal arguments about a collective bargaining exception to the discrimination laws that does not exist, the report shifts to a set of wholly inadmissible, speculative factual assertions about the parties' states of mind in collective bargaining.  None of this is proper expert testimony in this case.

Second, while Ms. Irwin's testimony is merely a set of accounting exercises carried out at the direction of USSF, *see* Ex. 2, Irwin Report ("Irwin Rep."), a significant portion of the report is devoted to the very type of misleading and confusing comparison

---

[1] Unless otherwise noted, all rule citations are to the Federal Rules of Evidence.
[2] Unless otherwise noted, all exhibit citations are to the concurrently filed Declaration of Jeanifer E. Parsigian.

of total compensation to WNT and MNT players that this Count has already found to be a legally improper (indeed, "absurd") approach for determining equal pay discrimination, as required by Title VII and the EPA.  Minute Order, Dkt. No. 98 at 6.  Because this Court has already indicated that rate of pay, not total pay, is the proper compensation comparison to be considered by the fact finder, it would be both legally irrelevant and highly confusing to the jury to permit Ms. Irwin's analysis of total compensation differences—which reflect the greater number of games and superior winning record of the WNT players—to be admitted into evidence.[3]

Finally, significant portions of Dr. McCrary's testimony also should be excluded, as it advocates for a "risk analysis" exception to the EPA and Title VII that is contrary to the applicable statutes and governing law.  *See* Ex. 3, McCrary Report ("McCrary Rep.").  Indeed, if Dr. McCrary's legally improper and highly confusing theories were permissible, then any employer could avoid the requirements of Title VII and the EPA entirely by merely structuring compensation agreements with male employees to use a different combination of bonus and base compensation than that used for female employees, on the ground that such differences in compensation "risk" made the two groups of employees immune from a wage discrimination comparison.  This is not the law, and confusing and unsupported "junk" expert testimony advocating for such an unprecedented result has no place in this trial.[4]

## II.   ARGUMENT

Federal Rule of Evidence 702[5] and the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993), govern the admissibility of

---

[3] Plaintiffs seek exclusion of the testimony included in pages 7-9 and 13-21 of Ms. Irwin's report.

[4] Plaintiffs seek exclusion of the testimony included in paragraphs 12-15, 25, 27, and 29-56 of Dr. McCrary's report.

[5] Federal Rule of Evidence 702 provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

expert testimony in federal court.  Under Rule 702 and *Daubert*, the trial court must act as "gatekeeper" to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert*, 509 U.S. at 597.  Relevance means that the expert testimony will assist "the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid 702; *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).  That is, helpful testimony "must logically advance a material aspect of the party's case" under the governing substantive law.  *Cooper*, 510 F.3d at 942 (*citing Daubert II*, 43 F.3d. 1311, 1315 (9th Cir. 1995)).

Further, even if relevant to a contested issue, expert testimony should be excluded where "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury...."  Fed. R. Evid. 403.  This is especially so because "expert testimony carries special dangers to the fact-finding process because it 'can be both powerful and quite misleading because of the difficulty in evaluating it.'"  *Daubert II*, 43 F.3d at 1321 n.17 (quoting *Daubert*, 509 U.S. at 595).  An expert's mere subjective belief or unsupported factual speculation fails to meet *Daubert*'s standard of reliability.  *Daubert*, 509 U.S. at 589-90. This follows from the fact that: "[P]ersonal opinion testimony is inadmissible as a matter of law under Rule 702…and speculative testimony is inherently unreliable."  *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014).

### A.    Mr. Miscimarra's Opinion Should Be Excluded in its Entirety

Mr. Miscimarra, a partner at the law firm of Morgan Lewis & Bockius LLP, offers irrelevant legal argument and factual speculation in the guise of expert testimony.  Moreover, his testimony is both legally improper and highly confusing, as it advocates for an inconsistency between federal labor law and the requirements of the EPA and

---

(b) The testimony is based on sufficient facts or data; (c) The testimony is the product of reliable principles and methods; and (d) The expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

Title VII that is contrary to governing law.  It thus should be excluded under both Rules 403 and 702.

