Jeffrey L. Kessler (admitted *pro hac vice*)
jkessler@winston.com
David G. Feher (admitted *pro hac vice*)
dfeher@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 294- 6700
Facsimile: (212) 294-4700

Cardelle B. Spangler (admitted *pro hac vice*)
cspangler@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
Lev Tsukerman (SBN: 319184)
ltsukerman@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Jeanifer E. Parsigian (SBN: 289001)
jparsigian@winston.com
**WINSTON & STRAWN LLP**
101 California St., 35th Floor
San Francisco, California 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA -WESTERN DIVISION**

| | |
|---|---|
| ALEX MORGAN, et al.,<br><br>　　　　Plaintiffs/Claimants,<br><br>v.<br><br>UNITED STATES SOCCER FEDERATION, INC.,<br><br>　　　　Defendant/Respondent. | **Case No. 2:19-cv-01717-RGK-AGR**<br><br>Assigned to: Judge R. Gary Klausner<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: March 30, 2020<br>Time: 9:00 a.m.<br>Place: Courtroom 850 |

Plaintiffs Alex Morgan, et al. ("Plaintiffs") respectfully submit the following Statement of Uncontroverted Facts and Conclusions of Law pursuant to Local Rule 56-1 in support of Plaintiffs' Motion for Partial Summary Judgment.

## I. STATEMENT OF UNCONTROVERTED FACTS

| Fact. No. | Uncontroverted Fact | Supporting Evidence |
|---|---|---|
| 1 | In 2015 and 2016, U.S. Senior Women's National Team ("WNT") players were compensated under the terms of the Memorandum of Understanding ("MOU") entered into between the U.S. Women's National Team Players Association ("WNTPA") and the United States Soccer Federation ("USSF") on March 19, 2013, which itself modified a prior CBA that was in effect from 2005 through 2012 ("2005 WNT CBA"). | Declaration of Diana Hughes Leiden ("Leiden Decl."), Ex. 1 (30(b)(6) Deposition of Tom King on January 23, 2020) ("King 30(b)(6) Tr.") 110:17–111:4; Leiden Decl., Ex. 2 (MOU), WNTPA_00004575; Leiden Decl., Ex. 3 (2005 WNT CBA), USSF_Morgan_028424. |
| 2 | Since January 1, 2017, WNT players have been compensated under the terms of the Collective Bargaining Agreement ("WNT CBA") entered into between the WNTPA and USSF on April 4, 2017. | King 30(b)(6) Tr. 47:3–48:21; Leiden Decl., Ex. 4 (WNT CBA), USSF_Morgan_000587, at USSF_Morgan_000610. |
| 3 | Since 2015, U.S. Senior Men's National Team ("MNT") players have been compensated under the terms of the Collective Bargaining Agreement ("MNT CBA") entered into between the U.S. National Team Players Association ("NTPA") and USSF on November 20, 2011, effective January 1, 2011. | King 30(b)(6) Tr. 47:3–48:21; Leiden Decl., Ex. 5 (MNT CBA), USSF_Morgan_000530, at USSF_Morgan_000548. |
| 4 | Though the MNT CBA expired on December 31, 2018, its terms have remained in effect and will remain in effect until the NTPA and USSF enter into a new Collective Bargaining Agreement. | King 30(b)(6) Tr. 34:1–35:16; Dkt. No. 64-15 (Declaration of Mark Levinstein), ¶¶ 4–5. |

