1   Jeffrey L. Kessler (*pro hac vice*)
    jkessler@winston.com
2   David G. Feher (*pro hac vice*)
    dfeher@winston.com
3   **WINSTON & STRAWN LLP**
    200 Park Avenue, New York, NY 10166
4   Tel:   (212) 294-6700
    Fax:   (212) 294-4700
5
    Cardelle B. Spangler (*pro hac vice*)
6   cspangler@winston.com
    **WINSTON & STRAWN LLP**
7   35 West Wacker Drive, Chicago, IL 60601
    Tel:   (312) 558-5600
8   Fax:   (312) 558-5700

9   Diana Hughes Leiden (SBN: 267606)
    dhleiden@winston.com
10  Lev Tsukerman (SBN: 319184)
    ltsukerman@winston.com
11  **WINSTON & STRAWN LLP**
    333 South Grand Avenue, Los Angeles, CA 90071
12  Tel:   (213) 615-1700
    Fax:   (213) 615-1750
13
    Jeanifer E. Parsigian (SBN: 289001)
14  jparsigian@winston.com
    **WINSTON & STRAWN LLP**
15  101 California St., 35th Floor, San Francisco, CA 94111
    Tel:   (491) 591-1000
16  Fax:   (491) 591-1400

17  *Attorneys for Plaintiffs*

18                **UNITED STATES DISTRICT COURT**

19                **CENTRAL DISTRICT OF CALIFORNIA**

20  ALEX MORGAN, et al.,                | **Case No. 2:19-CV-01717-RGK-AGR**
21              Plaintiffs,              | Assigned to: Judge R. Gary Klausner
22  v.                                   | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE DEFENDANT'S EXPERT TESTIMONY**
23  UNITED STATES SOCCER FEDERATION, INC.,|
24              Defendant.               | Date: March 30, 2020
25                                       | Time: 9:00 a.m.
                                         | Courtroom: 850

# TABLE OF CONTENTS

**Page (s)**

I. INTRODUCTION ..................................................................................1

II. ARGUMENT........................................................................................2

    A. Mr. Miscimarra's Testimony Should Be Excluded in Its Entirety ............2

    B. Ms. Irwin's "Total" Compensation Analysis Should Be Excluded...........5

    C. Dr. McCrary's Erroneous Legal Opinions in the Guise of Economic Expert Testimony Should Be Excluded...................................7

III. CONCLUSION ...................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bakst v. Comm. Memorial Health System, Inc.*,
  2011 WL 13214315 (C.D. Cal. Mar. 7, 2011) ......................................................... 9

*Bence v. Detroit Health Corp.*,
  712 F.2d 1024 (6th Cir. 1983) ............................................................................... 1

*Berlotti v. Philbeck, Inc.*,
  827 F. Supp. 1005 (S.D. Ga. 1993) ....................................................................... 7

*Cooper v. Brown*,
  510 F.3d 870 (9th Cir. 2007) ............................................................................... 10

*Crow Tribe of Indians v. Racicot*,
  87 F.3d 1039 (9th Cir. 1996) ................................................................................. 3

*Daubert v. Merrell Dow Pharmaceuticals*,
  509 U.S. 579 (1993) ........................................................................................... 6, 8

*Fidelity Nat'l Financial, Inc. v. Nat'l Union Fire Ins. Co.*,
  No. 09-CV-140-GPC-KSC, 2014 WL 1286392 (S.D. Cal. March 28,
  2014) ...................................................................................................................... 4

*Hangarter v. Provident Life & Acc. Ins. Co.*,
  373 F. 3d 998 (9th Cir. 2004) ................................................................................ 4

*Laney v. Felker*,
  2010 WL 1610128 (C.D. Cal. April 19, 2010) ...................................................... 5

*Marx & Co. v. Diners' Club Inc.*,
  550 F.2d 505 (2d Cir. 1977) ............................................................................. 2, 3

*McDevitt v. Guenther*,
  522 F. Supp. 2d 1272 (D. Haw. 2007) ................................................................... 2

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
  523 F.3d 1051 (9th Cir. 2008) ............................................................................... 5

