Jeffrey L. Kessler (*pro hac vice*)
jkessler@winston.com
David G. Feher (*pro hac vice*)
dfeher@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue, New York, NY 10166
Tel:   (212) 294-6700
Fax:   (212) 294-4700

Cardelle B. Spangler (*pro hac vice*)
cspangler@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive, Chicago, IL 60601
Tel:   (312) 558-5600
Fax:   (312) 558-5700

Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
Lev Tsukerman (SBN: 319184)
ltsukerman@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, Los Angeles, CA 90071
Tel:   (213) 615-1700
Fax:   (213) 615-1750

Jeanifer E. Parsigian (SBN: 289001)
jparsigian@winston.com
**WINSTON & STRAWN LLP**
101 California St., 35th Floor, San Francisco, CA 94111
Tel:   (491) 591-1000
Fax:   (491) 591-1400

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX MORGAN, et al., | **Case No. 2:19-CV-01717-RGK-AGR** |
| Plaintiffs, | Assigned to: Judge R. Gary Klausner |
| vs. | **PLAINTIFFS' OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| UNITED STATES SOCCER FEDERATION, INC., | |
| Defendant. | Date: March 30, 2020<br>Time: 9:00 A.M.<br>Courtroom: 850 |

Plaintiffs object to the following documents submitted in support of defendant United States Soccer Federation, Inc.'s ("USSF") Opposition to Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 186):

1. the February 20, 2020 Declaration of Sunil Gulati ("First Gulati Declaration"; Dkt. Nos. 171-3 and 186-4) and Exhibits 1-9, 11, and 14-16 thereto;

2. the March 9, 2020 Declaration of Sunil Gulati ("Second Gulati Declaration"; Dkt. No. 186-22) and Exhibit 1 thereto;

3. the February 20, 2020 Declaration of Tom King ("First King Declaration"; Dkt. Nos. 171-21 and 186-29) and Exhibits 7-9, 11-12, and 14-17 thereto;

4. the March 9, 2020 Declaration of Tom King ("Second King Declaration"; Dkt. No. 186-51) and Exhibit 2 thereto;

5. the February 4, 2020 Report of Carlyn Irwin ("Opening Irwin Report"; Dkt. Nos. 171-44 and 186-26);

6. the March 6, 2020 Supplemental Report of Carlyn Irwin ("Supplemental Irwin Report"; Dkt. No.192-1[1]);

7. the February 4, 2020 Expert Report of Justin McCrary ("Opening McCrary Report"; Dkt. No. 186-55);

8. the March 6, 2020 Expert Rebuttal Report of Justin McCrary ("Rebuttal McCrary Report"; Dkt. No. 186-56);

9. the March 9, 2020 Declaration of Ross Moses ("Moses Declaration"; Dkt. No. 186-57) and Exhibit 1 thereto;

10. the March 7, 2020 Declaration of Russell Sauer ("Sauer Declaration"; Dkt. No. 186-61); and

11. Dkt. Nos. 181-67, 68, 74-76, 78, 81, 85-92, 95, 96, 98, 99, 102, 103, and 106.

At bottom, a substantial portion of USSF's evidence in support of its opposition is not based on a declarant's personal knowledge.  And numerous exhibits have not

---

[1] On March 13, 2020, USSF filed a notice of errata attaching the Supplemental Irwin Report, which was not attached to its opposition filing. Dkt. No. 192-1.

been properly authenticated and are objectionable hearsay.  Thus, the testimony and exhibits outlined herein are inadmissible and insufficient to support its opposition under Fed. R. Civ. P. 56(e).  Evidence submitted to support or oppose a summary judgment motion must be admissible.  *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181–82 (9th Cir. 1988).  In order to be admissible, evidence must be relevant, not hearsay, and based on personal knowledge of the witness and on proper foundation.  *See* Fed. R. Evid. 401, 402, 403, 602, 802 and 901.

As the Ninth Circuit held in *Orr v. Bank of America, NT & SA*, "unauthenticated documents cannot be considered in a motion for summary judgment."  285 F.3d 764, 773 (9th Cir. 2002).  And "documents authenticated through personal knowledge must be 'attached to an affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.'"  *Id.* at 773–74 (quoting *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987)).

Here, and as set forth in more detail below, much of USSF's evidence lacks proper foundation and/or constitutes objectionable hearsay. As detailed below, this evidence should be disregarded in its entirety.  Moreover, Plaintiffs reserve all rights to raise further objections to the testimony and exhibits USSF submitted in opposition to Plaintiffs' Motion for Partial Summary Judgment if offered during pretrial proceedings or trial.  This includes objections made under Federal Rules of Evidence 402 and 403 and any other applicable objections.

