Jamie L. Wine (Bar No. 181373)
Email: jamie.wine@lw.com
**LATHAM & WATKINS LLP**
885 Third Avenue
New York, NY 10022
Phone: (212) 906-1200

Michele D. Johnson (Bar No. 198298)
E-mail: michele.johnson@lw.com
**LATHAM & WATKINS LLP** 650
Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Phone: (714) 540-1235

Counsel for Defendant
U.S. SOCCER FEDERATION, INC.
(*Additional counsel identified on
signature page*)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX MORGAN, et al., | Case No. 2:19-cv-01717-RGK-AGR |
| Plaintiffs, | **DEFENDANT'S RESPONSE TO PLAINTIFFS' EVIDENTIARY OBJECTIONS** |
| v. | |
| U.S. SOCCER FEDERATION, INC., | Judge: Hon. R. Gary Klausner |
| Defendant. | Hearing: March 30, 2020 at 9:00 a.m. |
| | Place: Courtroom 850 |

i

## I.    Introduction

Plaintiffs' Objections to Evidence Submitted in Support of Defendant's Motion for Summary Judgment ("Objections") are meritless. At the outset, the Objections ignore that at summary judgment, only the substance of proffered evidence must be admissible, not the form. *See Dinkins v. Schinzel,* 362 F. Supp. 3d 916, 922-923 (D. Nev. 2019) (citing 2010 Amendment to Fed. R. Civ. P. 56 and disregarding all objections on authenticity at summary judgment, as the substance itself could be admissible at trial); *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents") (citing *Block v. City of Los Angeles*, 253 F. 3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")). Accordingly, the majority of Plaintiffs' objections (including on authenticity and foundation) are patently premature.[1]

Substantively, the Objections assert arguments with no basis in the law, or even common sense. For example, Plaintiffs object that Sunil Gulati, a 35-year veteran of the world of international soccer, former President of U.S. Soccer from 2006-2018, and member of the FIFA Council (f/k/a FIFA Executive Committee), does not have the requisite personal knowledge to attest to rudimentary facts about the landscape of international soccer. Similarly, Plaintiffs object that Mr. Gulati and Tom King cannot proffer evidence regarding events at collective bargaining negotiations, despite the fact that both were members of U.S. Soccer's negotiating team and attended bargaining sessions.

---

[1] Despite Plaintiffs' premature Objections, Defendant still addresses each in turn. However, this discussion does not waive Defendant's argument on the premature nature of the Objections, and Defendant hereby seeks to incorporate this argument to each of the below discussions.

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Perhaps most perplexing is that Plaintiffs seek to exclude evidence that forms the very foundation of their own claims. Plaintiffs' lawsuit alleges that pay practices contained in its collective bargaining agreements are discriminatory. Despite the fact that Plaintiffs' claims stem from these agreements, Plaintiffs' Objections seek to exclude evidence from the very collective bargaining process that led to those pay practices, including written contract proposals, discussions at the bargaining table, and other information that reflects the course of negotiations and the intent of the negotiating parties. Plaintiffs' hearsay objections often ignore that this evidence is being offered *at summary judgment*, not at trial; thus, there is no opportunity to provide live testimony. In addition, collective bargaining proposals and related discussions are not hearsay; they *are* the bargaining process. Indeed, if the Court is to consider whether the pay practices are discriminatory, it is essential that evidence of the natural give-and-take nature of negotiations, which led to the pay practices, be considered.

Plaintiffs' Objections should be overruled in their entirety.

## II.    Argument

### A.    Gulati Dec. ¶ 21 and Ex. 1

Plaintiffs object to Gulati Dec. ¶ 21 and Ex. 1 on the grounds of lack of personal knowledge and lack of foundation, failure to authenticate, and hearsay. In Paragraph 21 of his declaration, Mr. Gulati declares that the FIFA World Cup is "often described as the most popular sporting event in the world . . ." (Gulati Dec. ¶ 21) and attaches an electronic article on the World Cup from the Encyclopedia Britannica. (Gulati Dec. ¶ 21, Ex. 1.)

Mr. Gulati's declaration attests that he has been in the world of international soccer for more than 35 years. (Gulati Dec. ¶ 1-4.) He has served at the highest levels of the sport, including as a member and/or Chairman of various U.S. Soccer Committees and Task Forces since 1984, Executive Vice President of U.S. Soccer from 2000-2006, President of U.S. Soccer from 2006-2018, and as a member of the FIFA Council since

2

2013.[2] (Gulati Dec. ¶¶ 4, 7.) While he was President of U.S. Soccer, Mr. Gulati participated in the 2012-2013 collective bargaining negotiations, which culminated in the 2013 Memorandum of Understanding. (Gulati Dec. ¶ 23.) Mr. Gulati further established that one of U.S. Soccer's purposes is to promote soccer in the United States, including through national and international games and tournaments, such as the World Cup. (Gulati Dec. ¶¶ 9-10, 21-22.)

Based on his wealth of experience in the world of international soccer, Mr. Gulati states that the World Cup is "often described as the most popular sporting event in the world, based on the number of people who watch it." He further provides, as simply an example to support his statement, the Encyclopedia Britannica's article on the World Cup, which states that the World Cup "is likely the most popular sporting event in the world, drawing billions of television viewers every tournament."[3] (Gulati Dec. ¶ 21, Ex. 1.) Focusing on his statement in isolation of the article, Mr. Gulati clearly has the knowledge base and experience to describe the relative popularity of the World Cup. Indeed, it is hard to imagine who, if not Mr. Gulati, would have the personal knowledge requisite to provide this characterization.

Plaintiffs object that Mr. Gulati has not established what the Encyclopedia Britannica is or that he has personal knowledge of its contents. This objection is absurd. In addition

---

[2] The FIFA Council was formerly known as the FIFA Executive Committee. (Gulati Dec. ¶ 7.)

