Jeffrey L. Kessler (*pro hac vice*)
jkessler@winston.com
David G. Feher (*pro hac vice*)
dfeher@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue, New York, NY 10166
Tel:    (212) 294-6700
Fax:    (212) 294-4700

Cardelle B. Spangler (*pro hac vice*)
cspangler@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive, Chicago, IL 60601
Tel:    (312) 558-5600
Fax:    (312) 558-5700

Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
Lev Tsukerman (SBN: 319184)
ltsukerman@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, Los Angeles, CA 90071
Tel:    (213) 615-1700
Fax:    (213) 615-1750

Jeanifer E. Parsigian (SBN: 289001)
jparsigian@winston.com
**WINSTON & STRAWN LLP**
101 California St., 35th Floor, San Francisco, CA 94111
Tel:    (491) 591-1000
Fax:    (491) 591-1400

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX MORGAN ET AL., | **Case No. 2:19-CV-01717-RGK-AGR** |
| Plaintiffs/Claimants, | Assigned to: Judge R. Gary Klausner |
| vs. | **PLAINTIFFS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE OF SUM REVENUES** |
| UNITED STATES SOCCER FEDERATION, INC., | |
| Defendant/Respondent. | Date:  May 5, 2020<br>Time: 9:00 a.m.<br>Courtroom: 850 |

## I.   PRELIMINARY STATEMENT

Plaintiffs move under Federal Rules of Evidence 402 and 403 and Rule 30(b)(6) of the Federal Rules of Civil Procedure to preclude Defendant United States Soccer Federation ("USSF") from referring at trial to any claimed allocation or other attribution of Soccer United Marketing ("SUM") revenues between the Women's National Team ("WNT") and the Men's National Team ("MNT").  The record is indisputable that SUM did not attribute its revenues to either the WNT or MNT, and USSF concluded it was "impossible" to distinguish SUM revenue by either of its national teams, male or female—as affirmed by binding testimony from USSF's 30(b)(6) witnesses.  Thus, any argument by USSF either that the jury should attribute SUM revenue between the MNT and WNT in some particular allocation, or that USSF can rely upon such an allocation to support its claimed revenue justification defense must be precluded because (1) it is inconsistent with USSF's binding Rule 30(b)(6) testimony; (2) it is legally irrelevant under Fed. R. Evid. 402, since USSF never made or relied upon any such allocation of SUM revenues in making its compensation decisions; and (3) its probative value would be substantially outweighed by its prejudicial effect under Fed. R. Evid. 403, as it would threaten to mislead the jury into believing that such a *post hoc* revenue allocation by USSF is capable of supporting its revenue justification defense, when it cannot do so as a matter of law.

## II.   ARGUMENT

It is undisputed in the record that USSF never knew about, constructed, or relied upon any allocation of the SUM broadcasting and sponsorship revenues between the MNT and WNT in making its compensation decisions. The reason is that the MNT and WNT rights were bundled together by SUM for broadcasting, sponsorships and licensing and it was thus "impossible" for USSF to determine the proper allocation of

such revenues.  Ex. 1,[1] Berhalter 30(b)(6) Tr. 64:15–65:10; Ex. 2, USSF CBA Meeting Notes, USSF_Morgan_005657 at USSF_Morgan_005657–58; Ex. 3, May 31, 2016 EEOC Correspondence, at 14.

Specifically, USSF 30(b)(6) deponents confirmed in their binding testimony the following undisputed facts on this subject:

- SUM did not provide USSF with any breakdown of what portion of its revenues is attributable to the MNT versus the WNT. Ex. 1, Berhalter 30(b)(6) Tr. 64:15–65:10; Ex. 5, Gulati 30(b)(6) Tr. 57:21–58:13.

- USSF did not get any information from SUM that would allow USSF to construct that breakdown themselves. Ex. 5, Gulati 30(b)(6) Tr. 60:16–22.

- USSF did not allocate the SUM revenues from sponsorship and broadcasting when it engaged in collective bargaining. *Id.* at 58:6–13.

- In fact, USSF concluded its was "impossible" to make any such allocation of SUM revenues between the WNT and MNT. Ex. 1, Berhalter 30(b)(6) Tr. 64:15–65:10

- And USSF never prepared or relied upon any analysis to correlate its revenues from the MNT and WNT with any differences in the rate of pay between the MNT agreement and the WNT agreement. Ex. 5, Gulati 30(b)(6) Tr. 100:8–15.

