Jeffrey L. Kessler (*pro hac vice*)
jkessler@winston.com
David G. Feher (*pro hac vice*)
dfeher@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue, New York, NY 10166
Tel:   (212) 294-6700
Fax:   (212) 294-4700

Cardelle B. Spangler (*pro hac vice*)
cspangler@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive, Chicago, IL 60601
Tel:   (312) 558-5600
Fax:   (312) 558-5700

Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
Lev Tsukerman (SBN: 319184)
ltsukerman@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, Los Angeles, CA 90071
Tel:   (213) 615-1700
Fax:   (213) 615-1750

Jeanifer E. Parsigian (SBN: 289001)
jparsigian@winston.com
**WINSTON & STRAWN LLP**
101 California St., 35th Floor, San Francisco, CA 94111
Tel:   (491) 591-1000
Fax:   (491) 591-1400

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX MORGAN ET AL., | **Case No. 2:19-CV-01717-RGK-AGR** |
| Plaintiffs/Claimants, | Assigned to: Judge R. Gary Klausner |
| vs. | **PLAINTIFFS' MOTION *IN LIMINE* NO. 4 TO EXCLUDE TESTIMONY AND ARGUMENT ABOUT PLAINTIFFS' NWSL-RELATED COMPENSATION** |
| UNITED STATES SOCCER FEDERATION, INC., | |
| Defendant/Respondent. | |
| | Date:  May 5, 2020 |
| | Time: 9:00 a.m. |
| | Courtroom: 850 |

## I.   PRELIMINARY STATEMENT

Plaintiffs move *in limine* under Federal Rules of Evidence 402 and 403 to preclude USSF from offering testimony or argument that salaries or bonus payments certain Plaintiffs receive for their other job of playing in the National Women's Soccer League ("NWSL") should be considered in the analysis of whether USSF paid the WNT players equally to their MNT counterparts, or that these salaries or bonus payments should offset USSF's damages.  Such salaries and payments are irrelevant because they relate to jobs wholly independent of their jobs as players on the U.S. Senior Women's National Team ("WNT").  This case is about USSF paying the U.S. Senior Men's National Team ("MNT") players at a rate less than the WNT players.  As a matter of law, USSF cannot rely on payments that Plaintiffs receive for a *separate* job to make up the difference between how much it pays MNT and WNT players.  *See Hance v. Norfolk Southern Ry. Co.*, 571 F.3d 511, 520 (6th Cir. 2009).  Women are not required to work two jobs to earn what their male comparators earn in one job.  Permitting USSF to reference the fact that certain WNT players also receive separate compensation from USSF for playing in the NWSL would waste time with irrelevant evidence and cause juror confusion.

Argument about USSF's decision to support the NWSL through paying NWSL player salaries could mislead the jury to combine salaries and payments for two different jobs and measure that total amount against the compensation USSF pays to male employees for their single job as a MNT player.  That would be a serious error because the controlling question under the Equal Pay Act and Title VII is whether USSF has discriminated between MNT and WNT players on the basis of sex with respect to *rate of pay*, not total compensation, for their employment as national team players.  *See* Minute Order on Mot. For Class Cert. ("Class Certification Order"), Dkt. No. 98 at 5–6.  Accordingly, the Court should preclude any testimony or argument about payments earned by Plaintiffs for their NWSL jobs as legally irrelevant or, in the alternative, as

confusing and inviting jurors to render a verdict that would be contrary to well-established law. *See id.*; Fed. R. Evid. 402 and 403.

## II.    ARGUMENT

### A.    Payments for Plaintiffs' Separate Jobs in the NWSL Are Irrelevant

The Court should preclude USSF from offering testimony or argument about Plaintiffs' compensation for their wholly independent jobs as NWSL players.

