# EXHIBIT 2

Exhibit 2
9

Page 1

1   IN THE UNITED STATES DISTRICT COURT

2   FOR THE CENTRAL DISTRICT OF CALIFORNIA

3       No. 2:19-cv-01717-RGK-AGR

4   _____

5   ALEX MORGAN, et al.,                    )

6           Plaintiffs,                     )

7       v.                                  )

8   UNITED STATES SOCCER                    )

9   FEDERATION, INC.,                       )

10          Defendant.                      )

11  _____ )

12

13

14

15      DEPOSITION OF KELLEY O'HARA

16          Washington, D.C.

17          January 17, 2020

18

19

20

21

22

23

24  Reported by:  Mary Ann Payonk

25  Job No. 175030

Page 82

1  would treat -- or what other reason there would

2  be besides saying this is a man, this is a

3  woman, I'm going to treat you differently.

4       Q.   Okay.  With respect to -- let's just

5  talk about flights.  When you leave here to go

6  to the camp in -- well, let's strike that.

7            If you book -- well, I don't know.  I

8  won't pursue this question.  That's fine.

9            Let's talk about the next thing on

10 your list, which was benefits.  When you say

11 there's been discrimination with respect to

12 benefits, what does that mean?

13      A.   The one thing that came to my mind

14 was per diem.  In the past, we have been paid a

15 different rate of pay from per diem or of

16 per diem, and I think we're still paid

17 differently than men, but I might be wrong.

18      Q.   When you talked about hotels, what

19 did you mean when you say you believed there

20 had been discrimination with respect to hotels?

21      A.   Oh, sorry.  One more thing about

22 benefits.  For instance, I've seen in the past

23 that the men travel with like some -- say, some

24 seven stationary bikes in the hotel set up for

25 them to use, and we have never had that before.

Page 83

1  This camp in January's the first time we had
2  two in our recovery room, so things of that
3  nature. The men receive more than we do.
4      Q.  When you say "things of that nature,"
5  what else are you thinking about other than the
6  stationary bikes?
7      A.  I remember seeing once that Jurgen
8  had everything like organic and planned out for
9  them in meal rooms, that sort of thing.
10     Q.  The stationary bikes that you
11 referenced that the men had and the organic
12 food and other things like that, was that all
13 during the time when Jurgen Klinsmann was the
14 men's coach?
15     A.  I'm not sure.
16     Q.  Do you remember any such
17 circumstances that you know of since
18 Mr. Klinsmann has been the coach?
19         MS. LEIDEN: Objection, vague.
20     A.  You mean hasn't been the coach,
21 right?
22     Q.  Since he has last been the coach, in
23 the period of time since he left.
24     A.  I have not paid attention.
25     Q.  With respect to the number of

1        A.    Yes.

2        Q.    And in that respect, is your

3   complaint about the overall number of staff for

4   you versus the men or the number of certain

5   types of staff?  For example, one has more

6   athletic trainers than the other?

7        A.    I'm talking about specific numbers

8   for specific roles, which I'm going to preface

9   I don't know exact, but I know that in

10  negotiations we asked for more knowing that the

11  men had more than our current.

12       Q.    Okay.  Which positions are those

13  where you believe you have fewer than the men?

14       A.    ATC and massage therapists.

15       Q.    Any others?

16       A.    I don't think so.  I don't know if

17  they have a physical therapist.

18       Q.    Now, your collective bargaining

19  agreement currently guarantees you a certain

20  number of massage therapists; is that correct?

21       A.    Yes.

22       Q.    And are you aware that the men's

23  collective bargaining agreement doesn't

24  guarantee them any massage therapists at all?

25       A.    I am not.

Page 203

```
 1   C E R T I F I C A T E

 2   DISTRICT OF COLUMBIA:

 3        I, MARY ANN PAYONK, shorthand reporter,

 4   do hereby certify that the witness whose

 5   deposition is hereinbefore set forth was duly

 6   sworn, the proceedings reported

 7   stenographically by me, and that this

 8   transcript is a true, correct, and full record

 9   of the testimony given.

10        I further certify that I am not related

11   to any of the parties to this action by blood

12   or by marriage, and that I am in no way

13   interested in the outcome of this matter.

14        IN WITNESS WHEREOF, I have hereunto set

15   my hand this 20th day of January, 2020.

16   [signature: Mary Ann Payonk]

17   _____

18        MARY ANN PAYONK, Shorthand Reporter

19

20

21

22

23

24

25
```