Jeffrey L. Kessler (*pro hac vice*)
jkessler@winston.com
David G. Feher (*pro hac vice*)
dfeher@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue, New York, NY 10166
Tel:    (212) 294-6700
Fax:    (212) 294-4700

Cardelle B. Spangler (*pro hac vice*)
cspangler@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive, Chicago, IL 60601
Tel:    (312) 558-5600
Fax:    (312) 558-5700

Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
Lev Tsukerman (SBN: 319184)
ltsukerman@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, Los Angeles, CA 90071
Tel:    (213) 615-1700
Fax:    (213) 615-1750

Jeanifer E. Parsigian (SBN: 289001)
jparsigian@winston.com
**WINSTON & STRAWN LLP**
101 California St., 35th Floor, San Francisco, CA 94111
Tel:    (491) 591-1000
Fax:    (491) 591-1400

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX MORGAN ET AL., | **Case No. 2:19-CV-01717-RGK-AGR** |
| Plaintiffs/Claimants, | Assigned to: Judge R. Gary Klausner |
| vs. | **PLAINTIFFS' MOTION *IN LIMINE* NO. 10 TO EXCLUDE DEFENDANT'S EXPERT TESTIMONY** |
| UNITED STATES SOCCER FEDERATION, INC., | |
| Defendant/Respondent. | Date:  May 5, 2020 |
| | Time: 9:00 a.m. |
| | Courtroom: 850 |

## I.  PRELIMINARY STATEMENT

Plaintiffs move *in limine* under a combination of Federal Rules of Evidence 403, 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) to exclude the testimony of USSF's proffered experts Mr. Philip A. Miscimarra, Ms. Carlyn Irwin and Dr. Justin McCrary because all or portions of each expert's testimony fails to assist "the trier of fact . . . to determine a fact in issue," misstates the law and/or will only serve to confuse and mislead the jury.  Plaintiffs adopt the arguments in their Motion to Exclude Defendant's Expert Testimony ("*Daubert* Motion") as support for excluding this testimony, without repeating those arguments or authorities here.  *See* Fed. R. Evid. 403 and 702; *Daubert* Motion, Dkt. 167; *Daubert* Reply, Dkt. 194.

Additionally, Plaintiffs move under Fed. R. Civ. P. 26(a)(2)(D) and Fed. R. Civ. P. 37(c)(1) to exclude Dr. McCrary's expert report of March 6, 2020 ("Rebuttal Report") in its entirety because it offers new theories and opinions that are not proper for a rebuttal report and that should have been disclosed in his initial report.

## II.  ARGUMENT

### A.  Mr. Miscimarra's Opinion Should Be Excluded in its Entirety

Mr. Miscimarra's testimony is both legally improper and highly confusing, as it advocates for an inconsistency between federal labor law and the requirements of the EPA and Title VII that invades the province of the Court to instruct on the law and also misstates the law.  *See Daubert* Motion, Dkt. 167, at 3–9; *Daubert* Reply, Dkt. 194, at 2-5; *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law. 'Experts interpret and analyze factual evidence.  They do not testify about the law . . . .'") (citing *U.S. v. Brodie*, 858 F.2d 492, 496 (9th Cir. 1988)).  Mr. Miscimarra is a law firm partner who has never served as a testifying expert witness, inappropriately offers legal opinions on the structure of U.S. labor law and collective bargaining and, most egregiously, offers an unprecedented legal opinion that is completely misleading as Title VII and Equal Pay Act requirements are absolute and not susceptible of prospective waiver in collective bargaining.  He also

1   seeks to interject opinions about the National Labor Relations Act and other labor law
2   statutes that have nothing to do with this case.  *Daubert* Motion, Dkt. 167 at 3–9;
3   *Daubert* Reply, Dkt. 194 at 2–5.

