Jeffrey L. Kessler (admitted *pro hac vice*)
jkessler@winston.com
David G. Feher (admitted *pro hac vice*)
dfeher@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Cardelle B. Spangler (admitted *pro hac vice*)
cspangler@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
Lev Tsukerman (SBN: 319184)
ltsukerman@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Jeanifer E. Parsigian (SBN: 289001)
jparsigian@winston.com
**WINSTON & STRAWN LLP**
101 California St., 35th Floor
San Francisco, California 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA -WESTERN DIVISION

| | |
|---|---|
| ALEX MORGAN, et al.,<br><br>        Plaintiffs/Claimants,<br><br>v.<br><br>UNITED STATES SOCCER FEDERATION, INC.,<br><br>        Defendant/Respondent. | **Case No. 2:19-cv-01717-RGK-AGR**<br><br>**PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO LOCAL RULE 16-4**<br><br>Pre-trial Conference: April 20, 2020<br>Trial: May 5, 2020 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY ....................1

III.    CLAIMS AND DEFENSES .......................................................................3

    A.     Summary of Plaintiffs' Claims ........................................................3

    B.     Elements Necessary to Prove Plaintiffs' Claims .............................3

    C.     Key Evidence in Support of Plaintiffs' Claims................................5

    D.     USSF's Affirmative Defenses........................................................12

    E.     Elements Necessary to Establish USSF's Affirmative Defenses ............13

    F.     Plaintiffs' Key Evidence in Opposition to USSF's Affirmative
          Defenses .........................................................................................15

    G.     Anticipated Evidentiary Issues......................................................19

    H.     Anticipated Issues of Law..............................................................24

IV.     BIFURCATION .........................................................................................24

V.      JURY TRIAL .............................................................................................26

    A.     Equal Pay Act Damages.................................................................26

    B.     Title VII Damages.........................................................................27

VI.     ATTORNEYS' FEES .................................................................................27

VII.    ABANDONMENT OF ISSUES ................................................................28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Gardner-Denver Co.*,
  415 U.S. 36 (1974).................................................................................... 13

*Alfred E. Mann Foundation for Scientific Research v. Cochlear Corp.*,
  2014 WL 12586105 (C.D. Cal. Jan. 3, 2014)........................................... 25

*Altman v. Stevens Fashion Fabrics*,
  441 F. Supp. 1318 (N.D. Cal. 1977)................................................... 26, 27

*Arizona v. ASARCO LLC*,
  773 F.3d 1050 (9th Cir. 2014) .................................................................. 27

*Bence v. Detroit Health Corp.*,
  712 F.2d 1024 (6th Cir. 1983) .................................................................... 3

*Brennan v. Goose Creek Consol. Indep. School Dist.*,
  519 F.2d 53 (5th Cir. 1975) ........................................................................ 4

*Brinkley-Obu v. Hughes Training, Inc.*,
  36 F.3d 336 (4th Cir. 1994) ...................................................................... 14

*Christianburg Garment Co. v. EEOC*,
  434 U.S. 412 (1978).................................................................................. 28

*Corning Glass Works v. Brennan*,
  417 U.S. 188 (1974).............................................................................. 4, 13

*Daubert v. Merrell Dow Pharmaceuticals*,
  509 U.S. 579 (1993).................................................................................. 21

*E.E.O.C. v. First Citizens Bank of Billings*,
  758 F.2d 397 (9th Cir. 1985) .......................................................... 6, 11, 27

*Ebbert v. Nassau Cty.*,
  2009 WL 935812 (E.D.N.Y. Mar. 31, 2009) ............................................. 3

*EEOC v. State of Delaware Dept. of Health and Social Services*,
  865 F.2d 1408 (3d Cir. 1989) ................................................................... 26

*Freeman v. Oakland Unified School Dist.*,
 291 F.3d 632 (9th Cir. 2002) .................................................................. 15

*Gunther v. Washington Cnty.*,
 623 F.2d 1303 (9th Cir. 1979) ................................................................... 3

*Hein v. Oregon Coll. of Educ.*,
 718 F.2d 910 (9th Cir. 1983) ..................................................................... 4

*Humphrey v. County of Nassau*,
 2009 WL 875534 (E.D.N.Y. Mar. 30, 2009) ............................................ 4

*Julian v. City of Houston, Tex.*,
 314 F. 3d 721 (5th Cir. 2002) .................................................................. 26

*Laffey v. Northwest Airlines Inc.*,
 567 F.2d 429 (D.C. Cir. 1976) ................................................................. 13

*Lenzi v. Systemax, Inc.*,
 944 F.3d 97 (2d Cir. 2019) ........................................................................ 4

*Lutz v. Glendale Union High Sch.*,
 403 F.3d 1061 (9th Cir. 2005) ................................................................. 27

*Marcoux v. State of Maine*,
 797 F.2d 1100 (1st Cir. 1986) .................................................................... 4

*Marshall v. Dallas Indep. Sch. Dist.*,
 605 F.2d 191 (5th Cir. 1979) ..................................................................... 4

*Maxwell v. City of Tucson*,
 1984 WL 21130 (9th Cir. July 3, 1984) ..................................................... 3

*Mulhall v. Advance Sec., Inc.*,
 19 F.3d 586 (11th Cir. 1994) ..................................................................... 4

*Rizo v. Yovino*,
 950 F.3d 1217 (9th Cir. 2020) ............................................. 13, 14, 17, 21

*Sweeney v. Chang*,
 2019 WL 1431583 (C.D. Cal. Mar. 26, 2019) ........................................ 25

*Traxler v. Multnomah Cty.*,
 596 F.3d 1007 (9th Cir. 2010) ................................................................. 26

*Viveros v. Donahoe*,
   2013 WL 1224848 (C.D. Cal. Mar. 27, 2013) .......................................................27

*Wright v. Universal Mar. Serv. Corp.*,
   525 U.S. 70 (1998)...............................................................................................13

**Statutes**

29 U.S.C. § 206(d) ...........................................................................................13, 14

29 U.S.C. § 206(d)(1) .........................................................................................2, 3

29 U.S.C. § 216........................................................................................................18

29 U.S.C. § 216(b) ..........................................................................................14, 27

29 U.S.C. § 255(a) ..........................................................................................14, 26

42 U.S.C. 2000e et seq.............................................................................................5

42 U.S.C. §1981a(c)(2).........................................................................................27

42 U.S.C. § 2000e-2(a)(1) .......................................................................................4

42 U.S.C. §§ 2000e, *et seq.*....................................................................................3

42 U.S.C. § 2000e-5(k) ..........................................................................................27

Civil Rights Act of 1964 Title VII............................................................*passim*

Equal Pay Act .................................................................................................*passim*

Ted Stevens Olympic and Amateur Sports Act....................................................28

**Other Authorities**

29 C.F.R. § 1620.9(b) ...............................................................................................4

29 C.F.R. §§ 1620.13(c), 1620.15, 1620.16, 1620.17 ..........................................3

29 C.F.R. § 1620.18(a) ........................................................................................4, 8

29 C.F.R. § 1620.23 ................................................................................................13

29 C.F.R. § 1620.27 ..................................................................................................4

F.R.Civ.P. 26 .................................................................................................... 21

F.R.Civ.P. 26(a)(3)(A) ...................................................................................... 1

F.R.E. 403 ........................................................................................................ 24

F.R.E. 1006 ............................................................................................... 23, 24

L.R. 16-4 ............................................................................................................ 1

https://www.ussoccer.com/teams/uswnt ........................................................ 8

## I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 26(a)(3)(A), Local Rule 16-4 of the Central District of California, and this Court's Order for Jury Trial (Dkt. No. 60), Plaintiffs Alex Morgan, et al. (collectively, "Plaintiffs") hereby submit the following Memorandum of Contentions of Fact and Law.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs in this case are members of the United States Senior Women's National Soccer Team ("WNT"), four-time World Cup and Olympic champions.  Plaintiffs brought this case against their employer, United States Soccer Federation, Inc. ("USSF" or "Defendant") for wage discrimination in violation of the Equal Pay Act and Title VII because USSF pays the WNT players at a rate less than the players on the United States Senior Men's National Soccer Team ("MNT") for equal work.  Plaintiffs also brought this case against USSF for discrimination in various working conditions, including with respect to hotel and travel arrangements, field conditions, and medical support.

