LATHAM & WATKINS LLP
Jamie L. Wine (Bar No. 181373)
jamie.wine@lw.com
Kuan Huan (admitted *pro hac vice*)
kuan.huan@lw.com
885 Third Avenue
New York, NY 10022
Phone: (212) 906-1200

Michele D. Johnson (Bar No. 198298)
michele.johnson@lw.com
650 Town Center Drive
Costa Mesa, CA 92626
Phone: (714) 540-1235

Sarah M. Gragert (admitted *pro hac vice*)
sarah.gragert@lw.com
555 11th Street NW, Ste 1000
Washington, DC 20001
Phone: (202)-637-2200

Attorneys for Defendant
UNITED STATES SOCCER FEDERATION, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

ALEX MORGAN, et al.,

Plaintiffs,

v.

U.S. SOCCER FEDERATION, INC.,

Defendant.

Case No. 2:19-cv-01717-RGK-AGR

**DEFENDANT'S MOTION IN LIMINE NO. 5 TO EXCLUDE PLAINTIFFS' EXPERT CAREN GOLDBERG**

Judge: Hon. R. Gary Klausner
Hearing: June 16, 2020 at 9:00 a.m.
Place: Courtroom 850

TO PLAINTIFFS AND THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on June 16, 2020 at 9:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 850 of the United States District Court, Central District of California, located at 255 East Temple Street, Los Angeles, CA 90012, the Honorable R. Gary Klausner presiding, Defendant U.S. Soccer Federation, Inc. ("U.S. Soccer") will and hereby does move *in limine* for an order excluding Plaintiffs' expert, Caren Goldberg.

U.S. Soccer brings this motion pursuant to Federal Rules of Evidence 401, 402, 403, 404, and 702, and case law under those rules, on the grounds that the proffered expert testimony does not meet the requirements for admissibility.

This motion is based on this notice, the attached Memorandum of Points and Authorities, the pleadings, records and files in this action, and any oral and documentary evidence as may be presented at the hearing on the Motion.

This motion is made in accordance with the Court's Order granting the Parties Stipulation regarding Expert Depositions of Dr. Robert Noll, and Caren Goldberg Ph.D., and Defendant's Deadline to File Motion to Exclude Expert Testimony (Dkt. 201), following a conference of counsel pursuant to Central District Local Rule 7-3, which took place on March 18, 2020, and at other times during the proceedings.

DATED: April 13, 2020

Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Jamie L. Wine*

Jamie L. Wine
Michele D. Johnson
Sarah M. Gragert
Kuan Huan

Attorneys for Defendant
U.S. Soccer Federation, Inc.

# TABLE OF CONTENTS

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. DR. GOLDBERG'S FIRST OPINION THAT PLAINTIFFS WERE SUBJECTED TO DISPARATE TREATMENT IS INADMISSIBLE ........ 3

A. Plaintiffs Have Failed to Exhaust Their Administrative Remedies. ........ 3

B. Dr. Goldberg Does Not Have Any Specialized Knowledge and Her Testimony Provides No Special Assistance to the Jury. ........ 4

C. Dr. Goldberg's Conclusions Are Unreliable and Based on Insufficient Data. ........ 6

D. Dr. Goldberg Seeks to Improperly Provide the Jury with Conclusions Regarding Ultimate Issues. ........ 9

II. DR. GOLDBERG'S SECOND OPINION REGARDING U.S. SOCCER'S INSUFFICIENT RESPONSE TO COMPLAINTS SHOULD BE EXCLUDED. ........ 10

A. Dr. Goldberg's Opinion is Barred by Federal Rules of Evidence 401 and 402. ........ 10

B. Dr. Goldberg's Opinion Is Unduly Prejudicial and Barred by Federal Rule of Evidence 403. ........ 11

C. Dr. Goldberg Relies on Inappropriate Character Evidence and Evidence Outside the Statute of Limitations Period. ........ 11

D. Dr. Goldberg's Opinion Is Unreliable and Barred by Federal Rule of Evidence 702. ........ 12

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES


*Apsley v. Boeing Co.*,
722 F. Supp. 2d 1218 (D. Kan. 2010) .......... 14

*Daubert v. Merrell Dow Pharm.*,
509 U.S. 570 (1993) .......... 2

*Huey v. United Parcel Serv., Inc.*,
165 F.3d 1084 (7th Cir. 1999) .......... 5

*Malone v. Potter*,
No. 07-cv-05530 MMM, 2009 WL 10672523 (C.D. Cal. Feb. 25, 2009) .......... 10

