Jeffrey L. Kessler (*pro hac vice*)
jkessler@winston.com
David G. Feher (*pro hac vice*)
dfeher@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue, New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700

Cardelle B. Spangler (*pro hac vice*)
cspangler@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive, Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700

Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
Lev Tsukerman (SBN: 319184)
ltsukerman@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750

Jeanifer E. Parsigian (SBN: 289001)
jparsigian@winston.com
**WINSTON & STRAWN LLP**
101 California St., 35th Floor, San Francisco, CA 94111
Tel: (491) 591-1000
Fax: (491) 591-1400

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEX MORGAN ET AL.,<br><br>    Plaintiffs/Claimants,<br><br>vs.<br><br>UNITED STATES SOCCER FEDERATION, INC.,<br><br>    Defendant/Respondent. | **Case No. 2:19-CV-01717-RGK-AGR**<br><br>Assigned to: Judge R. Gary Klausner<br><br>**PLAINTIFFS' MOTION *IN LIMINE* NO. 11 TO PRECLUDE DEFENDANT FROM RELYING ON 29 U.S.C § 213(f) AS A DEFENSE TO PLAINTIFFS' EQUAL PAY ACT CLAIMS**<br><br>Date: June 16, 2020<br>Time: 9:00 a.m.<br>Courtroom: 850 |

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ..........................................................................1
II. ARGUMENT.......................................................................................................3
    A. USSF Waived Any Affirmative Defense Under 29 U.S.C. § 213(f) By Failing to Raise It..................................................................................3
    B. The Exemption Is Also Inapposite On the Facts of This Case ..................6
    C. Ms. Irwin's Supplemental, Belated Opinions Violate Rule 26 and Should Be Excluded Pursuant to Rule 37 ............................................................8
III. CONCLUSION ................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Belvedere P'ship, Ltd. v. SSI Inv. Mgmt., Inc.*,
  2010 WL 11508362 (C.D. Cal. May 12, 2010) ............................................. 6

*Corning Glass Works v. Brennan*,
  417 U.S. 188 (1974) ................................................................................ 4, 8

*Hall v. United States*,
  No. CIV-10-444-FHS, 2011 WL 13185973 (E.D. Okla. Dec. 13, 2011) ...................................................................................................... 11

*Hart v. Dresdner Kleinwort Wasserstein Sec. LLC*,
  2006 WL 2356157 (S.D.N.Y Aug. 9, 2006) ............................................ 7, 8

*Intermec, Inc. v. Int'l. Bus. Machs. Corp.*,
  2012 WL 13020095 (W.D. Wa. Feb. 24, 2012) .......................................... 6

*Lopez v. G.A.T. Airline Ground Support, Inc.*,
  2010 WL 2839417 (S.D. Cal. July 19, 2010) .............................................. 5

*Magana v. Com. Of the Northern Marina Islands*,
  107 F.3d 1436 (9th Cir. 1997) ................................................................ 3, 4

*In re Nat'l Prescription Opiate Litig.*,
  No. 20-3075, slip op. (6th Cir. Apr. 15, 2020) ......................................... 3, 6

*Oxford v. Linc Grp., Inc.*,
  724 F. Supp. 2d 570 (E.D.N.C. 2010) ........................................................ 7

*Plumley v. Mockett*,
  836 F. Supp. 2d 1053 (C.D. Cal. 2010) .................................................... 10

*Rizo v. Yovino*,
  950 F.3d 1217 (9th Cir. 2020) ................................................................ 2, 8

*U.S. Gypsum Co. v. Pac. Award Metals, Inc.*,
  438 F. Supp. 2d 1101 (N.D. Cal. 2006) .................................................... 10

*Ulin v. Lovell's Antique Gallery*,
  2010 WL 3768012 (N.D. Cal. Sept. 22, 2010) .................................................. 5

*Wirtz v. Healy*,
  227 F. Supp. 123 (N.D. Ill. 1964) .................................................................... 5

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ....................................................................... 10

**Statutes**

29 U.S.C. § 213(f) ............................................................................................. *passim*

Equal Pay Act ................................................................................................... *passim*

Fair Labor Standards Act ................................................................................ 1, 4, 5

