Jeffrey L. Kessler (*pro hac vice*)
jkessler@winston.com
David G. Feher (*pro hac vice*)
dfeher@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue, New York, NY 10166
Tel:    (212) 294-6700
Fax:    (212) 294-4700

Cardelle B. Spangler (*pro hac vice*)
cspangler@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive, Chicago, IL 60601
Tel:    (312) 558-5600
Fax:    (312) 558-5700

Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
Lev Tsukerman (SBN: 319184)
ltsukerman@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, Los Angeles, CA 90071
Tel:    (213) 615-1700
Fax:    (213) 615-1750

Jeanifer E. Parsigian (SBN: 289001)
jparsigian@winston.com
**WINSTON & STRAWN LLP**
101 California St., 35th Floor, San Francisco, CA 94111
Tel:    (491) 591-1000
Fax:    (491) 591-1400

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX MORGAN, et al., | **Case No. 2:19-CV-01717-RGK-AGR** |
| Plaintiffs, | Assigned to: Judge R. Gary Klausner |
| v. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND OF CLASS NOTICE** |
| UNITED STATES SOCCER FEDERATION, INC., | |
| Defendant. | Date:  January 4, 2021<br>Time: 9:00 a.m.<br>Place: Courtroom: 850 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 4, 2021 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 850 of the above-titled court, located at 255 East Temple Street, Los Angeles, California 90012, plaintiffs Alex Morgan, et al. (collectively, "Plaintiffs") will and hereby do move the Court, under Federal Rule of Civil Procedure 23, for an order:

1. Granting preliminary approval of the proposed Class Action Settlement and Release of Working Conditions Claims, attached as Exhibit A to the accompanying Declaration of Jeffrey L. Kessler;

2. Approving the Notice of Class Action Settlement, attached as Exhibit 1 to Exhibit A of the accompanying Declaration of Jeffrey L. Kessler; and

3. Scheduling a final approval hearing and certain other dates in connection with a final approval of the parties' proposed settlement.

This motion is based upon this notice of motion, the accompanying memorandum of points and authorities, the accompanying declaration of Jeffrey L. Kessler, the proposed order filed concurrently herewith, the records and files in this action, and any other written or oral submissions that may be presented at or before the hearing on this motion.

Pursuant to Local Rule 7-3, Defendant consents to this motion.

Dated: December 1, 2020      WINSTON & STRAWN LLP

By: */s/ Jeffrey L. Kessler*
       Jeffrey L. Kessler

*Attorneys for Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES
## TABLE OF CONTENTS

I.        INTRODUCTION .................................................................................... 1

II.      FACTUAL BACKGROUND ..................................................................... 2

      A.    Plaintiffs' EEOC charges lead to this lawsuit. ............................... 2

      B.    The parties engage in thorough, extensive fact and expert discovery. ...... 2

      C.    The parties engage in extensive motion practice. ......................... 3

          1.    Plaintiffs' JPML motion and USSF's motion to transfer. ............... 3

          2.    The Court certifies three classes. ..................................... 4

          3.    The parties move for summary judgment. ........................... 4

III.     Proposed Settlement ................................................................................ 5

IV.     The procedure for class notice and objections ......................................... 8

V.      ARGUMENT ........................................................................................... 9

      A.    The proposed settlement satisfies each of the conditions for preliminary approval. ........................................................................................ 9

          1.    The settlement is the product of serious, informed, non-collusive negotiations. ................................................................ 10

          2.    The settlement has no deficiencies. ................................ 11

          3.    The agreement does not grant preferential treatment to either the class representatives or other class segments. ................. 11

          4.    The settlement falls within the range of possible approval. ...... 12

      B.    The proposed class notice is appropriate and should be approved. ........ 13

      C.    The Court should approve the proposed scheduling order and set a date for a fairness hearing. ................................................................... 14

IV.     CONCLUSION ..................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*Churchill Vill, L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ................................................................................ 13

6

7
*Contreras v. Worldwide Flight Servs., Inc.*,
  No. 18-CV-6036-PSG-SSx, 2019 WL 8633664 (C.D. Cal. Sept. 30,
8
  2019) ...........................................................................................................9, 11, 12, 14