### 1.  Mr. Miscimarra's Report Constitutes Improper and Irrelevant Legal Opinion

It is well-settled in this Circuit and elsewhere that "an expert witness cannot give an opinion as to [a] legal conclusion, i.e., an opinion on an ultimate issue of law." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)); *see also Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law. 'Experts interpret and analyze factual evidence. They do not testify about the law....'" (citing *United States v. Brodie*, 858 F.2d 492, 496 (9th Cir.1988)).  Likewise, "instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Nationwide Transp. Fin.*, 523 F.3d at 1058 (citing *Hangarter*, 373 F.3d at 1016).  The reason is that expert testimony that proffers legal conclusions "invade[s] the province of the trial judge" and must consequently be excluded. *Id.* at 1059; *see also In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 558 (C.D. Cal. 2014) (holding that where expert opined that defendant "'falsely and deceptively labeled' its products…his use of these terms constitute[d] the offering of an improper legal opinion that usurps the role of the court").

Specifically, Mr. Miscimarra admits that he is offering legal opinions on "[t]he structure of U.S. labor law and collective bargaining" and instructs that "[c]ollective bargaining under the NLRA centers around four principles that are embedded in the structure of the law." Miscimarra Rep. at 3.  He further offers the inappropriate legal opinion that the collective bargaining between the Women's National Team Players' Association ("WNTPA") and USSF and their ultimate collective bargaining agreements ("CBAs") are "*consistent with the federal labor law*." Miscimarra Rep. at 2, 12-27 (emphasis added).

Exclusion is necessary even where, unlike here, the expert's statement of the law is correct. *Id.* at 1058. Here, however, there is even more reason to exclude Mr. Miscimarra's testimony because it is not only filled with pronouncements of law that are not the proper subject of expert testimony, it is also legally incorrect. Even worse than his conclusions above, he goes on to imply that collective bargaining by a union, like the WNTPA, somehow legally trumps the requirements of Title VII and the EPA or otherwise justifies unlawful discrimination because, in his opinion, the CBA between the WNTPA and USSF must "remain applicable throughout the contract's term." Miscimarra Rep. at 5-8, 14-17. This is a transparent effort to sow juror confusion.

Miscimarra implies that there is nothing improper about the discriminatory compensation paid to the members of the WNT because, in his opinion, it is the product of collective bargaining agreements which "involve a complex assortment of tradeoffs, priorities, compromises and concessions," and because, in his personal view, parties have "the right to make their own decisions about what is important versus unimportant and acceptable versus unacceptable" and "[t]he incentive of parties to reach an agreement in bargaining…is economic leverage." Miscimarra Rep. at 2. He then cloaks his improper legal endorsement of the discriminatory CBAs with his opinions about "the operation of federal labor law," Miscimarra Rep. at 30, principles of contract law and "freedom of contract," Miscimarra Rep. at 8-10, "court decisions that have found disparities resulting from collective bargaining," Miscimarra Rep. at 31, and case law on statutory interpretation, Miscimarra Rep. at 31-35. His goal is to encourage the jurors to disregard the law under the EPA and Title VII as it will be instructed by the court—the very reason that Rule 702 and 403 do not permit experts to testify on such legal issues.

Most egregiously, the unprecedented legal opinion of Mr. Miscimarra—that collective bargaining and labor law somehow justify a wage discrimination in violation of Title VII and the EPA—is dead wrong as a matter of law. In fact, the law is clear that rights protected by Title VII and the EPA supersede and cannot be waived during