| | | |
|---|---|---|
| 5 | In 2004, members of the WNT raised concerns about pay equality in a letter from their union's counsel to the United States Olympic Committee ("USOC"), highlighting (among other things) "USSF's unwillingness to pay the women anywhere near equal compensation for successes comparable to the men's." | Leiden Decl., Ex. 6 (Deposition of John Langel on November 21, 2019), 250:10–255:3; Leiden Decl., Ex. 7 (November 15, 2004 Letter to the USOC), WNTPA 00010895, at WNTPA_00010898. |
| 6 | During bargaining sessions in 2016, WNT players and their representatives explicitly requested compensation from USSF that was equal to the MNT players. | Leiden Decl., Ex. 8 (Deposition of Tom King on January 23, 2020) ("King Tr.") 20:18–21:24, 49:15–50:18, 56:12–57:8, 60:22–61:13, 67:8–19; Leiden Decl., Ex. 9 (CBA – WNT – Meeting Notes – All Bargaining Sessions for 2017–2021 Agreement), USSF_Morgan_005638, at USSF_Morgan_005653–USSF_Morgan_0005657; Leiden Decl., Ex. 10 (30(b)(6) Deposition of Sunil Gulati on December 17, 2019) ("Gulati 30(b)(6) Tr.") 54:18–55:20. |
| 7 | USSF would not agree to the players' demand for equal pay and never offered the WNT the same level of game bonuses that the MNT players have the opportunity to receive under their CBA. | King Tr. 47:22–49:14. |
| 8 | Although USSF offered the WNT a "pay to play" structure that was similar to the structure of the MNT CBA, USSF never offered the WNT an equal bonus structure for "friendlies" or an equal rate of pay structure for the World Cup or other tournament events. | King Tr. 47:22–49:14; Leiden Decl., Ex. 30 (Deposition of Rich Nichols on December 4, 2019) ("Nichols Tr.") 100:25–101:19. |

| | | | |
|---|---|---|---|
| | 9 | The amounts of per-game and other categories of bonuses WNT players were given the opportunity to earn in 2015 and 2016 are listed in the term sheet attached to the MOU. | MOU, WNTPA_00004575, at WNTPA_00004577, WNTPA_00004583. |
| | 10 | The amount of per-game and other categories of bonuses WNT players were given the opportunity to earn since 2017 are listed in Exhibit A to the WNT CBA. | WNT CBA at USSF_Morgan_000642. |
| | 11 | The amount of per-game and other categories of bonuses the MNT players were given the opportunity to earn since 2015 are listed in the "2015–2018" column of the chart at Exhibit A to the MNT CBA. | MNT CBA at USSF_Morgan_000572–74. |
| | 12 | WNT players are only given the opportunity to earn lower per-game bonuses under the WNT CBA than MNT players are given the opportunity to earn under the MNT CBA for "wins" and "ties" in most "friendlies." | WNT CBA at USSF_Morgan_000642at 24; MNT CBA at USSF_Morgan_000572; King 30(b)(6) Tr. 68:25–88:18. |
| | 13 | WNT players are only given the opportunity to earn lower bonuses under the WNT CBA than MNT players are given the opportunity to earn under the MNT CBA for "wins" or "ties" in World Cup qualifying games. | WNT CBA at USSF_Morgan_000642; MNT CBA at USSF_Morgan_000572; King 30(b)(6) Tr. 68:25–88:18. |
| | 14 | WNT players are only given the opportunity to earn a lower bonus for qualifying for the World Cup under the WNT CBA than the MNT players are given an opportunity to earn under the MNT CBA for qualifying for the World Cup. | WNT CBA at USSF_Morgan_000642; MNT CBA at USSF_Morgan_000572; King 30(b)(6) Tr. 68:25–88:18. |
| | 15 | WNT players are only given the opportunity to earn lower bonuses under the WNT CBA than MNT players are given the opportunity to earn under the MNT CBA for making their | WNT CBA at USSF_Morgan_000642; MNT CBA at USSF_Morgan_000572; |

| | | |
|---|---|---|
| | respective World Cup rosters. | King 30(b)(6) Tr. 68:25–88:18. |
| 16 | WNT players are only given the opportunity to earn lower bonuses under the WNT CBA than MNT players are given the he opportunity to earn under the MNT CBA for placing first, second, or third in the World Cup. | WNT CBA at USSF_Morgan_000642; MNT CBA at USSF_Morgan_000573; King 30(b)(6) Tr. 68:25–88:18. |
| 17 | WNT players are only given the opportunity to be compensated at a lower rate under the WNT CBA for non-World Cup tournaments than the MNT players are given the opportunity to be compensated under the MNT CBA for non-World Cup tournaments. | WNT CBA at USSF_Morgan_000642; MNT CBA at USSF_Morgan_000573–74; King 30(b)(6) Tr. 68:25–88:18. |
| 18 | WNT players are only given the opportunity to receive a flat payment of $5,000 for winning the SheBelieves Cup and the Tournament of Nations under the WNT CBA, while MNT players are given the opportunity to receive per-game win, draw, and loss bonuses for non-World Cup tournament games, as well as bonuses for placing second, third, and fourth place in those tournaments under the MNT CBA. | WNT CBA at USSF_Morgan_000642; MNT CBA at USSF_Morgan_000573–74; King 30(b)(6) Tr. 68:25–88:18. |
| 19 | WNT players were only given the opportunity to receive lower per-game bonuses under the MOU than MNT players are given the opportunity to receive under the MNT CBA for all categories of bonuses the two teams shared under those agreements. | MOU at WNTPA_00004583; MNT CBA at USSF_Morgan_000572–74; King 30(b)(6) Tr. 111:25-116:17. |
| 20 | USSF President Carlos Cordeiro admitted while campaigning for the USSF presidency in December 2017 that "[o]ur women's teams should be respected and valued as much as our men's teams, but our female players have not been treated equally" and that he believed that | Leiden Decl., Ex. 11 (Deposition of Carlos Cordeiro on January 29, 2020) ("Cordeiro Tr.") 85:15–21, 93:22–99:9; Leiden Decl., Ex. 12 ("Why |