*Pinal Creek Group v. Newmont Mining Corp.*,
  352 F. Supp. 2d 1037 (D. Ariz. 2005) ................................................................. 2, 4

*Specht v. Jensen*,
  853 F.2d 805 (10th Cir. 1988) (cited at Opp. Dkt. No. 188 ) ................................ 1, 4

*Treadaway v. Societe Anonyme Louis-Dreyfus*,
  894 F.2d 161 (5th Cir. 1990) ..................................................................................... 7

*U.S. v. 87.98 Acres of Land*,
  530 F.3d 899 (9th Cir. 2008) ..................................................................................... 6

*United States v. Kupau*
  781 F.2d 740, 745 (9th Cir. 1986) ............................................................................. 2

*Viveros v. Donahoe*,
  No. CV 10-08593 MMM .......................................................................................... 7

**Statutes**

National Labor Relations Act ............................................................................... 1, 3, 4

## I. INTRODUCTION

USSF's opposition does nothing to salvage the opinions expressed by its three experts in their initial reports from total or partial exclusion. In each case, the challenged opinions either improperly argue (and misrepresent) the law, offer views that are inconsistent with the law, or otherwise seek to engender juror confusion, which renders them inadmissible under Rules 403 and 702.

**Miscimarra:** USSF's own case law confirms the inadmissibility of Miscimarra's legal arguments, and the heightened risk of misleading the jury when an attorney is anointed an expert. *Specht v. Jensen*, 853 F.2d 805, 809-10 (10th Cir. 1988) (cited at Opp. Dkt. No. 188 at 18). His legal advocacy would invade the province of the Court to instruct on the law and, worse, would confuse jurors by misstating governing legal principles and injecting into the trial wholly irrelevant arguments about statutes, like the NLRA, that have no relevance to this case. He also offers factual conclusions about what the parties intended in bargaining that have no place at the trial.

**Irwin:** USSF seeks to offer the challenged part of Irwin's opinions to reargue the very same "total compensation" defense to Plaintiffs' discrimination claims that this Court rejected as a matter of law during the class certification process. *See* Minute Order, Dkt. No. 98 at 5; *Bence v. Detroit Health Corp.*, 712 F.2d 1024, 1027-28 (6th Cir. 1983). Allowing expert opinions and arguments about this legally irrelevant total compensation point—without taking into account the governing legal test of different rates of pay—would serve only to engender juror confusion. This is exactly the type of misleading and confusing expert opinion testimony that is precluded by the Federal Rules.

**McCrary:** USSF denies that Dr. McCrary is offering the economic opinion—which is contrary to law—that because the compensation structures of the MNT and WNT contain different components and risk elements, they cannot be compared to determine that one compensation package is superior to another. But that is exactly what he opines. Using an economist to argue for a result that is contrary to the law is

not admissible because it is not helpful to the jury under Rule 702 and threatens to mislead under Rule 403.

## II.     ARGUMENT

### A.     Mr. Miscimarra's Testimony Should Be Excluded in Its Entirety

The opinion testimony of Mr. Miscimarra is inadmissible because, not only is it a legal argument, it is legally incorrect, highly misleading, and certain to lead to juror confusion.  While Plaintiffs have not contended, as USSF claims, that Mr. Miscimarra, merely by his vocation as a lawyer, could never provide expert testimony (Opp. at 17), all the cases USSF cites for this point *exclude* "expert" testimony of attorney witnesses precisely because they are offering inadmissible legal opinions.  *See Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 508-09 (2d Cir. 1977) (reversing as "an error of law and highly prejudicial" the district court's decision to allow testimony from an expert who "gave his opinion as to the legal standards…which should have governed [the parties'] conduct"); *Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1045 (D. Ariz. 2005) (excluding expert report that "offers nothing other than a discussion of the law and an application of the law"); *McDevitt v. Guenther*, 522 F. Supp. 2d 1272 (D. Haw. 2007) ("large portions of [the expert's] report are inadmissible because he makes legal conclusions, comments on the applicable law, and applies the law to the facts, thus invading the province of the court and the jury").[1]  These cases emphasize the particular risk of offering an attorney as an "expert" as there is a "danger [] that the jury may think that the 'expert' in the particular branch of law knows more