Plaintiffs respectfully request the Court sustain the below objections as follows:

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| First Gulati Decl., ¶ 21 and Exhibit 1 | Lack of Personal Knowledge and Lack of Foundation (Fed. R. Evid. 602); Failure to Authenticate (Fed. R. Evid. 901); Hearsay (Fed. R. Evid. 801) |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | Exhibit 1 purports to be a Britannica Online Encyclopedia webpage stating that the FIFA Men's World Cup is "likely the most popular sporting event in the world." The First Gulati Declaration fails to establish that Mr. Gulati has personal knowledge of what the document is or its contents.<br><br>Exhibit 1 is also objectionable hearsay that does not meet any exception.<br><br>The document also fails to support the statement in Paragraph 21 of Mr. Gulati's declaration that the FIFA Men's World Cup is "often" described as anything, citing only a single document that does not even make that claim. |
| First Gulati Decl., ¶ 21 and Exhibit 2 | Lack of Personal Knowledge and Lack of Foundation (Fed. R. Evid. 602); Failure to Authenticate (Fed. R. Evid. 901); Hearsay (Fed. R. Evid. 801)<br><br>Exhibit 2 purports to be a report on viewership figures for the 2010 FIFA Men's World Cup, but the First Gulati Declaration fails to establish that Mr. Gulati has personal knowledge of what the document is or its contents.<br><br>Exhibit 2 is also objectionable hearsay that does not meet any exception. |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| First Gulati Decl., ¶ 21 and Exhibit 3 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602); <u>Failure to Authenticate</u> (Fed. R. Evid. 901); <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Exhibit 3 purports to be a television audience report for the 2014 FIFA Men's World Cup, but the First Gulati Declaration fails to establish that Mr. Gulati has personal knowledge of what the document is or its contents.<br><br>Exhibit 3 is also objectionable hearsay that does not meet any exception. |
| First Gulati Decl., ¶ 21 and Exhibit 4 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602); <u>Failure to Authenticate</u> (Fed. R. Evid. 901); <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Exhibit 4 purports to be a television audience report for the 2018 FIFA Men's World Cup, but the First Gulati Declaration fails to establish that Mr. Gulati has personal knowledge of what the document is or its contents.<br><br>Exhibit 4 is also objectionable hearsay that does not meet any exception. |
| First Gulati Decl., ¶ 22 and Exhibit 5 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602); <u>Failure to Authenticate</u> (Fed. R. Evid. 901); <u>Hearsay</u> (Fed. R. Evid. 801) |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | Exhibit 5 purports to be a television audience report for the 2011 FIFA Women's World Cup, but the First Gulati Declaration fails to establish that Mr. Gulati has personal knowledge of what the document is or its contents.

Exhibit 5 is also objectionable hearsay that does not meet any exception. |
| First Gulati Decl., ¶ 22 and Exhibit 6 | Lack of Personal Knowledge and Lack of Foundation (Fed. R. Evid. 602); Failure to Authenticate (Fed. R. Evid. 901); Hearsay (Fed. R. Evid. 801)

Exhibit 6 purports to be a television audience report for the 2015 FIFA Women's World Cup, but the First Gulati Declaration fails to establish that Mr. Gulati has personal knowledge of what the document is or its contents.

Exhibit 6 is also objectionable hearsay that does not meet any exception. |
| First Gulati Decl., ¶ 22 and Exhibit 7 | Lack of Personal Knowledge and Lack of Foundation (Fed. R. Evid. 602); Failure to Authenticate (Fed. R. Evid. 901); Hearsay (Fed. R. Evid. 801)