[3] Plaintiffs object that the Ex. 1 does not support Mr. Gulati's statement that the Men's World Cup is "often" described as anything. (Objections, p. 2.) Through his declaration, Mr. Gulati has established his ability to declare how popular this event is; the article is merely an example of that fact. Regardless, it is well within the authority of the Court to take judicial notice of this type of fact (e.g., that the Super Bowl is the most watched football game in America or that baseball is more popular than curling), and U.S. Soccer requests that it do so if necessary. *See* Fed. R. Evid. 201(b) and (d) (when requested, a court must take judicial notice of facts that are "not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.")

3

to the fact that, at summary judgment, the Court merely considers whether the substance of the proffered evidence would be admissible at trial, Mr. Gulati attached a copy of the article to his *signed declaration*, which he executed under penalty of perjury. Next, Mr. Gulati need not have personal knowledge to authenticate the document. It is self-authenticating under Federal Rule of Evidence 902(6) as a periodical. In considering print-outs from internet articles, courts consider the "distinctive characteristics" of the website in determining whether a document is sufficiently authenticated  *See Ciampi v. City of Palo Alto,* 790 F. Supp. 2d 1077, 1091 (N.D. Cal. 2011) (considering internet print-outs which had sufficient indicia of authenticity, including distinctive newspaper and website designs, dates of publication, page numbers, and web addresses); *Perfect 10, Inc. v. Cybernet Ventures, Inc*., 213 F. Supp. 2d 1146, 1153–54 (C.D. Cal. 2002). Examination of the content of Exhibit 1 to Gulati's Declaration shows that it is the complete article entitled "World Cup," from the Encyclopedia Britannica website, published by Encyclopedia Britannica, Inc. on January 22, 2020, and accessed on February 19, 2020. (*See* Gulati Dec. ¶ 21, Ex. 1, p. 3.) Ex. 1 to Mr. Gulati's declaration is self-authenticating under Federal Rule of Evidence 902(6).

### B.     Gulati Dec. ¶¶ 21-22 and Exs. 2-7

Plaintiffs object to Gulati Dec. ¶¶ 21-22 and Exs. 2-7 on the grounds of lack of personal knowledge and lack of foundation, failure to authenticate, and hearsay. Exhibits 2-7 of Mr. Gulati's declaration are FIFA's Television Audience Reports, which specify the television viewership details for both the men's and women's World Cups from 2010-2019. (Gulati Dec. ¶¶ 21-22.) Mr. Gulati attests that these Reports are publicly available on FIFA's website and that he had access to them in his role on the FIFA Council. (*Id.*) Further, Mr. Gulati declares that these Reports are consistent with his personal knowledge of the television ratings for the Women's and Men's World Cups.

At the outset, with regard to Plaintiffs' objection that Mr. Gulati has not established that he has personal knowledge of the Reports, this should be disregarded, as Mr. Gulati

attached copies if the Reports article to his *signed declaration*, which he executed under penalty of perjury. Moreover, based on his membership on the FIFA Council, Mr. Gulati clearly can and has authenticated these reports. Similarly, his background establishes that he has personal knowledge sufficient to say that the viewership reports are consistent with his own personal knowledge of the ratings for these tournaments.

With regard to Plaintiffs' hearsay objections, the Television Audience Reports qualify under the exception for "market quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations." Fed. R. Evid. 803(17). FIFA relies on the Television Audience Reports to gauge and track public interest in the event, much in the way that individuals may rely on rates from the Federal Reserve website. *See Hess v. Riedel-Hess*, 794 N.E.2d 96, 103-04 (Ohio Ct. App. 2003) (finding that a valuation of a vehicle calculated by the National Automobile Dealer Association website was admissible even when a reliable print source valuation was also submitted); *Elliott Assoc., L.P. v. Banco de la Nacion*, 194 F.R.D. 116, 121 (S.D.N.Y. 2000) (holding that rates acquired from the Federal Reserve Board website or from Bloomberg are admissible under Fed. R. Evid. 803(17)).

Further, the Television Audience Reports should be considered under Federal Rule of Evidence 807, which provides that statements should not be excluded if they are supported by sufficient guarantees of trustworthiness, and are more probative on the point for which it is offered than other evidence. Fed. R. Evid. 807(a). FIFA's Television Audience Reports are highly probative on the viewership of both the Men's and Women's World Cup; indeed, there is no better evidence on the ratings for both events.

### C.   Gulati Dec. ¶¶ 47, 48

Plaintiffs object to Gulati Dec. ¶¶ 47, 48 on the grounds of lack of foundation. Again, this objection is meritless, as at summary judgment, the Court merely considers the substance of the proffered evidence, not the form. In Paragraph 47, Mr. Gulati states that "[t]he unique opportunity to form a subsidiary to organize and host [the Copa America

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Centenario] would not have existed if U.S. Soccer did not field a senior men's international soccer team." (Gulati Dec. ¶ 47.) The 2016 Copa America tournament occurred while Mr. Gulati was President of U.S. Soccer. (Gulati Dec. ¶¶4, 46.) A subsidiary of U.S. Soccer (of which *Mr. Gulati was President*) organized and hosted the tournament. (*Id.*). Accordingly, based on his role with U.S. Soccer, Mr. Gulati has established his personal knowledge as to the impetus for that Copa America opportunity. *See, e.g., See In re Kaypro,* 218 F.3d 1070, 1075 (9th Cir. 2000) ("Personal knowledge may be inferred from a declarant's position," citing *Self-Realization Fellowship Church v. Ananda Church of Self-Realization,* 206 F.3d 1322, 1330 (9th Cir. 2000)). Mr. Gulati has laid a proper foundation for this evidence.