Consistent with this binding testimony, USSF represented to the Women's National Team Players Association during CBA negotiations in 2016 that USSF "d[oes]n't attribute [TV and sponsorship] revenues to specific teams; [it] all falls under the [USSF] crest. . . . Sponsorship and TV are bundled.  SUM and Nike revenues are not possible to break . . . out."  Ex. 2, USSF CBA Meeting Notes at USSF_Morgan_005657–58; *see also* Ex. 5, Gulati 30(b)(6) Tr. 64:21–65:13 (confirming that USSF made these statements in bargaining).  Indeed, when major sponsors Coke and Visa came to the USSF and SUM and sought to have their sponsorship dollars focused on the WNT, they were told that the WNT sponsorship

---

[1] All Exhibit citations refer to the concurrently filed Declaration of Jeanifer E. Parsigian.

1  rights could only be acquired as part of a single "bundled" package of rights with MNT

2  rights.  *See, e.g.,* Dkt. No. 187, Plaintiffs' Opposition to Defendant's Motion for

3  Summary Judgment, at 19.[2]

4        In light of this undisputed evidence, there are three independent reasons USSF

5  should be precluded from now arguing to the jury, through expert testimony or

6  otherwise, that it has discovered a way to allocate the SUM revenues and that such an

7  allocation supports its revenue justification defenses for the discrimination.

8        First, such a position by USSF is barred by the binding testimony of its Rule

9  30(b)(6) witnesses Gulati and Berhalter, both of whom testified in their official

10  corporate depositions that such an allocation had never been made or relied upon by

11  USSF because it was not possible to do so.  *See HSS Enterprises, LLC v. AMCO Ins.*

12  *Co.*, No. C06-1485-JPD, 2008 WL 11506715, *1 (W.D. Wa. May 7, 2008) (concluding

13  "[t]he purpose behind Rule 30(b)(6) is to create testimony that will bind the

14  corporation" and "evidence generally should not be considered at trial if it raises new

15  or different allegations that could have been made at the time of the 30(b)(6)

16  deposition").

17        Second, because it is undisputed that USSF did not conduct or rely upon such an

18  allocation of SUM revenues at the time it made its discriminatory decision, any after

19  the fact attempt at such an allocation now would be legally irrelevant to USSF's revenue

20  justification defense, and thus inadmissible under Federal Rule of Evidence 402.  *See*

21  *Hernandez v. Hughes Missile Systems Co.*, 362 F.3d 564, 569 (9th Cir. 2004) (an

22  employer's "conflicting explanations of its conduct" would suggest that the "recent

23  explanation [is] pretextual").[3]

24

25  [2] USSF also told the EEOC that it was not possible for it to break down or allocate the
SUM broadcasting and sponsorship revenues between the MNT and WNT.  *See* Ex. 3,

26  May 31, 2016 EEOC Correspondence, at 14.

27  [3] *See also E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 853 (4th Cir. 2001) ("[A]
factfinder could infer from the late appearance of [the employer's] current justification

28  that it is a post-hoc rationale, not a legitimate explanation for [its] decision not to hire

Third, even if this *post hoc* revenue allocation claim had any probative value, it would be outweighed by the prejudicial effect it would have, under Fed. R. Evid. 403, in misleading the jury into believing that such an after the fact allocation can be used to support USSF's revenue justification defense. *See* Dkt No. 170, Plaintiffs' Motion for Partial Summary Judgment, at 15; *Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1063 (9th Cir. 2008) (district court properly excluded evidence where "there [wa]s no basis" for the evidence and probative value "was substantially outweighed by the risk of misleading or confusing the jury"); *HSS Enterprises, LLC*, 2008 WL 11506715 at *1 (excluding Defendant from offering "new and different testimony at trial or from otherwise making statements, taking positions or producing evidence that contradict [30(b)(6)] deposition testimony").

## III.   CONCLUSION

For all these reasons, the Court should preclude Defendant from presenting any evidence or argument about any claimed allocation or other attribution of SUM revenues between the WNT and the MNT.

---

[the employee]."); *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 813 (10th Cir. 2000) ("We are disquieted ... by an employer who 'fully' articulates its reasons for the first time months after the decision was made."); *Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir. 2000) ("[W]hen a company, at different times, gives different and arguably inconsistent explanations [regarding its reasons for terminating an employee], a jury may infer that the articulated reasons are pretextual."); *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext."), *opinion amended by* 97 F.3d 833 (6th Cir. 1996).

1

Dated:  March 20, 2020                    WINSTON & STRAWN LLP

2

3                                          By:  */s/ Jeffrey L. Kessler*
                                                Jeffrey L. Kessler
4
                                           *Attorneys for Plaintiffs*
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28