Because playing for NWSL teams and the WNT are separate jobs, compensation that some Plaintiffs receive for playing in the NWSL is irrelevant to this case. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").[1] Notably, many MNT players also have a second job playing for club teams in a professional league, but no one (including USSF) is suggesting that this second job compensation for MNT players should be included in any comparison of rate of pay between the MNT and WNT. Furthermore, as USSF concedes, not all WNT players are paid by USSF to also play on an NWSL team; nor are all WNT players required to be employed by a NWSL club at all. *See* Ex. 1, Berhalter 30(b)(6) Dep. Tr. 242:4–19. Given that not all WNT players are required to have jobs in the NWSL, it is clear that all of the NWSL-related payments by USSF are made in connection with a separate set of duties for a separate job performed by some, but not all WNT players, for a particular NWSL team. Under the law, payments earned from a second job are not to be considered in a discrimination claim against an employer. *See Hance*, 571 F.3d at 520 (noting "earnings from a second job are not to be used as an offset" for discrimination). And while USSF has argued

---

[1] The relevant collective bargaining agreements ("CBAs") between USSF and the WNT players' union make reference to NWSL salaries. Plaintiffs are not arguing that the CBAs cannot be entered into evidence—only that USSF should be precluded from offering witness testimony and arguments about this irrelevant compensation for the purpose of suggesting that these payments constitute wages, and should thus be considered in the analysis of whether USSF paid the women equally, or moreover, that these payments should offset damages. Plaintiffs' proposed jury instructions will make clear that the jury should not consider NWSL compensation listed in the CBAs for these reasons.

1    that NWSL compensation is relevant because USSF subsidizes the league by paying
2    NWSL salaries of some of the WNT players who also play for an NWSL team, former
3    USSF President Gulati has admitted that this was *his* idea—not that of the WNT
4    players' union.  *See* Ex. 11, Gulati Dep. Tr. 42:6–43:14.  Accordingly, there is no legal
5    relevance to the NWSL payments by USSF to this discrimination case.

6         Further, this Court has already determined that the correct measure for
7    comparison in this pay discrimination case is whether USSF has discriminated on the
8    basis of sex with respect to the *rate of pay* for MNT and WNT players, not the total
9    remuneration actually received by the players from USSF.  Class Certification Order,
10   Dkt. No. 98 at 5–6; *Ebbert v. Nassau Cty.*, No. 05-CV-5445(FB)(AKT), 2009 WL
11   935812, at *2–3 (E.D.N.Y. Mar. 31, 2019) ("[T]he EPA…speak[s] in terms of rate of
12   pay, not total remuneration . . . As a matter of common sense, total remuneration cannot
13   be the proper point of comparison."); *Bence v. Detroit Health Corp.*, 712 F.2d 1024,
14   1027 (6th Cir. 1983).  Therefore, any reference to NWSL payments would be legally
15   irrelevant to the fact finder's determination of whether the WNT players were paid at a
16   lesser *rate of pay* than the MNT players or to any other issue in this case.

17        **B.    Testimony or Argument About NWSL Salaries and Bonus Payments**
18        **Would Confuse the Controlling Issue in the Case and Invite Error**

19        Even if the amount of compensation Plaintiffs received for their NWSL jobs was
20   relevant to any degree (which it is not), it should be excluded under Fed. R. Evid. 403.
21   Any probative value would be substantially outweighed because it significantly
22   confuses, and does not bear on, the controlling issue in the case—whether USSF has
23   discriminated on the basis of sex with respect to rate of pay for being on the WNT—
24   not for working at a second job.  *See* Fed. R. Evid. 403 ("The court may exclude relevant
25   evidence if its probative value is substantially outweighed by . . . confusing the issues.").
26   Offering testimony or argument about USSF's support of the NWSL by paying certain
27   Plaintiffs' NWSL salaries and bonuses would run the risk of leaving the jurors confused
28   over whether they should factor in these salaries to determinations about USSF's

liability or back pay calculations (when, as a matter of law, they should not), whether they should somehow consider the salaries that MNT players earn from their second jobs on club teams (even though no information is being provided on this), and whether it is somehow proper for the jurors to compare Plaintiffs' compensation for two jobs against the MNT players' one job (it is not).

## III.   CONCLUSION

For all these reasons, pursuant to Federal Rules of Evidence 402 and 403, the Court should preclude USSF from offering testimony or argument that Plaintiffs' NWSL salaries or bonus payments are relevant to the analysis of whether USSF paid the women equally, or that they should offset damages.

Dated: March 20, 2020                    WINSTON & STRAWN LLP

By: */s/ Jeffrey L. Kessler*
    Jeffrey L. Kessler
    *Attorneys for Plaintiffs*