4        When he is not offering improper and erroneous legal opinions, Mr. Miscimarra
5   devotes his report to groundless conjecture about what the parties "meant" during the
6   collective bargaining process and what he infers about their motives, as a matter of fact,
7   from resulting CBAs.  But the law is clear that this is also impermissible.  *See Stephens*
8   *v. Union Pac. R.R. Co.,* 935 F.3d 852, 856-57 (9th Cir. 2019) ("The expert's opinion
9   must rest on 'facts or data in the case that the expert has been made aware of or
10  personally observed,' not merely assumptions and speculation.").  *See Daubert* Motion,
11  Dkt. 167 at 9–11; *Daubert* Reply, Dkt. 194 at 5.

12  **B.    Ms. Irwin's Testimony Comparing "Total" Compensation of the**
13  **       WNT and MNT Should Be Excluded Because it is Inconsistent with**
14  **       Governing Law and Will Cause Juror Confusion**

15       Ms. Irwin is an accountant who performed certain calculations at the direction of
16  USSF in order to render the opinion that, in accordance with the specifications given to
17  her by the defendant, "USSF paid more to members of the WNT" or "USSF paid more
18  to members of the WNT and the WNT Players Association."  Irwin Rep. at 13–21.
19  These "total" compensation comparisons, however, are the exact type of misleading and
20  off the point analyses which this Court has already held, in its class certification ruling,
21  to be legally irrelevant for determining discrimination under the EPA or Title VII
22  because they ignore differences in the rates of pay.  Minute Order, Dkt. 98, at 5.  Indeed,
23  the only reason that the WNT players received more total compensation than the MNT
24  players is that they played far more games and won virtually all of them, while the MNT
25  players did not even qualify for the last World Cup.  *See Daubert* Motion, Dkt. 167 at
26  13; *Daubert* Reply, Dkt. 194 at 6.  It would thus be highly confusing to the jury to admit
27  such irrelevant analyses into evidence from an expert when also instructed on the "rate
28  of pay" standard.  Doing so could lead to "absurd" results.  *See Daubert* Motion, Dkt.

167 at 12; *Daubert* Reply, Dkt. 194 at 6; *Kingsbury v. U.S. Greenfiber, LLC*, No. CV 08-00151 DSF (AGRx), 2013 WL 7018657 at *1 (C.D. Cal. Nov. 5, 2013) (excluding as "irrelevant and therefore [] not [] helpful to the trier of fact" expert testimony calculating total profit because it was inconsistent with the statute's damages measure of marginal profit).  These opinions should be excluded from the case under Federal Rules of Evidence 702 and 403.[1]

**C.   Dr. McCrary's Opinions Should Be Excluded in Five Areas Because These Opinions Are Either Inconsistent with Controlling Law, Divorced from the Record and/or Will Cause Juror Confusion**

Plaintiffs are moving to exclude a number of Dr. McCrary's opinions and analyses expressed in his affirmative and rebuttal experts reports because they are either legally irrelevant, divorced from the facts and thus fundamentally unreliable, or hopelessly confusing to the jury.  Plaintiffs' *Daubert* Motion is addressed to McCrary's affirmative report, but his Rebuttal Report, containing new inadmissible opinions, was filed later.  *See Daubert* Motion, Dkt. 167 at 13-16; *Daubert* Reply, Dkt. 194 at 7-10.[2]

<u>First</u>, this Court should exclude McCrary's opinions comparing the "actual" percentage of revenues earned by the WNT and MNT during the class period because this is just a new version of the same "total compensation" analyses that this Court has already rejected.  While Irwin calculates the total compensation figures and compares them (*see supra*, Section B), McCrary takes this one step further and calculates total compensation as a percentage of each team's revenues without accounting for the difference in number of games played and results.  *See* Rebuttal Report ¶¶ 41-43.[3]  But

---

[1] Plaintiffs seek exclusion of the testimony included in pages 7–9 and 13–21 of Ms. Irwin's report.

[2] Plaintiffs seek exclusion of the testimony included in ¶¶ 12–15, 25, 27, and 29–56 of Dr. McCrary's report, as well as Dr. McCrary's entire rebuttal report.