In April 2016, the four class representatives in this case, Alex Morgan, Megan Rapinoe, Becky Sauerbrunn, and Carli Lloyd, each filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against USSF, alleging sex-based discrimination. Dkt. No. 2.  These charges were timely brought within 300 days of the discriminatory action.  On February 5, 2019, the EEOC issued Right to Sue letters to each of the four class representatives.  *Id.*  Plaintiffs timely filed the Complaint on March 8, 2019 (within the 90-day window to assert claims), alleging violations of Title VII as well as the Equal Pay Act ("EPA").  Dkt. No. 1.

On November 8, 2019, this Court certified two classes of Plaintiffs seeking relief under Title VII: (1) an injunctive relief class of "all WNT players on the team as of the date of final judgment, or the date of the resolution of any appeals therefrom, whichever is later;" and (2) a damages class of "all WNT players who were members of the WNT at any time from February 4, 2015 (later amended by stipulation to June 11, 2015) through the date of class certification."  Dkt. Nos. 98, 123.  The Court also granted

PLAINTIFFS' MEM. OF CONTENTIONS OF FACT & LAW          CASE NO. 2:19-CV-01717-RGK-AGR

conditional certification of Plaintiffs' collective action seeking relief under the EPA, made up of "all WNT players who were members of the WNT at any time from March 8, 2016 through the present." *Id.* The Court appointed Morgan, Rapinoe, Sauerbrunn, and Lloyd as the class representatives and Winston & Strawn LLP as class counsel. *Id.*

The parties have significantly narrowed the issues to be tried by way of discovery and briefing. USSF no longer disputes that the jobs of the WNT and MNT players require equal skill, effort, and responsibility—and therefore has necessarily conceded that they perform equal work. *See* Dkt. No. 197. USSF also does not dispute that the men's and women's teams perform their jobs under similar working conditions. Therefore, in order to meet their burden to prove an EPA violation, Plaintiffs need only prove at trial that USSF has centralized control over both teams and pays the WNT at a rate less than the MNT. And, under controlling authority, this would also prove a Title VII violation for compensation-based discrimination. Even if it did not, Plaintiffs have come forward with both direct and indirect evidence of USSF's gender discrimination in violation of Title VII, including statements (and positions) by USSF that they were justified in paying the WNT less than the MNT because women are biologically slower and weaker than men. In addition, Plaintiffs allege and will prove that they were subjected to inferior working conditions than MNT players by USSF in light of disparities between the MNT and WNT on travel, hotels and meals, medical care, and playing surfaces.

USSF has abandoned a number of its previously asserted affirmative defenses and now principally relies on the argument that it can rebut Plaintiffs' *prima facie* case under the EPA and Title VII by showing that the pay disparity is "a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). Specifically, USSF claims that it can prove that the pay disparity resulted from (1) different objectives pursued by the WNT and MNT in collective bargaining; (2) USSF's belief that the MNT purportedly generated more revenue for USSF than the WNT; and/or (3) because of the decision to discriminate on the basis of gender in World Cup prize money paid to

federations by the Fédération Internationale de Football Association ("FIFA"), a third party.  As set forth below, each of these claimed justifications is both unsupported by the evidentiary record and legally meritless.

### III.   CLAIMS AND DEFENSES

#### A.   Summary of Plaintiffs' Claims

**1.   Count 1:**  Defendant violated the Equal Pay Act (the Fair Labor Standards Act of 1938, as amended by the Equal Pay Act, 29 U.S.C. §§ 206 *et seq*.) by willfully paying Plaintiffs and the collective class at a lower rate of pay than male employees performing equal work on jobs that require equal skill, effort, and responsibility performed under similar working conditions.

**2.   Count 2:**  Defendant violated Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §§ 2000e, *et seq*.) by discriminating against Plaintiffs and the class with respect to their sex, specifically by maintaining a policy and practice of treating Plaintiffs and the class less favorably than similarly situated male employees with respect to both compensation and working conditions.

#### B.   Elements Necessary to Prove Plaintiffs' Claims

##### 1.   Equal Pay Act

In order to succeed on their claims for violations of the Equal Pay Act, Plaintiffs must prove:

(1) Plaintiffs were paid at a rate less than the MNT players.  *See* 29 U.S.C. § 206(d)(1); *Ebbert v. Nassau Cty*., 2009 WL 935812, at *2–3 (E.D.N.Y. Mar. 31, 2009); *Bence v. Detroit Health Corp*., 712 F.2d 1024, 1027 (6th Cir. 1983).

(2) WNT and MNT players perform substantially equal (but not necessarily identical) jobs, meaning that the jobs of the WNT and MNT players require equal skill, effort, and responsibility.  *See* 29 C.F.R. §§ 1620.13(c), 1620.15, 1620.16, 1620.17; *Gunther v. Washington Cnty*., 623 F.2d 1303, 1309 (9th Cir. 1979); *Maxwell v. City of Tucson*, 1984 WL 21130, at *3 (9th Cir. July 3, 1984)).  Plaintiffs may use a pool of "similarly situated" male employee comparators to demonstrate the discrimination.

*See, e.g.*, *Hein v. Oregon Coll. of Educ.*, 718 F.2d 910, 917 (9th Cir. 1983); *see also Marcoux v. State of Maine*, 797 F.2d 1100, 1106–08 (1st Cir. 1986) (finding that all male prison guards were the appropriate comparators to the plaintiff female prison guards).

(3) WNT and MNT players are similarly situated because they perform their jobs under similar working conditions for a single employer, USSF. *See* 29 C.F.R. § 1620.18(a); *Corning Glass Works v. Brennan*, 417 U.S. 188, 201–03 (1974); 29 C.F.R. § 1620.9(b)). Both EPA regulations and the case law make it clear that employees can be found to work for a "single establishment" even if their jobs are not performed in the same physical place when the common employer maintains centralized control over compensation and working conditions. 29 C.F.R. § 1620.9(b); *Brennan v. Goose Creek Consol. Indep. School Dist.*, 519 F.2d 53, 58 (5th Cir. 1975); *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 591 (11th Cir. 1994); *Marshall v. Dallas Indep. Sch. Dist.*, 605 F.2d 191, 194 (5th Cir. 1979).

## 2.    Title VII

In order to succeed on their claims for violations of Title VII, Plaintiffs must prove that:

(1) Plaintiffs were paid less and/or were subjected to inferior working conditions than MNT players by USSF; and

(2) Plaintiffs' sex was a motivating factor in USSF's decision to pay Plaintiffs less or subject them to less favorable working conditions. *See* Ninth Circuit Manual of Model Civil Jury Instructions (2017 ed.), Instruction 10.1C; 42 U.S.C. § 2000e-2(a)(1); *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 110 (2d Cir. 2019); *Humphrey v. County of Nassau*, 2009 WL 875534, at *5 (E.D.N.Y. Mar. 30, 2009).