*McHugh v. United Serv. Auto. Ass'n*,
164 F.3d 451 (9th Cir. 1999) .......... 9

*Miller v. United Parcel Serv., Inc.*,
No. 03-cv-2405 PJH, 2004 WL 1771571 (N.D. Cal. Aug. 6, 2004), *aff'd*, 196 F. App'x 489 (9th Cir. 2006) .......... 5, 11

*Mukhtar v. Cal. State Univ.*,
299 F.3d 1053 (9th Cir. 2002), *amended by* 319 F.3d 1073 (9th Cir. 2003), *overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2017) .......... 9

*Naeem v. McKesson Drug Co.*,
No. 95-cv-5425, 2001 WL 1141803 (N.D. Ill. Aug. 14, 2001) .......... 11

*Ofsharick v. GMAC Commercial Mortg. Corp.*,
No. 01-cv-3427, 2003 U.S. Dist. LEXIS 15646 (E.D. Pa. July 17, 2003) .......... 5

*Powell v. Anheuser-Busch Inc.*,
No. 09-cv-729-JFW (VBKx), 2012 WL 12953439 (C.D. Cal. Sept. 24, 2012) .......... 9, 12

*Parton v. United Parcel Serv.*,
No. 1:02-cv-2008-WSD, 2005 WL 5974445 (N.D. Ga. Aug. 2, 2005) .......... 10

*Rieger v. Orlor, Inc.*,
427 F. Supp. 2d 99 (D. Conn. 2006) .......... 9

*Rowe Entm't, Inc. v. William Morris Agency, Inc.*, No. 98-cv-8272(RPP), 2003 WL 22272587 (S.D.N.Y. Oct. 2, 2003) ..................... 5, 12

*Smith v. Colo. Interstate Gas Co.*, 794 F. Supp. 1035 (D. Colo. 1992)........................................................................ 5

*Smith v. Pac. Bell Telephone Co.*, 649 F. Supp. 2d 1073 (E.D. Cal. 2009) ................................................................ 9

*United States v. Duncan*, 42 F.3d 97 (2d Cir. 1994) ............................................................................... 9

**STATUTES**

29 U.S.C. § 206(d)(1)........................................................................................ 9

**OTHER AUTHORITIES**

Fed. R. Evid. 702 ................................................................................ 1, 2, 4, 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs Alex Morgan, et al. ("Plaintiffs") proffer Dr. Caren Goldberg to opine that U.S. Soccer operated below acceptable human resources standards in its treatment of Plaintiffs. Dr. Goldberg offers two overarching opinions. *First*, she opines that U.S. Soccer's treatment of players on the U.S. Senior Women's National Team ("WNT") fell well below the range of acceptable and standard human resources ("HR") practices in connection with the WNT's working conditions when compared to the U.S. Senior Men's National Team ("MNT"). *Second*, she opines that U.S. Soccer operated well below the range of acceptable and standard HR practices in responding to the complaints of players on the WNT or their union regarding unequal and discriminatory treatment. Both opinions are based on a cursory summary of selective (and often irrelevant) facts, are barred by the Federal Rules of Evidence, and suffer from the same defects that have caused Dr. Goldberg's opinions to be excluded on a number of occasions. *See* Ex. 1, Expert Report of Caren Goldberg, Ph.D. (Feb. 4, 2020) ("Report"); Ex. 2, Suppl. Expert Report of Caren Goldberg (Apr. 10, 2020).

Dr. Goldberg's first opinion as to the disparate treatment of the WNT players and MNT players should be excluded under Federal Rules of Evidence 401, 402, and 403, because the WNT failed to exhaust their administrative remedies as to complaints of working conditions. Plaintiffs' claims to that effect are thus barred and irrelevant to the trial of this matter. *See* Ex. 4, Morgan Dep. Ex. 9, 2016 Equal Employment Opportunity Commission ("EEOC") Charge at USSF_Morgan_003374-75. Further, Dr. Goldberg is not an expert on any of the working conditions that her report addresses. She has no "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. She relies instead on basic arithmetic and a recitation of selective evidence that any lay juror is capable of performing and understanding. In addition, her observations are unreliable because they are replete with errors and are based on insufficient, one-sided data. Finally,

Dr. Goldberg's first opinion is based on an unsupported assumption that the WNT and the MNT are similarly situated, a conclusion which assumes one of the key factual and legal questions at issue, and improperly invades the province of the jury.