**Other Authorities**

29 C.F.R. § 778.105 .................................................................................................. 5

Fed. R. Civ. P.
   8(c) ................................................................................................................ 1, 4
   12(g) .................................................................................................................. 1
   16(b) .............................................................................................................. 3, 6
   26 ............................................................................................................ 8, 9, 11
   26(a) ................................................................................................................ 10
   26 (a)(2) .......................................................................................................... 11
   26(a)(2)(B) ........................................................................................................ 3
   26(a)(2)(B)(i) .................................................................................................... 9
   37 ................................................................................................................ 8, 10
   37(c) ................................................................................................................ 10
   37(c)(1) ........................................................................................................... 10

Title VII ........................................................................................................... 1, 4

## I. PRELIMINARY STATEMENT

For two separate reasons, the Court should bar the United States Soccer Federation ("USSF") from presenting arguments, evidence or testimony (including the testimony recently included in the improper Second Supplemental Report of Carlyn Irwin) relating to a purported 29 U.S.C. § 213(f) defense that Plaintiffs' Equal Pay Act ("EPA") claims "are barred, in whole or in part, to the extent that the WNT's services during certain workweeks were performed entirely within foreign countries." [1] Dkt. No. 225.

First, this defense has long ago been waived by USSF, as it was never pled nor asserted in any way until March 30, 2020, when USSF filed its Memorandum of Contentions of Fact and Law ("Memo of Contentions"). It is well-established that the exemptions to the Fair Labor Standards Act ("FLSA") set forth in § 213 are affirmative defenses that must be asserted in initial pleadings in accordance with Federal Rules of Civil Procedure 8(c) and 12(g). USSF did not plead this affirmative defense in its Answer as required by the Federal Rules of Civil Procedure; nor did it raise it in any way until it filed its pretrial Memo of Contentions just a few weeks ago—53 days after the close of discovery, 39 days after the dispositive motion deadline, 12 days after the parties' pretrial exchanges and meet and confer, and 6 days after this Court had already taken the parties' summary judgment motions under submission. Underscoring the severe prejudice to Plaintiffs caused by this protracted failure to assert or disclose, USSF's expert, Ms. Irwin, has now just filed on April 10 a "Second Supplemental" Report (to which Plaintiffs' experts could not respond) for the first time providing an opinion that a certain amount of Plaintiffs' back pay damages are for workweeks in which the WNT played games only in foreign countries. The Federal Rules simply do not permit this type of "hide the ball" tactic and litigation gamesmanship.

---

[1] The defense USSF now seeks to invoke is part of the Fair Labor Standards Act, of which the EPA is a part. USSF does not (and could not) contend that this defense in any way implicates Plaintiffs' Title VII claims or damages thereunder.

1
PLAINTIFFS' MOTION *IN LIMINE* NO. 11 TO PRECLUDE 29 U.S.C § 213 (f) DEFENSE
CASE NO. 2:19-CV-01717-RGK-AGR

Second, the reason that the USSF was so late in asserting this defense is clear: it does not apply to the facts of this litigation, where the employment involved is squarely centered in the United States. USSF's new law firm in this litigation (Latham & Watkins) never raised this affirmative defense when it represented USSF in the lengthy investigation of Plaintiffs' EPA claims by the EEOC, and USSF's prior law firm in this litigation (Seyfarth Shaw) never raised this affirmative defense in USSF's Answer, in any of its discovery requests or in any motion (including its summary judgment motion or opposition to Plaintiffs' summary judgment motion) for the obvious reason that it does not have any application in a case like this, which is directed at gender discrimination regarding employment in the United States, not a foreign nation. No court has ever applied this defense in an EPA action where the compensation at issue for both the Plaintiffs and the comparators is set forth in collective bargaining agreements entered into by a U.S. employer for U.S. employees that are governed by U.S. law. Nor has any court ever applied this affirmative defense in an EPA case such as this—where Plaintiffs are U.S.-based employees and the core function of their jobs is to represent their U.S.-based employer in professional competitions, training, and marketing activities that primarily take place in the United States, but also include some contests that are played abroad. As the compensation packages of the two CBAs at issue must be compared and are focused on United States employees, it would be fundamentally inconsistent with the policies of the EPA to carve out an exception to "the Act's promise of equal pay for equal work," *Rizo v. Yovino*, 950 F.3d 1217, 1228 (9th Cir. 2020), for those few weeks in which the United States Women's National Team is called upon to represent the United States in a competition in another country.