9
*In re Lenovo Adware Litig.*,
  No. 15-MD-02624-HSG, 2018 WL 6099948 (N.D. Cal. Nov. 21,
10
  2018) ............................................................................................................... 10, 12

11
*Low v. Trump University, LLC*,
  881 F.3d 1111 (9th Cir. 2018) .............................................................................. 13
12

13
*Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
  No. 19-CV-620-JGBKKx, 2020 WL 5044418 (C.D. Cal. May 7,
14
  2020) .................................................................................................................... 9
15

16
*Richards v. Chime Financial*,
  No. 19-CV-06864-HSG, 2020 WL 6318713 (N.D. Cal. Oct. 28, 2020) ............... 11
17

18
*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................................ 10
19

20
*Sherman v. CLP Res., Inc.*,
  No. 12-CV-11037-GW-PLAx, 2020 WL 2790098 (C.D. Cal. Jan. 30,
21
  2020) .................................................................................................................... 12

22
*Smith v. Experian Info. Sols., Inc.*,
23
  No. 17-CV-00629-CJC-AFM, 2020 WL 4592788 (C.D. Cal. Aug. 10,
  2020) .................................................................................................................... 9
24

25
*Spann v. J.C. Penny Corp.*,
  314 F.R.D. 312 (C.D. Cal. 2016) ..................................................................... 11, 12
26

27
*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................ 12
28

*Tinoco v. Hajoca Corp.*,
No. 17-CV-6187-FMO-ASx, 2019 WL 4239130 (C.D. Cal. June 18,
2019) ....................................................................................................... 11, 12, 13

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................ 1, 4, 13

## I.     INTRODUCTION

Plaintiffs Alex Morgan, Becky Sauerbrunn, Carli Lloyd, and Megan Rapinoe, on behalf of the Rule 23 Classes, respectfully seek preliminary approval of a settlement with defendant United States Soccer Federation, Inc. ("USSF") with respect to only the working-conditions claims in the case.  The parties have agreed to settle Plaintiffs' claims that USSF has discriminated against players on the United States Senior Women's National Soccer Team ("WNT") in their working conditions, in violation of Title VII, including for their field surfaces, personnel support, and hotel and travel accommodations.  This Court should grant preliminarily approval of the parties' settlement because it is the product of serious, arm's-length negotiations, it does not grant preferential treatment to any segment of the class, it has no obvious deficiencies, and the agreement falls within the range of possible approval.

Most importantly, this settlement provides that members of the WNT and the members of the United States Senior Men's National Soccer Team ("MNT") will achieve equality in working conditions going forward.  This settlement does not resolve the Classes' claims for pay discrimination under both Title VII and the Equal Pay Act, which the parties have agreed should be promptly made the subject of a final judgment that can proceed to appeal.

The proposed class settlement of the working-conditions claims should be preliminarily approved for the following reasons:

First, this settlement is the culmination of numerous negotiations and talks between the parties dating back to 2016.  It is also the result of extensive fact and expert discovery followed by further negotiations from July through November 2020 between counsel for both sides, the WNT players, and key leaders at USSF.  Second, the settlement applies equally to all; no class member receives a benefit that another does not.  Nor are there any incentive awards for class representatives or fee awards for

counsel being sought at this time.[1]  Third, the settlement has no obvious deficiencies, as it achieves Plaintiffs' goal of having equality with the male members of the MNT in the subject working conditions.  And fourth, the settlement falls within the range of possible approval because it achieves precisely the equality of treatment objective that Plaintiffs sought in filing the working-conditions claims that are being resolved.

For these reasons, as detailed below, the Court should grant preliminary approval of the settlement, approve the class notice, and schedule a final approval hearing.