collective bargaining.  The U.S. Supreme Court has expressly so held.  *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51-52 (1974) ("Title VII's strictures are **absolute** and represent a congressional command that each employee be free from discriminatory practices.  Of necessity, the rights conferred can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII.  In these circumstances, an employee's rights under Title VII are not susceptible of prospective waiver") (emphasis added); *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 76 (1998) (reaffirming *Alexander*).  Where a labor agreement is discriminatory, "the employer has an affirmative duty under Title VII to modify the agreement to remedy the effects of the discrimination."  *Marshall v. Western Grain Co., Inc.*, 838 F.2d 1165, 1168 (11th Cir. 1988); *see also Nottelson v. Smith Steel Workers D.A.L.U. 19806, AFL-CIO*, 643 F.2d 445, 452 (7th Cir. 1981).  There is no more basis in the case law for Mr. Miscimarra's opinion that wage discrimination in violation of Title VII and the EPA is permitted to continue until a CBA expires, Miscimarra Rep. at 5-8, 14-17, than there would be for an opinion that a CBA could permit an employer to keep paying a salary below the state law statutory minimum wage once an increase goes into effect. *See, e.g.*, *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 758 (1985) (holding that "mandated-benefit law as applied to a plan negotiated pursuant to a collective-bargaining agreement subject to the NLRA is not pre-empted by federal labor law" such that state law minimum benefits requirements are not superseded by a collective bargaining agreement).

Likewise, the Code of Federal Regulations to the EPA is clear that federal labor law and the National Labor Relations Act "do[] not constitute a defense available to either an employer or to a labor organization.  Any and all provisions in a collective bargaining agreement which provide unequal rates of pay in conflict with the requirements of the EPA are null and void and of no effect." 29 C.F.R. § 1620.23.  Mr. Miscimarra's attempt to confuse the jury on this issue must be excluded, as federal labor

law and a CBA provide no defense to a violation of the EPA where the CBA "operate[s] to perpetuate the effects of the company's prior illegal practice of paying women less than men for equal work." *Corning Glass Works v. Brennan*, 417 U.S. 188, 209-10 (1974).  In *Laffey v. Northwest Airlines Inc.*, 567 F.2d 429, 446-47 (D.C. Cir. 1976), for example, the court affirmed a decision finding that the defendant employer had violated both Title VII and the EPA by compensating stewardesses (predominantly women) and pursers (predominantly men) unequally—and provided unequal working conditions— for jobs that required equal work.  In so doing, the court rejected arguments that the women's compensation had been determined via bargaining and thus could not be subject to Title VII or EPA claims.  The court was "not impressed by this argument," *id*. at 446, instead holding:

> More fundamentally, union activity cannot strip individual employees of the opportunity to seek vindication of their statutory entitlements in court. Rights established under Title VII and the Equal Pay Act are not rights which can be bargained away either by a union, by an employer, or by both acting in concert.  It cannot be gainsaid that NWA played an instrumental role in the negotiations leading to adoption of the discriminatory wage scales, and a collective bargaining agreement perpetuating prior pay discrimination affords the employer no defense to a charge under the Equal Pay Act.

*Id.* at 447 (internal quotations omitted).  *See also Thibodeaux-Woody v. Houston Cmty. Coll.*, 593 Fed. Appx. 280, 284 (5th Cir. 2014) (rejecting employer's argument that pay differential between male and female similarly-situated employees was justified by male employee's negotiation of a higher salary).

Mr. Miscimarra's erroneous legal opinions offered as "expert" testimony have no place in this litigation, as they would both mislead the jury and require a mini-trial on

legal issues that are for the court to charge, not for the jury to decide.  For example, Mr. Miscimarra offers the wholly inappropriate "opinion" that "substantial instability and damage to collective bargaining in U.S. Soccer, contrary to the NLRA, is likely [to] result from a decision that effectively rewrites portions of the WNTPA labor contracts to match particular provisions contained in the Men's National Team labor contracts." Miscimarra Rep. at 31.  Furthermore, Mr. Miscimarra offers the erroneous legal opinion that mid-term contract modifications are "prohibited" under the NLRA and that permitting them "would create a significant risk of undermining the NLRA's regulatory scheme."  Miscimarra Rep. at 34.  In fact, even the USSF President has admitted that USSF could, and should, immediately make changes in the WNT CBA to correct discriminatory treatment and that there was no reason to wait for the end of the CBA to do so.  *See* Ex. 4, Cordeiro Dep. Tr. at 97:17-23 ("Q. So what you were stating during your campaign is that if an existing collective bargaining agreement was unfair, the adjustment should be made immediately, not waiting for the agreement to expire. Is that fair? A. Yes."); *id.* at 98:18-99:3 ("Q. It then says, 'Beyond player salaries, my platform calls for equal resources for our women's program from the coaching staff to the training facilities to the travel accommodations. We don't need to wait for CBA negotiations to make these changes. We can start now. It's the right thing to do.' Do you remember making statements like that? A. Yes."); Ex. 5, USSF_Morgan_044356. The parties to a CBA are, of course, always free to make mid-term amendments.  *See, e.g. Pacific Maritime Ass'n v. Int'l Longshoremen and Warehousemen's Union*, 304 F. Supp. 1315, 1322 (N.D. Cal. 1969) ("The existence of the collective bargaining contract does not preclude bargaining to reach a mutually acceptable agreement—ratified by both parties—to amend the collective bargaining contract for the balance of its term…"); *Northwest Adm'rs, Inc. v. Truck-A-Way*, 992 F.2d 1219, at *1 (9th Cir. 1993) (noting that the parties would "periodically modify their [CBA] with side letter agreements").