| | | |
|---|---|---|
| | the USSF should work toward and ensure equal pay for WNT players. | I'm running for President of US Soccer", E-mail chain dated December 21, 2017), USSF_Morgan_044331, at USSF_Morgan_044332; Leiden Decl., Ex. 13 (*Carlos Cordeiro, USSF presidential candidate, answers ESPN's questions*), USSF_Morgan_044356, at USSF_Morgan_044359– USSF_Morgan_044360. |
| 21 | Cordeiro also stated during his campaign: "I'm a strong supporter of greater equality, diversity and inclusion throughout U.S. Soccer, and we clearly need to work toward equal pay for the national teams.  I believe that where existing agreements are unfair, adjustments should be made immediately.  To ensure equal pay going forward, we need to be open to new paradigms while recognizing the specific needs and desires of the WNT and MNT. . . [w]e don't need to wait for CBA negotiations to make these changes; we can start now.  It's the right thing to do." | Cordeiro Tr. 93:6–99:9; *Carlos Cordeiro, USSF presidential candidate, answers ESPN's questions*), at USSF_Morgan_044359– USSF_Morgan_044360. |
| 22 | Cordeiro was reprimanded for releasing his campaign literature about female soccer players not being treated equally by then-President Sunil Gulati, who told him in an email, "Carlos, I'll bite my tongue on this document certainly publicly since it's political season; however, for a US Soccer officer to make the following statement in a public document while we have a pending EEOC charge is incredibly irresponsible." | "Why I'm running for President of US Soccer", E-mail chain dated December 21, 2017, at USSF_Morgan_044332; Cordeiro Tr. 93:22–99:9. |
| 23 | Cordeiro told members of USSF's Board of Directors that female soccer players were not treated equally on more than one occasion during his eleven years on the Board of | Cordeiro Tr. 75:12–76:8, 76:24–77:11, 79:1–9. |

5

STATEMENT OF UNCONTROVERTED FACTS     Case No. 2:19-cv-01717-RGK-AGR

| | | |
|---|---|---|
| | Directors and further testified that discussions regarding unequal opportunity for the WNT players were "cumulative conversations" during Cordeiro's years on USSF's Board of Directors that was expressed by numerous Directors in addition to Cordeiro. | |
| 24 | Cordeiro still believes that WNT female soccer players are not treated equally or given equal opportunities by USSF. | Cordeiro Tr. 52:12–55:16. |
| 25 | WNT players are equally as skilled as MNT players, including in key areas of soccer such as athleticism, "tactical IQ," tactical proficiency, and mental fortitude. | Leiden Decl., Ex. 16 (Deposition of Jill Ellis on January 15, 2020) ("Ellis Tr.") 241:23–243:14; Cordeiro Tr. 174:5–12; Leiden Decl., Ex. 17 (Deposition of Alex Morgan on December 19, 2019) 212:17–20; Leiden Decl., Ex. 18 (Deposition of Carli Lloyd on December 20, 2019) 108:11–109:7, 130:25–131:12. |
| 26 | WNT players and MNT players expend equal amounts of effort performing on their respective national teams. | Cordeiro Tr. 163:13–23; Leiden Decl., Ex. 19 (Deposition of Sunil Gulati, Volume II, on December 18, 2019) ("Gulati Vol. II Tr.") 134:7–11; Ellis Tr. 243:15–17. |
| 27 | Both WNT and MNT players' responsibilities as national team players are outlined in their respective CBAs and USSF's Safe Soccer Framework. | Leiden Decl., Ex. 20 (30(b)(6) Deposition of Jay Berhalter on December 12, 2019) ("Berhalter 30(b)(6) Tr.") 242:23–246:4. Request for Judicial Notice, Ex. 5 (U.S. Soccer Safe Soccer Framework |