---

[1] USSF also cites *United States v. Kupau* for the proposition that "the Ninth Circuit has recognized the need for experts in "labor law, labor management relations, and collective bargaining agreements," but completely misstates the import of that case. 781 F.2d 740, 745 (9th Cir. 1986).  The *Kupau* court was merely describing the background of an expert whose testimony was limited to explaining the meaning of certain labor law terms used in FBI-taped conversations of the defendant, a union official.  *Id.*  That is a far cry from permitting a labor lawyer to provide his opinions on what legal principles should govern a case.

than the judge—surely an inadmissible inference in our system of law." *Marx*, 550 F.2d at 512.

Mr. Miscimarra's legal opinion testimony is particularly inappropriate because its misstates the law by arguing for a non-existent collective bargaining exemption from the gender discrimination laws stemming from the National Labor Relations Act—an invented legal proposition that no court has accepted and that appears nowhere in the statutes. *See, e.g.*, Miscimarra Report, Dkt. No. 167-2 at 9 (NLRA "contains an express limitation on the authority of … the courts to remedy unfair labor practices"); *id.* at 35 ("If wage provisions [in the WNT CBAs] were subjected to mid contract changes . . . this would arguably make the courts responsible, in the first instance, for overseeing future bargaining[,] . . . departing from [the] primary responsibility that Congress vested in the NLRB to regulate collective bargaining conduct."). These legal opinions, which are contrary to the clear holdings that collective bargaining agreements may not perpetuate discrimination in violation of Title VII and the EPA,[2] are inadmissible on their face. *See Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law.").

Indeed, Miscimarra's Report is often indistinguishable from the legal briefs that the USSF has filed in this case, arguing, as the USSF lawyers do, that if this Court grants relief to make "after-the-fact mid-contract changes" to the parties' CBA obligations "this would create a significant risk of undermining the NLRA's regulatory scheme." *Compare, e.g.*, Miscimarra Report, Dkt. 167-2 at 34, *with* Def.'s Opp. to Pls.' Mot. for Partial Summ. J., Dkt. 186 at 1-2 (allowing Plaintiffs' claims to proceed to trial "would be fundamentally inconsistent with federal labor law"). While such legal arguments, however erroneous, can be made in briefs filed with the Court, they do not belong before the jury in the guise of expert testimony. The numerous legal opinions of Miscimarra

---

[2] *See* Pls.' Mot. for Partial Summ. J., Dkt. No. 170 at 17, 24-25; Pls.' Opp. to Def.'s Mot. for Summ. J., Dkt. No. 187 at 16-18.

go far beyond making mere "references [to] the National Labor Relations Act," as USSF claims.³  Opp. at 18.

Even if some small modicum of Mr. Miscimarra's testimony went to the "norms and typical course of collective bargaining" as USSF claims (it does not),⁴ his opinions would still be excludable in their entirety under USSF's own case law, because they are "a time-consuming side journey through [the NLRA that] will complicate this already complex case and will not assist the trier of fact in understanding the evidence or deciding a disputed issue of fact." *Pinal Creek Group*, 352 F. Supp. 2d at 1045-46 (excluding entire report including "relevant and admissible" testimony on "corporate norms" to avoid complication and juror confusion).

At bottom, Miscimarra seeks to offer the jury his own legal views on the ultimate issues in the case, for example, opining that his "conclusions are consistent with court

---

³ USSF cites three inapposite cases to argue that mere "references" to law are allowed. Opp. at 18.  One of these, like many of USSF's other citations, reversed the district court's admission of attorney-witness testimony, citing the risk that "the jury may believe the attorney-witness, who is presented to them imbued with all the mystique inherent in the title 'expert' is more knowledgeable than the judge," and that "the potential is great that jurors will be confused … [which] may be compounded by different instructions given by the court." *Specht*, 853 F.2d at 809-10.  The other two cases involve testimony on the standards of bad faith in the insurance industry referencing state statutory requirements, which are a far cry from the pure legal arguments Mr. Miscimarra presents here—especially on subjects, like the NLRA, which have no place in this litigation. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F. 3d 998, 1017 (9th Cir. 2004); *Fidelity Nat'l Financial, Inc. v. Nat'l Union Fire Ins. Co.*, No. 09-CV-140-GPC-KSC, 2014 WL 1286392 (S.D. Cal. March 28, 2014).