Exhibit 7 purports to be a television audience report for the 2019 FIFA Women's World Cup, but the First Gulati Declaration fails to establish that Mr. Gulati has personal knowledge of what the document is or its contents. |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | Exhibit 7 is also objectionable hearsay that does not meet any exception. |
| First Gulati Decl., ¶ 47 | <u>Lack of Foundation</u> (Fed. R. Evid. 602)<br><br>Mr. Gulati has not provided sufficient foundation for his statement that "[t]he unique opportunity to form a subsidiary to organize and host that tournament would not have existed if U.S. Soccer did not field a senior men's international soccer team." |
| First Gulati Decl., ¶ 48 | <u>Lack of Foundation</u> (Fed. R. Evid. 602)<br><br>Mr. Gulati has not provided sufficient foundation for his statement that "FIFA owns and monetizes all commercial rights associated with the FIFA World Cup and the FIFA Women's World Cup tournaments, such as television broadcast rights and the right to sell tickets to attend the games." |
| First Gulati Decl., ¶ 50 and Exhibit 8 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602); <u>Failure to Authenticate</u> (Fed. R. Evid. 901); <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Exhibit 8 purports to be a FIFA prize money memorandum for the 2010 FIFA Men's World Cup, but the First Gulati Declaration fails to establish that Mr. Gulati has personal knowledge of what the document is or its contents. |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | Exhibit 8 is also objectionable hearsay that does not meet any exception. |
| First Gulati Decl., ¶ 51 and Exhibit 9 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602); <u>Failure to Authenticate</u> (Fed. R. Evid. 901); <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Exhibit 9 purports to be a FIFA prize money memorandum for the 2011 FIFA Women's World Cup, but the First Gulati Declaration fails to establish that Mr. Gulati has personal knowledge of what the document is or its contents.<br><br>Exhibit 9 is also objectionable hearsay that does not meet any exception. |
| First Gulati Decl., ¶ 53 and Exhibit 11 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602); <u>Failure to Authenticate</u> (Fed. R. Evid. 901); <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Exhibit 11 purports to be a FIFA prize money memorandum for the 2015 FIFA Women's World Cup, but the First Gulati Declaration fails to establish that Mr. Gulati has personal knowledge of what the document is or its contents.<br><br>Exhibit 11 is also objectionable hearsay that does not meet any exception. |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| First Gulati Decl., ¶ 54 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602)<br><br>Mr. Gulati lacks personal knowledge and has not provided sufficient foundation for his statement that "FIFA awarded $38 million in prize money to the French Football Federation because France won the 2018 FIFA World Cup." |
| First Gulati Decl., ¶ 66 and Exhibit 14 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602); <u>Failure to Authenticate</u> (Fed. R. Evid. 901)<br><br>Exhibit 14 purports to be a November 1, 2012 memorandum from the WNTPA to USSF, but the First Gulati Declaration fails to establish that Mr. Gulati has personal knowledge of what the document is or its contents. |
| First Gulati Decl., ¶ 67 | <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>The following testimony from Mr. Gulati is objectionable hearsay: "WNT player Lauren Cheney communicated to us during that meeting that the players were grateful for what they were paid and understood that they were among the highest compensated teams in the world."<br><br>Ms. Cheney is an absent class member whose statement would not qualify as a party admission. |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| First Gulati Decl., ¶ 68 and Exhibit 15 | Hearsay (Fed. R. Evid. 801)<br><br>Exhibit 15 purports to be a December 4, 2012 email from USSF's Chief Financial Officer, Eric Gleason, to representatives of the WNTPA. It is objectionable hearsay that does not meet any exception when offered by USSF.<br><br>Paragraph 68 is also objectionable hearsay when offered by USSF as it summarizes the contents of the document. |
| First Gulati Decl., ¶ 70 and Exhibit 16 | Hearsay (Fed. R. Evid. 801)<br><br>Exhibit 16 is objectionable hearsay that does not meet any exception when offered by USSF.<br><br>Paragraph 70 is also objectionable hearsay when offered by USSF as it summarizes the contents of the document. |
| Second Gulati Decl., ¶ 4 | Lack of Foundation (Fed. R. Evid. 602)<br><br>Mr. Gulati has not provided sufficient foundation for his statement that "U.S. Soccer's Board of Directors determined that it wanted to provide financial support to the NWSL by paying WNT players to play in the NWSL because the Board believed that having a stable professional women's soccer league in the United States would further the mission of U.S. Soccer." |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| Second Gulati Decl., ¶ 5 and Exhibit 1 | <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Exhibit 1 is objectionable hearsay that does not meet any exception when offered by USSF.<br><br>The following testimony from Mr. Gulati is objectionable hearsay: "For example, one WNT player, Whitney Engen, expressed to me in an email that she felt 'strongly that a domestic league is crucial for the development of women's soccer, especially at the USWNT level.'" |
| Second Gulati Decl., ¶ 6 | <u>Lack of Foundation</u> (Fed. R. Evid. 602)<br><br>Mr. Gulati has not provided sufficient foundation for his statement that "[t]elevision ratings were and still are the predominant metric U.S. Soccer used (and uses) in estimating the comparative economic value of the broadcast rights to WNT and MNT games, as well as to the comparative contribution of the two teams to the economic value of sponsorship agreements." |
| Second Gulati Decl., ¶ 7 | <u>Lack of Foundation</u> (Fed. R. Evid. 602); <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Mr. Gulati has not provided sufficient foundation for his statement, "I suggested to the WNTPA that the parties could have a third party analyze the sponsorship and broadcast revenue received from SUM and determine how much of it |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | was attributable to the MNT versus the WNT. The WNTPA did not accept this offer." It is also objectionable hearsay that does not meet any exception. |