Plaintiffs also object to Mr. Gulati's statement that "FIFA owns and monetizes all commercial rights associated with the FIFA World Cup and the FIFA Women's World Cup tournaments, such as television broadcast rights and the right to sell tickets to attend the games." (Gulati Dec. ¶ 48.) Again, Mr. Gulati was elected to the FIFA Council in 2013 and remains a member today. (Gulati ¶ 7.) Further, he was also appointed to the Board of Directors of the FIFA Women's World Cup in 1999 and 2003. (Gulati Dec. ¶ 5.) Based on this knowledge and background as having served in the highest levels of FIFA, Mr. Gulati has laid a proper foundation to qualify his statement on FIFA's ownership of commercial rights.

### D.    Gulati Dec. ¶¶ 50-53, 55 and Exs. 8-12

Plaintiffs object to Gulati Dec. ¶¶ 50-53, 55 and Exs. 8-12 on the grounds of lack of personal knowledge and lack of foundation, failure to authenticate, and hearsay. The exhibits are Prize Money Memoranda sent to U.S. Soccer, and Mr. Gulati explicitly explained that FIFA awarded prize money as described in those memoranda and, further, that U.S. Soccer received prize money in accordance with the memoranda.

The objection that Mr. Gulati does not have personal knowledge of these documents and cannot establish a foundation or authenticate them is without merit. First, they are

attached to his signed declaration; to claim that he does not have knowledge of the documents is absurd. Next, as detailed above, Mr. Gulati, as the former President of U.S. Soccer and current FIFA Council member has personal knowledge of FIFA's publications, especially those sent to U.S. Soccer. *See, e.g., See In re Kaypro,* 218 F.3d 1070, 1075 (9th Cir. 2000) ("Personal knowledge may be inferred from a declarant's position," citing *Self-Realization Fellowship Church v. Ananda Church of Self-Realization,* 206 F.3d 1322, 1330 (9th Cir. 2000)). In addition, Mr. Gulati's declaration specifies the amount of money that U.S. Soccer, itself, received particular to each Word Cup, which matches and validates the amounts contained in the Prize Money Memoranda.

Even if the Court determines that Mr. Gulati has somehow not authenticated these documents, they can be authenticated by a brief review of their contents. Every Prize Money Memorandum is on FIFA letterhead, addressed to the associations that have qualified for the particular World Cup, dated, and signed by the either FIFA's Deputy Secretary General or Secretary General. Under Rule 901(b)(4) "documents . . . could be authenticated by review of their contents if they appear to be sufficiently genuine." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011) (court stating that a letter was potentially authenticated by review of its contents and characteristics) (quoting *Orr v. Bank of Am.,* 285 F.3d 764, 778 n. 24, *superseded by statute on other grounds*.)

Plaintiffs' objection that the Prize Money Memoranda are hearsay is without merit for two reasons. First, Mr. Gulati has personally declared that prize money was awarded in accordance with those memoranda, so the memoranda themselves are not necessary to prove that fact. Second, the memoranda also are offered to demonstrate that Mr. Gulati knew how much prize money had been awarded for prior World Cups when negotiating later collective bargaining agreements and their provisions regarding World Cup bonuses.

### E.     Gulati Dec. ¶ 54

Plaintiffs object to Gulati Dec. ¶ 54 on the grounds of lack of personal knowledge and lack of foundation. In his declaration, Mr. Gulati states that "[i]n 2018, FIFA awarded $38 million in prize money to the French Football Federation because France won the 2018 FIFA World Cup." (Gulati Dec. ¶ 54.) Mr. Gulati has been in the world of international soccer for more than 35 years and was a member of the FIFA Council in 2018. (Gulati Dec. ¶¶ 1, 4, 7.) As such, Mr. Gulati has established that he has the requisite foundation to attest to the amount of prize money awarded to the winner of the 2018 Men's World Cup.

### F.     Gulati Dec. ¶ 66 and Ex. 14

Plaintiffs object to Gulati Dec. ¶ 66 and Ex. 14 on the grounds of lack of personal knowledge and lack of foundation, and failure to authenticate. Ex. 14 is a November 1, 2012 memorandum, the first written contract proposal that U.S. Soccer received from the WNTPA. (Gulati ¶ 66.) Mr. Gulati's declaration attests that he *led* the 2012-2013 collective bargaining negotiations with the WNTPA on behalf of U.S. Soccer. (Gulati ¶ 63.) As Mr. Gulati established that he was the lead negotiator, a contract proposal that U.S. Soccer received is clearly within the realm of his personal knowledge, providing sufficient authentication of the document. *See, e.g., Surf City Steel, Inc. v. Int'l Longshore & Warehouse Union,* No. CV140560BROSSX, 2016 WL 10637085, at *5 (C.D. Cal Sept. 12, 2016), *on reconsideration in part*, No. CV1405604BROSSX, 2016 WL 10637079 (C.D. Cal. Dec. 28, 2016), *aff'd*, 780 F. App'x 467 (9th Cir. 2019). Further, this document can be authenticated by a review of its contents. The document is on letterhead of the WNTPA representative, and identifies the recipient (U.S. Soccer), and the date (November 1, 2012). *See, e.g., Las Vegas Sands, LLC v. Nehme*, 632 F.3d at 533 (court stating that a letter was potentially authenticated by review of its contents and characteristics). Accordingly, even if Mr. Gulati had not authenticated this contract proposal (which he has), review of the contents provides that authentication.

### G.    Gulati Dec. ¶ 67

Plaintiffs object to Gulati Dec. ¶ 67 on the grounds of hearsay. Specifically, they object to Mr. Gulati's statement that "WNT Player Lauren Cheney communicated to us during [a collective bargaining meeting] that the players were grateful for what they were paid and understood that they were among the highest compensated teams in the world." In this lawsuit, Plaintiffs have alleged that the pay practices in their collective bargaining agreement are discriminatory. Contrary to that allegation, Ms. Cheney's statement provides evidence that, during the 2012-2013 collective bargaining negotiations (even before they received increases in 2013 and again in 2017), a WNT player admitted that the players were grateful for their compensation. This is a party admission because Ms. Cheney is a member of the Plaintiff class. *See, e.g., Pierce v. County of Orange,* 519 F.3d 985 (9th Cir. 2007) (district court did not abuse its discretion in admitting statements of absent class members as admissions of a party-opponent under Federal Rule of Evidence 801(d)(2)(A)).