[3] This is just one of many confusing comparisons Dr. McCrary makes that has no basis in the law. Additional comparisons set forth by Dr. McCrary that have no legal relevance to the issues in this case  include (1) a percentage comparison of what WNT players actually received from USSF in their CBAs for winning two World Cups in

the "absurd" results are the same.  The only reason the WNT had a higher percentage of the team's revenues paid in total compensation is because they won far more games than the MNT and earned virtually all of the bonuses that they could achieve.  But they never had the same opportunity as the MNT to earn much higher compensation because of the WNT's lower rate of pay.  *See* Pl. Summ. J. Motion, Dkt. 170 at 5-8.  It would confuse jurors to present an argument that pay discrimination should be determined by a comparison of the percentage of revenues earned by each group of employees in total compensation when the controlling legal test is rate of pay.  *See Daubert* Motion, Dkt. 167 at 2; *Daubert* Reply, Dkt. 194 at 6.

Further, if the point of this total compensation percentage of revenue comparison is to support the USSF's revenue justification, it fails, on its face, and is legally irrelevant, because there is no evidence that such a total compensation percentage of revenues comparison was, or ever could be, used by the USSF as a non-gender based reason for its discrimination.  To the contrary, such a comparison appears nowhere in USSF's sworn interrogatory answers or binding 30(b)(6) testimony as one of the justifications it reportedly relied upon in determining the two teams' different rates of

---

comparison to the prize money USSF received from FIFA with the hypothetical amount of money the MNT might have received for winning the World Cup under its CBA with the hypothetical amount of money that the USSF might have received in prize money from FIFA had the MNT ever won a World Cup (since the MNT has never won the World Cup while the WNT won it twice during the class period, this comparison is utterly meaningless in every respect) (*see* Rebuttal Report ¶¶ 31-32); (2) a percentage comparison of the compensation a Plaintiff would earn for winning the World Cup relative to the prize money FIFA ultimately paid to USSF when the WNT won versus a percentage comparison of how much an MNT player might theoretically earn for a match that brings in purportedly comparable revenue (*see* Rebuttal Report ¶¶ 33-34); and (3) the average bonus that Plaintiffs actually received as part of their total compensation for a non-World Cup tournament compared to the average bonus MNT players—who won many fewer tournament games—actually received as part of their total compensation for a non-World Cup Tournament (*see* Rebuttal Report ¶¶ 35-37). These comparisons suffer from the same fatal flaws in not taking into account different rates of pay and levels of performance that render both these opinions, and McCrary's other total compensation comparisons unreliable, misleading and inadmissible.

1  pay.  Nor is this even possible, as USSF would have no way of knowing what the actual
2  compensation or revenues would be in the future for the two teams' games, as that
3  would depend on the future performance of the team in earning bonuses or making the
4  World Cup, which was unknown when the compensation decisions were made.  An
5  expert cannot make up his own post-hoc justification for a discrimination that is
6  divorced from the facts, and which was never relied upon, or could not even be
7  theoretically relied upon, by the employer in real life, and then offer it as a defense in a
8  pay discrimination case.

9      <u>Second</u>, for the reasons set forth in Plaintiffs' *Daubert* motion and *Daubert* reply,
10  *see Daubert* Motion, Dkt. 167 at 13-16; *Daubert* Reply, Dkt. 194 at 7-10, the Court
11  should exclude the unprecedented opinions of Dr. McCrary that the compensation terms
12  to the members of the WNT and the members of the MNT are not comparable under
13  Title VII and the EPA because different levels of risk in the two compensation structures
14  make it impossible to determine whether one pay package is better than another.
15  McCrary Rep. at 16–17.  Specifically, Dr. McCrary offers the erroneous legal opinion,
16  in the guise of expert testimony, and as set forth in Plaintiffs' *Daubert* motion, that
17  when one group of employees has one mix of base compensation, benefits and bonus
18  compensation, and another group of employees has a different mix of base
19  compensation, benefits and bonus compensation, one compensation package cannot be
20  determined to be better than another because of the different levels of risk.  McCrary
21  Rep. at 7-8.[4]  But, the law is clear that different compensation schemes do not have to