Plaintiffs' showing that they performed equal work for unequal pay during both class periods, and that USSF cannot establish any of its affirmative defenses to its pay discrimination under the EPA, also establishes liability under Title VII as a matter of law. *See* 29 C.F.R. § 1620.27 ("[i]n situations where the jurisdictional prerequisites of

4

1   both the EPA and title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e

2   et seq., are satisfied, any violation of the Equal Pay Act is also a violation of title VII.")

3       **C.   Key Evidence in Support of Plaintiffs' Claims**

4           **1.   Equal Pay Act**

5               **a.   Plaintiffs were paid at a rate less than the MNT players.**

6       In order to prove that Plaintiffs were paid at a rate less than the MNT players,

7   Plaintiffs will rely on the relevant collective bargaining agreements ("CBAs") of both

8   the WNT and MNT, which show on their face that WNT players only have had the

9   opportunity during the class period to receive lower per-game bonuses than MNT

10  players have had the opportunity to receive for "wins" and "ties" in "friendlies"; that

11  WNT players only have had the opportunity during the class period to receive lower

12  bonuses than the MNT players have had the opportunity to receive for winning World

13  Cup qualifying games, for qualifying as a team for the World Cup, and for making the

14  World Cup roster; and that WNT players further only have had the opportunity during

15  the class period to receive lower rates of bonuses for other non-World Cup tournaments.

16  *See* Plaintiffs' Exhibit Nos. 31–32, 117.  The CBAs, as well as the testimony of USSF's

17  30(b)(6) witnesses, establish that each of the members of the WNT and MNT has been

18  paid by USSF according to the rate of pay base compensation and bonus schedules set

19  forth within the agreements during the class periods and that the members of the WNT

20  have not been given the opportunity to earn the same rate of pay per game as the

21  members of the MNT.  Because this was admitted in 30(b)(6) testimony by USSF, these

22  facts may not be disputed at trial.

23      Furthermore, Plaintiffs will present testimony from the former counsel for the

24  WNT's union, John Langel, that members of the WNT raised concerns about pay

25  equality in their CBA as early as 2004 to the United States Olympic Committee (*see*

26  Plaintiffs' Exhibit No. 56) and will present testimony from several witnesses that in

27  2016, when WNT players and their representatives explicitly requested CBA

28  compensation that was equal to the MNT players, they were told by USSF's outside

PLAINTIFFS' MEM. OF CONTENTIONS OF FACT & LAW          CASE NO. 2:19-CV-01717-RGK-AGR

counsel Russ Sauer of Latham & Watkins that "market realities are such that the women do not deserve equal pay." *See also* Plaintiffs' Exhibit No. 121. Plaintiffs will also elicit testimony from USSF's Managing Director of Administration Tom King, who attended nearly all of the bargaining sessions leading up to the ratification of the WNT's current CBA, that USSF would not agree to the WNT players' demand for equal pay and never offered the WNT the same level of game bonuses for friendlies, World Cup related games, or other tournament games that the MNT players had the opportunity to receive under the MNT CBA. And testimony will be elicited from former Women's National Team Players Association ("WNTPA") counsel Rich Nichols that USSF did not offer the WNT an equal bonus structure for "friendlies" or an equal rate of pay structure for the World Cup or other tournament events despite the fact that the WNT players repeatedly asked for this.

Additionally, Plaintiffs will present evidence of various USSF admissions that the WNT players were not paid equally to the members of the MNT. *First*, USSF's 30(b)(6) witness on the issue of differences in rate of pay admitted that the MNT and WNT CBAs set forth lower per-game bonuses and compensation for the WNT than for the MNT. *Second*, the 2017 campaign materials of former USSF President Carlos Cordeiro, affirmed at his deposition, included his statements that "our female players have not been treated equally" that he intended, as President, to work for equal pay and equal resources for female athletes and that "immediate" changes needed to be made, without waiting for any CBA to expire, to rectify the unequal treatment of the WNT. *See* Plaintiffs' Exhibit No. 127. *Third*, Plaintiffs will elicit or present testimony from former USSF President Carlos Cordeiro that he still believes that unequal opportunities for the WNT exist today, and that he, and other Board members, have been complaining about this unequal treatment for years, while USSF did not redress it.

Finally, Plaintiffs' expert Dr. Finnie Cook will present a detailed analysis of how much each Plaintiff and class member would have received in compensation under the superior terms of the MNT CBA and testify that the Plaintiffs would have received far

more compensation under the rate of pay the MNT players received under the terms of
their CBA, after adjusting for all differences in fringe benefits and other compensation
terms between the MNT and WNT CBAs.

> **b.     WNT and MNT players perform substantially equal (but
> not necessarily identical) jobs, meaning that the jobs of
> the WNT and MNT players require equal skill, effort, and
> responsibility.**

As noted above, USSF appears to have indicated it its most recent brief that it no
longer is contesting this element of Equal Pay Act liability.  If this turns out not to be
the case, Plaintiffs will demonstrate that they satisfy these requirements through the
following evidence.

*Equal Skill*.

Plaintiffs will rely on testimony from former WNT head coach Jill Ellis that the
WNT and MNT players are equally skilled in each key area of soccer—athleticism,
"tactical IQ," tactical proficiency, and mental fortitude.  Plaintiffs will also present
testimony from former President Cordeiro that he deferred to Coach Ellis as the best
judge of the WNT players' skill.  Plaintiffs themselves will testify to this as
well.  Furthermore, the game results for the WNT and MNT from 2014–2020
(Plaintiffs' Exhibit Nos. 201–202) show that the WNT has been far more successful
than the MNT during the class period.  USSF's "evidence" presented at the summary
judgment stage that women are less "skilled" than men at soccer (that women are
purportedly weaker and slower than men due to biological differences such as "skeletal
structure" and "body fat") is based on gender stereotypes and are themselves evidence
of USSF's discriminatory animus toward women.  USSF does not refute Plaintiffs'
equal skill showing.

*Equal Effort*.

Coach Ellis, former President Cordeiro, and former President Sunil Gulati will
all testify that the WNT players work as hard and expend as much effort as the MNT

1   players in playing for their respective national teams.  And USSF itself has stated that

2   the WNT is "one of the most dominant squads in the history of sport, men or

3   women."   Plaintiffs' Exhibit No. 182 (screenshot from USSF's website,

4   https://www.ussoccer.com/teams/uswnt).  USSF has never disputed these facts.

5          ***Equal Responsibility***.

6          The responsibilities of the WNT and MNT players are set forth in their respective

7   CBAs (Plaintiffs' Exhibit Nos. 31–32) and USSF's Safe Soccer Framework (Plaintiffs'

8   Exhibit No. 185) and are substantially similar, including being available for training,

9   maintaining a high level of competitive soccer skills and physical conditioning, not

10  using illegal drugs or banned substances, and working to promote the team with fans

11  and sponsors.  Coach Ellis will also testify that key player responsibilities such as

12  attending camp in good athletic shape, acting professionally, performing at a high level,

13  and seeking appropriate treatment for injuries are shared by WNT and MNT players

14  alike.  While USSF disputed this element at summary judgment by arguing the MNT

15  players somehow have greater pressure to win and thus shoulder additional

16  responsibility, USSF does not appear to dispute this element any longer based on its

17  pretrial documents and summary judgment reply brief. If it does, Plaintiffs will elicit

18  testimony from Coach Ellis, Plaintiffs, and USSF officials that will show that the WNT

19  players have even greater pressure to win than the members of the MNT and thus should

20  have at least equal, if not more, responsibilities.