Dr. Goldberg's second opinion that U.S. Soccer failed to respond to Plaintiffs' complaints of unequal working conditions in accordance with standard and acceptable HR policies and practices is equally challenged and inadmissible under Rules 401, 402, and 403. The central inquiry here is not whether U.S. Soccer's response to complaints was within the bounds of standard "HR practices," but whether U.S. Soccer discriminated against the WNT players through disparate treatment in relation to similarly situated male employees on the basis of their sex. Her opinion as to "HR practices" is therefore irrelevant. In addition, Rule 404 bars Dr. Goldberg's second opinion because it is based on improper character evidence and evidence well outside the class and statute of limitations periods. Dr. Goldberg fails to identify a single complaint regarding working conditions that occurred within the class period, relying instead on complaints from 2004. Lastly, Dr. Goldberg's methodology is unreliable and inadmissible under Federal Rule of Evidence 702, given that her opinion does not take into account changes in working conditions over time and is based on her own subjective weighing of deposition testimony—a task which, again, falls solely within the province of the jury.

## ARGUMENT

Federal Rule of Evidence 702 and its interpretive case law make clear that courts are to serve as a "gatekeeper," excluding unreliable "expert" testimony that can imbue evidence with an aura of legitimacy and accuracy because it is presented through an expert. Fed. R. Evid. 702, Advisory Comm. note; *Daubert v. Merrell Dow Pharm.*, 509 U.S. 570, 595 (1993) ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than lay witnesses."). Dr. Goldberg's "expert" testimony is precisely the type of testimony that Federal Rule of Evidence 702 seeks to preclude. Her opinions should also be excluded as

prejudicial, irrelevant, and improper character evidence under Federal Rules of Evidence 401, 402, 403, and 404.

## I. DR. GOLDBERG'S FIRST OPINION THAT PLAINTIFFS WERE SUBJECTED TO DISPARATE TREATMENT IS INADMISSIBLE.

Dr. Goldberg's opinion that U.S. Soccer fell well below the range of acceptable and standard HR practices in connection with the WNT players' working conditions when compared to the MNT players should be excluded in its entirety. Dr. Goldberg supports her conclusion that Plaintiffs were subject to disparate or unequal treatment simply by recounting the number of times a certain condition was provided to the WNT, and comparing that figure to the number of times that condition was provided to the MNT (*see*, *e.g.*, field surfaces, Ex. 1, Report at 12-16, travel and hotel accommodations, *id.* at 16-22, or personnel resources and support services, *id.* at 22-27). In doing so, she relies on documents and deposition testimony that will be presented to the jury (unless otherwise ruled inadmissible). She then asserts, without any basis, that the players on the WNT and the MNT are similarly situated, *id.* at 29, and concludes that the differences in conditions she measures between the WNT and MNT establish that U.S. Soccer violated standard and acceptable HR practices by subjecting Plaintiffs to unequal working conditions in comparison to the similarly situated MNT players. *Id.* This opinion should be excluded for the four reasons discussed below.

### A. Plaintiffs Have Failed to Exhaust Their Administrative Remedies.

Plaintiffs should not be permitted to put on any evidence regarding working conditions (the entire subject of Dr. Goldberg's report) because, as detailed in U.S. Soccer's Motion in Limine No. 4, Plaintiffs' EEOC charge was limited to an equal pay claim. Dkt. 208 at 3; *see also*, Ex. 4, Morgan Dep. Ex. 9, 2016 EEOC Charge at USSF_Morgan_003374-75. Dr. Goldberg is not offering any opinions, nor did she undertake any analysis, regarding Plaintiffs' monetary compensation, which was the sole issue raised in Plaintiffs' EEOC charge. Ex. 3, Goldberg Dep. 80:9-16; *see generally* Ex. 1, Report. Additionally, even if Plaintiffs were not limited to their EEOC allegations, at a

minimum they should be confined to the allegations raised in their Complaint, which relate solely to chartered flights and playing surfaces. *See generally* Compl., Dkt. 1. Evidence related to any other working conditions is inadmissible and unfairly prejudicial to U.S. Soccer.[1]

**B. Dr. Goldberg Does Not Have Any Specialized Knowledge and Her Testimony Provides No Special Assistance to the Jury.**

Dr. Goldberg's opinion does not require any expertise in human resources, nor any specialized knowledge at all; she does nothing that an average juror could not do. *See* Fed. R. Evid. 702. Indeed, she has no specialized knowledge regarding any of the working conditions her report assesses. *See, e.g.*, Ex. 3, Goldberg Dep. 41:10-19 (offering expert testimony only in the fields of organizational behavior and HR management), 108:25-109:4 (no opinion about whether playing on turf is a health and safety concern), 41:20-24 (no legal or medical training), 43:11-24 (no expertise in sports medicine or physical therapy), 184:5-186:19, 43:11-19 (no expertise in sports medicine or physical therapy). She also has no familiarity with soccer, and is not a soccer player, a soccer coach, or even a soccer fan. Ex. 1, Report, Appendix 1; Ex. 3, Goldberg Dep. 45:14-46:19.