Finally, there is an additional reason for excluding the portions of Ms. Irwin's Second Supplemental Report that, for the first time, purport to opine on the amount of Plaintiffs' back pay damages attributable to work performed outside the United States: they do not meet the expert disclosure requirements of the Federal Rules or the expert

disclosure schedule ordered by this Court.[2]  This opinion was not contained in Ms. Irwin's initial report, or even her first supplemental report, and is plainly barred by Federal Rule 26(a)(2)(B) governing the timing of expert disclosures.  It also violates the expert discovery schedule ordered by this Court, which required any affirmative testimony of Ms. Irwin to be disclosed in her initial report.  Ms. Irwin admitted at her deposition that she was not previously asked by USSF to address this subject in either her initial report or her first supplemental report, even though she could have done so.  Ex. 23, Irwin Rough Tr. at 40:18-41:12; 43:13-44:4.  Instead, USSF had her lay in the weeds and only address this affirmative defense when it was too late for Plaintiffs to do any fact discovery on this issue or file a responsive expert report.  Such defiance of the Federal Rules cannot be countenanced.  *See Magana v. Com. Of the Northern Marina Islands,* 107 F.3d 1436, 1446 (9th Cir. 1997) (finding error in a district court decision allowing defendant to raise an affirmative defense for the first time at summary judgment without first determining whether the delay would prejudice plaintiffs); *In re Nat'l Prescription Opiate Litig.,* No. 20-3075, slip op. at 5 (6th Cir. Apr. 15, 2020) (reversing a district court decision that allowed a party to amend its pleadings to add new claims "long after the deadline set by the court's scheduling order" because it ran afoul of Rule 16(b), a rule in place to "ensure that at some point both the parties and the pleadings will be fixed.").

## II.  ARGUMENT

### A.  USSF Waived Any Affirmative Defense Under 29 U.S.C. § 213(f) By Failing to Raise It

---

[2] Specifically, Plaintiffs seek to preclude Ms. Irwin from offering the opinions in her Second Supplemental Report, served April 10, 2020, at Paragraphs 26-27, Exhibits 15-17 and Appendix B.  *See* Ex. 22.  Unless otherwise specified, all exhibit citations are to the concurrently filed Second Declaration of Jeanifer E. Parsigian in Support of Plaintiffs' Motions *in Limine* (Exs. 22-23) or to Dkt. No. 217, Declaration of Jeanifer E. Parsigian in Support of Plaintiffs' Motions *in Limine*, filed on March 20, 2020, (Exs. 1-21).

1  It is undisputed that USSF first raised this affirmative defense under 29 U.S.C. § 213(f) to Plaintiffs' EPA claims in its Memo of Contentions filed on March 30, 2020, nearly 11 months after it filed its Answer to Plaintiffs' Complaint.[3] *See* Answer and Affirmative Defenses to Plaintiffs' Complaint, Dkt. No. 42, filed May 6, 2019 (asserting eight affirmative defenses, but making no mention of § 213(f)). As explained by the Supreme Court, "the general rule [is] that the application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-197 (1974); *see also Magana*, 107 F.3d 1436 at 1446 (holding that the "§ 213 exemption . . . is an affirmative defense that must be pleaded and proved by the defendant" and that "[e]mployers claiming an exemption have the burden of proving the allegedly exempt employees "fit plainly and unmistakably within the exemptions terms"). Because USSF failed to raise this § 213 affirmative defense in its pleadings—or indeed until the eve of trial—USSF has waived it under the plain language of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any . . . affirmative defense).

Even if USSF had a justification for failing to plead this affirmative defense at an earlier time (there is no such justification as any information about work outside the U.S. was always available to USSF), it should not be permitted to raise it at trial in light of the clear prejudice to Plaintiffs from this protracted delay. *Magana*, 107 F.3d 1436 at 1446 (holding that the district court erred in allowing defendant to raise a § 213 exemption defense on summary judgment without assessing prejudice to plaintiff). Where, as here, the late presentation of an affirmative defense denies a plaintiff the opportunity to conduct discovery on the issue, the defense cannot be pursued. *See, e.g.,*

---

[3] In addition, USSF's counsel, Latham & Watkins, made no mention of this defense whatsoever in its correspondence or meetings with the EEOC during the more than two-year investigation of Plaintiffs' charges of Equal Pay Act and Title VII discrimination filed in 2016.

*Lopez v. G.A.T. Airline Ground Support, Inc.*, 2010 WL 2839417, at *8 (S.D. Cal. July 19, 2010) (finding that "[d]efendants waived their FLSA exemption defense" under § 213(b)(3), because the delay in "rais[ing] the defense for the first time in their motion for summary adjudication" prejudiced plaintiffs because they "did not have notice of this defense until after the parties had already taken depositions and produced requested documents, and . . . were [unable] to conduct discovery on this issue.").