## II.   FACTUAL BACKGROUND

### A.   Plaintiffs' EEOC charges lead to this lawsuit.

Plaintiffs are professional soccer players and members of the WNT.  In April 2016, the four class representatives here, Alex Morgan, Megan Rapinoe, Becky Sauerbrunn, and Carli Lloyd, each filed a charge of discrimination against their employer, USSF, with the Equal Employment Opportunity Commission alleging sex-based discrimination.  Dkt. 2.  The EEOC investigated the charges and ultimately issued four right to sue letters in February 2019.  *Id.*

On March 8, 2019, Plaintiffs filed their collective and class action complaint against USSF asserting claims under the Equal Pay Act and Title VII based on discrimination in pay and working conditions, including with respect to field surfaces, personnel support, and hotel and travel accommodations. The working-conditions claims were filed exclusively under Title VII, because the Equal Pay Act only applies to pay-discrimination claims.  *See* Dkt. 1.  USSF answered, denying liability.  Dkt. 42.

### B.   The parties engage in thorough, extensive fact and expert discovery.

The class representatives vigorously pursued their claims through extensive discovery.  From August 2019 through February 2020, Plaintiffs served five sets of document requests containing 67 separate requests for production and 16 interrogatories.   Kessler Decl. ¶ 8.   The parties produced tens of thousands of

---

[1] The settlement reserves the right of counsel to seek a fee award at a later point in the litigation if the equal-pay claims are resolved in favor of the Classes either through judgment or settlement.  *See* Declaration of Jeffrey L. Kessler ("Kessler Decl.") Ex. A, ¶ 61.

documents. Kessler Decl. ¶ 8. They engaged in extensive negotiations regarding the scope and substance of discovery and raised many discovery disputes with the Court during the process. *Id.*

On top of written discovery, the two sides deposed nearly twenty fact witnesses. *Id.* ¶ 9. Plaintiffs deposed seven USSF current or former employees, including former USSF Presidents Carlos Cordeiro and Sunil Gulati and Managing Director of Administration Tom King. *Id.* Plaintiffs also deposed key third-party sponsors Visa and Coke. *Id.* Likewise, USSF deposed ten witnesses, including all four class representatives and Becca Roux, the WNT union's Executive Director. *Id.*

Each side also retained highly credentialed experts. Plaintiffs retained three experts: Dr. Finnie Cook, an economist, Dr. Caren Goldberg, a human resource expert and consultant, and Dr. Roger Noll, a well-published economist and economics professor at Stanford University. *Id.* ¶ 11. On the other side, USSF also retained three experts: Phillip Miscimarra, a partner at the national law firm Morgan, Lewis & Bockius LLP, Carlyn Irwin, a senior advisor with the economics consulting firm Cornerstone Research, and Dr. Justin McCrary, an economist and professor at Columbia University. *Id.* ¶ 12. Each expert was deposed. *Id.* ¶ 10.

In the end, thousands of hours were ultimately spent on discovery, as the parties carefully developed the records on their respective claims and defenses. *Id.* ¶ 7.

**C.    The parties engage in extensive motion practice.**

**1.    Plaintiffs' JPML motion and USSF's motion to transfer.**

Concurrent with the filing of the complaint, Plaintiffs filed a motion with the Judicial Panel on Multidistrict Litigation to transfer *Solo v. United States Soccer Federation*, Case No. 3:18-CV-05215-JD, to this Court from the Northern District of California. *See* Dkt. 9. USSF contested the motion with the JPML and it was ultimately denied. Dkt. 23.

Following that denial, USSF moved this Court for an order transferring venue to the Northern District of California based on the first-to-file rule.  *See* Dkt. 46.  The Court denied USSF's motion and retained the case.  *See* Dkt. 56.

### 2.    The Court certifies three classes.

In September 2019, Plaintiffs moved to certify two classes under Rule 23 and one collective class under the Equal Pay Act.  *See* Dkt. 64.  This Court granted Plaintiffs' motion and certified both a Rule 23(b)(2) injunctive relief class and a Rule 23(b)(3) damages class as follows:

> **Injunctive Relief Class:** All WNT players on the team at the date of the final judgment, or the date of the resolution of any appeals therefrom, whichever is later.

> **Damages Class:**  All WNT players who were members of the WNT at any time from [June 11, 2015] through the date of class certification.