1    In short, the legal opinion testimony of Mr. Miscimarra is inadmissible both

2    because it instructs the jury on the law—which is the province of the court, not an

3    expert—and because it does so in a manner which is legally incorrect, highly

4    misleading, and certain to lead to juror confusion.

5    ### 2.   Mr. Miscimarra's Factual Opinions Are Also Inadmissible as

6    They Invade the Province of the Jury and Are not a Proper

7    Subject for Expert Speculation

8    When Mr. Miscimarra is not offering improper and erroneous legal opinions, his

9    report turns to factual speculation which invades the province of the jury.  Specifically,

10   much of his report is devoted to groundless conjecture about what the parties "meant"

11   during the collective bargaining process and what Mr. Miscimarra infers about their

12   motives, as a matter of fact, from the resulting CBAs.  But the law is clear that it is

13   impermissible for an expert to offer his own views on how the jury should determine

14   disputed facts when the testimony is not based on any expertise, but instead based on

15   "assumptions that are not supported by the evidence."  *Stephens v. Union Pac. R.R. Co.*,

16   935 F.3d 852, 856-57 (9th Cir. 2019) ("The expert's opinion must rest on 'facts or data

17   in the case that the expert has been made aware of or personally observed,' not merely

18   assumptions and speculation."); *see also Daubert*, 509 U.S. at 591 (reasoning that to be

19   admissible, expert opinions must be "sufficiently tied to the facts of the case") (quoting

20   *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)); *United States v. 87.98*

21   *Acres of Land More or Less in the Cty. of Merced*, 530 F.3d 899, 906 (9th Cir. 2008)

22   (affirming district court's exclusion of expert testimony that would "invite

23   inferences…that were unsupported" because of its "potentially prejudicial effect").

24   This is especially true where, as here, the facts presented—what the parties intended

25   through their collective bargaining agreements—do not require any expert evaluation

26   and invade the fact-finding province of the jury.

27

28

For example, Mr. Miscimarra offers his own personal factual "opinions," without applying any required expertise, about the following collective bargaining subjects, among others, none of which are the proper subject of expert testimony:

- "The parties' intent for their relationship to focus *on the relevant bargaining unit*…is reflected in the 2000-2004 CBA's non-discrimination clause." Miscimarra Rep. at 13.

- "The existence of two limited-scope 'me-too' provisions in the 2017-2021 CBA regarding the Men's National Team" supports the conclusion that "in WNTPA bargaining and resulting CBAs, the parties negotiated with an awareness of the Men's National Team contracts and working conditions." Miscimarra Rep. at 13-14.

- "The course of bargaining…and the successive CBAs that have resulted from bargaining, establish that the 2013-2016 and the 2017-2021 CBAs reflected a mutual understanding that the parties' contractual rights and obligations would be unchanged for the entire term of each agreement." Miscimarra Rep. at 16.

- "[T]he parties understood it was important to avoid a misunderstanding about whether any new contract would be binding for its entire stated term." Miscimarra Rep. at 16.

- "The CBAs resulting from WNTPA bargaining reveal that the parties attached significant weight to contract provisions giving WNT and NWSL players various types of economic security." Miscimarra Rep. at 18.