| | | |
|---|---|---|
| | | handbook). |
| 28 | WNT players have had substantially equal responsibilities and required accountability as MNT players such as being available for training, maintaining a high level of competitive soccer skills and physical conditioning, not using illegal drugs or banned substances, attending camp in good athletic shape, acting professionally, performing at a high level, and seeking appropriate treatment for injuries. | WNT CBA at USSF_Morgan_000606–USSF_Morgan_000610; MNT CBA at USSF_Morgan_000546–548; USSF Safe Soccer Framework at 1; Ellis Tr. 240:4-241:22. |
| 29 | Playing for the NWSL is a separate job from being on the WNT. | Berhalter 30(b)(6) Tr. 242:4–19. |
| 30 | Not all WNT players are required to be employed by NWSL teams. | Berhalter 30(b)(6) Tr. 242:4–19. |
| 31 | It was former President Gulati and USSF—not the WNT players or their union—who came up with the proposal for the USSF to subsidize the NWSL as part of USSF's—not the players'—objectives. | Leiden Decl., Ex. 33 (Deposition of Sunil Gulati, Volume I, on December 17, 2019) 42:6–43:14. |
| 32 | WNT and MNT players are both subject to the same rules of the game. | Cordeiro Tr. 163:14–18; Gulati Vol. II Tr. 132:16–133:22. |
| 33 | WNT and MNT players play on the same-sized field. | Cordeiro Tr. 163:14–18; Gulati Vol. II Tr. 132:16–133:22. |
| 34 | There is no relative quality difference or difference in appeal of games played by the WNT versus games played by the MNT. | Gulati 30(b)(6) Tr. 154:8–22. |
| 35 | The WNT has been more successful as a team than the MNT since 2015. | Cordeiro Tr. 163:24–164:8; Leiden Decl., Ex. 15 (WNT Game History 2014–2019), USSF_Morgan_070835; Leiden Decl., Ex. 21 (MNT |

7

STATEMENT OF UNCONTROVERTED FACTS          Case No. 2:19-cv-01717-RGK-AGR

| | | |
|---|---|---|
| | | Game History 2014–2019), USSF_Morgan_070834. |
| 36 | WNT players have been better known by and have generated higher levels of interest from soccer fans than the less successful members of the MNT. | Berhalter 30(b)(6) Tr. 159:22–169:20; Leiden Decl., Ex. 31 (Slides from USSF's August 20, 2019 Business Review Meeting), USSF_Morgan_022060, at USSF_Morgan_022136 – USSF_Morgan_022137, USSF_Morgan_022140. |
| 37 | Sunil Gulati testified that the fact that there are separate competitions and separate teams that the MNT and WNT compete in and against "in and of itself" does not justify the difference in pay. | Gulati 30(b)(6) Tr. 159:21–160:6. |
| 38 | The WNT played games on turf 11 times from 2015–2017, while the MNT played one game on turf during that time. | Leiden Decl., Ex. 22 (USSF's Supplemental Responses to Plaintiffs' Interrogatories Nos. 1, 2, 5, 6, and 11), at 9. |
| 39 | Since 2014, the WNT has played, on average, teams with higher FIFA rankings than the MNT every year except 2018. | WNT Game History 2014–2019, USSF_Morgan_070835; MNT Game History 2014–2019. USSF_Morgan_070834. |
| 40 | The average ranking of WNT opponents was lower than the average FIFA ranking of MNT opponents in 2018 because the WNT played lower-ranked opponents in the run-up to the 2019 World Cup. | Ellis Tr. 246:11–247:12. |
| 41 | The majority of USSF employees work for both the WNT and the MNT. | Leiden Decl., Ex. 23 (USSF Organization Chart), USSF_Morgan_005792. |