⁴ Worse, the legal opinions USSF claims "would be extraordinarily helpful" to a jury, misstate the law by suggesting that an employer does not have a duty to modify a collective bargaining agreement that violates other federal laws, such as Title VII or the EPA.  Opp. at 19 (arguing that Miscimarra should be permitted to testify that it is "not typical for employers to voluntarily grant additional benefits" when the issue before the jury is whether the employer violated the discrimination laws by not providing equal pay for equal work).  Miscimarra's testimony would be the equivalent of telling the jury that it would not be typical for employers to voluntarily pay the minimum wage, when it is raised, if they have a CBA that provides for a lower rate of pay.

decisions that have found disparities resulting from collective bargaining involve a 'factor other than sex.'" Miscimarra Report, Dkt. No. 167-2 at 31. This is simply impermissible. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("[A]n expert witness cannot give an opinion as to [a] legal conclusion, i.e., an opinion on an ultimate issue of law").

Finally, USSF has no meaningful response to the inadmissibility of Miscimarra's many factual "opinions" about what the intentions of the parties were in collective bargaining. *E.g.*, Miscimarra Report, Dkt. No. 167-2 at 13, 19 ("The parties' intent for their relationship to focus on the relevant bargaining unit . . . is reflected in the 2000-2004 CBA's" and the "WNT CBAs also reflect the importance that the parties placed on compensation and benefit protection . . ."). Miscimarra is not a fact witness and his expertise as a lawyer does not permit him to invade the province of the jury and offer his own factual views about what the parties meant or intended in collective bargaining negotiations. *See, e.g.*, *Laney v. Felker*, 2010 WL 1610128, at *22 (C.D. Cal. April 19, 2010) (noting "an expert may be prohibited from expressing an opinion as to the subjective knowledge or intent of the defendant").

**B. Ms. Irwin's "Total" Compensation Analysis Should Be Excluded**

In defending Ms. Irwin's opinions on a total compensation comparison, USSF once again rehashes the same flawed argument about comparing the total compensation amounts to MNT players and WNT players that this Court previously rejected. *See* Minute Order, Dkt. 98 at 5. Permitting Irwin to offer a total compensation analysis that this Court has held to be legally irrelevant would just cause juror confusion and invade the province of the Court to instruct on the law.

Further, it is unclear why USSF spends pages of its opposition describing the various differences between the MNT and WNT CBA and case law regarding how to take into account different benefit packages in a wage discrimination case. These issues have nothing to do with Irwin's legally irrelevant total compensation comparisons. They go to the undisputed point that that all the elements of compensation and benefits

to the MNT players and WNT players should be accounted for in determining the amount of any discrimination, just as Plaintiffs' damages expert did in this case. Dkt. No. 167-7 Parsigian Declaration, Ex. 6, Cook Report at ¶ 49. But Irwin's total compensation analysis does not address this at all. It instead focuses just on total compensation paid—without regard to the number of games played or their outcome—the very analysis this Court has held to be legally irrelevant under the EPA and Title VII.[5]

The WNT players had to put in extraordinary performances in their jobs, winning two World Cups and achieving nearly every bonus possible, in order to earn a larger total compensation than the MNT players, who had the advantage of a much higher rate of pay. This Court has held that the total compensation comparison as a defense to a discrimination claim in this case would lead to absurd results, and Irwin should not be able to confuse the jury on this issue by presenting her legally irrelevant total compensation analysis at trial. *See Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 591 (1993) ("Rule 702 further requires that the evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue…. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (internal quotation marks omitted); *U.S. v. 87.98 Acres of Land*, 530 F.3d 899, 906 (9th Cir. 2008) (affirming district court's exclusion of expert testimony with "little to no probative value" that the proponent failed to connect to the relevant legal question because such testimony would "invite inferences…that were unsupported" and have a "potentially prejudicial effect").