| Second Gulati Decl., ¶ 10 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602)<br><br>Mr. Gulati lacks personal knowledge and has not provided sufficient foundation for his statement, "Historically, and even today, the MNT competes in a pool of relatively stronger competition than the WNT does, within each team's own realm of competition. This results from a number of factors outside U.S. Soccer's control. For example, most men's national team programs in other countries are older and more established, many more FIFA members have a domestic professional men's soccer league than have a professional women's soccer league, and (unlike U.S. Soccer) most FIFA members invest far more in their men's soccer programs than in their women's programs. Although the gap in relative strength of competition has been closing over the past 20 years as more countries invest more in their women's teams and otherwise provide more opportunity for women in the sport, the relative depth and strength of competition still is not as high at the senior women's level as it is at the senior men's level." |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| Second Gulati Decl., ¶ 15 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602)<br><br>Mr. Gulati lacks personal knowledge and has not provided sufficient foundation for his statement, "The results of friendly matches, such as those in the SheBelieves Cup or Tournament of Nations, are not as heavily weighted in FIFA's team rankings as those in non-friendly competitions such as the Gold Cup, Copa America, or the FIFA Confederations Cup. For this reason and others, in the world of international soccer there is more prestige involved in winning an official continental championship, such as the Gold Cup or Copa America, than in winning a friendly tournament such as the SheBelieves Cup or Tournament of Nations. This additional prestige results from factors such as the number of participants in the tournaments, the fact that the continental championships are continental championships in the first place (and not friendly matches), the fact that they include knockout rounds and a final match, and the comparative age of the tournaments. Copa America, for example, is even older than the World Cup, having been played since 1916. The Gold Cup has been contested since 1991. The FIFA Confederations Cup also was more prestigious than the SheBelieves Cup or Tournament of Nations are at present, for similar reasons. There were more participants. It was a tournament for which participants |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | (other than the host) had to qualify, generally by winning their own continental championship or the World Cup. It included knockout rounds and a final match." |
| Second Gulati Decl., ¶ 16 | <u>Lack of Foundation</u> (Fed. R. Evid. 602)<br><br>Mr. Gulati has not provided sufficient foundation for his statement, "U.S. Soccer has for years advocated to FIFA for increased prize money for the Women's World Cup and continues to do so today. In addition, one of the reasons I recommended that U.S. Soccer pay WNT players an additional NWSL salary, plus benefits, for playing in the NWSL was the fact that I believed it would be a benefit to the players themselves to have access to and participate in a top-tier domestic women's professional soccer league." |
| Opening Irwin Report | <u>Unreliable Expert Testimony</u> (Fed. R. Evid. 702); <u>Prejudicial Evidence</u> (Fed. R. Evid. 403)<br><br>Ms. Irwin's Opening Expert Report evinces legally erroneous methodology that is misleading, contrary to governing law, and confusing to the jury. *See* Pls.' Mot. to Exclude, Dkt. No. 167. |
| Supplemental Irwin Report | <u>Unreliable Expert Testimony</u> (Fed. R. Evid. 702); <u>Prejudicial Evidence</u> (Fed. R. Evid. 403)<br><br>Ms. Irwin's Supplemental Expert Report, like her Opening Expert Report, evinces legally erroneous methodology that |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | is misleading, contrary to governing law, and confusing to the jury. *See* Pls.' Mot. to Exclude, Dkt. No. 167. |
| First King Decl., ¶ 18 | <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>The following testimony from Mr. King is objectionable hearsay: "Members of U.S. Soccer's negotiating committee informed [Mr. Nichols] during that meeting that U.S. Soccer was interested only in negotiating a new contract to commence in 2017, after the expiration of the 2013-2016 agreement. … Ms. Shalala and Ms. Levine both stated during the March 15 meeting that if the WNTPA wanted the lawsuit to go away, U.S. Soccer needed assurances that the WNT players would not go on strike." |
| First King Decl., ¶ 20 | <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>The following testimony from Mr. King is objectionable hearsay: "In addition to other things the parties discussed, Ms. Levine asked for clarification of the section of the WNTPA's January 4 proposal entitled 'Various Bonuses,'" and "Mr. Sauer explained that the U-23 MNT does not receive bonuses for the Olympics, and Ms. Levine explained that if FIFA would increase the amount it pays to soccer federations in connection with the FIFA Women's World Cup, then U.S. Soccer could look at increasing the amount paid to the WNT for participating in that event." |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| First King Decl., ¶ 21 and Exhibit 7 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602); <u>Failure to Authenticate</u> (Fed. R. Evid. 901); <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Exhibit 7 purports to be a May 13, 2016 email from Lisa Levine to Rich Nichols, but the First King Declaration fails to establish that Mr. King has personal knowledge of what the document is or its contents.<br><br>Exhibit 7 is also objectionable hearsay when offered by USSF as it summarizes the contents of the document.<br><br>Paragraph 21 is also objectionable hearsay when offered by USSF as it summarizes the contents of the document. |
| First King Decl., ¶ 22 | <u>Lack of Foundation</u> (Fed. R. Evid. 602)<br><br><u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Mr. King has not provided any foundation for his testimony that "The May 13 proposal was structured as a 'pay-to-play' proposal. The 2013-2016 collective bargaining agreement was not a pay-to-play compensation structure because WNT players earned annual salaries that were paid to them even when they did not play.  Under a 'pay-to-play' compensation structure, such as the one in the MNT's 2011-2018 collective bargaining agreement, players receive a |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | specific payment associated with a specific training camp, game, or tournament, but only if the player makes the roster for the particular camp, game, or tournament."<br><br>This testimony is also objectionable hearsay when offered by USSF that fails to meet any exception. |