Further, Ms. Cheney's statement is not hearsay because the Federal Rules of Evidence allow statements that are relevant to the making of a contract; here, one of the collective bargaining agreements. *See Acree v. Tyson Bearing Co., Inc.,* 128 Fed. Appx. 419, 434 (6th Cir. 2005) (statements during negotiations have a bearing on the intent underlying subsequent conduct, and are admissible as part of the "verbal act of contract offer and acceptance"); *Preferred Properties, Inc. v. Indian River Estates, Inc.,* 276 F.3d 790, 798 n. 5 (6th Cir. 2002) ("The verbal acts doctrine applies where 'legal consequences flow from the fact that words were said, e.g. the words of offer and acceptance which create a contract.'" (quoting Black's Law Dictionary 1558 (6th Ed. 1990)). Mr. Gulati offers Ms. Cheney's statement not only to prove the truth of the matter asserted (that the players actually were grateful for what they were paid, based on Ms. Cheney's party admission), but also to prove that these words were spoken during the negotiations. *See Mueller v. Adnor,* 972 F.2d 931, 937 (8th Cir. 1992) (stating that a contract is a verbal act to which

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the law attached duties and liabilities and thus is not hearsay, and that "various communications - *e.g.,* conversations, letters, and telegrams - relevant to the making of the contract are also not hearsay"). Ms. Cheney's statement during bargaining bears upon Mr. Gulati's intent, during negotiations, and can shed light on why U.S. Soccer negotiated in the manner that it did. This statement is thus admissible under Fed. R. Evid. 803(3).

### H.      Gulati Dec. ¶ 68 and Ex. 15

Plaintiffs object to Gulati Dec. ¶ 68 and Ex. 15 on the grounds of hearsay. Ex. 15 is a December 4, 2012, email from USSF's Chief Financial Officer, Eric Gleason, to WNTPA representatives, attaching U.S. Soccer's initial proposal for compensation terms during the 2012-2013 negotiations, which eventually led to a collective bargaining agreement that Plaintiffs claim to be unlawful. In his declaration, Mr. Gulati explains some of the items in the attached proposal.

This email and Mr. Gulati's statement describing the proposal are not hearsay. They reflect what U.S. Soccer proposed during contract negotiations. *See Cloverland-Green Spring Dairies, Inc. v. Pennsylvania Milk Marketing Bd.,* 298 F.3d 210, 218 n. 20 (3d Cir. 2002) (the Third Circuit stating that the district court should have permitted admission of a contractual offer, as an offer "is a 'verbal act,' not hearsay, because the statement itself has legal effect); *Mueller v. Adnor*, 972 F.2d at 937 (stating that a contract is a verbal act to which the law attached duties and liabilities and thus is not hearsay, and that "various communications - e.g., conversations, letters, and telegrams - relevant to the making of the contract are also not hearsay"); *Hebert Industrial Insulation Corp.,* 312 NLRB 602, 608 (1993) (testimony of reports received by union was not offered to establish the truth thereof but "only that they were received and acted upon . . .") In addition, U.S. Soccer's proposal bears upon the state of mind of Mr. Gulati and the U.S. Soccer bargaining team during negotiations, and thus is also admissible under Fed. R. Evid. 803(3).

DEFENDANT'S RESPONSE TO PLAINTIFFS' EVIDENTIARY OBJECTIONS/ CASE NO. 2:19-CV-01717-RGK-AGR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs also object that Gulati Dec. ¶ 68 "is objectionable hearsay" because it "summarizes the content of the document." Plaintiffs cite no authority for the proposition that a witness is not permitted to describe some of the contents of a document without describing them all or to "summarize" a document. The basis for this objection is unclear and should be disregarded in its entirety.

## I. Gulati Dec. ¶ 70 and Ex. 16

Plaintiffs object to Gulati Dec. ¶ 70 and Ex. 16 on the grounds of hearsay. Ex. 16 is a document prepared by U.S. Soccer that provides a compensation-to-revenue ratio for both the MNT and WNT from 2005-2011 and further shows that over this time period, U.S. Soccer earned than $95 million from MNT game revenue and less than $15 million from WNT game revenue.

As explained by Mr. Gulati in his declaration, this document was prepared in the course of negotiations to guide U.S. Soccer's proposals. It is not being offered to prove the truth of the matter asserted (*i.e.*, that the numbers and analysis on this document are correct). Rather, the document is offered to show its effect on Mr. Gulati and U.S. Soccer's state of mind during negotiations with the WNTPA. One of U.S. Soccer's defenses in this case is that its compensation proposals during negotiations were driven by considerations of revenue-generation. This document supports that fact by showing the revenue information Mr. Gulati possessed at the time. Fed. R. Evid. 803(3). *See Acree v. Tyson Bearing Co., Inc.,* 128 Fed. Appx. at 434 (in considering testimony about what someone said during negotiations, the court determined that the statement "was not used to prove the truth of the matter asserted, but to show [] state of mind in adopting the proposal."); *see also Means v. City & County of San Francisco*, 749 F. Supp. 2d 998, 1005, n.2 (N.D. Cal. 2010) (in employment discrimination case, court holding that proffered statement was not hearsay because it was offered to show its impact on the decision-maker).

11

Plaintiffs also object that Gulati Dec. ¶ 70 "is objectionable hearsay" because it "summarizes the content of the document." Plaintiffs cite no authority for the proposition that a witness is not permitted to describe some of the contents of a document without describing them all or to "summarize" a document. The basis for this objection is unclear and should be disregarded in its entirety.