22  _____
23  [4] Dr. McCrary's shifts gears in his Rebuttal Report and concedes that it "*is* possible" to
24  determine if discrimination is present "even if compensation for risk is present"
   (Rebuttal Report at 30), but he does not explain how he would ever do so.  He only
25  notes one example where, if it was "known at the time of contracting" that sales by a
   man and a woman would be identical, but the man would be paid more than the woman,
26  and there were no other relevant factors affecting pay, then it would be obvious the
   contract "would entail women being compensated less than men" (*id.* at 32).  That
27  example, however, eliminates any possibility of adjusting for risk at the outset when
28  future performance, as here, is unknown, so it does not change his legally improper

1   contain identical compensation and benefit elements to be subject to Title VII and the
2   EPA.   To the contrary, different combinations of benefits and pay and bonus are
3   evaluated together under the EPA and Title VII to determine whether or not
4   discrimination exists.   *Daubert* Motion, Dkt. 167 at 15 (citing *e.g.*, *Hemmings v.*
5   *Tidyman's Inc.*, 285 F.3d 1174, 1191 (9th Cir. 2002)).   Dr. McCrary's attempt to offer
6   his opinions to persuade the jury that it cannot effectively make such a comparison
7   under the EPA and Title VII is contrary to law and dangerously confusing such that it
8   must be excluded under Federal Rules of Evidence 403 and 702.   *Daubert* Reply, Dkt.
9   194 at 10.

10      Third, this Court should not permit Dr. McCrary to testify that the calculation of
11   back pay damages in a discrimination case requires a separate "causation" analysis to
12   determine what portions of the discrimination in pay were due to gender discrimination
13   as opposed to some other speculative factor.   Dr. McCrary offers the erroneous opinion
14   that the failure of Plaintiffs' damages expert to perform such an individualized causation
15   analysis is a defect (*see* Rebuttal Report, ¶¶ 9-12), but the law for proving back pay
16   damages in a discrimination case has no such causation requirement at the damages
17   calculation stage.   To the contrary, liability under the EPA is established by proving the
18   existence of a compensation differential between employees of different genders that
19   perform substantially equal work for the same establishment of an employer, at which
20   point the employer has to prove one of the available affirmative defenses, or liability is
21   found.   *See* Pl. Summ. J. Motion, Dkt. 170 at 13.   Once liability is found, back pay
22   damages are determined by the amount of the compensation difference, adjusting for
23   all components of the pay package without any further causation analysis.   The same is
24   true for calculating back pay damages under Title VII.   *See* 42 U.S.C.A. § 2000e-5(g)(2)
25   (back pay denied only where discrimination is not found).   There is no additional
26   causation requirement under the EPA or Title VII requiring an expert to parse out what

27
28   opinion that it is not possible for anyone to determine which pay package is
     economically superior in this case for purposes of the EPA and Title VII.

1   would have theoretically been the compensation in some but for world in which some
2   portion but not all of the discrimination that takes place is claimed to be justified.  That
3   economic issue has no place in a pay discrimination case and it would prejudice and
4   confuse the jury to permit Dr. McCrary to make the argument that further economic
5   proof of causation is required.  *See, e.g.*, *Albemarle Paper Co. v. Moody*, 422 U.S. 405,
6   422 (1975) (noting "[i]f backpay were awardable only upon a showing of bad faith, the
7   remedy would become a punishment for moral turpitude, rather than a compensation
8   for workers' injuries. …  Title VII is not concerned with the employer's 'good intent or
9   absence of discriminatory intent' for 'Congress directed … the Act to the consequences
10  of employment practices, not simply the motivation'").