21                    **c.**    **WNT and MNT players perform their jobs under similar**

22                            **working conditions for a single employer, USSF.**

23          ***Similar Working Conditions***.

24          Because "similar working conditions" refers to a job's physical environment and

25  potential hazards, 29 C.F.R. § 1620.18(a), Plaintiffs will rely on testimony from Mr.

26  Gulati and Mr. Cordeiro that WNT and MNT players are both subject to the same rules

27  of the game and play on the same-sized field, as well as evidence that their duties (on

28  the field and off the field) are similar.  *See* Plaintiffs' Exhibit Nos. 31–32, 185.

1    Furthermore, USSF's interrogatory responses indicate that the WNT played more

2    games on artificial turf than the MNT from 2015 to 2017, which is generally more

3    hazardous and less desirable than grass.  *See* Plaintiffs' Exhibit Nos. 38, 177.  USSF

4    does not dispute this element.

5               ***Single Establishment***.

6               Plaintiffs will rely on a breadth of evidence to show that USSF has centralized

7    control over the WNT and MNT with respect to compensation and working conditions.

8    First, it is undisputed that USSF established the uniform rates of compensation for both

9    teams   through   their   collective   bargaining   agreements.    Second,   USSF's   own

10   organizational chart shows that the majority of USSF employees perform duties for both

11   the WNT and the MNT, and that the employees that do work exclusively for one team

12   or   another   team   work   under   a   common   USSF   director.    Plaintiffs'   Exhibit   No.

13   178.  Third, USSF's interrogatory responses state that the WNT and MNT share the

14   same team of event marketing and promotion employees who determine the appropriate

15   amount of advertising resources to devote to each match.  Plaintiffs' Exhibit Nos. 38,

16   177.  Fourth, Plaintiffs will present testimony from former USSF Chief Commercial

17   and Strategy Officer Jay Berhalter and Chief Financial Offer Pinky Raina that USSF

18   senior staff makes venue decisions for both teams, that yearly budgets for the MNT and

19   WNT roll up into a single USSF budget, and that USSF manages both MNT and WNT

20   events.  Further, Plaintiffs will elicit testimony from Mr. King that USSF also chooses

21   opponents for both the MNT and WNT with the input of each team's head coach, and

22   that the same individuals at USSF make decisions about the MNT and WNT budgets

23   and travel.  Fifth, both teams' sponsorship and broadcast right are jointly marketed by

24   Soccer United Marketing ("SUM"), *see* Plaintiffs' Exhibit Nos. 84, 179–181, and Mr.

25   Berhalter and Mr. King testified that it is impossible to allocate this revenue between

26   the MNT and WNT.

27

28

**2.     Title VII**

      **a.     Plaintiffs were paid at a lesser rate than MNT players by USSF.**

Plaintiffs will rely on the same evidence as set forth above in Section III.C.1.

      **b.     Plaintiffs were subjected to inferior working conditions than MNT players by USSF.**

In order to show that Plaintiffs were subjected to inferior working conditions than MNT players by USSF, Plaintiffs will rely on evidence showing disparities between the MNT and WNT on travel, hotels and meals, medical care, coaches and staff, and playing surfaces. Specifically, Plaintiffs will show evidence that since 2014, USSF has spent more on airfare travel, hotels, and meals for the MNT than the WNT even though the WNT has played substantially more games than the MNT during that period. *See, e.g.*, Exhibit No. 46. Plaintiffs will also introduce evidence that MNT players had a higher percentage of charter flights than did WNT players. Plaintiffs' Exhibit Nos. 203, 204. In addition, USSF budgeted much higher amounts for the MNT than the WNT for each of these categories of expenditures each fiscal year despite the larger number of WNT games. *See* Plaintiffs' Exhibits Nos. 98, 190–199. Plaintiffs will also present evidence that USSF paid the WNT head coach far less than the MNT head coaches during the relevant time period and required her to take on more administrative responsibility than the MNT head coaches as a result of USSF's failure to hire a general manager for the WNT until very recently.

Further, Plaintiffs will present evidence that the WNT played more games on artificial turf than the MNT from 2015 to 2017. *See* Plaintiffs' Exhibit Nos. 38, 177, 203, 204. Plaintiffs will also present USSF's 30(b)(6) testimony that decisions on playing surfaces were not made with equal treatment or player safety in mind, but were instead made based on the games' believed potential for producing revenue which the USSF wrongly claimed favored the MNT. Additionally, Plaintiffs will present testimony from WNT players about the disparities in working conditions, particularly

the differences in quantity and quality of medical and training support staff and the differences in quality of playing surfaces and air travel.

Finally, Plaintiffs' human resources expert Dr. Caren Goldberg will testify about the disparate treatment of the WNT and MNT with respect to (1) field surfaces, (2) travel (air travel, hotels, and meals), and (3) personnel resources (including head coaches, medical personnel, and trainers) and support services, as part of her expert opinion that USSF operated below the range of acceptable HR practices in its treatment of players on the WNT in connection with their working conditions.

> **c.** **Plaintiffs' sex was a motivating factor in USSF's decision to pay Plaintiffs less.**

Plaintiffs will present both direct and indirect evidence to prove this element. *First*, Plaintiffs' evidence that USSF paid the WNT players at a rate less than the MNT players, despite the WNT and MNT players being similarly situated, is indirect evidence of USSF's discrimination. *Second*, Plaintiffs will rely on statements from USSF's representatives directly demonstrating its discriminatory animus, including:

- Mr. Cordeiro's statements in 2017 and 2018 that WNT players were not paid equally to MNT players and that female players were not given the same opportunities as their male peers (*See* Plaintiffs' Exhibit Nos. 124–127);

- Mr. Cordeiro's testimony, which will be presented at trial, that he and other USSF Board members discussed the lack of equal treatment and opportunity for the WNT for years but did nothing about it;

- Mr. Gulati's testimony, which will be elicited at trial, that USSF justified setting the WNT's compensation lower than the MNT's compensation because of biological differences in "speed" and "strength" between men and women; and

- The statements from USSF's outside counsel and lead negotiator, Russ Sauer, that "market realities are such that the women do not deserve equal

pay," which he made at a time when USSF knew that the WNT was generating higher game-related revenues than the MNT.

### D.    USSF's Affirmative Defenses

The following are USSF's affirmative defenses pled in their Answer to Plaintiffs' Complaint, as narrowed by USSF's Memorandum of Contentions of Law and Fact served on Plaintiffs on March 18, 2020 to remove a number of defenses that USSF has now abandoned.

    **1.    Collective Bargaining**.   USSF argues that the challenged pay disparities were the result of different priorities and trade-offs in the course of collective bargaining, which it claims is a "factor other than sex."

    **2.    Revenue Differences**.   USSF argues that the challenged pay practice was justified by differences in revenue-generation between the teams and games in which the two teams play, which it claims is another "factor other than sex." With respect to the latter, USSF claims that the fact that FIFA offers larger prize money to federations for World Cup victories by men's teams than by women's teams is "a factor other than sex" that justifies the discrimination.

    **3.    Liquidated Damages**.   USSF claims that Plaintiffs are not entitled to liquidated damages under the EPA because it acted in good faith with reasonable grounds to believe that its actions did not violate the EPA based on counsel's review of prior submissions to the EEOC.

    **4.    Statute of Limitations**.   USSF states that Plaintiffs are entitled only to three years of damages for a willful violation of the EPA and two years for a non-willful violation.  But this is not a "statute of limitations" defense, as Plaintiffs are only seeking damages within the limitations periods for their respective claims.