Instead, the root of her first opinion is elementary school level math that does not require any specialized knowledge or skill, and could be done by any juror. Plaintiffs intend to present to the jury a series of charts Dr. Goldberg put together that merely summarize select record evidence. *See, e.g.*, Ex. 1, Report at 14 (chart summarizing the number of games the WNT and MNT played on turf and grass/grass overlay); *id.* at 17 (chart listing the number of matches played per fiscal year for the MNT and WNT). Dr. Goldberg simply counts the number of times a certain condition was identified in the record evidence, and compares the numbers for the WNT with the numbers for the MNT.

---

[1] U.S. Soccer has two pending Motions in Limine seeking to exclude such evidence. *See* Def.'s Mot. in Limine No. 4, Dkt. 208 at 3 (seeking exclusion of all working condition evidence); Def.'s Mot. in Limine No. 2, Dkt. 204 at 2 (seeking exclusion of evidence regarding alleged disparity in head coach salaries).

*See* Ex. 3, Goldberg Dep. 138:12-139:21. For example, she concludes that the WNT players were subjected to disparate treatment relating to field conditions because she tallied the total number of times each team played matches on grass, turf, or grass over turf according to a spreadsheet of matches. *See id.* at 115:16-21, 117:14-22; *see also id.* at 117:23-118:18.

Plaintiffs should not be permitted to prop up this evidence through the guise of an expert witness, especially where their chosen expert has less specialized knowledge than almost every fact witness listed by the parties. Dr. Goldberg's opinions previously have been excluded for this very reason, and should similarly be excluded here. *See* Ex. 5, Hr'g Tr. at 26:4-13, *Prentice v. OfficeMax N. Am., Inc.*, No. 1:09- cv-5 (D.V.I. Oct. 13, 2011) (Dkt. 187) (excluding Dr. Goldberg's testimony where it was "merely a recitation and a recounting of facts" that "d[id] not offer an expert opinion" and "invade[d] the province of the jury," and because "[n]ot all of it [wa]s in her area of expertise.").[2]

---

[2] *See also Rowe Entm't, Inc. v. William Morris Agency, Inc.*, No. 98-cv-8272(RPP), 2003 WL 22272587, at *7, *10-11 (S.D.N.Y. Oct. 2, 2003) (excluding plaintiff's expert's opinion as not based on scientific or technical knowledge and unable to be tested for rate of error when the methodology used consisted of examining case materials to reach conclusions that defendant engaged in racial discrimination); *Miller v. United Parcel Serv., Inc.*, No. 03-cv-2405 PJH, 2004 WL 1771571, at *16 (N.D. Cal. Aug. 6, 2004) (striking human resources expert's testimony because it would not assist the trier of fact to understand the evidence), *aff'd*, 196 F. App'x 489 (9th Cir. 2006); *Huey v. United Parcel Serv., Inc.*, 165 F.3d 1084, 1087 (7th Cir. 1999) (excluding testimony of HR expert in part because he "had not exhibited scientific, technical or other specialized knowledge" and holding that "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process" (citation omitted)); *Smith v. Colo. Interstate Gas Co.*, 794 F. Supp. 1035, 1044 (D. Colo. 1992) ("Gender and race discrimination are issues an average person can evaluate and understand without the assistance of an expert. Thus, on this basis alone the experts' testimony discrimination should be excluded. Additionally, testimony which articulates and applies the relevant law circumvents the fact finder's decision making process by dictating how to decide the case or what result to reach."); *Ofsharick v. GMAC Commercial Mortg. Corp.*, No. 01-cv-3427, 2003 U.S. Dist. LEXIS 15646, at *13-14 (E.D. Pa. July 17, 2003) (excluding HR expert because "a lay juror would be capable of evaluating the facts at issue in this case to reach a determination of whether [the defendant]

**C. Dr. Goldberg's Conclusions Are Unreliable and Based on Insufficient Data.**

Dr. Goldberg's disparate treatment opinion fails to rely on sufficient evidence, and it is not "the product of reliable principles and methods." Fed. R. Evid. 702. *First*, while Dr. Goldberg purports to assess whether Plaintiffs were subjected to "unequal treatment," she fails to examine why a disparity appears to exist, fails to consider U.S. Soccer's explanation for any alleged disparity, and fails to apply any actual human resource standard or policy. In fact, she arrives at her disparate treatment opinion even though she acknowledges that assessing whether standard HR practices were followed calls for an evaluation of the reasons for unequal treatment *before* concluding that an inequality constitutes a violation of HR policies. Ex. 3, Goldberg Dep. 127:9-22. Dr. Goldberg performs no such analysis. *Id*. at 134:8-135:5; 147:15-22 (denying consideration of factors that might explain differences in airfare spend); *id.* at 137:21-138:11, 141:18-144:6 (denying consideration of factors that might explain differences in travel accommodations); *id.* at 158:7-159:20 (denying reviewing factors that would have impacted U.S. Soccer's hotel spend); *id.* at 168:25-170:1 (denying consideration of factors that might explain difference in coach compensation); *id.* at 134:14-136:21 (denying having analyzed changes or trends in data over the course of the class period). Dr. Goldberg repeatedly confirmed that an analysis of the reasoning behind such a disparity was "not part of her opinion," "not what [she] was retained to do, [and] not something [she had] given any thought or consideration to." *Id*. at 120:18-24, 121:6-23. By failing to consider potential reasons for the supposed differences in treatment she discusses, her opinion that U.S. Soccer subjected the WNT to disparate treatment is not based on reliable evidence or methodology.