Here, Plaintiffs had no opportunity to conduct discovery relating to the factual issues implicated by this defense, which requires a determination of whether the plaintiffs performed any duties within the United States during a particular workweek. *See Ulin v. Lovell's Antique Gallery*, 2010 WL 3768012, *13 (N.D. Cal. Sept. 22, 2010) (prohibiting defendants from raising a FLSA exemption as a defense on summary judgment and after the close of discovery because "detailed factual questions [arose] as to the applicability of the . . . exemption, which [were] not the subject of discovery."). Even in cases where this affirmative defense might apply, if a plaintiff spends "part of a workweek [performing work] in the United States, then …the [plaintiff is] entitled to the benefits of the Act for the entire week" even if some work is performed abroad. *Wirtz v. Healy*, 227 F. Supp. 123, 129 (N.D. Ill. 1964). Therefore, if Plaintiffs knew this affirmative defense was being asserted, they would have taken discovery of USSF on whether, when a particular game was played by Plaintiffs outside the U.S during the class period, the team also performed any WNT duties (such as media interviews, practices, and training) within the U.S. during that same "workweek." Because they had no notice regarding USSF's intention to assert this defense, Plaintiffs were prejudiced as they had no reason or opportunity to conduct this discovery. *See Ulin*, 2010 WL 3768012 at *13 (finding prejudice where plaintiff "did not attempt to discern which weeks Plaintiff may have been performing work falling within the exemption and which weeks he was not."). Plaintiffs were further prejudiced because they also had no opportunity to seek discovery about how USSF defines a "workweek." 29 C.F.R. § 778.105 (stating that "[a]n employee's workweek is a fixed and regularly

recurring period of 168 hours—seven consecutive 24-hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day."). Here, the applicable workweek could have varied throughout the class period, depending on the work schedules USSF set.

To permit USSF to engage in this blatant sandbagging of only now asserting an affirmative defense would contradict the Federal Rules which are designed to ensure efficient litigation and protect plaintiffs from unfair surprise and trial by ambush. *See Belvedere P'ship, Ltd. v. SSI Inv. Mgmt., Inc.*, 2010 WL 11508362, *2 (C.D. Cal. May 12, 2010) (holding "affirmative defenses must give 'fair notice' of the defense to be asserted at trial.") (citing *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979) ("The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense.")); *Intermec, Inc. v. Int'l. Bus. Machs. Corp.*, 2012 WL 13020095, *1 (W.D. Wa. Feb. 24, 2012) (holding Defendant waived their affirmative defense and "fail[ed] to meet even [the] liberalized standard" in the Ninth Circuit because it "did not raise [it] on summary judgment, focusing instead on other issues," because "allowing Defendant to raise a new affirmative defense . . . only two months prior to trial would seriously undercut the notice function of the [FRCP]" and agreeing that it would be "grossly inefficient to allow a party . . . to attempt another bite at the same apple by raising another theory that was equally available to be raised before the dispositive-motion deadline."); *see also In re Nat'l Prescription Opiate Litig.*, No. 20-3075 at 8 (reversing a district court decision that allowed a party to amend their pleadings to add new claims "long after the deadline set by the court's scheduling order" because it ran afoul of Rule 16(b), a rule in place to "ensure that at some point both the parties and the pleadings will be fixed."). Plaintiffs' motion *in limine* should be granted for this reason alone.

### B. The Exemption Is Also Inapposite On the Facts of This Case

Alternatively, even if it had been raised in a timely manner, the § 213(f) exemption for employment outside the United States should not apply to the U.S.-based

gender discrimination at issue in this litigation. 29 U.S.C. § 213(f) has never been applied in an EPA case that involved a compensation package applied by a U.S.-based employer that is contained in a collective bargaining agreement, governed by U.S. law, and that is solely applicable to its U.S.-based unionized employees. *See* Ex. 6, Dkt. No. 217-6, WNT CBA at Art. 27 § B. It simply makes no sense not to apply the EPA to all aspects of this CBA compensation package even if some of the games the WNT players performed in took place outside the United States. This is especially so as the male comparators to the Plaintiffs were also compensated under a U.S.-based collective bargaining agreement. When the comparison is between two U.S. CBAs for employees located in the United States, the policies of the EPA are clearly applicable even if a minority of the employment function takes place outside the United States.