Dkts. 98 at 14–15; Dkt. 123.  The Court also conditionally certified a collective class under 29 U.S.C. § 216(b) for "[a]ll WNT players who were members of the WNT at any time from March 8, 2016 through the present" (collectively, the "Classes").  Dkt. 98 at 15.

The Rule 23(b) Classes both seek relief under Title VII. The injunctive relief class seeks equal working conditions on a going-forward basis, while the damages class seeks, among others, back pay and punitive damages for pay discrimination.  The collective class too seeks back pay, but only with respect to pay-discrimination claims. In certifying these Classes, the Court appointed Alex Morgan, Megan Rapinoe, Carli Lloyd, and Becky Sauerbrunn as class representatives and Winston & Strawn LLP as class counsel. *Id*.

### 3.    The parties move for summary judgment.

The parties filed cross summary judgment motions earlier this year.  *See* Dkts. 170, 171.  Plaintiffs moved for summary judgment on their pay-discrimination claims under both the Equal Pay Act and Title VII, while USSF moved for summary judgment

4

1  on all of Plaintiffs' claims.  On May 1, 2020, the Court denied Plaintiffs' summary
2  judgment motion and granted in part USSF's motion.  Dkt. 250.  The Court ruled for
3  USSF on Plaintiffs' Title VII and Equal Pay Act pay-discrimination claims and on
4  Plaintiffs' claim of unequal treatment for field surfaces.  *Id.* at 21, 28.  The Court denied
5  USSF summary judgment on Plaintiffs' working-conditions claims relating to unequal
6  treatment with respect to hotel accommodations, charter flights, and support personnel.
7  *Id.* at 31.

8       After the summary judgment order issued, Plaintiffs moved for entry of judgment
9  under Rule 54(b) so that they could immediately appeal the Court's ruling.  Dkt. 253.
10  Plaintiffs simultaneously moved to stay the upcoming trial on the remainder of their
11  claims pending resolution of their Rule 54(b) motion.  Dkt. 254.  This Court denied both
12  motions.  Dkts. 258, 266.  Although the trial on these remaining claims was ultimately
13  postponed multiple times due to the global COVID-19 pandemic, the parties negotiated,
14  drafted, and exchanged various pretrial filings, including witness lists, exhibit lists, and
15  jury instructions.  *See* Kessler Decl. ¶ 13.

16  **III.   PROPOSED SETTLEMENT**
17       **A.   The parties engage in extensive settlement negotiations.**

18       Plaintiffs and USSF have had settlement discussions dating back as far as the
19  EEOC's investigation of Plaintiffs' charges in 2016, in an attempt to resolve this matter
20  prior to litigation.  Kessler Decl. ¶ 14.  After this lawsuit was filed, they continued to
21  engage in settlement negotiations, formally and informally, including in a formal two-
22  day mediation in August 2019 with both class representatives and senior USSF officials
23  present.  *Id.*  The parties engaged in further informal settlement communications
24  through the close of discovery and pre-trial preparation.  *Id.*

25       Following the Court's summary judgment ruling and multiple delays of the trial
26  date due to COVID-19, the parties' settlement negotiations intensified.  From July
27  through November 2020, the parties continually discussed a potential settlement of
28  Plaintiffs' working-conditions claims, with the class representatives again playing an

important role during negotiations.  Kessler Decl. ¶ 15.  After several more formal virtual meetings in which substantial progress was made, the parties engaged in extensive informal negotiation through regular calls and correspondence during which they exchanged multiple drafts of a proposed settlement agreement and policy documents.  *Id.* ¶ 16.  The negotiations were led by class counsel with decades of collective experience with sports class action and employment matters.  *See* Dkt. 64-1 ¶¶ 5–15 (describing class counsel's experience in similar matters).  USSF too has been led by two prominent national law firms during negotiations, currently Latham & Watkins LLP and previously Seyfarth Shaw LLP.