- "The WNT CBAs also reflect the importance that the parties placed on compensation and benefit protection in situations when players could not play based on injuries or other medical conditions, including pregnancy." Miscimarra Rep. at 19.

- "These factors are consistent with responsible bargaining by capable representatives who negotiated with the intention of entering into a binding agreement." Miscimarra Rep. at 25.

Whatever claimed relevance the above disputed facts might have in this case—none of which would be a defense to a violation of Title VII or the EPA—they are clearly not the proper subject of expert testimony by a law firm partner who has no first-hand knowledge of any of these facts and no expertise, as a lawyer, to offer conclusions about these disputed facts to the jury.  A factual narrative concocted by an expert is not helpful to the jury under Rule 702 as a matter of law.  *United States v. Seschillie*, 310 F.3d 1208, 1212 (9th Cir. 2002) (quoting *United States v. Ortland*, 109 F.3d 539, 545 (9th Cir. 1997)) (holding it was not an abuse of  the court's discretion to disallow testimony where "the subject does not need expert illumination and the proponent is otherwise able to elicit testimony about the subject"); *PharmaStem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1354 (Fed. Cir. 2007) (affirming exclusion as unhelpful the expert's exercise of quoting from the opposing party's materials and then drawing inferences from those materials).  Presenting such a factual narrative improperly addresses lay matters that a jury must decide without an expert's influence.  *See Johns v. Bayer Corp.*, No. 09CV1935 AJB (DHB), 2013 WL 1498965, at *28 (S.D. Cal. Apr. 10, 2013); *Highland Capital Mgmt. L.P. v. Scheider*, 379 F. Supp. 2d 461, 468-69 (S.D.N.Y. 2005) ("To the extent that [the expert] is simply rehashing otherwise admissible evidence about which he has no personal knowledge such evidence—taken on its own—is inadmissible.").  Expert testimony that invades the fact finding province of the jury in this manner must be excluded.  *See United States v. Lukashov*, 694 F.3d 1107, 1116 (9th Cir. 2012).

**B.     Ms. Irwin's Testimony Comparing "Total" Compensation of the WNT and MNT Should Be Excluded Because it is Inconsistent with Governing Law and Will Cause Juror Confusion**

Ms. Irwin's proposed testimony providing for a comparison of the total compensation paid to members of the Women's National Team and Men's National

Team has no place in this case under the standards of either Rule 702 or 403. She is an accountant who performed these calculations at the direction of USSF in order to render the opinion that, in accordance with the specifications given to her by the defendant, "USSF paid more to members of the WNT" or "USSF paid more to members of the WNT and the WNT Players Association." Irwin Rep. at 13-21. These "total" compensation comparisons, however, are the exact type of misleading analyses which this Court has already held, in its class certification ruling, to be irrelevant for determining discrimination under the EPA or Title VII because they ignore differences in the rates of pay. Minute Order, Dkt. 98, at 5. It would thus be highly confusing to the jury to admit such irrelevant analyses into evidence from an expert in support of USSF's attempt to invoke a legally erroneous test for discrimination that has already been rejected by this Court. *See Kingsbury v. U.S. Greenfiber, LLC*, No. CV 08-00151 DSF (AGRx), 2013 WL 7018657 at *1 (Nov. 5, 2013) (excluding as "irrelevant and therefore [] not [] helpful to the trier of fact" expert testimony calculating total profit because it was inconsistent with the statute's damages measure of marginal profit).