8

STATEMENT OF UNCONTROVERTED FACTS         Case No. 2:19-cv-01717-RGK-AGR

| | | |
|---|---|---|
| 42 | The employees that do work exclusively for one team work under a common USSF director. | USSF Organization Chart, USSF_Morgan_005792. |
| 43 | Press officers Michael Hamilton (MNT) and Aaron Heifetz (WNT) work under USSF Chief Communications Officer Neil Buethe. | USSF Organization Chart, USSF_Morgan_005792. |
| 44 | WNT General Manager Kathryn Markgraf and MNT Coach Gregg Berhalter work under USSF Sporting Director Earnie Stewart. | USSF Organization Chart, USSF_Morgan_005792. |
| 45 | USSF senior staff makes venue decisions for both teams. | Berhalter 30(b)(6) Tr. 257:7–261:2. |
| 46 | USSF chooses opponents for both the MNT and WNT with the input of each teams' head coaches. | King Tr. 11:21–12:19. |
| 47 | Yearly budgets for the MNT and WNT roll up into one budget submitted for approval by the USSF Board. | Berhalter 30(b)(6) Tr. 39:23; 41:1. |
| 48 | The same individuals at USSF make decisions about both the MNT and WNT budgets. | King Tr. 11:1–9; Leiden Decl., Ex. 14 (Deposition of Praptika (Pinky) Raina on January 21, 2020) 23:7–18, 89:19–90:16. |
| 49 | Every year, USSF's Board of Directors vote on a final budget that includes budgets for both the MNT and WNT, which is also approved by USSF's National Council. | Berhalter 30(b)(6) Tr. 39:15–41:7; Cordeiro Tr. 215:16–217:21. |
| 50 | The same individuals at USSF make the decisions about what flights both MNT and WNT will take and whether the MNT and WNT take charter flights as part of a single process. | King Tr.18:14–20; Ellis Tr. 159:22–160:10. |
| 51 | The same individuals at USSF make the | King Tr.13:9–14:1. |

|    |                                                                                                                                                                                                                                                         |                                                                                                                                                                                                             |
|----|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|    | decisions about what hotels the MNT and WNT stay at as part of a single process.                                                                                                                                                                        |                                                                                                                                                                                                             |
| 52 | USSF manages both MNT and WNT events.                                                                                                                                                                                                                   | Berhalter 30(b)(6) Tr. 36:9–11.                                                                                                                                                                             |
| 53 | The WNT and MNT share the same team of event marketing and promotion employees who determine the appropriate amount of advertising resources to devote to each match.                                                                                    | Supplemental Responses to Plaintiffs' Interrogatories Nos. 1, 2, 5, 6, and 11, at 13.                                                                                                                       |
| 54 | The revenue from matches controlled by USSF and the broadcasting and sponsorship revenue generated by USSF's agreement with Soccer United Marketing are the primary drivers of USSF's revenue.                                                           | Leiden Decl., Ex. 24 (excerpts of USSF 2020 Annual General Meeting Book of Reports), Section IV, page 5.                                                                                                    |
| 55 | The WNT has generated more revenue than the MNT in matches controlled by USSF and for which U.S. Soccer received revenue from Fiscal Year 2016 (beginning April 1, 2015) through September 30, 2019.                                                     | Supplemental Responses to Plaintiffs' Interrogatories Nos. 1, 2, 5, 6, and 11, at 16.                                                                                                                       |
| 56 | The WNT generated $85,022,153 amount in revenues for this period while the MNT only generated $75,924,625 of revenues during this period.                                                                                                                | Supplemental Responses to Plaintiffs' Interrogatories Nos. 1, 2, 5, 6, and 11, at 16.                                                                                                                       |
| 57 | The WNT earned $10,235,153.89 in profit during the period of April 1, 2015 – October 31, 2019, while the MNT lost $6,093,087 during this period.                                                                                                         | Leiden Decl., Ex. 32 (Federal Rule of Evidence 1006 Summary, Net Revenues Fiscal Year 2016–Fiscal Year 2020 (through October 31, 2019)).                                                                    |
| 58 | USSF projected that the WNT would generate more revenue than the MNT in all of Fiscal Year 2020 (April 1, 2019–March 31, 2020) and Fiscal Year 2021 (April 1, 2020–March 31, 2021).                                                                      | USSF 2020 Annual General Meeting Book of Reports, Section IV, Source and Use of Funds FY '20 & Source and Use of Funds FY '21.                                                                              |