Finally, there is no merit to the USSF contention that Ms. Irwin's total compensation comparison is relevant to the jury's determination of whether USSF had

---

[5] Indeed, even Dr. McCrary has stated that "any analysis of total compensation per game under either CBA must account for ... the given performance analyzed." McCrary Report at ¶ 31. The Irwin total compensation comparison does not make any performance related adjustments.

a discriminatory intent. That the WNT achieved unprecedented historical success and out-earned their MNT counterparts even though they were discriminated against in their rate of pay has no bearing on whether USSF's rate of pay discrimination was intentional or based on gender bias.

### C. Dr. McCrary's Erroneous Legal Opinions in the Guise of Economic Expert Testimony Should Be Excluded

Contrary to USSF's denials, Dr. McCrary is seeking to offer the erroneous legal opinion, in the guise of economic testimony, that "[t]he WNT and MNT CBAs are not comparable in their entirety." Indeed, this impermissible opinion is the heading to an entire section of his report. *See* McCrary Report at 16. He is also unequivocally offering the highly prejudicial, confusing and erroneous opinions—in the context of an EPA and Title VII trial—that the MNT and WNT compensation plans with different mixes of fixed and performance pay mean "different levels of risk … [such that] neither … is better or worse." *Id.* at 8. This economic opinion of Dr. McCrary is fundamentally inconsistent with the EPA and Title VII which provides for the comparison of different compensation packages with different benefits and bonus terms in order to determine whether unlawful pay discrimination exits. *See e.g. Berlotti v. Philbeck, Inc.*, 827 F. Supp. 1005, 1010 (S.D. Ga. 1993) (totaling plaintiff's base salary and the cost of her health benefit premiums); *Treadaway v. Societe Anonyme Louis-Dreyfus*, 894 F.2d 161, 169 (5th Cir. 1990) (valuing benefits at the amount of the employer's contributions); *Viveros v. Donahoe,* No. CV 10-08593 MMM EX, 2012 WL 6021667, at *6-*11 (C.D. Cal. Nov. 30, 2012) (valuing health and life insurance, annual vacation hours, sick leave, matching contribution to thrift savings plan, unemployment benefits, and seniority rights benefits at the cost to the employer).[6]

---

[6] USSF seeks to distinguish *Treadway* and *Viveros* but misses their import. The point is that courts are regularly called upon to value different benefits, including those that mitigate risk, and consistently do so without regard to the different risk profiles of litigants.

If this were not the law, then an employer could evade all EPA and Title VII obligations by simply shielding its discrimination in different pay package combinations (for example, providing male employees with a much higher and obtainable bonus structure while providing female employees with a slightly higher base compensation but a bonus structure that leaves them subject to substantial pay discrimination). It will only confuse the jury and prejudice Plaintiffs if Dr. McCrary is permitted to offer his opinions that the different structures of the MNT CBA and WNT CBA leads to the conclusion that they cannot be compared.

Even under USSF's own false framing of Dr. McCrary's "actual" opinions, those opinions are inadmissible under *Daubert*, FRE 702, and FRE 403. USSF characterizes Dr. McCrary's opinions as being that: (1) "neither the MNT nor the WNT contract is systematically better or worse," and (2) "there is no single rate of pay for either contract." Opp. at 2. Both of these opinions are unreliable and inadmissible.

As to McCrary's first claimed opinion that neither CBA is systematically better or worse, he reaches this result by not doing any analysis at all of the different rates of compensation for either the World Cup or any non-World Cup tournaments. This cherry picking of data renders it impossible for him to render any reliable or admissible opinion on the overall compensation package of the two CBAs. And, even with respect to friendlies, Dr. McCrary's opinions are totally divorced from the actual record facts as they are based upon hypotheticals that assume an unrealistically small number of games in comparison to the actual record facts. It is undisputed that during the class period since 2015, the WNT has played an average of 22 games per year, and the MNT has played an average of 17.25 games per year.[7] These facts destroy USSF's claims that Dr. McCrary's hypotheticals based on the WNT playing either 16 games per year

---

[7] *See* Dkt. No. 171-39, 171-40, King Declaration in Support of Defendant's Motion for Summary Judgment, Exs. 18 and 19, WNT Rankings and Results, MNT Rankings and Results.

or 8 games per year during the class period are realistic.[8] An expert's testimony based on assumptions that are in contradiction of the record facts is not admissible. *See Bakst v. Comm. Memorial Health System, Inc.*, 2011 WL 13214315, * 20 (C.D. Cal. Mar. 7, 2011) (citing *United States v. Rushing*, 388 F.3d 1153, 1156 (8th Cir. 2004) "Expert testimony should not be admitted when . . . the facts of the case contradict . . . the opinion").