| First King Decl., ¶ 23 | <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>The following testimony from Mr. King is objectionable hearsay when offered by USSF that fails to meet any exception: "Ms. Levine responded that there are no guarantees with pay-to-play." |
| First King Decl., ¶ 24 and Exhibit 8 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602); <u>Failure to Authenticate</u> (Fed. R. Evid. 901)<br><br>Exhibit 8 purports to be a June 1, 2016 email from Mr. Nichols to Ms. Levine, but the First King Declaration fails to establish that Mr. King has personal knowledge of what the document is or its contents. |
| First King Decl., ¶ 25 | <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>The following testimony from Mr. King is objectionable hearsay that does not meet any exception: "At this meeting, Ms. Levine described the WNTPA's proposal as being the MNT's collective bargaining agreement, 'plus, plus, plus,' and she reviewed nine broad categories of items the |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | WNTPA had proposed that the MNT players do not receive. She also stated that U.S. Soccer could add a guarantee of 70 games per quad to its pay-to play proposal, as well as a guaranteed minimum of 18 players in each training camp, but that the guarantees would not be player specific. In other words, she explained that no particular player would have a guarantee of being paid anything at all, just like under the MNT's contract.  Ms. Levine also observed that the expiring 2013-2016 WNT agreement contained a contract provision concerning a compensation-to-revenue ratio, and she said that U.S. Soccer would work to create a ratio with FIFA prize money, as well." |
| First King Decl., ¶ 29 and Exhibit 9 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602); <u>Failure to Authenticate</u> (Fed. R. Evid. 901)<br><br><u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Exhibit 9 purports to be a July 6 email from Ms. Levine to Mr. Nichols, but the First King Declaration fails to establish that Mr. King has personal knowledge of what the document is or its contents.<br><br>Exhibit 9 is also objectionable hearsay when offered by USSF that fails to meet any exception. |
| First King Decl., ¶ 30 | <u>Hearsay</u> (Fed. R. Evid. 801) |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | The following testimony from Mr. King is objectionable hearsay that does not meet any exception: "During this meeting, Ms. Levine reiterated U.S. Soccer's view that the WNTPA was demanding nine categories of items the MNT players did not receive and listed them as follows: (1) guarantees regarding minimum annual compensation and a minimum number of games per year, (2) automatic increases in WNT compensation if the MNT's compensation increases, (3) continued compensation during periods of injury, (4) continued compensation during periods of pregnancy, (5) severance, (6) post-termination health insurance, (7) retirement benefits, (8) significant financial support of a professional league and (9) a guaranteed number of players 'contracted' each year.  Mr. Feher explained that while the WNTPA had asked for these things, it was a negotiation.  U.S. Soccer President Sunil Gulati was present for this meeting, and he explained that U.S. Soccer was not willing to consider the WNTPA's proposals on compensation without factoring in the cost of these nine items.  Although the parties had some additional discussion during the meeting regarding their bargaining positions, no new proposals were presented by either party.  During the discussion, Mr. Gulati said that there was one item in the WNTPA's proposal that would 'break' U.S. Soccer, and that was the WNTPA's proposal related to World Cup bonuses.  He explained that the amount of prize |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | money received from FIFA for the men's World Cup was vastly different from the prize money received from FIFA for the Women's World Cup.  He also noted that the WNT players were paid more than $2 million for winning the 2015 Women's World Cup even though the total prize money U.S. Soccer received was $2 million.  (The winning players had received bonuses totaling $1,725,000 for winning the tournament and $345,000 for making the tournament roster, for a total of just over $2 million.  This was in addition to the $345,000 for qualifying and the $1,800,000 payment for the post-tournament Victory Tour.)" |
| First King Decl., ¶ 34 | <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>The following testimony from Mr. King is objectionable hearsay that does not meet any exception: "Mr. Sauer informed the WNTPA's representatives that U.S. Soccer was rejecting the concept of an overall revenue-sharing proposal and advised that U.S. Soccer would present a proposal based on a different structure." |
| First King Decl., ¶ 36 and Exhibit 11 | <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Exhibit 11 purports to be a collective bargaining proposal made by USSF on February 9, 2017. It is objectionable hearsay when offered by USSF that fails to meet any exception. |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| First King Decl., ¶ 37 and Exhibit 12 | <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Exhibit 12 purports to be a collective bargaining proposal made by USSF on February 11, 2017. It is objectionable hearsay when offered by USSF that fails to meet any exception. |
| First King Decl., ¶ 39 and Exhibit 14 | <u>Failure to Authenticate</u> (Fed. R. Evid. 901)<br><br>Exhibit 14 purports to be a collective bargaining proposal made by the WNTPA on February 15, 2017, but the First King Declaration fails to authenticate the document. |
| First King Decl., ¶ 40 and Exhibit 15 | <u>Failure to Authenticate</u> (Fed. R. Evid. 901)<br><br>Exhibit 15 purports to be a collective bargaining proposal made by the WNTPA on March 9, 2017, but the First King Declaration fails to authenticate the document. |