**J.     King Dec. ¶¶ 18, 20, 23, 25, 30, 34, 44, 45, 47**

Plaintiffs object to particular statements within Tom King's Declaration ¶¶ 18, 20, 23, 25, 30, 34, 44, 45, and 47 on the grounds of hearsay. Mr. King's declaration attests that he is the Managing Director of Administration for U.S. Soccer and has worked for U.S. Soccer since 1994. (King Dec. ¶ 1.) Mr. King further stated that he was a core member of the bargaining team during the negotiations between U.S. Soccer and the WNTPA that culminated in the 2017-2021 collective bargaining agreement (King Dec. ¶ 16.) After establishing this foundation, Mr. King's declaration recounts what he witnessed at the bargaining table. Plaintiffs object to a number of paragraphs wherein Mr. King describes what either U.S. Soccer or the WNTPA proposed or discussed during negotiations.

These statements are not hearsay for a number of reasons. First, the statements serve to generally characterize what occurred during the negotiations. *See Surf City Steel, Inc. v. Int'l Longshore & Warehouse Union* No. CV1405604BROSSX, 2016 WL 10637085, at *5. Next, any statements that Mr. King recounts are not being offered to prove the truth of the matter asserted. Each of these statements are made by either a U.S. Soccer representative or a WNTPA representative —whether the statements were true (such as whether one side would accept a particular proposal) is immaterial.

Mr. King's attestation of what was said during negotiations is not hearsay because the Federal Rules of Evidence allow admission of statements that are relevant to the making of the parties' collective bargaining agreement. *See Acree v. Tyson Bearing Co., Inc.,* 128 Fed. Appx. at 434 (6th Cir. 2005) (statements during negotiations have a bearing on the intent underlying subsequent conduct, and is admissible as part of the "verbal act of

contract offer and acceptance"); *Preferred Properties, Inc. v. Indian River Estates, Inc.*, 276 F.3d at 798 n. 5 ("The verbal acts doctrine applies where 'legal consequences flow from the fact that words were said, e.g. the words of offer and acceptance which create a contract.'" (quoting Black's Law Dictionary 1558 (6th Ed. 1990)); *Mueller v. Adnor*, 972 F.2d at 937 (stating that a contract is a verbal act to which the law attached duties and liabilities and thus is not hearsay, and that "various communications - e.g., conversations, letters, and telegrams - relevant to the making of the contract are also not hearsay").

The statements are offered to show the state of Mr. King's and U.S. Soccer's mind in considering and responding to proposals by the WNTPA. *See Acree v. Tyson Bearing Co., Inc.,* 128 Fed. Appx. at 434 (in considering testimony about what someone said during negotiations, the court determined that the statement "was not used to prove the truth of the matter asserted, but to show [] state of mind in adopting the proposal.")

Again, Plaintiffs' lawsuit alleges discrimination based on pay practices contained in the parties' collective bargaining agreement. Evidence, such as here, which bears upon what the parties said about *why* the parties agreed to those pay practices is not hearsay and must be considered at summary judgment.

### K.   King Dec. ¶ 41

Plaintiffs object to King Dec. ¶ 41 on the grounds of lack of personal knowledge and lack of foundation. As specified above, Mr. King has established that he was a core member of the 2016-2017 negotiating team. Without question, he has sufficient basis to state what occurred during the negotiations of which he was a core member. *Surf City Steel, Inc. v. Int'l Longshore & Warehouse Union*, No. CV1405604BROSSX, 2016 WL 10637085, at *5 (court overruling personal knowledge objection where declarant was on bargaining committee for contract and thus, established that he had personal knowledge of the particular negotiations).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### L.    King Dec. ¶¶ 21, 29 and Exs. 7, 9

Plaintiffs object to King Dec. ¶¶ 21, 29 and Exs. 7, 9 on the grounds of lack of personal knowledge and lack of foundation, failure to authenticate, and hearsay. Both Ex. 7 and Ex. 9 are emails from U.S. Soccer General Counsel Lisa Levine to the then-WNTPA Executive Director, Rich Nichols attaching U.S. Soccer's bargaining proposals. (King ¶¶ 16, 17.) Mr. King was a core member of the U.S. Soccer bargaining team along with Ms. Levine (King Dec. ¶ 16.) As Mr. King attested, he obtained a copy of each of these emails from Ms. Levine, the author of the documents. (*See* King Dec. ¶¶ 21, 29. )

Accordingly, Mr. King has established his personal knowledge of the documents sufficient to authenticate them. Regardless, each of these documents can be authenticated by a review of its contents: it shows the sender, the recipient (with email addresses redacted for privacy), and the date and time.

Next, Plaintiffs' claim that Mr. King's characterization of the proposals, and the proposals themselves, is "is objectionable hearsay" because it "summarizes the content of the document." Plaintiffs cite no authority for the proposition that a witness is not permitted to describe some of the contents of a document without describing them all or to "summarize" a document. The basis for this objection is unclear and should be disregarded in its entirety.

### M.    King Dec. ¶ 22

Plaintiffs object to King Dec. ¶ 22 on the grounds of lack of lack of foundation and hearsay. In this paragraph, Mr. King describes one of U.S. Soccer's proposals and how it compared to the compensation structure in the WNT's 2013-2016 collective bargaining agreement, as well as the MNT's 2011-2018 CBA. Mr. King attested that he is responsible for all non-technical operations of the MNT and WNT, that his direct reports administer compensation under the collective bargaining agreements, that he is familiar with both the aforementioned CBAs, that he was a core member of U.S. Soccer's negotiating team, and that he personally possessed a copy of the proposal in question.

14

(King Dec. ¶¶ 2, 4, 8, 13, 14, 16, 21.) Accordingly, he has laid all the foundation necessary to be able to explain the nature of the CBAs and how they compare to a proposal made by his bargaining team.