11       <u>Fourth</u>, this Court should exclude under Rule 702 and *Daubert* Dr. McCrary's
12  opinion that Plaintiffs' damages study shows negative damages for WNT friendlies
13  because all of the base compensation for contract players on the WNT and all of their
14  benefits, like injury protection and severance and maternity leave, should be attributed
15  solely to their friendlies, as opposed to any of their tournaments or World Cup related
16  games.  *See* Rebuttal Report ¶¶ 13-14, 38-39 & Exhibit 1.  An expert's opinions have
17  to fit the facts of the case and be based upon the record evidence to be admissible.
18  *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856-57 (9th Cir. 2019) ("The expert's
19  opinion must rest on 'facts or data in the case that the expert has been made aware of or
20  personally observed,' not merely assumptions and speculation.").

21       But Dr. McCrary just made up his erroneous and unsupported assumption that all
22  of the base compensation for contract WNT players and all of the costs of injury
23  protection, severance, and maternity leave should be attributed just to friendly games.
24  In reality, the terms of employment for the contracted players make it clear that they are
25  required to play in all WNT games—whether friendlies, non-World Cup Tournament
26  games or World Cup-related games—to receive the annual base compensation of their
27  contracts. Ex. 6 WNT CBA Art. 10 § A ("In consideration of the payments to be made
28  by Federation to a Player . . . the Player shall have the following duties and

responsibilities . . . the Player shall, subject to her health and fitness, be available for training with, and any games of, the WNT as may be requested by the Federation"). Further, the indisputable facts show that WNT players' severance payments, maternity leave and injury protection are not linked to just friendly games. WNT CBA at Art. 6 § D; Art. 8 § A; Art. 12 § C. Without any facts to support his assumption that all of this base contract compensation and all of these benefits costs can be attributed to just friendlies, Dr. McCrary's analyses based on this unsupported speculation are pure *ipse dixit* and not sufficiently reliable to be admitted under Rule 702. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 860, 861 (9th Cir. 2014) (affirming district court exclusion of expert opinions that were "unsupported by the facts" because "speculative testimony is inherently unreliable"); *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) (expert opinion was "unsubstantiated and subjective, and therefore unreliable and inadmissible" under Rule 702).

Finally, the Court should exclude Dr. McCrary's unsupported and unreliable opinion that the WNT players have a "pay advantage" under the WNT CBA because, if the MNT's work performance had occurred under the terms of the WNT CBA, an MNT player would have received more than he would have under the MNT CBA. *See* Rebuttal Report at 26-28 and Exhibit 6. This is junk expert testimony at its worst. The WNT CBA had an annual 16 game minimum requirement, so if the MNT players were paid according to the WNT CBA, they would either have a legal obligation to be available for at least 16 games annually or been non-contract players. In either case, they would have been paid more under the MNT CBA because the rate of pay was higher under the MNT for friendlies, tournaments and World Cup related games. The only way Dr. McCrary gets a different result is by making the impossible assumption that they would be contract players on the WNT but not play at least the required minimum of 16 games. Dr. McCrary's analysis, which is based on a hypothetical that could never exist under the WNT CBA, is divorced from the record evidence and thus must be excluded under Rule 702 and *Daubert*. *Stephens*, 935 F.3d at 856-57; *see also*

1  *Daubert*, 509 U.S. at 591 (reasoning that to be admissible, expert opinions must be
2  "sufficiently tied to the facts of the case") (quoting *United States v. Downing*, 753 F.2d
3  1224, 1242 (3d Cir. 1985)).