    **5.    Failure to Exhaust**.   USSF argues that Plaintiffs' Title VII working conditions claims are barred to the extent that Plaintiffs are claimed to have failed to exhaust their administrative remedies because the class representatives' EEOC charges

purportedly contained no allegations of discrimination in any respect other than compensation.

### E.   Elements Necessary to Establish USSF's Affirmative Defenses

#### 1.   Collective Bargaining

USSF must prove that its collective bargaining defense can qualify as a "factor other than sex" as a matter of law.  29 U.S.C. § 206(d).  The "factor other than sex" must also be a job-related factor "similar" to the other job-related factors set forth in Section 206(d), namely, "a seniority system," "a merit system," and "a system which measures earnings by quantity or quality of production."  *Rizo v. Yovino*, 950 F.3d 1217, 1224-25 (9th Cir. 2020).  Further, USSF must prove "not simply that [its] proffered reason[] *could* explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity."  *Id.* at 1222 (quoting *EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 121 (4th Cir. 2018)) (emphasis in original).

But there is no "collective bargaining exception" to the Equal Pay Act or Title VII.  As a matter of law, a CBA "does not constitute a defense available to [ ] an employer."  29 C.F.R. § 1620.23.  The fact that a group of employees accepts the continuation of a discriminatory pay rate in collective bargaining is not a defense to a claim under either Title VII or the EPA.  *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974) ("we think it clear that there can be no prospective waiver of an employee's rights under Title VII."); *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 76 (1998) (reaffirming *Alexander*); *Laffey v. Northwest Airlines Inc.*, 567 F.2d 429, 446–47 (D.C. Cir. 1976) ("[r]ights established under Title VII and the Equal Pay Act are not rights which can be bargained away either by a union, by an employer, or by both acting in concert . . . a collective bargaining agreement perpetuating prior pay discrimination affords the employer no defense to a charge under the Equal Pay Act"); *Corning Glass Works v. Brennan*, 417 U.S. 188, 209–10 (1974).

This conclusion is reinforced by the Ninth Circuit's decision in *Rizo*, which made it clear that the "any other factor other than sex," affirmative defense under the EPA

---

and Title VII must be a "job-related" factor similar to job experience, qualifications, and performance. *Rizo*, 950 F.3d at 1224–25. The existence of collective bargaining or a CBA is not a "job-related" factor related to the experience, qualification or performance of the employees.

### 2. Revenue Differences

USSF must prove that the difference in pay between the WNT and MNT jobs was the result of actual differences in revenue generation between the two teams, and that this difference in revenue generation qualifies as a "factor other than sex" as a matter of law. 29 U.S.C. § 206(d). Discriminatory payments to USSF by a third party (such as FIFA) are not a "factor other than sex" that can justify pay discrimination under the EPA. *See Rizo*, 950 F.3d at 1224–25 ("factor other than sex" must be a "job-related" factor similar to job experience, qualifications, and performance).

### 3. Liquidated Damages

Because 29 U.S.C. § 216(b) provides for an automatic doubling of back pay damages awarded for a violation of the Equal Pay Act, in order to succeed on this affirmative defense, USSF would have to show that Plaintiffs are not entitled to any back pay damages. In order to make a showing to the Court that liquidated damages should be reduced, USSF must show to the satisfaction of the Court that the act or omission giving rise to such action was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of the Equal Pay Act. *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 357–58 (4th Cir. 1994).

### 4. Statute of Limitations

USSF is only pursuing this affirmative defense with respect to Plaintiffs' EPA claims. Under the EPA, USSF must show that Plaintiffs failed to file the Complaint within two years of a non-willful violation and within three years of a willful violation. 29 U.S.C. § 255(a).

### 5. Failure to Exhaust

Because USSF has clarified that it is not pursuing this affirmative defense with respect to Plaintiffs' compensation-related Title VII claims, in order to prevail on this affirmative defense, USSF must prove that Plaintiffs failed to pursue their claims unrelated to compensation with the EEOC.  Whether a claim is specifically mentioned in an EEOC claim is not determinative; to have sufficiently exhausted its administrative remedies, Plaintiffs need only show that the claim encompasses "all allegations of discrimination that either fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination."  *Freeman v. Oakland Unified School Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (quoting *B.K.B. v. Maui Police Dep't,* 276 F.3d 1091, 1100 (9th Cir. 2002)) (emphasis in original).

### F. Plaintiffs' Key Evidence in Opposition to USSF's Affirmative Defenses

### 1. Collective Bargaining

There is simply no evidence in the record to support USSF's contention that the WNTPA "insisted on a different pay structure from the one found in the MNT's collective bargaining agreement," save for self-serving (and inadmissible) declarations submitted by USSF personnel as part of its motion for summary judgment.  To the contrary, the evidence shows that the WNTPA repeatedly demanded equal pay and ratified the relevant, unequal, CBAs rather than subject the players to a work stoppage. *See* Plaintiffs' Exhibit No. 121; Defendant's Exhibit Nos. 502, 504.  Indeed, Plaintiffs will present testimony from USSF witness Tom King that the WNT players asked for equal pay on numerous occasions, that the USSF refused to offer it to the players, and that when the players finally accepted their most recent CBA, they were presented with a take or leave it proposal that did not include the possibility of equal pay.  Plaintiffs will also present evidence from John Langel, the former counsel for the WNTPA, that the WNT had been seeking equal pay to the MNT in bargaining since at least 2004,

when it complained about the USSF's unequal treatment in a letter to the United States
Olympics Committee.

### 2.     Revenue Differences

USSF initially claimed that it could pay the MNT more than the WNT based on
a "good faith belief" that the MNT generates more revenue for USSF than the WNT.
The evidence—from USSF's own record, which Plaintiffs will present at trial, and its
expert witness Carlyn Irwin—actually shows that the WNT generated more game-
related revenue and profit than the MNT for USSF during the class period, and that
USSF projected that the WNT will continue to generate more game-related revenue
than the MNT in fiscal year 2020.  *See* Plaintiffs' Exhibit Nos. 9, 38, 105–106, 108,
113, 177, 229; Defendant's Exhibit No. 748.  Furthermore, the evidence will show that
WNT and MNT sponsorship and broadcast rights are jointly marketed by SUM, the for-
profit arm of Major League Soccer, without any possibility of separately marketing
these rights.  *See* Plaintiffs' Exhibit Nos. 179–181.  Plaintiffs will elicit USSF's
testimony that it has not, and cannot, allocate sponsorship and broadcast revenue
between the MNT and WNT because those rights are bundled and that it never did any
comparison of MNT and WNT revenues when it making its compensation decisions in
bargaining.

USSF now concedes these numbers, as it must.  *See* USSF's Draft Mem. of
Contentions at 25 ("To be sure, the WNT's games have ended up generating more
revenue during the last five years than the MNT's games.").  But even if USSF no longer
relies on this as a justification for the differences in rate of pay, Plaintiffs will introduce
this evidence to demonstrate USSF's discriminatory animus and intent, as it shows that
there was nothing upon which USSF could have based its "good faith belief" that the
men generated more revenue, and that its constantly shifting "justifications"
demonstrates that they are all after the fact and pretextual.