*Second*, rather than conduct a comprehensive comparison of Plaintiffs' working conditions, Dr. Goldberg examines only a few isolated working conditions. She admits

---

intentionally discriminated against [the plaintiff] without the presentation of the [HR expert's] testimony.").

that she does not know—and did not make an attempt to compare—Plaintiffs' overall working conditions to those of the MNT. *Id.* at 90:16-92:5, 215:24-216:4. For example, while she purports to evaluate the number of doctors and physical therapists that attended games, she does not consider whether players were given medical insurance, or U.S. Soccer's expenditures on medical care for each team, thereby omitting more reliable metrics to assess the quality of medical care provided to the WNT in comparison to the MNT. Ex. 1, Report at 25-26; Ex. 3, Goldberg Dep. 194:24-195:7 (admitting she did not evaluate health insurance or money devoted to medical care). Dr. Goldberg also fails to take into account differences in collective bargaining negotiations between the WNT and MNT, and she does not consider any of the many benefits the WNT receives that the MNT does not. *Id.* at 194:8-23, 219:16-220:14.

*Third*, Dr. Goldberg has no basis for her assertion that Plaintiffs are "similarly situated" with MNT players. *See* Ex. 1, Report at 29 (citing nothing in support).[3] During her deposition, she could recall only that unidentified U.S. Soccer witnesses testified that the WNT and the MNT were both flagship teams, and referred to self-serving testimony from Plaintiffs themselves. Ex. 3, Goldberg Dep. 222:19-224:19 ("I'm relying on the 30(b)(6) testimony as well as the testimony of some of the players. I mean, they do the same job. The game is the same, nothing different about men's soccer versus women's soccer."). Her report fails to consider the differing job responsibilities between the WNT and MNT players, the competitiveness of the leagues, the structure of the tournaments, the travel demands, the revenue generated by the respective games and tournaments, or any other factor relevant to determining whether the players are similarly situated. Her opinions should thus be excluded under Rule 702(b) and (c).

---

[3] "Standard and acceptable HR practice dictates that *similarly-situated employees* be provided equal opportunities in the terms and conditions of their employment, regardless of any protected characteristic such as gender. The testimony and documents I reviewed revealed that USSF did not provide the WNT players with equal opportunities or treatment compared to MNT players with respect to a number of working conditions over which USSF had complete control." Ex. 1, Report at 29 (emphasis added).

*Finally*, even in looking solely to the working conditions Dr. Goldberg considers, her analysis is plagued by her failure to consider adequate data and her unreliable methodology. For example:

➢ **Field Conditions**: Dr. Goldberg assumes that playing on a turf field is always worse than playing on a grass surface, and fails to undertake any comparison of the actual quality of the fields or consider whether year-to-year trends show improvement. Ex. 1, Report at 12-14; Ex. 3, Goldberg Dep. 111:11-113:9, 118:19-119:12

➢ **Travel**: Dr. Goldberg looks only at the total aggregate spend on airfare, hotel rooms, and food per year for the MNT and the WNT, without assessing any particular flight, hotel room, or meal; class of service; or rating of hotels. *See generally*, Ex. 1, Report at 16-22 & Appendix 2; Ex. 3, Goldberg Dep. 134:8-22, 137:3-138:4, 145:10-16, 146:1-24.

➢ **Staff Support at Games**: Dr. Goldberg concludes that the WNT received fewer dedicated support staff and that fewer U.S. Soccer executives attended WNT games by relying entirely on "delegation lists" for some—but not all—games, which only identify players and some—but not all—staff. *See, e.g.*, Ex. 1, Report at 25-27; Ex. 3, Goldberg Dep. 175:10-176:7. She also arbitrarily counts certain positions while excluding others (e.g., including "fitness coaches" and doctors as physical therapists, but excluding chiropractors), and did not track those decisions, making it impossible to reproduce her calculations. *See generally* Ex. 1, Report at 26; Ex. 3, Goldberg Dep. 185:2-24, 189:2-21.