Similarly, § 213(f) has never been applied in an EPA case where the core function of a U.S.-based plaintiff's job is to work in the United States as a professional athlete under the terms of a CBA, but to also occasionally represent the United States in an overseas professional sports contest. The rates of pay of the WNT and MNT CBA must be compared as a whole to determine back pay damages, and there is no basis to conclude that there should be a disassembling of this package to carve out any week when this quintessentially U.S. team, that performed most of its work in the United States, played games on behalf of the United States but outside the country. Indeed, in the only two reported decisions that have applied the § 213(f) defense in an EPA case, both plaintiffs lived and performed all their work abroad. *See Oxford v. Linc Grp., Inc.*, 724 F. Supp. 2d 570, 573 (E.D.N.C. 2010) (applying § 213(f) where plaintiff performed all of his work in Iraq); *Hart v. Dresdner Kleinwort Wasserstein Sec. LLC*, 2006 WL 2356157 at *5, *7 (S.D.N.Y Aug. 9, 2006) (applying § 213(f) where plaintiff performed work in London and was a London-based executive of the company). These facts have no application here, where it is undisputed that Plaintiffs live in the United States and perform most of their work for USSF in this country, with only occasional games played in international competitions abroad.

The incongruity of USSF's attempt to apply § 213(f) to the facts presented here is illustrated by the fact that in a year in which the World Cup takes place outside the United States, USSF would argue that EPA requirements do not apply to a World Cup workweek overseas, but it would agree that the EPA requirements apply if it was a year in which the World Cup games are played in the United States. Such a variable result—where the core U.S.-based job remained the same—would be fundamentally inconsistent with the broad remedial purpose of the EPA as enacted by Congress. *See Corning Glass Works*, 417 U.S. 188 at 208 ( "[t]he Equal Pay Act is broadly remedial, and it should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve."); *Rizo*, 950 F. 3d 1217 at 1228 (rejecting an interpretation of the Act that would undermine "[t]he EPA's limited aim at just one of the many causes of the wage gap . . . the Act's promise of equal pay for equal work.").[4] Allowing USSF to evade liability under the EPA to the extent Plaintiffs performed some of their work out of the country, despite the fact that Plaintiffs are all U.S. residents, employees of a U.S.-based employer, who live and work in the U.S., and whose compensation is set by a U.S. collective bargaining agreement for their mostly U.S. based work, would be contrary to the purpose of the Act and would run afoul of congressional intent to apply the EPA broadly to all U.S.-based workers. *Rizo*, 950 F. 3d 1217 at 1225 (noting the "EPA was intended to address the fact that the wage structure of many segments of *American industry* [had] been based on an ancient but outmoded belief") (emphasis added).

### C. Ms. Irwin's Supplemental, Belated Opinions Violate Rule 26 and Should Be Excluded Pursuant to Rule 37

---

[4] The court in *Hart* acknowledged the tension with applying the § 213(f) exemption in the EPA context as inconsistent with the policy of the EPA. 2006 WL 2356157, *6 (noting that the plaintiffs were correct that "the discrimination section of the EPA is analogous to other federal discrimination statutes, and that the exception to EPA's application extraterritorially is more appropriate in regard to minimum wage and hour violations").

In addition to the grounds set forth above, Paragraphs 26-27, Exhibits 15-17 and Appendix B of Ms. Irwin's Second Supplemental Report should also be excluded for the additional reason that they were not properly disclosed under Rule 26 or the expert disclosure schedule ordered by this Court. Under Rule 26, USSF was required to disclose "a complete statement of *all opinions* the witness will express and the basis and reason for them" on the expert disclosure deadline of February 4, 2020, as ordered by the Court. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added); Joint Stipulation for Discovery as to Expert Deadlines, Dkt. No. 97; Order Granting Stipulation Regarding Expert Discovery Deadlines, Dkt. No. 99.[5]

Indeed, the parties specifically negotiated an expert disclosure schedule requiring affirmative expert opinions to be disclosed on February 4, 2020, rebuttal opinions to be disclosed on March 6, 2020, and supplementation on April 10, 2020. As the issues of overseas work addressed by Ms. Irwin were part of USSF's affirmative defense showing, they clearly should have been contained in her first affirmative report as they were not a rebuttal to any point addressed by Dr. Cook. Nor were they proper supplementation, as the information to do this analysis was always available to Ms. Irwin.