Plaintiffs sought equality with the MNT, particularly in the subject working conditions where there have been differences in favor of the MNT between the two national teams.  *See* Kessler Decl. ¶ 16.  During these months of talks, the parties spent significant time and effort negotiating and finalizing an agreement that would provide for equality of treatment with respect to the working conditions.  *See id.*  In reaching this settlement, Plaintiffs and their counsel recognized the immediate benefit to settling the working-conditions claims while avoiding the inherent uncertainty, delay, expense, and risk of continued litigation.  *Id.*  Settling these claims also paves the way for this Court to enter a final judgment on the Classes' pay-discrimination claims, which can then proceed to appeal.  *See* Kessler Decl., Ex. A ¶ 37.

**B.    The settlement terms.**

The parties have agreed in principle to settle all of Plaintiffs' Title VII working-conditions claims. [2]  *See generally* Kessler Decl., Ex. A.  The crux of the agreement is that USSF will implement revised charter flight, venue selection, professional support, and hotel accommodation policies intended to create equality with the MNT moving

---

[2] As noted above, the settlement does not redress Plaintiffs' pay-discrimination claims, the dismissal of which Plaintiffs intend to appeal.  Pursuant to the settlement agreement, USSF has agreed to the prompt entry of a final judgment with respect to the Classes' pay-discrimination claims under both Title VII and the Equal Pay Act, so that they can be promptly appealed.  *See* Kessler Decl., Ex. A ¶ 37.

forward in exchange for a release of liability on Plaintiffs' working-conditions claims.[3]
Kessler Decl., Ex. A ¶¶ 27–30, 35.  These policies will remain in effect for four years
and will apply to all current and future WNT players.  *Id.* ¶¶ 27–30.  Moreover, if USSF
and the MNT agree to a policy on any of these four topics that differs from the
applicable policy agreed to here, the WNT players can opt to accept these new policies
over the existing ones so that equality of treatment will be provided.  *Id.* ¶ 33.  Neither
the Classes nor the class representatives will receive any monetary compensation from
the settlement.  *See generally* Kessler Decl., Ex. A.

A brief description of each working-conditions policy for the WNT follows.

Charter Flight Policy.  USSF will provide an equal number of charter flights to
the WNT and the MNT over the relevant period.  Kessler Decl., Ex. A, Ex. 2.

Venue Selection Policy.  USSF will follow specific guidelines in selecting venues
to ensure WNT matches are played in top-tier venues.  Kessler Decl., Ex. A, Ex. 3.  This
policy also requires that WNT matches be played on grass in almost all
circumstances.  *Id.*

Professional Support Policy.  USSF will employ between 18 and 21 dedicated
operational and technical support personnel for each national team.  Kessler Decl., Ex.
A, Ex. 4.  USSF's Chief Medical Officer will also provide medical support for both
teams.  *Id.*  The MNT and WNT will also each have a physician team, consisting of a
lead coordinating physician and a pool of two to five additional physicians.  *Id.*

Hotel Accommodations Policy.  USSF will maintain comparable budgets for the
WNT and the MNT for each fiscal year for hotel accommodations on a per-night, per-
room basis.  Kessler Decl., Ex. A, Ex. 5.  USSF will follow specific guidelines in
selecting hotel accommodations to ensure that the WNT stays in top-quality hotels.  *Id.*

Each policy also includes a reporting requirement so that the WNT players can
monitor USSF's compliance.  Kessler Decl., Ex. A, Exs. 2–5.  The policies also provide

---

[3] USSF denies that it had not provided equal working conditions.

for the Classes to enforce USSF's obligations under the governing CBA's grievance and arbitration procedure.  Kessler Decl., Ex. A, Exs. 2–5.

Finally, as noted above, the parties agreed that if USSF and the MNT agree to a policy on any of these four topics that differs from the applicable policy agreed to here, the WNT players can opt to accept these new policies over the existing ones so that equality of treatment will be provided.  Kessler Decl., Ex. A ¶ 33.