Specifically, when USSF submitted a very similar set of analyses of total compensation in opposition to class certification—arguing that they showed an absence of discrimination against the four class representatives—the Court expressly rejected USSF's argument that "there can be no discrimination under either Title VII or the EPA where a female employee's total annual compensation exceeds that of similarly-situated males, regardless of whether the female employee receives a lower rate of pay than her male comparators." Minute Order, Dkt. 98, at 5. Instead, the Court ruled that it is the "rate of pay" differences that are the controlling consideration and that to hold otherwise would yield an "absurd result." *Id.* at 5-6. Based on this legal determination, it would be misleading and confusing to the jury to permit Ms. Irwin to offer her opinions and calculations of "total compensation" for the WNT and MNT members when, in fact, these comparisons are legally irrelevant. Indeed, it would improperly permit an expert endorsement of a legally erroneous methodology that would confuse the jurors by

ignoring the dispositive facts that the WNT players received a lower rate of pay and only earned more total compensation when they played many more games and achieved much better results than the members of the MNT. *Id.* at 5-6.[6] Neither Rule 702 nor 403 permits such irrelevant and misleading expert analyses. *Daubert*, 509 U.S. at 591 ("Rule 702 further requires that the evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue…. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (internal quotation marks omitted); *87.98 Acres of Land*, 530 F.3d at 906 (affirming district court's exclusion of expert testimony with "little to no probative value" that the proponent failed to connect to the relevant legal question because such testimony would "invite inferences…that were unsupported" and have a "potentially prejudicial effect").

### C.   Dr. McCrary's Opinions on the Non-Comparability of WNT and MNT Compensation Terms Should Be Excluded Because They Are Inconsistent with Controlling Law and Will Cause Juror Confusion

Finally, this Court should also exclude the unprecedented opinions of Dr. McCrary that the compensation terms to the members of the WNT and the members of the MNT are not comparable under Title VII and the EPA as legally unsupported and thus irrelevant and confusing to jurors. McCrary Rep. at 16-17. Specifically, Dr.

---

[6] The applicable legal standard governing EPA and Title VII claims looks to whether there is an equal pay rate for different genders, not whether the total compensation to one gender is greater than to the other. *See* 29 U.S.C. § 206(d)(1) ("No employer…shall discriminate…on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex"); *Bence v. Detroit Health Corp.*, 712 F.2d 1024, 1027-28 (6th Cir. 1983) ("Section 206(d)(1) commands an equal *rate* of pay for equal work.") (emphasis in original); *EEOC v. Kettler Bros. Inc.*, 846 F.2d 70, 1988 WL 41053, at *3 (4th Cir. 1988) (unpublished) (applying *Bence* to Title VII and EPA claims and holding that the effective pay rate, not the total amount of compensation, is the appropriate comparator); *Ebbert v. Nassau Cnty.*, No. 05-CV-5445 (FB)(AKT), 2009 WL 935812, at *3 (E.D.N.Y. 2009) (same).

McCrary offers the unsupported opinion that when one group of employees has one mix of base compensation and bonus compensation, and another group of employees has a different mix of base compensation and bonuses compensation, there is no way to determine if the compensation schemes are discriminatory because of the different "risks" presented.   McCrary Rep. at 7-8.   According to Dr. McCrary's opinions, the "features of the two teams' contracts imply that the CBAs have different levels of risk and, thus, different levels of potential value to different players depending on performance outcomes" such that "neither contract is systematically better or worse and that there is no single rate of pay for either contract." McCrary Rep. at 8. But this "junk science" use of economic theory to advocate for a new, unsupportable exemption from the wage discrimination requirements of Title VII and the EPA is wrong, as a matter of law, and thus has no place as expert testimony in this trial.

Specifically, the law is clear that compensation schemes do not have to contain identical elements to be subject to Title VII and the EPA. Instead, when different employees have different combinations of wage and benefit terms, courts apply the law and  find  the different  costs to the employer of the different compensation schemes in order to  determine whether  discrimination in the total compensation package  existed.[7] *See, e.g.*, *Robinson v. Entex, Inc.*, No. CIV.A. CA3-87-1508-D, 1990 WL 517060, at *9 (N.D. Tex. Aug. 10, 1990) (determining whether two different compensation packages,  with  different  benefits,  were  discriminatory  and  in  what  amounts); *Treadaway v. Societe Anonyme Louis-Dreyfus*, 894 F.2d 161, 169 (5th Cir. 1990) (finding discrimination in different compensation and benefit packages where the

---

[7] Plaintiffs' expert, Dr. Cook, did just this, accounting for the health, dental, and vision benefits, maternity and adoption leave pay, injury protection, and severance payments provided to WNT players in her calculations of the amount of discrimination and damages, as well as the impact of different amounts of base and bonus compensation. The relevant comparison she made was between what the WNT players actually received in compensation versus the compensation they would have received under the terms of the MNT CBA. Ex. 6, Cook Report, at 3, 9.