| | | |
|---|---|---|
| 59 | The WNT and MNT's sponsorship and broadcast rights are jointly marketed by Soccer United Marketing ("SUM"). | Leiden Decl., Ex. 25 (USSF's letter to the EEOC on May 31, 2016) ("May 31, 2016 EEOC Correspondence"), USSF_Morgan_004237, at USSF_Morgan_004250; Berhalter 30(b)(6) Tr. 64:15–65:10; King Tr. 44:24–45:13, 83:17–84:17; Gulati 30(b)(6) Tr. 57:21–58:13; Leiden Decl., Ex. 26 (March 30, 2004 Agreement between USSF and SUM), USSF_Morgan_000875; Leiden Decl., Ex. 27 (October 19, 2007 Agreement between USSF and SUM), USSF_Morgan_000906; Leiden Decl., Ex. 28 (January 1, 2015 Agreement between USSF and SUM), USSF_Morgan_000933. |
| 60 | No analysis was ever done by USSF to allocate sponsorship and broadcast revenue between the WNT and MNT. | Gulati 30(b)(6) Tr. 59:14–60:7. |
| 61 | A breakdown of how much sponsorship and broadcast revenue should be allocated to the MNT and WNT "can't be done." | Berhalter 30(b)(6) Tr. 64:15–65:10; King Tr. 44:24–45:13, 83:17–84:17. |
| 62 | USSF has told the EEOC that it is impossible to attribute sponsorship or broadcast revenue to either the MNT or WNT. | May 31, 2016 EEOC Correspondence, at USSF_Morgan_004250. |
| 63 | Class Representatives Alex Morgan, Megan Rapinoe, Becky Sauerbrunn, and Carli Lloyd filed charges of discrimination with the EEOC in April 2016. | Dkt. No. 2, Exhibit A to Plaintiffs' Complaint. |

| | | |
|---|---|---|
| 64 | The EEOC issued each player right-to-sue letters on February 5, 2019. | Dkt. No. 2, Exhibit A to Plaintiffs' Complaint. |
| 65 | The Plaintiffs filed their Complaint with this Court on March 8, 2019. | Dkt. No. 1, Plaintiffs' Complaint. |
| 66 | Sunil Gulati testified that one of the reasons that WNT's compensation was justifiably lower than the MNT's compensation is an "absolute difference in quality" based on the "speed and strength of the men versus the speed and strength of the women" and the separation of men and women into separate teams by FIFA based on "genetics" and "biology." | Gulati 30(b)(6) Tr. 151:9–155:20. |
| 67 | USSF's outside counsel, Russell Sauer, stated during collective bargaining negotiations that "market realities are such that the women do not deserve equal pay." | Leiden Decl., Ex. 29 (Deposition of Megan Rapinoe on January 17, 2020), 108:19–109:20; 111:1–24; Nichols Tr. 128:9–23. |
| 68 | Mr. King could not remember if the statement "market realities are such that the women do not deserve equal pay" was made by Mr. Sauer or anyone else for the USSF at any bargaining session. | King Tr. 52:7–56:7. |
| 69 | Mr. Cordeiro testified: "I had a concern—which is why I ran for president—that our women lacked equal opportunity. And lacking equal opportunity to play competitive matches and competitive tournaments that had significant payouts was a significant disadvantage for our women. So I believe then and I continue to believe now that working for quote 'equal pay and equal resources' is all about creating more opportunity for our women so they can play more competitive events that would drive more revenue and more compensation." | Cordeiro Tr. 59:22–60:11. |

| 70 | USSF has asserted that the pay discrimination in favor of the MNT is justified by their "belief" that the activities of the MNT had generated and would continue to generate more game-related revenue and net profits, as well as higher broadcasting and sponsorship revenue, than the activities of the WNT. | USSF's Supplemental Responses to Plaintiffs' Interrogatories Nos. 1, 2, 5, 6, and 11, at 3–5. |
|---|---|---|

## II. CONCLUSIONS OF LAW

1. A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

2. A motion for partial summary judgment is the appropriate vehicle to determine less than all of the issues in the case, Fed. R. Civ. P. 56(a), and has been found by courts in this circuit to be an efficient method to streamline the issues to be presented to the jury. *Harper v. City of San Jose*, No. C 09-05758 JW, 2011 WL 7109218, at *1 (N.D. Cal. Mar. 7, 2011).

3. The Equal Pay Act provides that an employer cannot "discriminate … between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex … for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1).