Nor should Dr. McCrary be permitted to offer the opinion that neither the MNT CBA nor the WNT CBA have a single rate of pay to compare. As noted above, the law is clear that the entire package of compensation under each CBA can and should be compared to determine whether the MNT has been compensated at a discriminatory rate of pay. Any economic opinion by McCrary to the contrary will just confuse the jury.[9]

Equally inadmissible is McCrary's attempt to offer an "opinion" that there are "specific plaintiffs who have been paid more, overall, under the WNT collective bargaining agreements for significant stretches of time, than they would have been paid under the MNT collective bargaining agreement" in purported support of his further opinion that neither CBA is systematically better. Opp. at 3 (citing McCrary Report, ¶¶ 50-54). This "opinion" by McCrary is an inadmissible expert ipse dixit as it merely refers to the fact that a few of the class members received payment while injured or in

---

[8] Indeed, the WNT CBA requires that the WNT plays in at least 16 games per year. WNT CBA at Art. 5 § A. The MNT has played no fewer than 11 games in any year since 2014. *See* Dkt. No. 171-40, King Declaration in Support of Defendant's Motion for Summary Judgment, Ex. 19, MNT Rankings and Results.

[9] Dr. McCrary's hypotheticals further rely upon facts that are contradicted by the record by assuming that WNT contract players' base salary of $100,000 is only for friendly games played in a given year when that salary is also for being available to play in tournament games. To illustrate, if the WNT played in their average 22 games in a year, 16 of which were friendlies, Dr. McCrary's analysis assumes that all $100,000 in base salary is payment just for the 16 friendlies, and Plaintiffs receive no base compensation at all for the additional 6 tournament games. This assumption makes no sense and renders his opinions about rate of pay under the two CBAs wholly unreliable.

the form of severance payments—none of which support the conclusion that any of the Plaintiffs would have been paid "more overall" under the WNT CBA. To the contrary Plaintiffs' damages expert has shown, and USSF has not challenged, that each of the named Plaintiffs would have earned millions more *overall* if they had been paid under the MNT collective bargaining agreement for the class period, taking into account any maternity leave, injury protection or other benefits they would receive under the WNT CBA.[10]

In sum, because the identified McCrary opinions either are contrary to the law, contrary to the facts, or based on irrelevant and confusing economic assertions about risk that have nothing to do with a price discrimination analysis under the EPA or Title VII, they do not "logically advance [any] material aspect" of USSF's case, and the proffered testimony should be excluded. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (*citing Daubert II*, 43 F.3d. 1311, 1315 (9th Cir. 1995)).

### III. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and enter an Order excluding the expert testimony of Mr. Miscimarra in its entirety, the expert testimony of Ms. Irwin on "total compensation" comparisons between the WNT and the MNT (Irwin Report, 7-9 and 13-21), and the expert testimony of Dr. McCrary on the purported inability for a jury to compare the MNT and WNT CBAs to determine the existence of overall pay discrimination because of purported differences in the risk composition of the two CBAs' compensation packages. (McCrary Report, ¶¶ 12-15, 25, 27, and 29-56).

---

[10] *See* Cook Report, Appendix E (calculating damages for Megan Rapinoe ($3.76 million), Amy Rodriguez Shilling ($1.3, million), Tobin Heath ($3.73 million), Kelley O'Hara ($3.9 million), Meghan Klingenberg ($1.5 million)).

Dated: March 16, 2020

WINSTON & STRAWN LLP

By: */s/ Jeffrey L. Kessler*
Jeffrey L. Kessler

Attorneys for Plaintiffs