| First King Decl., ¶ 41 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602)<br><br>Mr. King lacks personal knowledge and has not provided sufficient foundation for his statement, "At a bargaining session on March 15, 2017, the WNTPA made a PowerPoint a [*sic*] presentation on the subject of compensation. Among other things, the presentation explained the WNTPA's views on the 'benefits of being a contracted player with the USWNT,' including: (1) cachet |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | as a player; (2) regular paycheck (financial stability); (3) health insurance; (4) vision/dental insurance; (5) downside risk protection for injury with paid injury leave; and (6) paid maternity/adoption leave." |
| First King Decl., ¶ 42 and Exhibit 16 | Hearsay (Fed. R. Evid. 801) Exhibit 16 purports to be a collective bargaining proposal made by USSF on March 16, 2017, but it is objectionable hearsay when offered by USSF that fails to meet any exception, along with Mr. King's description of its contents and his statement, "During this meeting, Mr. Gleason advised the WNTPA's representatives that U.S. Soccer was considering the overall cost of the collective bargaining agreement and that the annual $350,000 group likeness payment was factored into that." |
| First King Decl., ¶ 43 and Exhibit 17 | Failure to Authenticate (Fed. R. Evid. 901) Exhibit 17 purports to be a collective bargaining proposal made by the WNTPA on March 29, 2017, but the First King Declaration fails to authenticate the document. |
| First King Decl., ¶ 44 | Hearsay (Fed. R. Evid. 801) The following testimony from Mr. King is objectionable hearsay that does not meet any exception: "During this session, Mr. Gulati advised the WNTPA's representatives that U.S. Soccer needed to understand what the overall cost |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | of the deal would be and that items the players were asking for, such as single occupancy hotel rooms and business class flights, all have costs associated with them." |
| First King Decl., ¶ 45 | <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>The following testimony from Mr. King is objectionable hearsay: "During that meeting, Mr. Gulati informed the WNTPA representatives that the WNTPA's compensation proposal would cost U.S. Soccer $1.6 million more in total than U.S. Soccer's proposal and said the WNTPA would have to reduce the total cost of its proposals by $500,000 to reach a deal." |
| First King Decl., ¶ 47 | <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>The following testimony from Mr. King is objectionable hearsay that does not meet any exception: "Coach Ellis told me that she believed it was important to do so for the team's competitive advantage." |
| Second King Decl., ¶ 2 | <u>Lack of Foundation</u> (Fed. R. Evid. 602)<br><br>Mr. King has not provided sufficient foundation for his statement, "The ultimate approval of the budget for each team is given by U.S. Soccer's Board of Directors and National Council, the latter of which actually includes athletes, including some of the plaintiffs in the *Alex Morgan*, et al., lawsuit." |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| Second King Decl., ¶ 9 | Hearsay (Fed. R. Evid. 801)<br><br>The following testimony from Mr. King is objectionable hearsay that does not meet any exception: "At the start of negotiations, Becca Roux stated that the Women's National Team Players Association representatives had 'made it very clear' earlier that month that they were 'not interested in pay-to-play.'" |
| Second King Decl., ¶ 11 and Exhibit 2 | Hearsay (Fed. R. Evid. 801)<br><br>Exhibit 2 purports to be USSF payroll submission forms, but it is objectionable hearsay when offered by USSF that fails to meet any exception, along with Mr. King's description of its contents and his statement, "The players listed in the top portion of the payroll submissions are the current 'Contracted' players under the 2017 CBA, with the exception of Morgan Brian, whose contract was terminated in December 2019 and who is currently receiving severance pay and who has not played for the team since November 2019. Mallory Pugh was not selected for the team's Olympic qualifying roster earlier this year, but you can see that she continued to receive her annual salary during the entire qualifying tournament. Alex Morgan, one of the current Contracted players, is on pregnancy leave, and Exhibit 2 reflects that she is currently receiving pregnancy pay at 75% of her salary, in accordance with the 2017 CBA. |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | The players in the bottom portion of the payroll submissions are 'Non-Contracted' players under the 2017 CBA." |
| Second King Decl., ¶ 12 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602); <u>Calls for Speculation</u><br><br>Mr. King lacks personal knowledge and has not provided sufficient foundation for his speculation that "there is no reasonable possibility that a Non-Contracted player will make the Olympic Games roster who will earn any per-game appearance fee other than the $4,000 fee. Any WNT player who plays in all Olympic qualifiers and the Olympic Games (whether a Contracted or Non-Contracted player, assuming she is not a collegiate athlete) would be paid the following bonuses if the team wins the Olympic Gold Medal: $15,000 ($3,000 per win for five qualifying matches, which the team already did win) + $25,000 for qualifying + $25,000 for making the Olympic roster + $100,000 for winning the Gold Medal. That is a total of $165,000. The player also would receive additional money for a post-tournament tour, similar to the 'Victory Tour' after the Women's World Cup." |
| Second King Decl., ¶ 13 | <u>Lack of Foundation</u> (Fed. R. Evid. 602)<br><br>Mr. King has not provided sufficient foundation for his statement, "The most an MNT player could conceivably |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | have earned from any non-World Cup tournament during the term of the current 2017-2021 WNT CBA, applying the provisions of the 2011-2018 MNT CBA, is $150,500; that could have occurred only if the MNT had been invited to play in the 2020 Copa America (it was not) and if the MNT proceeded to win every game it played in the tournament, including the championship." |
| Second King Decl., ¶ 15 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602)<br><br>Mr. King lacks personal knowledge and has not provided sufficient foundation for his statement, "Aside from the teams' friendly matches, the identity of the WNTs and the MNT's opponents is not determined by U.S. Soccer. U.S. Soccer also does not decide on the location of matches for the WNT's and MNT's competitive tournaments (e.g., Olympic Games, World Cup, Women's World Cup, Gold Cup) with the exception that it does have the opportunity to determine the venue for home (but not road) men's World Cup qualifiers. With respect to friendlies, the selection of each team's opponents for these matches is driven largely by the Head Coach." |