Plaintiffs' objection that Mr. King's statement is hearsay is nonsensical. There is no out of court statement in this Paragraph. He is simply describing the contents of documents. To the extent that Plaintiffs claim that the CBA is hearsay, that makes no sense and the objection must be disregarded. *See, e.g., Jones v. AT & T*, No. C 07–3888 JF, 2008 WL 902292, *2 (N.D. Cal. Mar. 31, 2008) (holding that "[r]elevant case law supports the proposition that the Court may take judicial notice of a CBA . . ."); *Hall v. Live Nation Worldwide, Inc*., 146 F. Supp. 3d 1187, 1192-1193 (C.D. Cal. 2015) (taking judicial notice of CBA). Again, this is summary judgment; the Court merely considers whether the substance of the proffered evidence would be admissible at trial. Without question, Mr. King's testimony providing a description of U.S. Soccer's bargaining proposal and its CBAs must be considered.

### N.   King Dec. ¶ 24 and Ex. 8

Plaintiffs object to King Dec. ¶ 24 and Ex. 8 on the grounds of lack of personal knowledge and lack of foundation, and failure to authenticate. Ex. 8 is an email from Mr. Nichols to Ms. Levine, providing details with regard to a prior discussion during bargaining. The Paragraph simply describes the substance of the email. Mr. King obtained a copy of this email from Ms. Levine, the recipient, with whom he was on the bargaining team. (King ¶¶ 16, 24.) Accordingly, Mr. King has established personal knowledge as to the email and to the contents therein sufficient to authenticate the documents. Regardless, each of these documents can be authenticated by a review of its contents: it shows the sender, the recipient (with emails redacted for privacy), and the date and time. *See, e.g., Las Vegas Sands, LLC v. Nehme*, 632 F.3d at 533 (court stating that a letter was potentially authenticated by review of its contents and characteristics).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### O.      King Dec. ¶¶ 36, 37, 42 and Exs. 11, 12, 16

Plaintiffs object to King Dec. ¶¶ 36, 37, 42 and Exs. 11, 12, 16 on the grounds of hearsay. Each of the attached documents are collective bargaining proposals made by U.S. Soccer in February or March 2017. The negotiation over these proposals, in part, is what eventually led to a collective bargaining agreement that Plaintiffs now claim is unlawful.

U.S. Soccer's proposals are not hearsay; the Federal Rules of Evidence allows statements that are relevant to the making of a contract. These proposals are offered to show the ongoing course of negotiations leading to the formation of the collective bargaining agreement. *See Cloverland-Green Spring Dairies, Inc. v. Pennsylvania Milk Marketing Bd.,* 218, n. 20 (the Third Circuit stating that the district court should have permitted admission of a contractual offer, as an offer "is a 'verbal act,' not hearsay, because the statement itself has legal effect); *Mueller v. Adnor*, 972 F.2d at 937 (stating that a contract is a verbal act to which the law attached duties and liabilities and thus is not hearsay, and that "various communications - e.g., conversations, letters, and telegrams - relevant to the making of the contract are also not hearsay"); *Hebert Industrial Insulation Corp.,* 312 NLRB at 608 (testimony of reports received by union was not offered to establish the truth thereof but "only that they were received and acted upon  . . .") U.S. Soccer's proposals also bear upon the state of mind of Mr. King and the U.S. Soccer bargaining team during negotiations and are also admissible under Fed. R. Evid. 803(3).

### P.      King Dec. ¶¶ 39, 40, 43 and Ex. 14, 15, 17

Plaintiffs object to King Dec. ¶¶ 39, 40, 43 and Ex. 14, 15, 17 on the grounds of failure to authenticate. These documents, collective bargaining proposals made by the WNTPA during the 2017 negotiations, eventually led to a collective bargaining agreement that Plaintiffs now claim is unlawful. Mr. King attests in his declaration that

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

he was a core member of the U.S. Soccer bargaining team that led to the 2017 collective bargaining agreement. (King Dec. ¶ 16.) As a member of negotiation team, Mr. King has established his personal knowledge as to the proposals sufficient to authenticate the documents. *See, e.g., Surf City Steel, Inc. v. Int'l Longshore & Warehouse Union,* No. CV140560BROSSX, 2016 WL 10637085, at *5. Regardless, each of these proposals can be authenticated by a review of their contents: each contains a heading identifying the document as a WNTPA proposal and is dated. Therefore, even if Mr. King failed to authenticate the proposals (which he did not), the review of the document itself establishes their authenticity. *See Las Vegas Sands, LLC v. Nehme*, 632 F.3d at 533 (court stating that a letter was potentially authenticated by review of its contents and characteristics). Regardless, at summary judgment, the Court considers whether the *substance*, not the form, of the evidence would be admissible. Plaintiffs' Objection should be disregarded.

### Q.   The Irwin Report

Plaintiffs object to the Irwin Report on the grounds that it is unreliable expert testimony and is prejudicial, referencing a prior motion to exclude portions of it on the sole ground that parts of it are irrelevant based on Plaintiffs' flawed view of the law. This is not a proper objection to evidence. If Plaintiffs believe the evidence is irrelevant, they should argue the point in their memorandum of points and authorities (and they have). To the extent the Court is prepared to consider this Objection based on a separately-filed motion, then Defendant refers the Court to its March 9, 2020, Opposition to Plaintiffs' Motion to Exclude Defendant's Expert Testimony. (Dkt. 188.)

### R.   Dkt. Nos. 171-51 and 171-52

Plaintiffs object to Dkt Nos. 171-51 and 171-52 on the grounds of lack of personal knowledge and lack of foundation, failure to authenticate and hearsay. Both of these documents (a video transcript (Dkt. No. 171-51) and a July 6, 2019 tweet (Dkt. No. 171-52)) were authenticated by Megan Rapinoe at her deposition, applicable excerpts of

DEFENDANT'S RESPONSE TO PLAINTIFFS' EVIDENTIARY OBJECTIONS/ CASE NO. 2:19-CV-01717-RGK-AGR

which were attached to Defendant's Opposition at Dkt. 171-50. (Rapinoe Dep. 284:8-285:12, 297:6-18.)