4      **D.**    **Dr. McCrary's Rebuttal Report Raises Entirely New Issues and**
5      **Opinions That Are Not Proper Subjects for Rebuttal and Should**
6      **Have Been Disclosed in His Initial Brief**

7      "'[R]ebuttal' experts cannot put forth their own theories; they must restrict their
8  testimony to attacking the theories offered by the adversary's experts." *Int'l Bus.*
9  *Machines Corp. v. Fasco Indus., Inc.* ("IBM Corp."), No. C-93-20326 RPA, 1995 WL
10  115421, at *3 (N.D. Cal. Mar. 15, 1995).  As is made clear in Plaintiffs' expert Dr.
11  Cook's report, the scope of her assignment was to opine on damages only.  *See* Dr.
12  Cook Report ¶ 7 ("[I]n the event that claimed violations of the Equal Pay Act and Title
13  VII are found by the jury, I have determined the backpay damages suffered by the
14  classes . . .").  Dr. Cook did not provide expert opinions regarding whether USSF's pay
15  structure for the WNT was lower as a percentage of revenues than that for its male
16  counterparts, or whether USSF was justified in paying the men and women differently
17  based on revenue or other non-gender based factors.  *Id*.  Simply put, Dr. Cook's report
18  was limited to the issue of how much damage Plaintiffs suffered assuming that Plaintiffs
19  proved the existence of discrimination under the EPA and Title VII.

20      In contrast to Dr. Cook's damages opinion, Dr. McCrary's purported "rebuttal"
21  report offers a number of expert economic opinions on the issue of discrimination
22  liability for USSF's claimed revenue justification which are in no way a rebuttal of the
23  damages analyses presented by Dr. Cook.  *See* Rebuttal Report § 2 and § 3. Such
24  opinions about whether discrimination in pay existed, or could be justified, are not
25  proper rebuttal to Dr. Cook's analysis and should thus be excluded for not having been
26  disclosed in Dr. McCrary's affirmative expert report.  Dr. Cook did not address issues
27  of liability—only damages.  The law thus prevents Dr. McCrary from providing his
28  own, new opinions on the existence of discrimination and USSF's affirmative defenses

at this late stage under the guise of a rebuttal report, which deprives Plaintiffs of any opportunity to offer an actual rebuttal to these new McCrary liability opinions.   *See IMB Corp.*, 1995 WL 115421, at *3.

If USSF intended to rely at trial on Dr. McCrary's new expert liability opinions regarding a revenue justification or prize money justification, it was required to disclose that information in Dr. McCrary's initial report.   *See* Fed. R. Civ. P. 26(a)(2)(D); *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1061 (C.D. Cal. 2010) ("Rule 26 requires parties to disclose all expert evidentiary material that may be relied upon at trial"); *U.S. Gypsum Co. v. Pacific Award Metals, Inc.*, 438 F.Supp.2d 1101, 1106-1107 (N.D. Cal. 2006) (refusing to consider declaration that contained opinions "not timely disclosed in [the] initial expert report" because the declaration bore "directly on issues for which [Defendant had] the burden of proof in its affirmative claim" and thus should have been disclosed in the initial expert report).   Without such disclosure as required under Rule 26, USSF is "not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

USSF's failure to disclose these analyses is neither justified nor harmless. Had Dr. McCrary offered these opinions in his initial report, as was required by the Court's order, Plaintiffs would have had an opportunity for their rebuttal expert, Dr. Noll, to respond.  Litigation gamesmanship may not be used by Defendant to evade the expert disclosure requirements ordered by the Court.  *See id.*

## III.   CONCLUSION

For all these reasons, and those set forth in Plaintiffs' *Daubert* Motion, the Court should exclude all the expert testimony of Mr. Philip A. Miscimarra, and those portions of the expert testimony of Ms. Carlyn Irwin and Dr. Justin McCrary that are identified in this motion and which do not meet the requirements of either the Federal Rules of Evidence or *Daubert*.  In addition, for the reasons set forth in Point V above, this Court should exclude Dr. McCrary's March 6 Rebuttal Report in its entirety because its contents are not a rebuttal.

1

Dated:  March 20, 2020

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WINSTON & STRAWN LLP


By: */s/ Jeffrey L. Kessler*
Jeffrey L. Kessler
*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION *IN LIMINE* NO. 10 TO EXCLUDE DEFENDANT'S EXPERT TESTIMONY