While USSF's argument on the differences in revenue generation has been a
moving target throughout this litigation, USSF most recently indicated that it will rely

at trial on an argument that "the difference in prize money potential between the World Cup for men and the Women's World Cup" justifies its discrimination.  As set forth above, there is no legal basis for USSF to escape liability by arguing that it is simply passing on discrimination from a third party and this does not qualify as an affirmative defense as a matter of law under *Rizo*.  *See Rizo*, 950 F.3d at 1224–25.  Plaintiffs will also present evidence, including binding admissions from USSF's 30(b)(6) witness on the topic, that (1) USSF negotiated the relevant CBAs without any specific knowledge of the amount of prize money FIFA would pay for the upcoming World Cups (*compare* Plaintiffs' Exhibit Nos. 31–32, 117 *with* Plaintiffs' Exhibit Nos. 33–35); (2) FIFA prize money is not paid to the players and that FIFA puts no restrictions on how USSF uses such prize money; (3) FIFA does not pay prize money to any soccer federation, including USSF, for winning World Cup qualifying matches—yet USSF pays the WNT significantly smaller win bonuses (five times less) for these matches than the MNT (*see* Plaintiffs' Exhibits Nos. 31–32); and (4) the WNT earned greater revenues and profits than the MNT for USSF during the class period, including all FIFA prize money received by the team (*see* Plaintiffs' Exhibit Nos. 205, 206).  There is no evidentiary basis for USSF's argument that the possibility of higher FIFA World Cup prize money was a non-gender based reason actually used by USSF during CBA negotiations to justify the MNT receiving a higher rate of pay than the WNT, or that USSF was somehow required to pay the women less than the men because of FIFA's discriminatory payments.

USSF has also indicated that it will argue at trial that it was justified in paying the WNT at a rate less than the MNT because the MNT purportedly generated more revenue than the WNT in various periods long before the class period here.  As noted above, historical revenue generation for years prior to the relevant class period is not a "factor other than sex" that could justify USSF's discriminatory compensation structures.  Moreover, the evidence will show that the ten-year historical comparisons which USSF now seeks to rely upon through their expert were never used by USSF in

collective bargaining and are merely after the fact analyses first prepared for USSF after this litigation was filed. Such a post hoc pretextual justification cannot meet USSF's burden of proof, especially because such analyses are not able to allocate the largest sources of USSF revenues for marketing, sponsorship and broadcasting.

### 3.   Liquidated Damages

Plaintiffs will rely on the same evidence set forth above in Section III.C showing that they are entitled to back pay damages, which are automatically doubled under 29 U.S.C. § 216. USSF has indicated that it will rely on "prior submissions to the EEOC by competent counsel" to show that it acted in good faith and with reasonable grounds to believe that its actions did not violate the EPA. But these documents (*e.g.*, Plaintiffs' Exhibit Nos. 84, 200; Defendant's Exhibit Nos. 660-63) reflect only USSF's arguments made to the EEOC against the charges of discrimination—they are not legal opinions or advice relied upon by USSF to justify its discrimination. Indeed, USSF did not point to any opinions or advice in response to Plaintiffs' interrogatory asking for a description of any such opinions supporting its position that USSF acted in good faith to comply with the EPA or Title VII, *see* Plaintiffs' Interrogatory No. 16, and thus could not come forward with any evidence or testimony at trial to contradict these interrogatory answers even if any existed. And, if anything, the EEOC correspondence shows that USSF knew that its conduct violated the EPA years ago and that its continued refusal to pay Plaintiffs equally was in bad faith.

### 4.   Statute of Limitations

USSF has clarified that it is pursuing this affirmative defense only relating to Plaintiffs' EPA claims and to the extent that "the maximum three years must be counted backwards from the date of each Plaintiff's consent to join the case." Draft Mem. of Contentions at 26. This is not a "statute of limitations" argument, as there can be no dispute that Plaintiffs have timely pursued their claims given that USSF has paid Plaintiffs and the class at lower rate of pay throughout the class period and continuing today. *See* Plaintiffs' Exhibit Nos. 31–32, 117. Rather, USSF's argument is about

limiting the damages period and whether USSF's violation of the EPA was willful. Plaintiffs are seeking damages for the entire available limitations period under the EPA which, as set forth throughout, is three years for a USSF's willful violation.  Plaintiffs will rely on, among other things, the evidence set forth in Sections III.C, III.F.1, and III.F.2 above to prove that USSF's EPA violation was willful and that the full three-year period of damages should apply.

### 5. Failure to Exhaust

As noted above, this affirmative defense is limited to Plaintiffs' Title VII non-compensation claims.  USSF does not dispute that the class representatives filed their EEOC charges in April 2016, received their Right to Sue letters in February 2019, and timely sued a month later.  While USSF claims that the class representatives' EEOC charges "contain no allegations of discrimination in any respect other than compensation," Plaintiffs will introduce correspondence between Plaintiffs' counsel and the EEOC to show that the non-compensation issues fell within the scope of the EEOC's investigation stemming from Plaintiffs' class representatives' charges and indeed was the subject of the EEOC's investigation.  *See* Exhibit No. 200.  Plaintiffs may also introduce testimony from one or more the Plaintiffs who participated in the EEOC investigation to further establish this point.

### G. Anticipated Evidentiary Issues

### Plaintiffs' Motions *in Limine*

**1.** Whether USSF can offer evidence or argument regarding allocation of SUM revenues between the WNT and MNT.  Plaintiffs moved to exclude such evidence based on USSF's admission that it is impossible to allocate such revenue between the two national teams. *See* Dkt. No. 202.

**2.** Whether USSF can offer evidence or argument that payments to the WNT Player's Association constitute wages to Plaintiffs or obtain an offset of damages for payments to the WNT Player's Association.  Plaintiffs moved to exclude such

evidence or argument as being inconsistent with the law and thus confusing to the jury. *See* Dkt. No. 203.

**3.**     Whether USSF can offer evidence or elicit testimony about any compensation Plaintiffs receive from third parties, including for individual sponsorships, or licensing their individual names, image, and likeness rights.  Plaintiffs moved to exclude such evidence and testimony because USSF did not provide this compensation, which is thus not relevant to whether USSF discriminated against the WNT with respect to pay and thus would be confusing to the jury.  *See* Dkt. No. 205.

**4.**     Whether USSF can offer evidence or testimony regarding Plaintiffs' NWSL salaries or bonus payments.  Plaintiffs moved to exclude such evidence because playing for an NWSL team is a separate job from playing for the WNT, and what the WNT players earn for playing for their NWSL teams is not relevant to whether USSF paid Plaintiffs less than MNT players for playing on their respective national teams and thus would be confusing to the jury.  *See* Dkt. No. 206.

**5.**     Whether the Court should preclude USSF from arguing that Plaintiffs' or the WNTPA's acceptance of the terms of the collective bargaining agreements constitutes a defense to their claims.  Plaintiffs moved to exclude such arguments because courts have repeatedly held that parties cannot collectively bargain away their rights under the relevant anti-discrimination laws.  *See* Dkt. No. 207.

**6.**     Whether USSF can offer any evidence or argument that its nonprofit status or mission to promote soccer is a justification for paying the WNT less than the MNT or impacts its ability to pay damages.  Plaintiffs moved to exclude such evidence because the EPA and Title VII apply equally to non-profits and the potential that the perceived lack of financial resources associated with non-profits would confuse and prejudice the jury.  Plaintiffs also moved to exclude arguments about USSF's mission to promote other soccer constituencies as being a basis for USSF not paying equal pay as spending plans for other groups is not a defense to a pay discrimination claim and would confuse the jury on this issue.  *See* Dkt. No. 209.

**7.**    Whether USSF can call four witnesses identified belatedly and for the first time in its Proposed Witness List for the Rule 16 Conference: Lisa Levine, Ross Moses, Paul Marstaller, and Amy Hopfinger.  Plaintiffs moved to prevent USSF from calling these four witnesses because USSF failed to discharge its duty under Rule 26 to provide adequate and timely disclosures of its intent to use at trial these four witnesses. *See* Dkt. No. 211.