Dr. Goldberg's calculations for each of these conditions are also inappropriate and potentially misleading because she includes data from too broad a time period, beginning with U.S. Soccer's fiscal year 2015 (April 1, 2014 to March 31, 2015) and part of fiscal year 2016 (April 1, 2015 to March 31, 2016). *See* Ex. 1, Report at 14, 17, 18, 20, 21. The limitations period on any purported claims by Plaintiffs goes back only to June 11, 2015 (300 days before the EEOC received Plaintiffs' charges of discrimination on April 6, 2016). Data from April 1, 2014 through June 10, 2015 is thus time-barred and should not be considered.

Because Dr. Goldberg's disparate treatment opinion is unreliable and she fails to consider adequate facts, it should be excluded in its entirety, as has been done in the past. *See* Ex. 6, Order at 1, *Ravina v. Columbia Univ.*, No. 16-cv-2137 (RA) (S.D.N.Y. July 7, 2018) (Dkt. 215) (excluding Dr. Goldberg's testimony for lack of reliability).[4]

**D. Dr. Goldberg Seeks to Improperly Provide the Jury with Conclusions Regarding Ultimate Issues.**

Finally, Dr. Goldberg's first opinion states a conclusion as to ultimate issues of law for the jury—that is, whether Plaintiffs were similarly situated to players on the MNT and whether they were subjected to disparate treatment. This testimony usurps the role of the jury and should be excluded. *See* 29 U.S.C. § 206(d)(1). While Rule 704 permits experts to opine on matters related to the ultimate issues, an expert witness cannot go so far as to "give an opinion as to her legal conclusion, *i.e.*, an opinion on an ultimate issue of law." *Mukhtar v. Cal. State Univ*., 299 F.3d 1053, 1065 n.10 (9th Cir. 2002) (citing to *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999)), *amended by* 319 F.3d 1073 (9th Cir. 2003), *overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2017); *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's."). Courts have found that expert testimony that reaches conclusions about a party's failure to prevent discrimination are improper because they purport to offer an improper legal opinion. *See, e.g.*, *Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 99, 103-04 (D. Conn. 2006) (finding that an expert opinion attempted to "reach ultimate legal conclusions," because

---

4 *See also Powell v. Anheuser-Busch Inc.*, No. 09-cv-729-JFW (VBKx), 2012 WL 12953439, at *6 (C.D. Cal. Sept. 24, 2012) (finding that, in failing to consider testimony from certain of defendant's witnesses, the proffered expert "fail[ed] to provide a complete picture of the relevant events"); *Smith v. Pac. Bell Telephone Co.*, 649 F. Supp. 2d 1073, 1096-97 (E.D. Cal. 2009) (excluding expert testimony, inter alia, when the expert proffered an "alternative timeline [of events] inconsistent with the undisputed evidence" by conducting a "limited review of the record" and failing to "rely on accurate evidence").

the expert opined that defendants retaliated against plaintiff, and that defendants did not take reasonable care to prevent discrimination and harassment of plaintiff).

## II. DR. GOLDBERG'S SECOND OPINION REGARDING U.S. SOCCER'S INSUFFICIENT RESPONSE TO COMPLAINTS SHOULD BE EXCLUDED.

Dr. Goldberg's second opinion is that U.S. Soccer failed to adequately respond to Plaintiffs' complaints about their working conditions in accordance with standard and acceptable HR policy or practice. *See* Ex. 1, Report at 36-43. This opinion is inadmissible because she extrapolates from complaints from 2004 and selective statements, which she misrepresents, in order to conclude that U.S. Soccer does not act in accordance with standard and acceptable HR policy or practice today. It should be excluded.

### A. Dr. Goldberg's Opinion is Barred by Federal Rules of Evidence 401 and 402.

Dr. Goldberg's second opinion has no relevance and is thus inadmissible under Federal Rules of Evidence 401 and 402. The issue in this case is whether U.S. Soccer discriminated against the Plaintiffs. An issue that is not in the case is whether U.S. Soccer engaged in good HR practices. *See Malone v. Potter*, No. 07-cv-05530 MMM (FFMx), 2009 WL 10672523, at *6 (C.D. Cal. Feb. 25, 2009) (in excluding HR expert's testimony, stating that "[t]he only issue to be decided in this case is whether defendant acted in a discriminatory or retaliatory fashion. The question is not whether [the] defendant employed good management or labor relations practices."); *Parton v. United Parcel Serv.*, No. 1:02-cv-2008-WSD, 2005 WL 5974445, at *6 (N.D. Ga. Aug. 2, 2005) (testimony "regarding 'standard human resources practices' and Defendants' alleged deviation from them does not advance a material aspect of Plaintiff's case. Employers are free to discharge employees for a good reason, bad reason, or no reason at all, provided the reason is not a discriminatory one."). Compliance with standard and acceptable HR policy or practice is not at issue.