Nowhere in Ms. Irwin's initial or "first supplemental" report (submitted on the expert rebuttal deadline) did she disclose any opinion relating to workweeks consisting of games Plaintiffs played outside the U.S. Indeed, during her deposition, Ms. Irwin admitted that the very first time she was asked by USSF to analyze this issue was last week. Ex. 23, Irwin Rough Tr. at 40:18-41:12. Moreover, as Ms. Irwin admitted, she

---

[5] The deadline for rebuttal expert opinions was March 6, 2020. Ms. Irwin claimed at her deposition that she needed Dr. Cook's back pay analysis to be able to offer her opinions on which damages weeks involved overseas games, but admitted that these opinions were not actually a direct response or rebuttal to Dr. Cook's damages analysis. Ex. 23, Irwin Rough Tr. at 40:12–17. In any event, Ms. Irwin did not even include her opinions about Plaintiffs' overseas work in her "first supplemental" report served on the rebuttal deadline, despite having access to Dr. Cook's back pay analysis then.

1  had all the facts available to render her opinions on this subject prior to the time she
2  prepared her initial affirmative expert report. *Id*. at 43:13–44:4.  It was completely
3  improper, and in violation of the Federal Rules, for USSF to have Ms. Irwin hold back
4  on any analysis of this subject from her affirmative report and then only disclose it in a
5  belated second supplemental report, when it was too late for Plaintiffs' experts to
6  provide any rebuttal report on this subject. *See Plumley v. Mockett*, 836 F. Supp. 2d
7  1053, 1062 (C.D. Cal. 2010) ("A supplemental expert report that states additional
8  opinions or seeks to strengthen or deepen opinions expressed in the original expert
9  report is beyond the scope of proper supplementation and subject to exclusion under
10 Rule 37(c)").

11       Under Rule 37, "[i]f a party fails to provide information [ . . .] as required by Rule
12 26(a) or (e), the party is not allowed to use that information or witness to supply
13 evidence on a motion, at a hearing, or at a trial, unless the failure was substantially
14 justified or is harmless." Fed. R. Civ. P. 37(c).  Exclusion under Rule 37 is automatic.
15 *See* Fed. R. Civ. P. 37 advisory committee's note to 1993 amendment (noting
16 subparagraph (c) is a "*self-executing* sanction for failure to make a disclosure required
17 by Rule 26(a), without need for a motion [. . . and] [t]his *automatic sanction* provides a
18 strong inducement for disclosure of material that the disclosing party would expect to
19 use as evidence") (emphasis added).

20       Applying these standards here, it is clear that USSF's failure to have Ms. Irwin
21 address its affirmative § 213(f) defense in her initial report was not "harmless," given
22 the prejudice Plaintiffs face in being deprived of any opportunity to have their experts
23 respond to these belated opinions. *See* Rule 37(c); *Yeti by Molly, Ltd. v. Deckers
24 Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) ("[T]he burden is on the party
25 facing sanctions [under Rule 37(c)(1)] to prove harmlessness").  Courts routinely grant
26 motions *in limine* or motions to strike in analogous situations of delayed expert
27 disclosures and should do so here. *See*, *e.g.*, *U.S. Gypsum Co. v. Pac. Award Metals,
28 Inc.*, 438 F. Supp. 2d 1101, 1106 (N.D. Cal. 2006) (refusing to consider the opinions

10
PLAINTIFFS' MOTION *IN LIMINE* NO. 11 TO PRECLUDE 29 U.S.C § 213 (f) DEFENSE
Case No. 2:19-cv-01717-RGK-AGR

set forth in an expert declaration when they "were not timely disclosed in [the expert's] original report"); *Hall v. United States*, No. CIV-10-444-FHS, 2011 WL 13185973, at *2 (E.D. Okla. Dec. 13, 2011) (granting motion *in limine* "to exclude expert opinions not disclosed in expert reports prepared pursuant to F.R.C.P. 26 (a)(2)").

## III. CONCLUSION

For all these reasons, the Court should bar USSF from presenting arguments, evidence or testimony relating to the 29 U.SC. § 213(f) affirmative defense that Plaintiffs' claims are barred, in whole or in part, to the extent that the WNT's services during certain workweeks were performed entirely within foreign countries. The Court should also specifically preclude USSF's retained expert, Carlyn Irwin, from testifying as to the portions of her Second Supplemental Report relating to this defense for the additional reason that USSF failed to comply with the expert disclosure rules of Federal Procedure, Fed. R. Civ. P. 26, as set forth in the expert schedule so ordered by this Court.

Dated: April 17, 2020                           WINSTON & STRAWN LLP

                                                By: */s/ Jeffrey L. Kessler*
                                                    Jeffrey L. Kessler

                                                *Attorneys for Plaintiffs*