### C.     The scope of the release.

In exchange for USSF agreeing to implement these four policies, Plaintiffs agreed to release their working-conditions claims against USSF.  Kessler Decl., Ex. A ¶¶ 16, 35(a).  More specifically, Plaintiffs agreed to release USSF from "[a]ny and all claims . . . that were asserted in the Complaint and/or that could have been asserted in the Complaint based on the facts and/or allegations alleged in the Complaint that USSF discriminated against Plaintiffs and the Class Members on the basis of their sex by denying them working conditions equal to those of the players on the USMNT, including, but not limited to, equal playing, training, and travel conditions, and equal medical and training support personnel."  *Id.* ¶ 16.  Importantly though, the released claims **exclude** "Count I of the Complaint, in which Plaintiffs claim a violation of the Equal Pay Act" and "that portion of Count II of the Complaint, in which Plaintiffs claim a violation of Title VII, that seeks redress for pay discrimination."  *Id.* ¶ 16(a).  As noted above, Plaintiffs intend to appeal the Court's summary judgment ruling on these pay claims.  The released claims also exclude acts or omissions after the settlement's effective date.  *Id.* ¶ 16(b).

## IV.    THE PROCEDURE FOR CLASS NOTICE AND OBJECTIONS

The parties agreed that within fourteen days of preliminary approval, USSF will send class counsel a full and complete class list.  Kessler Decl., Ex. A ¶ 38.  The class list will include each class member's full name, last known home address, last known email address, and dates of active employment with USSF as a class member.  Kessler Decl., Ex. A ¶ 6.  Within fourteen days thereafter, class counsel will both mail and email

copies of the agreed-upon class notice to all class members.  Kessler Decl., Ex. A ¶ 39, Ex. 1.  The class notice will advise class members who wish to object to the settlement that they can file a written objection with the Court within thirty days of mailing. Kessler Decl., Ex. A ¶¶ 18, 40, Ex. 1.  The notice will also advise that class members who fail to object will waive any such challenges.  Kessler Decl., Ex. A ¶ 40, Ex. 1. The class notice also details what exactly any objection should contain, including the class member's name, dates of USSF employment, and basis for the objection.  Kessler Decl., Ex. A ¶ 40, Ex. 1.

## V.   ARGUMENT

### A.   The proposed settlement satisfies each of the conditions for preliminary approval.

At the preliminary stage, a court should grant approval of class settlement if it "[(1)] appears to be the product of serious, informed, non-collusive negotiations, [(2)] has no obvious deficiencies, [(3)] does not improperly grant preferential treatment to class representatives or segments of the class, and [(4)] falls within the range of possible approval." *Smith v. Experian Info. Sols., Inc.*, No. 17-CV-00629-CJC-AFM, 2020 WL 4592788, at *5 (C.D. Cal. Aug. 10, 2020) (citation omitted).  At this point, "[t]he settlement need only be <u>potentially</u> fair, as the [c]ourt will make a final determination of its adequacy at the hearing on the Final Approval." *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. 19-CV-620-JGBKKx, 2020 WL 5044418, at *2 (C.D. Cal. May 7, 2020) (emphasis in original) (citation omitted).  This Court need only determine at this stage that "the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final approval hearing." *Contreras v. Worldwide Flight Servs., Inc.*, No. 18-CV-6036-PSG-SSx, 2019 WL 8633664, at *5 (C.D. Cal. Sept. 30, 2019).

All the requirements for preliminary approval are met here.

1.     **The settlement is the product of serious, informed, non-collusive negotiations.**

The lengthy, arm's-length negotiations through which the settlement was reached favors approval. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). Indeed, "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). This settlement is the product of serious, informed, negotiations, which afford it the presumption of fairness.

The parties first discussed settlement of both Plaintiffs' pay and working-conditions claims four years ago when the dispute was before the EEOC. After this lawsuit was filed, the parties had additional formal and informal discussions regarding potential settlement, including with the assistance of a mediator. The Court's summary judgment order led to continued discussions as the parties tried to resolve Plaintiffs' working-conditions claims. Since that time, the parties have had extensive discussions to develop the policies being adopted to resolve Plaintiffs' working-conditions claims. Throughout all of these negotiations, both sides were represented by counsel with significant experience in class action and employment litigation.