"economist calculated these benefits on the basis of the employer's contributions"). Indeed, the language of the EPA clearly contemplates the need to address different combinations of payments, defining "wages" broadly for purposes of the Act to "include[] all payments made to … an employee as remuneration for employment … includ[ing] all forms of compensation… whether called wages, salary, profit sharing, expense account, monthly minimum, bonus, …, or some other name." 29 C.F.R. § 1620.10.  It further specifies that "[f]ringe benefits … e.g. such terms as medical hospital insurance and retirement benefits; profit sharing and bonus plans; leave; and other such concepts" are considered "remuneration for employment" that "must be considered in applying the EPA." 29 C.F.R. §§ 1620.10-11.

Numerous variations in the terms of compensation and benefits may exist, but Title VII and the EPA still apply to prohibit discrimination and determine the amount of damages.  *See Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1191 (9th Cir. 2002) (affirming special jury verdict where the jury considered "the salary and compensation packages" including benefits in determining the net amount of lost past wages); *Viveros v. Donahoe*, No. CV 10-08593 MMM EX, 2012 WL 6021667, at *6-*11 (C.D. Cal. Nov. 30, 2012) (in Title VII case, the court considered health and life insurance, annual vacation hours, sick leave, matching contribution to thrift savings plan, unemployment benefits, and seniority rights benefits for inclusion in a damages award).  There is no case that has ever accepted Dr. McCrary's view that it is impossible to determine if there was discrimination when different combinations of compensation terms are employed.  And it is thus improper for an expert to offer "opinion" testimony that such an exemption from the discrimination laws exist.  *Nationwide Transp. Fin.*, 523 F.3d at 1059 (affirming exclusion of expert testimony where "legal conclusions not only invaded the province of the trial judge, but constituted erroneous statements of law" and such testimony "would have been not only superfluous but mischievous") (quoting *Brodie*, 858 F.2d at 497)).

1    Indeed, if Dr. McCrary's unsupported "opinions" prevailed, it would be possible

2  for every employer to violate the EPA and Title VII by simply giving male employees

3  a higher rate of contingent bonus compensation—say a 25 percent sales commission

4  with a $5,000 base compensation—while giving female employees a 5 percent sales

5  commission and $10,000 base compensation.  A woman generating $4 million in sales

6  would receive a total of $210,000 under these compensation packages, while a man

7  generating the same amount of sales would receive $1 million in bonuses and $5,000 in

8  base compensation.   But Dr. McCrary would opine you cannot determine if

9  discrimination exists in this scenario because the woman had a larger base salary and

10  thus incurred less "risk."   This "opinion," that wage discrimination cannot be

11  determined when different "risks" exist in different compensation schemes, like the

12  "total compensation" argument already rejected by the Court, is, once again, legally

13  "absurd."   It is not supported by any case law or statutory language, and it should be

14  excluded to prevent juror confusion and unnecessary prolonging of the trial to consider

15  expert opinions that are irrelevant to the issues before the court.

16  **III.    CONCLUSION**

17    For all the foregoing reasons, Plaintiffs respectfully request that this Court grant

18  Plaintiff's Motion and enter an Order excluding the expert testimony of Mr. Miscimarra

19  in its entirety, the expert testimony of Ms. Irwin on "total compensation" comparisons

20  between the WNT and the MNT, and the expert testimony of Dr. McCrary on the

21  purported inability to compare compensation schemes with different "risk" profiles and

22  combinations of compensation and benefit terms to determine whether such terms are

23  discriminatory under Title VII and the Equal Pay Act.

24  //

25  //

26  //

27  //

28  //

1

Dated: February 20, 2020

Respectfully submitted,

2

WINSTON & STRAWN LLP

3

4

By: */s/ Jeffrey L. Kessler*

Jeffrey L. Kessler

5

Attorneys for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28