4. In order to prevail on liability under the EPA, Plaintiffs need only show that USSF paid MNT players at a rate more than WNT players for performing substantially similar work. *See Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1310-11 (10th Cir. 2006).

5. Under the EPA, the controlling issue is whether an employer has discriminated on the basis of sex with respect to the *rate of pay*, not total remuneration. Dkt. No. 98, Minute Order on Mot. for Class Certification ("Class

Certification Order") at 5-6 & n.1; *Ebbert v. Nassau Cty.*, No. 05-CV-5445(FB)(AKT), 2009 WL 935812, at *2-3 (E.D.N.Y. Mar. 31, 2019) ("[T]he EPA…speak[s] in term of rate of pay, not total remuneration … As a matter of common sense, total remuneration cannot be the proper point of comparison."); *Bence v. Detroit Health Corp.*, 712 F.2d 1024, 1027 (6th Cir. 1983).

6. The EPA prohibits discrimination by employers on the basis of sex in wages paid for "equal work," which under the EPA is defined as work that is equal in terms of skill, effort, and responsibility. 29 C.F.R. § 1620.13(c). "Equal work" under the EPA does not mean work that is "identical." *Gunther v. Washington Cnty.*, 623 F.2d 1303, 1309 (9th Cir. 1979). Rather, "substantially equal" is the controlling test. *Maxwell v. City of Tucson*, 1984 WL 21130, at *3 (9th Cir. July 3, 1984).

7. Under the EPA, the rate of pay must be equal for persons performing equal work on jobs requiring equal skill, effort, and responsibility, and performed under "similar working conditions," which refer to the job's physical environment and potential hazards. 29 C.F.R. § 1620.18(a); *Corning Glass Works v. Brennan*, 417 U.S. 188, 201-03 (1974).

8. A business enterprise is considered a "single establishment" for purposes of the EPA where the employer has centralized control of job descriptions, salary administration, and job assignments. 29 C.F.R. § 1620.9(b).

9. A collective bargaining agreement perpetuating pay discrimination affords the employer no defense to a claim under the Equal Pay Act or Title VII. *See* 29 C.F.R. § 1620.23; *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51–52 (1974) *UMWA Health & Ret. Fund v. Robinson*, 455 U.S. 562, 575 (1982).

10. The Ted Stevens Olympic and Amateur Sports Act *permits* (but in no way *requires*) athletes to file complaints with the United States Olympic Committee. *See* 36 U.S.C. § 220527. The statute does not preempt discrimination and related

claims. *See, e.g.*, *Lee v. U.S. Taekwondo Union*, 331 F. Supp. 2d 1252, 1260 (D. Haw. 2004).

11.   "It shall be an unlawful employment practice for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

12.   In contrast to the EPA, plaintiffs alleging sex-based compensation discrimination under Title VII need not establish that they are performing equal work for unequal pay. *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 110 (2d Cir. 2019).

13.   In order to prevail on their Title VII sex-based compensation discrimination claim, a plaintiff need only show that sex "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

14.   In the context of proving a Title VII violation, direct evidence is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2003) (citing *Goodwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).

15.   Once a plaintiff establishes a *prima facie* case of discrimination with indirect evidence, the burden shifts to the employer to demonstrate a legitimate, nondiscriminatory reason for the employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

16.   "In situations where the jurisdictional prerequisites of both the EPA and title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 200e et seq., are satisfied, any violation of the Equal Pay Act is also a violation of title VII." 29 CFR § 1620.27

17.   Because "Title VII contains a broader prohibition on discriminatory wages than that mandated by the Equal Pay Act," plaintiffs "do not need to show

15

substantial equality to pursue a Title VII claim." *Lewis v. Smith*, 255 F. Supp. 2d 1054, 1060 (D. Ariz. 2003).

18. Parties cannot assert affirmative defenses to prevent a court from granting summary judgment on liability where they do not offer sufficient evidence to support those affirmative defenses. *EEOC v. BNSF Railway Cmpny.*, 902 F.3d 916, 921 (9th Cir. 2018).

Dated: February 20, 2020  WINSTON & STRAWN LLP

By: */s/ Jeffrey L. Kessler*
Jeffrey L. Kessler
David G. Feher
Cardelle B. Spangler
Diana Hughes Leiden
Jeanifer E. Parsigian
Lev Tsukerman

Attorneys for Plaintiffs