| Second King Decl., ¶ 16 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602) |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | Mr. King lacks personal knowledge and has not provided sufficient foundation for his statement, "Opposing fan hostility encountered by MNT players while playing opponents on the road, especially in Mexico and Central America and especially in World Cup qualifiers, is unmatched by anything the WNT must face while trying to qualify for an important tournament. Even the hostility of fans at home crowds for the MNT in some friendlies can be unlike anything the WNT faces." |
| Second King Decl., ¶ 18 | <u>Lack of Foundation</u> (Fed. R. Evid. 602)<br><br>Mr. King has not provided sufficient foundation for his statement, "To win the Gold Cup, Confederations Cup, or Copa America at any time since 2015, the MNT would have needed to play at least two more matches than the WNT plays in the SheBelieves Cup or Tournament of Nations and would have needed to win at least two single-elimination knockout-round matches." |
| Second King Decl., ¶ 19 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602)<br><br>Mr. King lacks personal knowledge and has not provided sufficient foundation for his statement, "During collective bargaining negotiations in 2016 and 2017, no one representing the WNTPA nor any player nor anyone representing U.S. Soccer ever suggested that playing in the |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | SheBelieves Cup or Tournament of Nations should be compensated like playing in the Gold Cup, Copa America, or Confederations Cup." |
| Opening McCrary Report | <u>Unreliable Expert Testimony</u> (Fed. R. Evid. 702); <u>Prejudicial Evidence</u> (Fed. R. Evid. 403)<br><br>Dr. McCrary's Opening Expert Report contains reasoning and opinions that are misleading, contrary to governing law, and confusing to the jury. *See* Pls.' Mot. to Exclude, Dkt. No. 167. |
| Rebuttal McCrary Report | <u>Unreliable Expert Testimony</u> (Fed. R. Evid. 702); <u>Prejudicial Evidence</u> (Fed. R. Evid. 403)<br><br>Dr. McCrary's Rebuttal Expert Report, like his Opening Expert Report, contains reasoning and opinions that are misleading, contrary to governing law, and confusing to the jury. *See* Pls.' Mot. to Exclude, Dkt. No. 167. |
| Moses Decl., ¶ 3 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602)<br><br>Mr. Moses lacks personal knowledge and has not provided sufficient foundation for his statement: "The television ratings data is produced and recorded by Nielsen Media |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
|  | Research ('Nielsen'), the well-known company that serves as the industry standard for measuring the size of television audiences for sporting events (and other television programming). Nielsen produces and records the data at or around the time of each match (within 5 business days)." |
| Moses Decl., ¶ 5 and Exhibit 1 | <u>Lack of Foundation</u> (Fed. R. Evid. 602); <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Exhibit 1 purports to be television viewership or attendance numbers maintained by USSF and compiled original by Nielsen Media Research. But Mr. Moses (an employee of USSF) has not provided sufficient foundation, and to the extent Exhibit 1 is a reproduction or recompilation of data or information originally from Nielsen Media Research, it is also objectionable hearsay that does not meet any exception. |
| Sauer Decl., ¶ 4 | <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>The following testimony from Mr. Sauer is objectionable hearsay that does not meet any exception: "I elaborated on that point by explaining that U.S. Soccer took historical revenue generation, attendance, and television ratings into account in framing its proposal and that the bonuses included in U.S. Soccer's proposal were directly related to those specific market realities. I also reminded the WNTPA representatives that the contract provision found in the then |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
|  | existing (2013-2016) collective bargaining agreement between the parties entitled 'Additional Payment if Compensation Ratios Change' was designed to ensure that the Women's National Team players were compensated fairly and equitably based on the revenue they generated. That provision said that they would be guaranteed at least the same ratio of aggregate compensation to aggregate revenue from all women's national team games (including all games in U.S. Soccer promoted women's tournaments) as the Men's National Team players received from all men's national team games (including all games in U.S. Soccer promoted men's tournaments). At the time, U.S. Soccer's proposal contemplated the continued inclusion of that language in the new collective bargaining agreement the parties were negotiating." |
| Dkt. No. 186-67 | <u>Failure to Authenticate</u> (Fed. R. Evid. 901)<br><br>Dkt. No. 186-67 purports to be a news article from Sports Illustrated titled "American Voices Meghan Klingenberg." USSF has not presented any evidence to authenticate the document. |
| Dkt. No. 186-68 | <u>Failure to Authenticate</u> (Fed. R. Evid. 901)<br><br><u>Hearsay</u> (Fed. R. Evid. 801) |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | Dkt. No. 186-68 purports to be excerpts from the transcript of John Langel's March 24, 2016 deposition in a separate matter. But no witness has authenticated the document.<br><br>This document is also objectionable hearsay that does not meet any exception. |
| Dkt. No. 186-74 | <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Dkt. No. 186-74 purports to be a December 10, 2012 letter from Lisa Levine to John Langel.  This document is objectionable hearsay when offered by USSF that fails to meet any exception. |
| Dkt. No. 186-75 | <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Dkt. No. 186-75 purports to be a February 20, 2013 email from Lisa Levine to John Langel and Ruth Uselton.  This document is objectionable hearsay when offered by USSF that fails to meet any exception. |
| Dkt. No. 186-76 | <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Dkt. No. 186-76 purports to be a February 19, 2013 letter from Lisa Levine to John Langel.  This document is objectionable hearsay when offered by USSF that fails to meet any exception. |
| Dkt. No. 186-78 | <u>Hearsay</u> (Fed. R. Evid. 801) |