Next, Plaintiffs' claims that the transcription of the video and the tweet are hearsay are incorrect. Ms. Rapinoe is a Plaintiff, a Class Representative, and a very public face of this lawsuit. They are a Party Admission. *See In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 769, 781 (C.D. Cal. 2004); Fed. R. Evid. 801(d)(2) (statements by a party are admissions of a party opponent and admissible as non-hearsay). Specifically, in Dkt. 171-51, in comparing the Women's National Team and the Men's National Team, Rapinoe states, in part, that "pay structure is different. We play different games. We're different rankings in the world. Like, it's just apples to oranges." This statement is diametrically opposed to Plaintiffs' central claim in this lawsuit: that the WNT is comparable to the MNT, and supports U.S. Soccer's position that the two compensation structures are not amenable to comparison. As such, it qualifies as an admission.  Next, in Dkt. 171-52, Ms. Rapinoe stated, in part, that "[o]bviously I'm the first to step up and fight with [U.S. Soccer] and nudge them a little more but they backed us tremendously. Compared to every other federation in the world, I don't think it's close. We don't often give them kudos but that's definitely one I'm willing to give. They back the team in a very strong way and have pushed the game, not only in our country but around the world, to a level where, without that, we wouldn't be here in the world game. So I think they do deserve a tremendous amount of credit for that and we will continue to nudge them forward." Again, this is an admission because it touches on an issue central to the litigation: U.S. Soccer's treatment of the WNT, and it tends to rebut Plaintiffs' allegations regarding discriminatory intent on the part of U.S. Soccer. Ms. Rapinoe's statement that U.S. Soccer deserves credit for advancing women's soccer must be considered.

### S.     Dkt. No. 171-54

Plaintiffs object to Dkt No. 171-54 on the grounds of failure to authenticate. Dkt. No. 171-54 is a Sports Illustrated article titled "American Voices Meghan Klingenberg." It is

18

a news article printed from Sports Illustrated's website. The exhibit identifies both the specific url of the article, along with the date that this article was captured (January 15, 2020). Accordingly, it is self-authenticating under Federal Rule of Evidence 902(6) as a periodical. *See Ciampi v. City of Palo Alto,* 790 F. Supp. 2d 1077, 1091 (N.D. Cal. 2011) (considering internet print-outs which had sufficient indicia of authenticity, including distinctive newspaper and website designs, dates of publication, page numbers, and web addresses); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1153–54 (C.D. Cal. 2002).

In addition, Ms. Klingenberg authenticated the article during her deposition, which was attached to Defendant's Opposition at Dkt. 171-53. (Klingenberg Dep. 41:2-17, 46:12-15.)

### T.    Dkt. No. 171-55

Plaintiffs object to Dkt No. 171-55 on the grounds of failure to authenticate and hearsay. Dkt. No. 171-55 is a one-page excerpt from John Langel's March 24, 2016 deposition in *United States Soccer Federation, Inc., v. United States Women's National Soccer Team Players Association*, Case No. 1:16-cv-01923 in the Northern District of Illinois. The deposition testimony offered in this excerpt supported U.S. Soccer's statement that the WNT players voted unanimously to approve all compensation provisions in the 2013 Memorandum of Understanding. (SUF ¶ 116.)

At the outset, this deposition testimony is self-authenticating. For Plaintiffs' counsel to question the authenticity of this deposition excerpt is particularly perplexing, *given that Plaintiffs' counsel (David Feher) was present for, and questioned Mr. Langel during, the deposition in question*. Plaintiffs' claim that the deposition testimony is hearsay also fails. Again, this is summary judgment, it is not trial and thus live testimony is not possible at this stage. Mr. Langel was the Executive Director of the WNTPA at the time and testified about the ratification process.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### U.    Dkt. No. 171-57

Plaintiffs object to Dkt No. 171-57 on the grounds of failure to authenticate and hearsay. This document is the Constitution and By-laws of the WNTPA. Rebecca Roux, the WNTPA Executive Director, authenticated the WNTPA's Constitution in her deposition testimony, excerpts of which were attached to Defendant's Opposition at Dkt. 186-97, also attached here as Ex. 1. (Roux Dep. 31:18-32:12; 34:3-5.) Accordingly, The Constitution and By-laws were properly authenticated by Ms. Roux. Even setting aside Mr. Roux's testimony, the document is identifiable by its contents. The first page titles the document as "CONSTITUTION AND BY-LAWS OF UNITED STATES WOMEN'S NATIONAL SOCCER TEAM PLAYERS ASSOCIATION," and the last page indicates that it was ratified on April 22, 2018. The contents provide information sufficient to authenticate Dkt No. 171-57. *See Las Vegas Sands, LLC v. Nehme*, 632 F.3d at 533 (court stating that a letter was potentially authenticated by review of its contents and characteristics).

The Constitution is not hearsay when submitted for the purpose of showing what authority the Constitution grants, which is the purpose of its submission here. This is akin to objecting to the submission of a mission statement as evidence of an organization's mission or a corporation's articles of incorporation for evidence that it was incorporated in a particular state. At a minimum, the Constitution's grant of authority is a "verbal act" that has legal effect (a grant of authority) and therefore is not hearsay. *See* Fed. R. Evid. 801 advisory committee's note; *Cloverland-Green*, 298 F.3d at 218, n.20. It is a meritless objection. *See, e.g., Grant v. Aurora Loan Servs.,* 736 F. Supp. 2d 1257, 1265 (C.D. Cal 2010) (court admitting company's articles of incorporation over hearsay objection).