**8.**    Whether USSF can offer any argument that FIFA World Cup prize money is a justification for discriminatory pay in light of the Ninth Circuit's decision in *Rizo v. Yovino*, which makes clear that discriminatory payments by a third party are not a "factor other than sex."  *See* Dkt. No. 214.

**9.**    Whether USSF can offer any evidence of or make any reference to the compensation to or treatment of other international women's soccer teams, and in particular whether it can offer any argument that USSF pays or treats Plaintiffs better than other international teams treat other female international soccer players.  Plaintiffs moved to exclude such evidence because the compensation and treatment of other women's international soccer teams are not governed by U.S. law, and are thus irrelevant to this case and would cause juror confusion.  *See* Dkt. No. 215.

**10.**    Whether the Court should exclude the testimony of USSF's proffered experts Mr. Philip A. Miscimarra, Ms. Carlyn Irwin, and Dr. Justin McCrary because all or portions of each expert's testimony fails to meet the expert admissibility tests of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and because, with respect to Dr. McCrary's March 6, 2020 Rebuttal Report, it offers new theories and opinions that are improper rebuttal.  *See* Dkt. No. 216.

### USSF's Motions *in Limine*

**1.**    Whether Plaintiffs can offer any evidence regarding pre-2012 negotiations between USSF and the WNTPA, John Langel's 2004 complaint to the USOC, and the 2004 Consensus Management Group Report, and the 2004 Governance

Task Force Memorandum.   USSF moved to exclude this evidence, arguing that Plaintiffs cannot base any of their claims on statements or conduct by U.S. Soccer during collective bargaining negotiations prior to January 1, 2012, the earliest date Plaintiffs began negotiating the collective bargaining agreements that are encompassed by the two class periods.  *See* Dkt. No. 210.  This evidence is admissible because it shows USSF's longstanding pattern of discrimination against the WNT, the fact that the WNT has been seeking equal pay in collective bargaining since at least 2004, and provides direct evidence of USSF's discriminatory intent under Title VII.

> **2.**    Whether this Court should consider any evidence regarding the national teams' head coaches' salaries.  USSF moved to exclude this evidence, arguing that claims of discrimination based on coaches' pay are not before the Court and allowing admission of such evidence could create the impression of systematic discrimination against the WNT.  *See* Dkt. No. 204.  This evidence is admissible because it supports the argument that USSF de-valued the women's team, in comparison to the men's team, by paying the WNT coach substantially less than the MNT coach, and because this closely related example of gender discrimination provides indirect evidence of USSF's discriminatory intent against the WNT players.

> **3.**    Whether the Court should exclude testimony of Plaintiffs' expert Dr. Finnie Cook.  USSF moved to exclude this testimony, claiming that Dr. Cook did not compare Plaintiffs' actual pay to the actual pay received by any identified comparable male employee.  *See* Dkt. No. 212.  This evidence is admissible because it goes to the relevant legal inquiry of whether the WNT players were paid at a lower rate than the MNT players, not whether they received more total compensation than the MNT players, which is not the relevant legal test, as this Court has already held.  Dkt. No. 98 at 5–6. The analysis also properly determines what the Plaintiffs and the class members would have earned under the MNT CBA, which is the relevant standard of comparison under the EPA and Title VII.

**4.**     Whether Plaintiffs can offer any evidence of discrimination beyond compensation issues raised in the EEOC charges, i.e., any evidence related to differences in working conditions for the WNT and MNT.  USSF moved to exclude this evidence, arguing that Plaintiffs did not exhaust their administrative remedies with respect to these claims and that they were not able to conduct proper discovery on these claims.  *See* Dkt. No. 208.  This evidence is admissible because Plaintiffs raised allegations of discriminatory working conditions in their Complaint, and the EEOC considered the existence of discriminatory working conditions in its investigation stemming from Plaintiffs' class representatives' charges.

**Additional Evidentiary Issues**

**1.**     Whether Plaintiffs should be permitted to enter into evidence a chart setting forth the EPA back pay damages calculated by Plaintiffs' expert, Dr. Cook, for each individual Plaintiff.  *See* Plaintiffs' Exhibit No. 207.  This is necessary because, upon finding liability, the jury must determine the appropriate back pay damages for each Plaintiff separately, and Plaintiffs' expert damages report setting forth these numbers will not be provided to the jury for deliberations.  Any alternative (such as reading or showing the numbers to the jury so that they may take notes for the individual damages amounts claimed by each one of the EPA claimants) would require an inefficient use of trial time in comparison to simply permitting the jury to take back a chart listing these damages demands to be used in their deliberations.

**2.**     Whether Plaintiffs' summaries of (1) differences in compensation and bonuses under the MNT and WNT CBAs; (2) WNT contract player base salaries; (3) MNT/WNT total and net revenue; (4) WNT game field surfaces; (5) number of WNT and MNT matches per fiscal year; (6) WNT and MNT mode of transportation; (7) USSF spend on MNT and WNT airfare, hotel, meals; (8) MNT and WNT game results; and (9) average FIFA rankings of WNT and MNT opponents satisfy the requirements of Federal Rule of Evidence 1006.  *See* Plaintiffs' Exhibit Nos 118, 119, 120, 205, 206, 208–16.  These are proper exhibits because they accurately calculate and

summarize the content of voluminous records produced by USSF (including payroll records, financial records, and match summaries and spreadsheets), and because the underlying documents were produced from USSF's own records they were indisputably made available to USSF "for examination or copying."  USSF has objected to these exhibits only on the basis that the underlying documents are not sufficiently "voluminous," but do not otherwise dispute the accuracy of Plaintiffs' calculations or summaries.  In reality, however, the underlying documents are indeed voluminous: they include financial statements and payroll records with hundreds of separate line items, collective bargaining agreements that are over fifty pages in length, and yearly budgets that total close to 100 pages each.  The underlying documents, therefore, clearly cannot be "conveniently examined in court," and requiring the jury to review USSF's financial and employment records would needlessly waste time and cause a longer trial.  *See* Fed. R. Evid. 1006; 403.

## H.    Anticipated Issues of Law

**1.**    Whether it is a defense to the EPA or Title VII that an employer has paid certain Plaintiffs more total remuneration despite discriminating against Plaintiffs with respect to rate of pay.

**2.**    Whether collective bargaining or differences in FIFA prize money is properly considered a "factor other than sex" under the EPA.

**3.**    Whether differences in unions and bargaining units can justify discrimination under the EPA or Title VII.

**4.**    Whether Plaintiffs must point to specific, individual MNT player(s) who are each Plaintiff's specific individual "comparator" under the EPA rather than use the pool of MNT players, who were paid at identical rates under the MNT CBA, as the comparators for Plaintiffs and class members.