**B. Dr. Goldberg's Opinion Is Unduly Prejudicial and Barred by Federal Rule of Evidence 403.**

Dr. Goldberg's opinion is also unduly prejudicial under Federal Rule of Evidence 403. Plaintiffs are free to submit evidence of complaints about discrimination and U.S. Soccer's response to such complaints only to the extent such evidence is admissible. No expert gloss is necessary. Evaluating U.S. Soccer's actions in relation to these non-legal standards, and endorsed by a purported "expert," adds nothing other than unfair prejudice and jury confusion. *E.g.*, *Miller v. United Parcel Serv., Inc.*, No. 03-cv-2405 PJH, 2004 WL 1771571, at *16 (N.D. Cal. Aug. 6, 2004) (striking testimony of human resources expert where testimony on failure to investigate conduct under "recognized management practices" would not assist the trier of fact); *Naeem v. McKesson Drug Co.*, No. 95-cv-5425, 2001 WL 1141803 at *2 (N.D. Ill. Aug. 14, 2001) (human resources expert's opinion that employer "failed to follow accepted human resources policies is inadmissible. The law is clear that an employer's conduct need not be fair and need not represent good employment practice; it need only be non-discriminatory.").

**C. Dr. Goldberg Relies on Inappropriate Character Evidence and Evidence Outside the Statute of Limitations Period.**

Dr. Goldberg's opinion is based exclusively on complaints that occurred *outside* the statute of limitations period (and outside the class period), which began at the earliest on June 11, 2015. Pls.' Contentions of Fact and Law, Dkt. 223 at 1. Her report references three specific complaints: (1) a **2004** complaint made by the then-counsel for the Women's National Team Players Association ("WNTPA"), (2) a **2004** consultant report regarding the structure and governance of U.S. Soccer as an organization (which did not mention the WNT at all), and (3) Plaintiffs' EEOC complaint from 2016. Ex. 1, Report at 39-40. However, the 2016 EEOC complaint exclusively pertained to equal pay issues and had nothing to do with working conditions. *Id*. at 40 n.102 (citing to Ex. 4, A. Morgan Dep. Ex. 9, USSF_Morgan_003373 (2016 EEOC Charge)); *see also* Def.'s Mot. in Limine No. 1, Dkt. 210 (detailing statute of limitations). The other complaints—which are over 15

years old, when these players were not even on the WNT—have no bearing on whether U.S. Soccer today fails to address complaints of discrimination when received.

At bottom, Dr. Goldberg's opinion is that, because a representative of the WNT union, the WNTPA, complained of unequal treatment in 2004 and one witness said that nothing was done at that time, it must be the case that U.S. Soccer currently does not act in accordance with standard and acceptable HR policy or practice. Relying on evidence from 2004 is an attempt to inflame the jury and create a misleading impression of systemic unequal treatment. *See* Def.'s Mot. in Limine No. 1, Dkt. 210. This type of character evidence is inadmissible under Federal Rule of Evidence 404.

**D. Dr. Goldberg's Opinion Is Unreliable and Barred by Federal Rule of Evidence 702.**

Dr. Goldberg's opinion is unreliable and barred by Federal Rule of Evidence 702 for three reasons. *First*, Dr. Goldberg's methodology and resulting conclusions are flawed because she considers only evidence helpful to Plaintiffs, rather than all of the facts. For example, she never addresses the procedures U.S. Soccer has in place for addressing complaints during the period at issue.

Additionally, her methodology does not include the identification of any counter-evidence, such as significant improvements in these areas or any of U.S. Soccer's significant efforts to advance women's soccer. *See, e.g.*, Ex. 3, Goldberg Dep. 111:18-112:2 (denying relevance of trends in the data); *see also id.* at 136:13-21, 199:18-200:12 (admitting her analysis of the working conditions would not enable her to see trends or changes in the working conditions over time). This is the type of tunnel vision that courts exclude as unreliable. *See, e.g.*, *Powell*, 2012 WL 12953439, at *6-7; *Rowe Entm't*, 2003 WL 22272587, at *10.