At all times, Plaintiffs have been well informed on the merits of both their claims and USSF's defenses. Indeed, many months and countless hours were spent in discovery, with both sides nearly exhausting the number of depositions allowed under the Federal Rules and exchanging tens of thousands of documents. Plaintiffs' goal here was to build their case and better understand both the strengths and weaknesses of their claims. The class representatives were personally involved in the settlement negotiations and each of them have agreed to these settlement terms.

Simply put, the parties' settlement is the culmination of substantial litigation and constant back-and-forth discussions by well-informed counsel, parties, and class

representatives.  And where, as here, Plaintiffs' substantial efforts to develop their case are accompanied by extensive, arm's-length negotiations and no evidence of any collusion, the facts favor court approval.  *See, e.g.*, *Contreras*, 2019 WL 8633664, at *8 (this factor met where parties spent substantial time and effort on fact discovery and settlement negotiations thus "suggest[ing] that there was no collusion" and that parties were "well informed and had sufficient information to assess the merits of their claims"); *Bey v. Mosaic Sales Sols. U.S. Operating Co.*, LLC, No. 16-CV-6024-FMO-RAOx, 2019 WL 7940584, at *9 (C.D. Cal. June 20, 2019) (factor met where parties "had a sound basis for measuring the terms of the settlement against the risks of continued litigation" and where there was no evidence of fraud or collusion); *Tinoco v. Hajoca Corp.*, No. 17-CV-6187-FMO-ASx, 2019 WL 4239130, at *9 (C.D. Cal. June 18, 2019) (same).

### 2.    The settlement has no deficiencies.

Both sides agree that the settlement is fair, adequate, and reasonable to the Classes with no obvious deficiencies.  The settlement accomplishes Plaintiffs' goal of equalizing their working conditions with those of their male counterparts.  It confers immediate and substantial benefit to class members as USSF will move swiftly to implement the policies and avoids the inherent delay and risk of continued litigation. The settlement also provides equal benefits to each member of the WNT, and its release is limited only to the working-conditions claims that occurred before the agreement's effective date.

### 3.    The agreement does not grant preferential treatment to either the class representatives or other class segments.

In considering this factor, courts examine whether there is a significant disparity in treatment between class representatives and other members such that a conflict of interest exists.  *See Spann v. J.C. Penny Corp.*, 314 F.R.D. 312, 328 (C.D. Cal. 2016). Courts will look for signs that "the 'self-interests' of 'certain class members [has] infect[ed] negotiations.'"  *Richards v. Chime Financial*, No. 19-CV-06864-HSG, 2020

1    WL 6318713, at *9 (N.D. Cal. Oct. 28, 2020) (citing *In re Bluetooth Headset Prods.*
2    *Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).  In doing so, courts consider "the actions
3    … taken to protect the interests of the class, the degree to which the class has benefitted
4    from those actions, and the amount of time and effort … expended in pursuing the
5    litigation." *Spann*, 314 F.R.D. at 328 (citation omitted).

6         This factor is met because the agreement treats each class member equally—no
7    class member receives a benefit that another does not.  Indeed, each of the four policies
8    will apply to each player on the WNT, regardless of her experience, skill level, duration
9    of employment, or any other factor.  And, this agreement lacks any incentive awards or
10   other separate treatment for the class representatives.  Simply put, there are no conflicts
11   of interest, or even the possibility of one.

12              **4.     The settlement falls within the range of possible approval.**

13        When assessing this factor, "courts focus on the substantive fairness and
14   adequacy [of the settlement] and consider plaintiffs' expected recovery balanced against
15   the value of the settlement offer." *Sherman v. CLP Res., Inc.*, No. 12-CV-11037-GW-
16   PLAx, 2020 WL 2790098, at *10 (C.D. Cal. Jan. 30, 2020) (citation and quotation
17   omitted); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)
18   (same).  Courts will consider not only the strength of the claims, but also the inherent
19   risk with continued litigation.  *See In re Lenovo*, 2018 WL 6099948, at *8; *Contreras*,
20   2019 WL 8633664, at *8 (considering "risk of continued litigation … against the
21   certainty and immediacy of recovery" (citation omitted)).  On top of that, courts also
22   consider "whether a class action settlement contains an overly broad release of
23   liability." *Tinoco*, 2019 WL 4239130, at *10.