30

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | Dkt. No. 186-78 purports to be a March 5, 2013 email and corresponding attachment from Lisa Levine to John Langel and Sunil Gulati.  This document is objectionable hearsay when offered by USSF that fails to meet any exception. |
| Dkt. No. 186-81 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602); <u>Failure to Authenticate</u> (Fed. R. Evid. 901)<br><br>Dkt. No. 186-81 purports to be an August 31, 2015 email from Carli Lloyd to Josh Weil. But no witness has authenticated the document or claimed personal knowledge of the document. Nor has USSF provided any foundation for this document. |
| Dkt. No. 186-85 | <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Dkt. No. 186-85 purports to be a February 5, 2015 email from Lisa Levine to Rich Nichols.  This document is objectionable hearsay when offered by USSF that fails to meet any exception. |
| Dkt. No. 186-86 | <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Dkt. No. 186-86 purports to be a September 29, 2015 email and attachment from Lisa Levine to Rich Nichols.  This document is objectionable hearsay when offered by USSF that fails to meet any exception. |
| Dkt. No. 186-87 | <u>Hearsay</u> (Fed. R. Evid. 801) |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | Dkt. No. 186-87 purports to be an August 28, 2015 email from Rich Nichols to Lisa Levine.  This document is objectionable hearsay when offered by USSF that fails to meet any exception. |
| Dkt. No. 186-88 | Hearsay (Fed. R. Evid. 801)<br><br>Dkt. No. 186-88 purports to be an October 28, 2015 email from Rich Nichols to Lisa Levine.  This document is objectionable hearsay when offered by USSF that fails to meet any exception. |
| Dkt. No. 186-89 | Failure to Authenticate (Fed. R. Evid. 901)<br><br>Dkt. No. 186-89 purports to be a December 24, 2015 email and corresponding attachment from Rich Nichols to Lisa Levine. USSF has not presented any evidence to authenticate this document. |
| Dkt. No. 186-90 | Failure to Authenticate (Fed. R. Evid. 901)<br><br>Dkt. No. 186-90 purports to be a January 4, 2016 email and corresponding attachment from Rich Nichols to Lisa Levine.  USSF has not presented any evidence to authenticate this document. |
| Dkt. No. 186-91 | Failure to Authenticate (Fed. R. Evid. 901)<br><br>Dkt. No. 186-91 purports to be an email chain ending with a June 20, 2016 email from Rich Nichols to Lisa Levine. |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | USSF has not presented any evidence to authenticate this document. |
| Dkt. No. 186-92 | <u>Failure to Authenticate</u> (Fed. R. Evid. 901)<br><br>Dkt. No. 186-92 purports to be a July 22, 2016 email from Rich Nichols to Lisa Levine.  USSF has not presented any evidence to authenticate this document. |
| Dkt. No. 186-95 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602); <u>Failure to Authenticate</u> (Fed. R. Evid. 901); <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Dkt. No. 186-95 purports to be a transcript of video from USSF_Morgan_042310. But no witness has authenticated the document or the underlying video, or claimed personal knowledge of the document or underlying video. Nor has USSF provided any foundation for this document or the underlying video.<br><br>This document is also objectionable hearsay that does not meet any exception. |
| Dkt. No. 186-96 | <u>Lack of Personal Knowledge and Lack of Foundation</u> (Fed. R. Evid. 602); <u>Failure to Authenticate</u> (Fed. R. Evid. 901)<br><br><u>Hearsay</u> (Fed. R. Evid. 801) |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | Dkt. No. 186-96 purports to be a July 6, 2019 tweet from Caitlin Murray. But no witness has authenticated the document or claimed personal knowledge of the document. Nor has USSF provided any foundation for this document.<br><br>This document is also objectionable hearsay that does not meet any exception. |
| Dkt. No. 186-98 | <u>Failure to Authenticate</u> (Fed. R. Evid. 901)<br><br><u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Dkt. No. 186-98 purports to be the Constitution and By-Laws of the United States Women's National Soccer Team Players Association. USSF has not presented any evidence to authenticate the document.<br><br>This document is also objectionable hearsay that does not meet any exception. |
| Dkt. No. 186-99 | <u>Hearsay</u> (Fed. R. Evid. 801)<br><br>Dkt. No. 186-98 purports to a July 31, 2018 Letter of Understanding between the WNTPA and USSF. This document is objectionable hearsay that does not meet any exception. |
| Dkt. No. 186-102 | <u>Hearsay</u> (Fed. R. Evid. 801) |

| Evidence | Plaintiffs' Evidentiary Objections |
|---|---|
| | Dkt. No. 186-102 purports to be various spreadsheets of calculations of compensation for certain WNT players. This document is objectionable hearsay that does not meet any exception. |
| Dkt. No. 186-103 | Failure to Authenticate (Fed. R. Evid. 901)<br><br>Dkt. No. 186-103 purports to be a March 29, 2017 collective bargaining proposal. USSF has not presented any evidence to authenticate the document. |
| Dkt. No. 186-106 | Failure to Authenticate (Fed. R. Evid. 901)<br><br>Hearsay (Fed. R. Evid. 801)<br><br>Dkt. No. 186-106 purports to be Defendant United States Soccer Federation, Inc.'s Supplemental Answers to Plaintiffs' Interrogatory Nos. 1, 2, 5, 6, and 11.  USSF has failed to provide any evidence authenticating this document. This document is also objectionable hearsay when offered by USSF that fails to meet any exception. |

Dated:  March 16, 2020                WINSTON & STRAWN LLP

By:  */s/ Jeffrey L. Kessler*
        Jeffrey L. Kessler

Attorneys for Plaintiffs