### V.    Dkt. No. 171-59

Plaintiffs object to Dkt No. 171-59 on the grounds of failure to authenticate. In fact, this March 29, 2017 collective bargaining proposal by the WNTPA was authenticated through deposition testimony of Rebecca Roux, attached to Defendant's Opposition at

20

1

Dkt. 171-56. (Roux Dep. 295:12-22.) Ms. Roux's testimony properly authenticates this

2

bargaining proposal. Further, the document contains enough information to be self-

3

authenticating. Specifically, it contains the heading of "2017-3-29 WNTPA Proposed

4

WNT CBA Financial Terms" and provides a proposal of financial terms for the period of

5

2017-2021. The contents provide information sufficient to authenticate Dkt No. 171-59.

6

*See Las Vegas Sands, LLC v. Nehme*, 632 F.3d at 533 (court stating that a letter was

7

potentially authenticated by review of its contents and characteristics).

8

### W.    Dkt. Nos. 171-62, 171-63, 171-64, 171-65

9

Plaintiffs object to Dkt Nos. 171-62, 171-63, 171-64, 171-65 on the grounds of failure

10

to authenticate. These documents are emails sent by Richard Nichols, former WNTPA

11

Executive Director who served until late 2016, and were authenticated by Mr. Nichols at

12

his deposition, applicable excerpts of which were attached to Defendant's Opposition at

13

Dkt. 171-60. During Mr. Nichol's deposition, he authenticated each of the documents.

14

(Nichols Dep. 52:5-10, 52:24-53:14, 122:7-11, Nichols Dep. 130:9-21.) These emails

15

also can be authenticated by a review of their contents. *See, e.g., Las Vegas Sands, LLC*

16

*v. Nehme*, 632 F.3d at 533 (court stating that a letter was potentially authenticated by

17

review of its contents and characteristics).

18

### X.    Dkt. Nos. 171-71, 171-72, 171-73, 171-75

19

Plaintiffs object to Dkt. Nos. 171-71, 171-72, 171-73, 171-75 on the grounds of

20

hearsay. This correspondence from Ms. Levine to Mr. Langel (consisting of one letter

21

and three emails) depicts the course of the 2012-2013 collective bargaining negotiations

22

and were introduced through deposition testimony of John Langel, attached to

23

Defendant's Opposition at Dkt. 171-66. Again, these documents constitute "verbal acts,"

24

in which the statements are admissible as relevant to the making of a contract; here, the

25

collective bargaining agreement. *See Acree v. Tyson Bearing Co., Inc.*, 128 Fed. Appx.

26

434 (statements during negotiations have a bearing on the intent underlying subsequent

27

conduct, and are admissible as part of the "verbal act of contract offer and acceptance");

28

21

*Preferred Properties, Inc. v. Indian River Estates, Inc.*, 276 F.3d at 798 n. 5 ("The verbal acts doctrine applies where 'legal consequences flow from the fact that words were said, e.g. the words of offer and acceptance which create a contract.'" (quoting Black's Law Dictionary 1558 (6th Ed. 1990)). Also, these documents reflect on the intent behind each negotiating party, which ultimately led to the collective bargaining agreements central to this litigation.  Fed. R. Evid. 803(c).

### Y.    Dkt. No. 171-77

Plaintiffs object to Dkt. No. 171-77 on the grounds of failure to authenticate and hearsay. Dkt. No. 171-77 is an excerpt from Defendant's Supplemental Answers to Plaintiffs' Interrogatories. Plaintiffs' claim that the discovery responses have not been properly authenticated is wrong, as Plaintiffs received these *verified* responses as a result of their discovery requests. Further, Dkt. No. 171-77 contains the heading page which identifies the document as "Defendant's Supplemental Answers to Plaintiffs' Interrogatory Nos. 1, 2, 5, 6, and 11," identifies the names of the parties and Defendant's representatives, and includes a verification page dated January 31, 2020. Accordingly, there are sufficient distinctive characteristics for the document to be authenticated under Federal Rule of Evidence 901(b)(4). *See Held v. Northshore Sch. Dist.*, No. C13-1548 MJP, 2014 WL 6451297, at *5 (W.D. Wash. Nov. 17, 2014).

Next, contrary to Plaintiffs' hearsay objection, courts routinely allow interrogatory responses at summary judgment, when the underlying evidence can be provided in an admissible form at trial. *See JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016). The focus is not on the form of the evidence, but the content. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Accordingly, U.S. Soccer's Supplemental Answers to Plaintiffs' Interrogatories should be considered with regard to its Motion for Summary Judgment.

### III.   Conclusion

Plaintiffs' Objections disregard the law surrounding what evidence should be considered at summary judgment. They should be overruled in their entirety.

**Dated: March 16, 2020**

Respectfully submitted,

U.S. SOCCER FEDERATION, INC.


By:  ___/s/ Brian Stolzenbach___
Ellen E. McLaughlin (*Pro Hac Vice*)
E-mail:  emclaughlin@seyfarth.com
Noah Finkel (*Pro Hac Vice*)
E-mail:  nfinkel@seyfarth.com
Brian Stolzenbach (*Pro Hac Vice*)
E-mail: bstolzenbach@seyfarth.com
Sharilee Smentek (*Pro Hac Vice*)
E-mail:  ssmentek@seyfarth.com
**SEYFARTH SHAW LLP**
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone:      (312) 460-5000
Facsimile:      (312) 460-7000

Kristen M. Peters (SBN 252296)
E-mail:  kmpeters@seyfarth.com
**SEYFARTH SHAW LLP**
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:      (310) 277-7200
Facsimile:      (310) 201-5219

Giovanna A. Ferrari (SBN 229871)
E-mail: gferrari@seyfarth.com
Chantelle C. Egan (SBN 257938)
E-mail: cegan@seyfarth.com
**SEYFARTH SHAW LLP**
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:      (415) 397-2823
Facsimile:      (415) 397-8549

Kyllan Kershaw (Pro Hac Vice)
E-mail: kkershaw@seyfarth.com
**SEYFARTH SHAW LLP**
1075 Peachtree Street, NE, Suite 2500
Atlanta, GA 30309
Telephone:      (404) 885-1500
Facsimile:      (404) 892-7056

23