## IV.   BIFURCATION

Plaintiffs do not believe the trial should be bifurcated.  In its Memorandum of Contentions of Fact and Law served on Plaintiffs on March 18, 2020, USSF asked the

Court to bifurcate Plaintiffs' monetary damages claims from Plaintiffs' claims for declaratory and injunctive relief because "[r]equests for declaratory relief and injunctive relief are matters for the Court's consideration" and because "Plaintiffs' [sic] sought certification of separate classes seeking injunctive relief separate from monetary damages."  USSF's request should be denied for a host of reasons.  First, it is not uncommon for the jury to decide certain issues and the Court others following a single trial in which all of the evidence is presented together, as there will be numerous overlaps between the factual issues relating to both damages and equitable relief (for example, the factual issues of intentional discrimination in violation of Title VII will go to both equitable relief and punitive damages).  *See Alfred E. Mann Foundation for Scientific Research v. Cochlear Corp.*, 2014 WL 12586105, at *6 (C.D. Cal. Jan. 3, 2014) (declining to bifurcate where there was a "substantial overlap of evidence").  Second, Plaintiffs seek both monetary damages *and* non-monetary relief for *both* their EPA and Title VII claims.  Therefore, there is no logical way to divide Plaintiffs' "monetary" claims and "declaratory and injunctive" claims.  For example, with respect to Title VII working conditions, Plaintiffs will seek nominal and punitive damages before the jury as well as injunctive relief from the Court.

Indeed, given how the issues in this case will be divided for determination between the jury and the Court (as set forth below in Section V), it makes no sense to ask the jury to decide USSF's liability and willfulness, EPA back pay, and Title VII punitive and nominal damages, and then have an entirely separate trial for the Court to determine Title VII back pay (which would be based on the same evidence as Plaintiffs' claim for EPA back pay) and declaratory and injunctive relief (which would necessarily be informed by the jury's findings on liability with respect to both compensation and working conditions).  It is unsurprising that, in these circumstances, courts have declined to bifurcate claims for monetary relief from equitable claims.  *See, e.g.*, *Sweeney v. Chang*, 2019 WL 1431583, *6 (C.D. Cal. Mar. 26, 2019) (declining to bifurcate Title VII money damages claims from Title VII equitable claims).

1      Further, even where the only issues to be tried in a wage discrimination case are

2 equitable, courts often employ advisory juries.  *See Traxler v. Multnomah Cty.*, 596

3 F.3d 1007, 1013 (9th Cir. 2010) ("A trial court, sitting in equity, may nevertheless

4 employ an advisory jury."); *Julian v. City of Houston, Tex.*, 314 F. 3d 721, 729 (5th Cir.

5 2002) ("Since front pay is an equitable remedy, the district court rather than the jury

6 should determine whether an award of front pay is appropriate, and if so, the amount of

7 the award.... But the district court may determine the amount of the award with the

8 assistance of an advisory jury.").  The fact that the jury's findings on liability, EPA back

9 pay, and punitive damages will likely inform and assist the Court in its findings provides

10 further support to deny USSF's bifurcation request, which would only lead to

11 duplicative trials and wasted court resources.

12 **V.    JURY TRIAL**

13      Both parties timely demanded a jury trial in their pleadings.  While the jury will

14 determine USSF's liability under both the Equal Pay Act and Title VII, willfulness

15 under the EPA, and calculate certain types of damages requested by Plaintiffs, the Court

16 will determine other types of damages and will determine the appropriate injunctive and

17 equitable relief.

18      **A.    Equal Pay Act Damages**

19      First, the jury will decide the question of back pay under the Equal Pay Act. *See*

20 *Altman v. Stevens Fashion Fabrics*, 441 F. Supp. 1318, 1321 (N.D. Cal. 1977).  The

21 Equal Pay Act provides recovery for two years of wage differential if the defendant's

22 violation was non-willful; the Act extends the recovery of damages to a third year if the

23 defendant's violation was willful.  29 U.S.C. § 255(a).  The jury will also determine the

24 question of USSF's willfulness.  *See EEOC v. State of Delaware Dept. of Health and*

25 *Social Services*, 865 F.2d 1408, 1419 (3d Cir. 1989) (affirming jury verdict that

26 employer's violation was "willful").  If the jury finds that USSF's violation was willful,

27 then the jury must award Plaintiffs damages for three years of wage differential.  *See*

28 29 U.S.C. § 255(a).

Once the jury determines back pay damages under the EPA, those damages will be doubled by the Court. *Altman*, 441 F. Supp. at 1323. To avoid doubling of damages, the "employer has the burden of showing that the violation of the Equal Pay Act was in good faith and that the employer had reasonable grounds for believing that no violation took place." *E.E.O.C. v. First Citizens Bank of Billings*, 758 F.2d 397, 403 (9th Cir. 1985). "Absent such a showing, liquidated damages are mandatory." *Id*.

## B.     Title VII Damages

Because back pay is considered an equitable remedy under Title VII, the Court will determine the amount of Title VII back pay damages. *Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1069 (9th Cir. 2005).

The jury will decide the question of punitive damages under Title VII. *See Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014) (affirming jury award of punitive damages). The jury can award punitive damages to Plaintiffs even if no compensatory damages are awarded. *See id*. The jury should not be informed of the statutory cap on punitive damages, and if the award exceeds the statutory cap then it will be automatically reduced by the Court. 42 U.S.C. §1981a(c)(2).

The jury will also decide the question of nominal damages under Title VII. *See Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014) (affirming jury award of one dollar in nominal damages).

## VI.    ATTORNEYS' FEES

Plaintiffs intend, as indicated in their pleadings, to seek attorneys' fees from USSF as the prevailing party in this action. Under the EPA, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Under Title VII, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs . . ." 42 U.S.C. § 2000e-5(k). "A litigant is a 'prevailing party' if she succeeds on any significant issue in litigation that achieves some of the benefit she sought in bringing suit. *Viveros v. Donahoe*, 2013

WL 1224848, *1 (C.D. Cal. Mar. 27, 2013) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  "A prevailing [Title VII] plaintiff ordinarily is to be awarded attorney's fees in all but special circumstances."  *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978).  Plaintiffs will rely on the evidence described above relating to USSF's willfulness and bad faith to establish that attorney's fees are appropriate under Title VII.  In the event that USSF argues inability to pay, Plaintiffs will rely on USSF's financial records to show otherwise.

## VII.   ABANDONMENT OF ISSUES

Plaintiffs are not abandoning any claims.  Though USSF has taken the position that Plaintiffs are abandoning non-compensation Title VII claims, as set forth above, Plaintiffs pursued these claims dating back to the EEOC investigation into the class representatives' charges.  Plaintiffs specifically alleged violations of non-compensation Title VII claims in their Complaint and pursued continuous discovery regarding Plaintiffs' working conditions apart from their compensation, and USSF has taken discovery from Plaintiffs on these issues.

USSF has abandoned the following affirmative defenses:

- Plaintiffs' Title VII claims fall outside the statute of limitations.
- Plaintiffs are barred from pursuing their claims in the Central District of California because venue is improper.
- Plaintiffs' claims are barred, in whole or in part, to the extent that they conflict with the authority granted to USSF by the Ted Stevens Olympic and Amateur Sports Act and/or are within the exclusive jurisdiction of the United States Olympic Committee.

USSF also appears to have abandoned its claim that Plaintiffs do not perform equal work because they do not have the same skills, effort, and responsibilities as MNT players.  *See* Dkt. No. 197.  Further, USSF has abandoned its motion *in limine* to exclude "references to legal arguments and facts on which Defendant is no longer relying [and]

media commentary on the same, and/or the reasons for Mr. Cordeiro's resignation." *See* Draft Mem. of Contentions at 28.

Dated: March 30, 2020                    WINSTON & STRAWN LLP

                                         By:  */s/ Jeffrey L. Kessler*
                                              Jeffrey L. Kessler
                                              David G. Feher
                                              Cardelle B. Spangler
                                              Diana Hughes Leiden
                                              Jeanifer E. Parsigian
                                              Lev Tsukerman

                                              Attorneys for Plaintiffs

PLAINTIFFS' MEM. OF CONTENTIONS OF FACT & LAW          CASE NO. 2:19-CV-01717-RGK-AGR