*Second*, Dr. Goldberg takes great liberties with the lop-sided record she does consider. For example, she looks to testimony from Jay Berhalter, U.S. Soccer's former Chief Commercial Officer as an "example[] of inadequate HR policies by USSF in the area of gender discrimination." Ex. 1, Report at 41. Specifically, she claims that Mr. Berhalter

testified that he "never assessed which of the women's games that were played on turf would have been profitable enough to make a grass cover prudent, despite having testified that projected revenue for the events was the key driver in his decision to lay grass over the turf in friendlies." *Id.* (citing Ex. 7, J. Berhalter 30(b)(6) Dep. 270-71). Mr. Berhalter said nothing of the sort. He was asked specifically whether he had conducted or reviewed a revenue analysis as part of *certifying U.S. Soccer's interrogatory answers*, not about whether U.S. Soccer had *ever* conducted such an analysis. Ex. 7, J. Berhalter 30(b)(6) Dep. 271:18-272:9.[5] Indeed, Mr. Berhalter goes on to state on the very next page of his deposition that he understood that a contemporaneous profitability analysis, in addition to weighing other concerns, was performed with respect to playing surface conditions. Ex. 7, J. Berhalter 30(b)(6) 271:18-272:9.[6]

Similarly, Dr. Goldberg asserts in support of her second opinion that "President Cordeiro testified that Board members complained repeatedly of insufficient support and opportunity for the women's team, but he and his predecessor, Sunil Gulati, were not aware of any compliance policies or efforts in this area." Ex. 1, Report at 41 (citing to Ex. 8, Cordeiro Dep. 43, 78-79). Again, Dr. Goldberg aggressively misrepresents Mr. Cordeiro's testimony. Far from testifying that the "Board members complained repeatedly" of

---

[5] "Q. Did you go back to do any analysis of the revenues for the 11 games in which the Women's National Team played on artificial turf without grass to assess why it would be not prudent to provide that grass for the benefit of the women on that team? A. Well, I have not, no. Q. Okay. Do you know if anybody did that in connection with preparing these Interrogatory responses? A. I'm not sure. Q. As part of your verifying these answers, you didn't see any such analysis, correct? A. I did not."

[6] "Q. . . . Do you know if at the time it was decided to not put grass for the 11 games played by the women, whether any type of contemporary financial analysis was done to determine whether it would be prudent to provide such grass surfaces for the women? A. Well, I think you'd have to go back and look at each game individually. And I'm not sure it's just a financial analysis either. I think it's a bit of a broader matrix, as you see in the previous Exhibit 37. Q. As you're sitting here now, you're not sure what type of analysis was done or not for each game? A. Well, I'm sure there was some analysis done within the matrix of options that you saw on Exhibit 37."

discrimination, Mr. Cordeiro testified that the Board "was supportive of growing the game for our women," and was looking to "provid[e] more opportunity for our women to play at home and abroad." Ex.8, Cordeiro Dep. 77:12-79:9. And rather than testify that neither he nor Mr. Gulati were aware of compliance policies, Mr. Cordeiro stated that he did not recall whether the Board had a specific conversation without counsel present in which the Board "direct[ed] that there be any compliance program instituted to make sure that the USSF was in compliance with Title VII or the Equal Pay Act." *Id.* at 42:10-43:20.

Whether Dr. Goldberg simply failed to engage in more than a cursory review of isolated portions of testimony, or she deliberately attempted to contort the facts to support her opinion, Dr. Goldberg's analysis is not reliable and must be excluded. *See* Ex. 6, Order at 1, *Ravina*, No. 16-cv-2137 (Dkt 215) (excluding Dr. Goldberg's testimony for lack of reliability); Ex. 5, Hr'g Tr. at 26:4-13, *Prentice*, No. 1:09- cv-5 (Dkt. 187). It is the role of the jury to review record evidence, listen to witness testimony, and form their own conclusions as to those facts.

*Third*, Dr. Goldberg's weighing of this selective evidence is permeated by her own subjective and improper interpretation as to U.S. Soccer's intent and motivations. For example, Dr. Goldberg opines that the lack of attendance of WNT games by U.S. Soccer's executives "reveal a general disinterest in/disdain for the WNT" and is "a symbol of how management values the two teams." Ex. 1, Report at 26-27, 30. Dr. Goldberg also concludes, without support, that numerous actions taken by U.S. Soccer in the course of its bargaining with the WNTPA were "retaliation." *Id.* at 36, 42. As evidenced by these unsupported and incendiary statements, Dr. Goldberg makes no attempt to take on the role of an unbiased expert who objectively looks at the facts. *See Apsley v. Boeing Co.*, 722 F. Supp. 2d 1218, 1240 n.62 (D. Kan. 2010) (affording Dr. Goldberg's opinions "no credence" because she improperly opined as to the motivation of defendants' actions). Her opinion should therefore be excluded as unreliable under Federal Rule of Evidence 702.

**CONCLUSION**

For the above reasons, the Court should exclude Caren Goldberg, Ph.D. from testifying completely.

DATED: April 13, 2020

Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Jamie L. Wine*
Jamie L. Wine
Michele D. Johnson
Sarah M. Gragert
Kuan Huan

Attorneys for Defendant
U.S. Soccer Federation, Inc.