24        This settlement falls squarely within the Classes' desired outcome. Plaintiffs
25   brought their working-conditions claims to seek equality between the senior national
26   teams, and the agreed-to policies do just that—and not just for current WNT players,
27   but for future ones too.  These policies will greatly improve the day-to-day life of a
28   WNT player by enhancing multiple aspects of the job—from travel, to support, to

match-day playing surfaces. Further, if USSF and the MNT agree to a more favorable policy in any of these areas during the four-year effective period, the WNT players will have the option to have the MNT policy applied.  While no punitive damages are being provided as part of the settlement, when balanced against the delay in receiving these benefits and the risk of ongoing litigation, the settlement is a very favorable outcome for the Classes.  *See Tinoco*, 2019 WL 4239130, at *9 (finding that when weighed against the risks and delay of continued litigation, "the benefits to the class fall within the range of reasonableness").  Finally, the settlement also preserves Plaintiffs' ability to pursue their pay-discrimination claims under both Title VII and the Equal Pay Act at the Ninth Circuit by releasing only Plaintiffs' working-conditions claims, and only for acts before the agreement's effective date.  *Id.* at *10 ("release adequately balances fairness to [the class] with defendant's business interest in ending this litigation").

Overall, the settlement achieves the goals of the Classes in seeking to create equality with their male counterparts in the challenged working conditions and falls well within the range of possible approval.

**B.    The proposed class notice is appropriate and should be approved.**

At the point of granting preliminary approval, the Court must also approve and direct notice "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B); *Low v. Trump University, LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018) ("The yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness." (citation omitted)).  Class notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted).   The notice should thus "provide sufficient information to allow class members to decide" how to proceed with respect to the settlement.  *Bey*, 2019 WL 7940584, at *12; *Tinoco*, 2019 WL 4239130, at *11 (notices sufficient "if they inform the class members of the nature of the pending action, the general terms of the

settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing" (citation omitted)).

The proposed class notice, filed concurrently herewith, meets all the requirements: it describes the litigation, it describes the terms of settlement, it is reasonably calculated to reach all affected class members through mail and email, and it explains how exactly any class members can object to its approval.  It provides the clear guidance necessary to its recipients to decide how to proceed and should thus be approved.  *Contreras*, 2019 WL 8633664, at *11 (notice sufficient where it described, among others, the nature of action, terms of settlement, scope of classes, objection procedure, and final approval procedure).

### C.   The Court should approve the proposed scheduling order and set a date for a fairness hearing.

The parties propose the following schedule for distributing the class notice and for setting a final approval hearing:

| Event | Deadline |
|---|---|
| USSF to send class list | 14 calendar days after preliminary approval |
| Class counsel to send class notice | 21 calendar days after receiving class list |
| Last day for class members to object | 30 calendar days after initial mailing of class notice |
| File motion for final approval | 14 calendar days after objection period expires |
| Final approval hearing | As the Court's schedule allows |

Under this schedule, the motion for final approval will be filed less than twelve weeks after the Court grants preliminary approval.  Plaintiffs request that the Court set a date for a final approval hearing at the time it grants preliminary approval so the final approval hearing information may be included in the notice to the Classes.

## IV.    CONCLUSION

For these reasons, the Court should preliminarily approve the settlement, approve the content and plan for distribution of the class notice, and schedule a final approval hearing.

Dated:  December 1, 2020                    WINSTON & STRAWN LLP

                                            By:  */s/ Jeffrey L. Kessler*
                                                  Jeffrey L. Kessler
                                                  David G. Feher
                                                  Cardelle B. Spangler
                                                  Diana Hughes Leiden
                                                  Jeanifer E. Parsigian
                                                  Lev Tsukerman

                                                  *Attorneys for Plaintiffs*