# EXHIBIT A
# REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## CLASS ACTION SETTLEMENT AND RELEASE OF WORKING CONDITIONS CLAIMS

### I.     INTRODUCTION

1.      This Class Action Settlement and Release of Working Conditions Claims ("Agreement," "Settlement," or "Settlement Agreement") is made and entered into by and between the following parties: plaintiffs Alex Morgan, Megan Rapinoe, Becky Sauerbrunn, and Carli Lloyd (collectively, "Plaintiffs"), individually and on behalf of all Class Members, and defendant United States Soccer Federation, Inc. ("USSF"), through their respective counsel of record.   This Settlement resolves certain claims, specifically identified below, in *Alex Morgan, et al. v. United States Soccer Federation, Inc.*, Case No. 2:19-CV-01717-RGK-AGR in the United States District Court for the Central District of California.

2.      This Agreement is subject to the terms and conditions set forth below and to the approval of the Court.   This Agreement sets forth the Parties' class action settlement to resolve Plaintiffs' claims and/or allegations alleged in the Complaint that USSF discriminated against Plaintiffs and the Class Members on the basis of their sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") by denying them working conditions equal to those of the players on the USMNT, specifically equal playing surfaces, travel conditions, and equal medical and training support personnel.   As detailed below, in the event that the Court does not execute and file an order granting Final Approval of the Settlement, or in the event that the associated judgment does not become final for any reason, this Settlement Agreement shall be deemed null and void and shall be of no force or effect whatsoever.

### II.     DEFINITIONS

The following definitions are applicable to this Agreement.   Definitions contained elsewhere in this Agreement shall also be applicable.

4.      "Action" means the lawsuit titled *Alex Morgan, et al. v. United States Soccer Federation, Inc.* filed in the United States District Court for the Central District of California and bearing case number 2:19-CV-01717-RGK-AGR.

1

5.      "Class Counsel" means Winston & Strawn LLP.

6.      "Class List" means a list of Class Members that USSF will compile from its records. The Class List shall include each Class Member's full name; last known home address and last known email address to the extent available in USSF's business records; and dates of active employment with USSF as a Class Member.

7.      "Class" or "Class Members" means all USWNT players from June 11, 2015 through the date of a final judgment with respect to the Released Claims.

8.      "Class Notice" means the Notice of Proposed Class Action Settlement (substantially in the form attached as **Exhibit 1**).

9.      "Complaint" means the complaint filed in the Action on March 8, 2019.

10.      "Court" means the United States District Court for the Central District of California.

11.      "USSF's Counsel" means Latham & Watkins LLP.

12.      "Effective Date" means the later of: (i) if no appeal of the Final Approval is filed, 30 days after Final Approval of the Settlement; or (ii) if an appeal of the Final Approval is filed, the date on which the Court of Appeals or Supreme Court renders a final judgment affirming the trial court's Final Approval.

13.      "Final Approval" means the Court order granting final approval of the Agreement.

14.      "Parties" means Plaintiffs and USSF, collectively, and "Party" shall mean either Plaintiffs or USSF, individually.

15.      "Preliminary Approval" means the Court order granting preliminary approval of the Agreement without material change to the Agreement.

16.      "Released Claims" means any and all claims, known or unknown, that were asserted in the Complaint and/or that could have been asserted in the Complaint based on the facts and/or allegations alleged in the Complaint that USSF discriminated against Plaintiffs and the Class Members on the basis of their sex by denying them working conditions equal to those of the players on the USMNT, including, but not limited to, equal playing, training, and travel conditions,

2

and equal medical and training support personnel.  The Released Claims include any such working conditions claims under state, federal, or local law, including, but not limited to, claims under Title VII.

a.    The Released Claims **do not** include Count I of the Complaint, in which Plaintiffs claim a violation of the Equal Pay Act; or that portion of Count II of the Complaint, in which Plaintiffs claim a violation of Title VII, that seeks redress for pay discrimination.

b.    The Released Claims **do not** include or cover any actions or omissions occurring after the Effective Date.

17.    "Released Parties" means USSF, its parent or subsidiary corporations, each of its present, former, or future owners, officers, directors, shareholders, partners, employees, insurers, successors, predecessors, contractors, assigns, and managing agents, and any and all present, former, or future agents, legal representatives, and/or attorneys of all of the foregoing entities and individuals.

18.    "Response Deadline" means the deadline by which Class Members must file their objections with the Court and serve them on counsel for the Parties.  The Response Deadline shall be thirty (30) calendar days from the initial mailing of the Class Notices, unless the 30th day falls on a Saturday, Sunday, or federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service is open.

19.    "USMNT" means the United States Senior Men's National Soccer Team.

20.    "USNSTPA" means the U.S. National Soccer Team Players Association.

21.    "USWNT" means the United States Senior Women's National Soccer Team.

22.    "USWNT CBA" means the collective bargaining agreement between USSF and the U.S. Women's National Team Players Association, effective January 1, 2017 through December 31, 2021.

23.    "USWNTPA" means the U.S. Women's National Team Players Association.

### III.   **RECITALS**

24.   <u>Procedural History</u>.  On March 8, 2019, Plaintiffs filed their class action Complaint against USSF in the United States District Court for the Central District of California on behalf of former and current players on the USWNT.  Among other things, Plaintiffs alleged that USSF discriminated against them on the basis of sex in violation of Title VII by denying them working conditions equal to those given to players on the USMNT.  USSF answered the Complaint, denying that it violated Title VII.

25.   <u>Benefits of Settlement to Class Members</u>.  Plaintiffs and Class Counsel recognize the expense and length of continued proceedings necessary to litigate their disputes with respect to the Released Claims through trial and through any possible appeals.  Plaintiffs and Class Counsel have also taken into account the uncertainty and risk of the outcome of further litigation on the Released Claims, and the difficulties and delays inherent in such litigation.  Plaintiffs and Class Counsel have also taken into account that USSF's agreement to settle the Released Claims confers substantial relief on Plaintiffs and the Class Members.  Plaintiffs and Class Counsel have thus determined that the settlement terms set forth in this Agreement are fair, adequate, and reasonable, and in the best interests of Plaintiffs and the Class Members.

26.   <u>USSF's Reasons for Settlement</u>.  USSF has concluded that any further defense of the Released Claims in this litigation would be protracted and expensive for all Parties.  Substantial amounts of time, energy, and resources of USSF will be devoted to the defense of the Released Claims asserted by Plaintiffs unless this Settlement is made.  USSF has also taken into account the risks of further litigation in reaching its decision to enter into this Settlement.  Despite continuing to contend that it is not liable for any of the Released Claims set forth by Plaintiffs, USSF has, nonetheless, agreed to settle in the manner and upon the terms set forth in this Agreement to put to rest the Released Claims.  USSF claims and continues to claim that the Released Claims do not give rise to liability.  This Agreement is a compromise of disputed claims.  Nothing contained in this Agreement, no documents referred to herein, and no action taken to carry out this Agreement may be construed or used as an admission by or against USSF as to the merits of the Released

4

Claims.

### IV.    TERMS OF AGREEMENT

Plaintiffs, on behalf of themselves and Class Members, and USSF agree as follows:

27.    Adoption of Charter Flight Policy.  On the Effective Date, USSF will adopt and enforce the Charter Flight Policy attached as **Exhibit 2**.  Under the Charter Flight Policy, USSF will seek to provide equal resources to the USMNT and the USWNT with respect to chartered air travel.  USSF will adopt and enforce each and every term of the Charter Flight Policy, consistent with its collective bargaining obligations.  USSF shall enforce the Charter Flight Policy for a minimum of four full years from the Effective Date unless Class Counsel consents to amending the policy during that period.  Any changes in the policy agreed to by USSF and Class Counsel will only go into effect if also agreed to in collective bargaining by USSF and the USWNTPA. Absent such agreement, the policy set forth in Exhibit 2 shall remain in effect for at least the four-year period specified above.  After that date, any subsequent changes to the policy shall be subject to collective bargaining with the USWNTPA.

28.    Adoption of Senior National Team Event Venue Selection Policy.  On the Effective Date, USSF will adopt and enforce the confidential Senior Women's National Team Event Venue Selection Policy attached under seal as **Exhibit 3**.  Under the Senior Women's National Team Event Venue Selection Policy, USSF will seek to provide equally acceptable venues and field playing surfaces to the USWNT and the USMNT.  USSF will adopt and enforce each and every term of the Senior Women's National Team Event Venue Selection Policy, consistent with its collective bargaining obligations.  USSF shall enforce the Senior Women's National Team Event Venue Selection Policy for a minimum of four full years from the Effective Date unless Class Counsel consents to amending the policy.  Any changes in the policy agreed to by USSF and Class Counsel will only go into effect if also agreed to in collective bargaining by USSF and the USWNTPA.  Absent such agreement, the policy set forth in Exhibit 3 shall remain in effect for at least the four-year period specified above.  After that date, any subsequent changes to the policy shall be subject to collective bargaining with the USWNTPA.

29.     <u>Adoption of Senior National Team Professional Support Policy</u>.  On the Effective Date, USSF will adopt and enforce the Senior National Team Professional Support Policy attached as **Exhibit 4**.  Under the Senior National Team Professional Support Policy, USSF will seek to provide equal resources to the USWNT and the USMNT with respect to specialized professional support services.  USSF will adopt and enforce each and every term of the Senior National Team Professional Support Policy, consistent with its collective bargaining obligations.  USSF shall enforce the Senior National Team Professional Support Policy for a minimum of four full years from the Effective Date unless Class Counsel consents to amending the policy.  Any changes in the policy agreed to by USSF and Class Counsel will only go into effect if also agreed to in collective bargaining by USSF and the USWNTPA.  Absent such agreement, the policy set forth in Exhibit 4 shall remain in effect for at least the four-year period specified above.  After that date, any subsequent changes to the policy shall be subject to collective bargaining with the USWNTPA.

30.     <u>Adoption of Senior National Team Hotel Accommodations Policy</u>.  On the Effective Date, USSF will adopt and enforce the confidential Senior Women's National Team Hotel Accommodations Policy attached as **Exhibit 5**.  Under the Senior Women's National Team Hotel Accommodations Policy, USSF will seek to provide comparable hotel accommodations to the USWNT and the USMNT that USSF wholly organizes and for which it pays for all USWNT and USMNT matches and camps.  USSF will adopt and enforce each and every term of the Senior National Team Hotel Accommodations Policy, consistent with its collective bargaining obligations, recognizing that the policy may require approval by the USWNTPA and/or the USNSTPA.  USSF shall enforce the Senior National Team Hotel Accommodations Policy for a minimum of four full years from the Effective Date unless Class Counsel consents to amending the policy.  Any changes in the policy agreed to by USSF and Class Counsel will only go into effect if also agreed to in collective bargaining by USSF and the USWNTPA.  Absent such agreement, the policy set forth in Exhibit 5 shall remain in effect for at least the four-year period specified above.  After that date, any subsequent changes to the policy shall be subject to collective bargaining with the USWNTPA.

31.     Purpose of Policies.  The parties intend that the policies in Exhibits 2-5 will provide equal treatment of the USWNT and the USMNT in these aspects of the teams' working conditions.

32.     USWNTPA Approval.   The policies attached hereto are expected to also be incorporated as amendments to the collective bargaining agreement between USSF and the USWNTPA.  If the USWNTPA does not agree to such parallel amendments to the USWNT CBA within twenty-one (21) calendar days of the execution of this Agreement, this Agreement will become null and void and will not be presented to the Court for approval.

33.     USNSTPA Policy Changes.  If, at any time within four years from the Effective Date, the USNSTPA and USSF agree to a policy on charter flights, event venue selection, professional support, or hotel accommodations that is different from the applicable policy for that subject that is attached hereto as Exhibits 2, 3, 4, and 5, USSF shall provide a copy of such policy to Class Counsel within fourteen (14) days of its effective date and the Class shall have the option, but not the obligation, to accept the USNSTPA policy for that subject in place of the applicable policy attached hereto as Exhibits 2, 3, 4, and 5.  Class Counsel shall have forty-five (45) days thereafter to inform USSF whether it accepts such policy.  Any acceptance of the applicable policy by Class Counsel will be effective only if also agreed to by the USWNTPA.  Absent such agreement, the original applicable policy set forth in Exhibits 2, 3 4 or 5 shall remain in effect for at least the agreed-upon four-year period.  After that date, any subsequent changes to the policy shall be subject to collective bargaining with the USWNTPA.

34.     Release as to All Class Members.  Upon Final Approval by the Court of this Agreement, the Class Members release USSF and all Released Parties from the Released Claims.

35.     General Release by Plaintiffs.

a.     Plaintiffs individually hereby unconditionally waive and forever release USSF and all Released Parties from the Released Claims arising or accruing at any time before the Effective Date.  Plaintiffs may hereafter discover facts in addition to or different from those which they now know or believe to be true, but stipulate and agree that, upon the Effective Date, they

fully, finally, and forever settle and release the Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity and without regard to the subsequent discovery or existence of such different or additional facts.  Plaintiffs are deemed by operation of the order granting Final Approval to have agreed not to sue or otherwise make a claim against any of the Released Parties for any Released Claims arising or accruing at any time before the Effective Date.

b.     Plaintiffs acknowledge that they have had the opportunity to review and have reviewed California Civil Code section 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Being fully informed of this provision of the California Civil Code and understanding its provisions, Plaintiffs agree to waive any rights under section 1542, and acknowledge that this Agreement and the release contained herein extends to all Released Claims, that they have or might have against USSF and the Released Parties as of the Effective Date.

36.     <u>Preliminary Approval of Settlement</u>.  Plaintiffs will file a Motion for Preliminary Approval requesting that the Court grant Preliminary Approval of this class action Settlement and set a date for the final settlement approval hearing.  The order for Preliminary Approval shall direct the Class Notice to be sent to all Class Members as specified herein.  Class Counsel shall draft the Motion for Preliminary Approval and shall provide the draft of the motion to USSF's Counsel at least seven (7) calendar days before filing the motion with the Court.  USSF shall not oppose the Motion for Preliminary Approval so long as it is consistent with the terms of this Agreement.

a.     In moving for Preliminary Approval, Plaintiffs will submit to the Court for approval

this Agreement and its attachments and supporting papers, which shall describe the terms of Settlement and will include proposed forms of all notices and other documents necessary to implement the Agreement.

b.        Within ten (10) business days following the filing of this Agreement with the Court, USSF shall serve upon the Attorney General of the United States and the appropriate state official in the state where any Class Member resides, as determined by USSF's records, a notice of the proposed Settlement in compliance with the requirements of the Class Action Fairness Act of 2005.

37.        <u>Immediate Partial Final Judgment on Pay Claims</u>.  At the same time that Plaintiffs file their Motion for Preliminary Approval per paragraph 36 above, Plaintiffs will submit a consent motion with the Court requesting that the Court immediately enter partial final judgment on Plaintiffs' Equal Pay Act and Title VII pay discrimination claims that the Court dismissed in its summary judgment order (Dkt. No. 250 in the Action), pursuant to Fed. R. Civ. P. 54(b), so that those claims can proceed to appeal.

38.        <u>Class List</u>.  Within fourteen (14) calendar days after the Court grants Preliminary Approval of this Agreement, USSF shall send only Class Counsel the Class List for purposes of administering the Settlement.  Class Counsel will keep the Class List confidential.

39.        <u>Notice by First Class U.S. Mail</u>.  Within twenty-one (21) calendar days after receiving the Class List from USSF as provided herein, Class Counsel shall mail hard copies of the Class Notice to all Class Members at the home addresses provided via regular First Class U.S. Mail and electronic copies at the email addresses provided via electronic mail.

40.        <u>Objections</u>.  The Class Notice shall state that Class Members who wish to object to the Settlement must file with the Court and serve on all Parties a written statement of objection ("Notice of Objection") by the Response Deadline.  The date of filing shall be deemed the exclusive means for determining that a Notice of Objection was timely filed and served.  The Notice of Objection must be signed by the Class Member and state: (i) the full name of the Class Member; (ii) the dates of employment of the Class Member at USSF; (iii) any Employee ID

number; (iv) the basis for the objection; and (v) whether the Class Member intends to appear at the Final Approval Hearing.  Class Members who fail to make objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objections (whether by appeal or otherwise) to the Settlement.  Class Members who do not submit a timely Notice of Objection will not have a right to appear at the final settlement approval hearing to have any objections heard by the Court.

41.  <u>Mutual Full Cooperation</u>.  The Parties and their counsel will cooperate with each other and use their best efforts to carry out the terms of this Settlement.  In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement, or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement, the Parties may seek the assistance of the Court to resolve such disagreement.

42.  <u>No Solicitation of Settlement Objections</u>.  At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to submit Notices of Objections, or to appeal from the Court's judgment.

43.  <u>Motion for Final Approval and Judgment</u>.  Plaintiffs will file a Motion for Final Approval of the Settlement and supporting documents with the Court at least fourteen (14) calendar days prior to the Final Approval Hearing.  Supporting documents include: a proposed order granting Final Approval and a proposed final judgment relating to the Released Claims. Class Counsel will send USSF's Counsel the Motion for Final Approval of the Settlement for review, comments, and changes prior to filing the motion.  USSF shall have five (5) business days in which to provide its comments.  The Parties will meet and confer and agree upon the proposed order granting Final Approval and the proposed judgment.

a.  The proposed order and judgment shall include the following findings and orders: (i) approving the Settlement and finding that its terms are fair, reasonable, and adequate, and directing that its terms and provisions be carried out; and (ii) providing that the Court will retain jurisdiction to oversee administration and enforcement of the Settlement and the Court's orders except that any alleged

violations of the Charter Flight Policy (attached as Exhibit 2), Senior National

Team Event Venue Selection Policy (attached as Exhibit 3), Senior National Team

Professional Support Policy (attached as Exhibit 4), or Senior National Team Hotel

Accommodations Policy (attached as Exhibit 5), and the obligations of these

policies, shall exclusively be enforceable under and subject to binding arbitration

under the USWNT CBA's grievance and arbitration procedure (Article 23 of the

USWNT CBA).

44.    <u>Final Approval Hearing</u>.  After Preliminary Approval of the Settlement, and with

the Court's permission, a Final Approval Hearing shall be conducted to finally determine the

fairness of the Settlement.  The Parties agree to seek a Final Approval Hearing at the earliest date

permitted by law.  USSF shall not oppose Final Approval of the Settlement so long as it is

consistent with the terms of this Agreement.

45.    <u>Nullification of Agreement</u>.  In the event that: (i) the Court does not enter the order

for Preliminary Approval as provided herein; (ii) the Court does not enter the order for Final

Approval as provided herein; (iii) the Court does not enter a judgment as to the Released Claims

as provided herein; or (iv) the Settlement does not become final for any other reason, this

Agreement shall be null and void and any order or judgment entered by the Court in furtherance

of this Settlement shall be treated as void from the beginning.  In such a case, the Parties shall be

returned to their respective statuses as of the date and time immediately prior to the execution of

this Agreement and the Parties shall proceed in all respects as if this Agreement had not been

executed.  In the event an appeal is filed from the Court's judgment as to the Released Claims, or

any other appellate review is sought prior to the Effective Date, administration of the Settlement

shall be stayed pending final resolution of the appeal or other appellate review (unless otherwise

agreed to by the Parties).

46.    <u>No Admission</u>.    Nothing contained herein, nor the consummation of this

Settlement, is to be construed or deemed an admission of liability, culpability, negligence, or

wrongdoing on the part of USSF or any of the other Released Parties.  Each of the Parties hereto

has entered into this Settlement Agreement with the intention of avoiding further disputes and litigation with the attendant inconvenience and expenses. This Agreement is a settlement document and, pursuant to California Evidence Code section 1152 and/or Federal Rule of Evidence 408 and/or any other similar law, shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve the Settlement, and/or interpret or enforce this Settlement Agreement.

47.     <u>Notices</u>.  Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

**To Class Counsel:**

Jeffrey L. Kessler
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166

**To USSF's Counsel:**

Jamie L. Wine
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022

48.     <u>Confidentiality Preceding Preliminary Approval</u>.  The parties agree that until Plaintiffs file the Motion for Preliminary Approval discussed in paragraph 36 above, the existence of this Settlement, the terms of this Settlement, all negotiations leading to this Settlement, and all documents related to this Settlement will remain confidential and shall not be discussed with, publicized to, or promoted to any member of the public.

49.     <u>Exhibits and Headings</u>.  The terms of this Agreement include the terms set forth in any attached exhibits, which are incorporated by this reference as though fully set forth herein. Any exhibits to this Agreement are an integral part of the Settlement.  The descriptive headings of any paragraphs or sections of this Agreement are inserted for convenience of reference only and do not constitute a part of this Agreement.

50.     <u>Amendment or Modification</u>.  This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest.

51.     Entire Agreement.  This Agreement and any attached exhibits constitute the entire Agreement among these Parties, and no oral or written representations, warranties, or inducements have been made to any Party concerning this Agreement or its exhibits other than the representations, warranties, and covenants contained and memorialized in the Agreement and its exhibits.

52.     No Prior Assignments.  The Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any claims, causes of action, demands, rights, and liabilities of every nature and description released under this Settlement.

53.     Authorization to Enter into Settlement Agreement.  The signatories hereto represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties hereto to the terms and conditions hereof.

54.     Opportunity to Consult with Counsel.  The Parties are represented by competent counsel, and have had an opportunity to consult with counsel prior to the execution of this Settlement Agreement.

55.     Binding on Successors and Assigns.  This Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.  The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

56.     California Law Governs.  All terms of this Agreement and the exhibits hereto shall be governed by and interpreted according to the laws of the State of California.

57.     Counterparts.  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts.

58.     <u>This Settlement Is Fair, Adequate, and Reasonable</u>.   The Parties believe this Settlement is a fair, adequate and reasonable Settlement of the Released Claims and have arrived at this Settlement after arms-length negotiations, taking into account all relevant factors, present and potential.

59.     <u>Resolution of Disputes</u>.   Any disputes arising from or in connection with this Agreement, including, without limitation, the interpretation, implementation, and enforcement of the terms of this Agreement, shall be resolved by arbitration as set forth in Paragraph 59(a), except that any alleged violations of the Charter Flight Policy (attached as Exhibit 2), Senior  Women's National Team Event Venue Selection Policy (attached as Exhibit 3), Senior National Team Professional Support Policy (attached as Exhibit 4), or Senior Women's National Team Hotel Accommodations Policy (attached as Exhibit 5), and the obligations of these policies, shall exclusively be enforceable and subject to binding arbitration under the USWNT CBA's grievance and arbitration procedure (Article 23 of the USWNT CBA).

a.     The arbitration described in Paragraph 59 shall be conducted before a neutral arbitrator selected by the Parties.  The arbitration shall be commenced and held in Chicago, Illinois.  Any issues concerning the extent to which any dispute is subject to arbitration, and the applicability, interpretation, or enforceability of this Agreement shall be resolved by the arbitrator.  The proceedings of the arbitration shall be treated as confidential by the Parties but the decisions of the arbitrator shall be disseminated to the Class Members who will be instructed to maintain confidentiality and the outcome, but not the accompanying opinion, shall be publicly available.  The result of the arbitration shall be binding on the Parties and judgment on the arbitrator's award may be entered in any court having jurisdiction.

b.     Each of the Parties agrees that in the event of a dispute regarding compliance with this Agreement, they will agree to attempt to resolve informally any differences regarding compliance with the terms of the Settlement before bringing such matters to an arbitration for resolution.   Class Counsel representing Plaintiffs in the

arbitration shall be eligible to apply for an award by the Court of reasonable attorneys' fees and costs from USSF to the extent that such an award is found to be available under Title VII, but USSF reserves the right to oppose such a fee application.

60.    <u>Invalidity of Any Provision</u>.  Before declaring any provision of this Agreement invalid, the Court shall first attempt to construe the provisions valid to the fullest extent possible so as to define all provisions of this Agreement valid and enforceable.

61.    <u>Right to Seek Fee Award</u>.  Nothing in this Agreement shall preclude Class Counsel from seeking a fee award for work and disbursements attributable to the Released Claims being settled through this Agreement in the event that the Plaintiffs ultimately prevail, after an appeal, in their pay discrimination claims under the Equal Pay Act and/or Title VII, or in the event that their pay discrimination claims under the Equal Pay Act and/or Title VII result in a settlement fund being provided by USSF to Plaintiffs and the Class Members they represent to compensate them for past damages.

[SIGNATURE PAGE FOLLOWS]

Dated: December 1, 2020          WINSTON & STRAWN LLP

By: _____
      Jeffrey L. Kessler
      Cardelle B. Spangler
      Diana Hughes Leiden
      David G. Feher
      Jeanifer E. Parsigian

Attorneys for Plaintiffs and Class Members

Dated: December 1, 2020          LATHAM & WATKINS LLP

By: _____
      Jamie L. Wine
      Michele D. Johnson

Attorneys for USSF

# EXHIBIT 1 TO SETTLEMENT AGREEMENT

## <u>NOTICE OF CLASS ACTION SETTLEMENT</u>

The United States District Court for the Central District of California has authorized this notice in the matter of *Alex Morgan, et. al. v. United States Soccer Federation, Inc.*, Case No. 2:19-cv-01717-RGK-AGR.  This is not a solicitation from a lawyer.

**IF YOU ARE A CURRENT OR FORMER MEMBER OF THE U.S. SENIOR WOMEN'S NATIONAL SOCCER TEAM, THIS CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS.**

**PLEASE READ THIS NOTICE CAREFULLY.**

*Why Should You Read this Notice?*

A proposed settlement (the "Settlement") has been reached in the class action lawsuit *Alex Morgan, et al. v. United States Soccer Federation, Inc.*, Case No. 2:19-cv-01717-RGK-AGR (the "Action").  The purpose of this Notice of Class Action Settlement ("Notice") is to inform you of your rights and options in connection with the proposed Settlement.  The proposed Settlement will resolve certain of the claims against defendant United States Soccer Federation, Inc. ("USSF"). The settlement agreement is included along with this Notice.

**AS A CLASS MEMBER, YOU ARE ELIGIBLE TO RECEIVE PROGRAMMATIC RELIEF UNDER THE SETTLEMENT AND WILL BE BOUND BY THE RELEASE OF CLAIMS DESCRIBED IN THIS NOTICE AND THE SETTLEMENT AGREEMENT FILED WITH THE COURT.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Do Nothing and Receive the Benefits Conferred Upon the Class by the Settlement** | If you do nothing, you will be entitled to the benefits conferred upon the class by the Settlement.  You will also give up the right to pursue certain claims in a separate legal action against USSF. |
| **Object to the Settlement** | To object to the Settlement, you must submit a written statement explaining why you object to the Settlement. You may then explain your objections in person at the Settlement hearing. |

*What is this case about?*

Alex Morgan, Megan Rapinoe, Carli Lloyd, Becky Sauerbrunn, and twenty-four other members of the United States Senior Women's National Soccer Team ("WNT") (called the "Plaintiffs" in

this notice) filed a lawsuit against USSF on March 8, 2019.  Plaintiffs alleged that USSF discriminated against them on the basis of their sex by paying them less than their counterparts on the United States Senior Men's National Soccer Team ("MNT") in violation of the Equal Pay Act ("EPA") and Title VII of the Civil Rights Act ("Title VII").  Plaintiffs also alleged that USSF violated Title VII's prohibition on sex discrimination by denying them working conditions equal to players on the MNT including, but not limited to, equal playing, training, and travel conditions; equal promotion of their games; and equal support and development for their games.

USSF denies that it did anything wrong and maintains that it has not discriminated against Plaintiffs on the basis of sex in pay or working conditions.

On May 1, 2020, the Court ruled in favor of USSF on Plaintiffs' Title VII and EPA pay discrimination claims and on Plaintiffs' claim of unequal treatment for field surfaces under Title VII.  Plaintiffs' working conditions claims for unequal hotel accommodations, charter flights, and support personnel were not dismissed and are still set to be decided at a jury trial.

The parties disagree on the probable outcome of the case.  The Settlement is a compromise reached after arm's-length negotiations between Plaintiffs and USSF through their attorneys.

### *Who is affected by the proposed Settlement?*

On November 8, 2019, the Court certified an injunctive relief class and a damages class seeking relief under Title VII for discrimination on the basis of sex in pay and working conditions as follows:

> **Injunctive Relief Class**: All WNT players on the team at the date of the final judgment, or the date of the resolution of any appeals therefrom, whichever is later.

> **Damages Class**:  All WNT players who were members of the WNT at any time from June 11, 2015 through the date of class certification on November 8, 2019.

### *Who are the attorneys representing the parties?*

The attorneys in this action are:

| **Class Counsel:** | **USSF's Counsel:** |
|---|---|
| Jeffrey L. Kessler | Jamie L. Wine |
| WINSTON & STRAWN LLP | LATHAM & WATKINS LLP |
| 200 Park Avenue | 885 Third Avenue |
| New York, New York 10166 | New York, NY 10022 |
| | |
| Cardelle Spangler | Michele D. Johnson |
| WINSTON & STRAWN LLP | LATHAM & WATKINS LLP |
| 35 West Wacker Drive | 650 Town Center Drive, 20th Floor |
| Chicago, Illinois 60601 | Costa Mesa, CA 92626 |

As a class member, you are being represented at no cost by class counsel.

***What are the Settlement Terms?***

If the Court grants final approval of the Settlement, USSF will adopt and enforce four policies relating to the following aspects of the disputed working conditions claims: charter flights, venue selection, professional support, and hotel accommodations.  These four policies will remain in effect for four years and will thus apply to current and future WNT players.  **The agreement and its policies will apply equally to WNT players.**

> Charter Flight Policy.  USSF will provide an equal number of charter flights to the WNT and the MNT over the relevant period.

> Venue Selection Policy.  USSF will follow specific guidelines in selecting venues to ensure WNT matches are played in top-tier venues.  It also requires that WNT matches be played on grass in almost all circumstances.

> Professional Support Policy.  USSF will employ between 18 and 21 dedicated operational and technical support service professionals for each national team.  USSF's Chief Medical Officer will also provide medical support for both teams.  The MNT and WNT will also each have a physician team, consisting of a lead coordinating physician and a pool of two to five additional physicians.

> Hotel Accommodations Policy.  USSF will maintain comparable budgets for the WNT and the MNT for each fiscal year for hotel accommodations on a per-night, per-room basis.  USSF will follow specific guidelines in selecting hotel accommodations to ensure that the WNT stays in top-quality hotels.

Each policy also includes a reporting requirement so that the WNT can monitor USSF's compliance.  The policies also allow the WNT to enforce USSF's obligations under the governing CBA's grievance and arbitration procedure.  As additional protection for the WNT, the parties agreed that if USSF and the MNT agree to a policy on any of these four topics that differs from the applicable policy agreed to here, the class can opt to accept these new policies over the existing ones.

You can read the charter flight, professional support, and hotel accommodations policies, which are attached as exhibits to the Settlement Agreement, in their entirety.  The parties have agreed that the details of the venue selection policy are confidential.  If you would like to learn more about the venue selection policy, please contact class counsel.

***What Claims Are Being Released by the Settlement?***

Upon the Settlement becoming final, each class member shall be deemed to have unconditionally released USSF and certain other parties from all released claims.  The "released claims" are any and all claims, known or unknown, that were asserted in the Complaint and/or that could have

been asserted in the Complaint based on the facts and/or allegations alleged in the Complaint that USSF discriminated against Plaintiffs and the class members on the basis of their sex by denying them working conditions equal to those of the players on the MNT, including, but not limited to, equal playing, training, and travel conditions, and equal medical and training support personnel. The released claims include any such working conditions claims under state, federal, or local law, including, but not limited to, claims under Title VII.

**The Released Claims do not include Count I of the Complaint, in which Plaintiffs claim a violation of the Equal Pay Act; or that portion of Count II of the Complaint, in which Plaintiffs claim a violation of Title VII, that seeks redress for pay discrimination.  The Released Claims also do not include or cover any actions or omissions occurring after the Settlement becomes final.**

*What are my rights as a class member?*

As a class member, you may (A) do nothing and receive the benefits conferred to the class by the Settlement; or (B) object to the Settlement.

**Option A.  Receive the Benefits Conferred to the Class by the Settlement.**  If you wish to receive the benefits conferred to the class by the Settlement, you need not take any action.  If the Court grants final approval of the Settlement, you automatically will be covered by the four policies enumerated in the Settlement and will be bound by the release of the released claims as described above.

**Option B.  Object to the Settlement.**  If you believe the proposed Settlement is not fair, reasonable, or adequate in any way, you may object to it.  To object, you must file a written brief or statement of objection ("Notice of Objection") with the Clerk of the Court, United States District Court for the Central District of California, 255 East Temple Street, Los Angeles, CA 90012, and serve the Notice of Objection on class counsel and USSF's counsel at the following addresses:

Class Counsel
Cardelle Spangler
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601

USSF Counsel
Jamie L. Wine
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022

The Notice of Objection must be signed by you and state: (i) your full name, address, and telephone number; (ii) the dates of your employment at USSF; (iii) any Employee ID number; (iv) the basis for the objection; and (v) whether you intend to appear at the final approval hearing.  The Notice of Objection must be filed on or before [**30 days from mailing of notice**] and mailed to class

counsel and counsel for USSF at the addresses listed above.  You can hire an attorney at your own expense to represent you in your objection or you may object yourself without an attorney.  Class counsel, however, will not represent you for purposes of objecting to the Settlement.  **Even if you submit an objection, you will be bound by the terms of the Settlement, including the release of released claims as set forth above, unless the Settlement is not finally approved by the Court.**

If you fail to make objections in the manner specified above, you will be deemed to have waived any objections and shall be foreclosed from making any objections (whether by appeal or otherwise) to the Settlement.  Class members who do not submit a timely Notice of Objection will not have a right to appear at the final settlement approval hearing to have any objections heard by the Court.

### *What is the next step in the approval of the Settlement?*

The Court will hold a hearing regarding the fairness, reasonableness, and adequacy of the proposed Settlement on **[INSERT DATE]** at **[INSERT TIME]** in Courtroom 850 of the Roybal Federal Building and Courthouse, located at 255 East Temple Street, Los Angeles, California, 90012 before the Hon. R Gary Klausner.  The final approval hearing may be postponed without further notice to class members.  You are not required to attend the hearing to receive the benefits conferred to class members by the Settlement.

### *How Can I Get Additional Information?*

Please review the Settlement, which is included along with this notice.  If you have questions, you may contact class counsel at the address listed above.


**PLEASE DO NOT CONTACT THE COURT DIRECTLY REGARDING THIS NOTICE OR THE SETTLEMENT.**

# EXHIBIT 2 TO SETTLEMENT AGREEMENT



**Charter Flight Policy**

---
**Intent:**
---

U.S. Soccer will provide an equal number of charter flights to the two U.S. Senior National Teams (USWNT and USMNT).

---
**Policy:**
---

**I.     Individuals:**

Charter flights for individuals are not approved within U.S. Soccer's travel policy and are to be considered only under exceptional circumstances, such as when security risks or the absence of commercial flights make commercial travel infeasible.   However, charters may be used after a match to send a critical mass of overseas-based players immediately from the match location to a European hub (London, Frankfurt, etc.) if (i) doing so would avoid the need for the players to wait an extra day for the next available overnight flight to Europe and (ii) the players' respective clubs pay for their player's seat on a pro-rata basis.

Individuals may fly on charter flights provided by third parties solely to the extent consistent with the Policy Concerning Business Ethics and The Prevention of Conflicts of Interest and provided advance approval is obtained from the Chief Executive Officer.

**II.     Team Travel:**

U.S. Soccer will provide an equal number of charter flights to both Senior National Teams for team travel over the course of the period when this policy is in effect, regardless of whether those flights are used to travel to or during Official Competitions, tournaments, friendlies, camps, or other events.  The minimum number of charter flights provided to each senior national team shall equal the number of Official Competitions (as defined by FIFA statute) occurring in the United States or within Concacaf that the team with more such competitions has over the course of the policy, except that the minimum number of charter flights shall not include Official Competitions where Concacaf provides the transportation.  In determining the number of charter flights flown when this policy is in effect, U.S. Soccer will count the charter flights flown by the Senior National Teams in calendar year 2020.  For purposes of this policy, the number of charter flights is defined as the individual number of charter flights flown, not the number of matches, tournaments, or other events to which the team travels.

Charter flights for youth or extended national teams are not approved within U.S. Soccer's travel policy and are to be considered only under exceptional circumstances, such as when security risks or the absence of commercial flights make commercial travel imprudent or infeasible.

**Procedure:**

I.      **Individuals:**

Charter air travel for individuals requires the prior approval of the Sporting Director, Senior National Team General Manager, Chief Financial Officer, and the Chief Executive Officer.   If a charter flight is approved, the Chief Financial Officer will track the additional amount of funds spent on a charter versus a business class commercial flight and report the difference to the Board of Directors or its designated committee on a quarterly basis.   When charters are used to send a critical mass of overseas-based players immediately from the match location to a European hub, U.S. Soccer will obtain prior approval from each player's club and invoice the club for the player's pro-rata share of the cost.

II.     **Team Travel:**

Charters for Team travel do not require pre-approval.

USWNT players may enforce the obligations of this policy according to the grievance and arbitration procedure set forth in their CBA.

This Policy will be in effect for four years.  U.S. Soccer may amend the Policy upon the consent of the exclusive collective bargaining representative for each Senior National Team and pursuant to the terms of any contractual obligations.

**Reporting:**

U.S. Soccer will provide the exclusive collective bargaining representative for the USWNT the information set forth in the Appendix within ten business days of the conclusion of each senior national team trip. U.S. Soccer may either complete the form in its entirety or provide the information in an alternative fashion (e.g., by providing press releases containing some or all of the required information), so long as all required information is provided by the reporting deadline.

# EXHIBIT 3 TO SETTLEMENT AGREEMENT

# REDACTED VERSION OF DOCUMENT

# PROPOSED TO BE FILED UNDER SEAL

# EXHIBIT 4 TO SETTLEMENT AGREEMENT



**Senior National Team Professional Support Policy**

---

**Intent:**

---

U.S. Soccer seeks to provide equal resources to the two U.S. Senior National Teams (USWNT and USMNT) with respect to specialized professional support services, while maintaining needed flexibility to fill those positions with the specific types of support specialists best suited to the unique needs of each team and the unique environments that each team's General Manager and Head Coach desires to maintain.

---

**Policy:**

---

As used in this Policy, the term "Professional Positions" refers to individuals employed as full-time or part-time employees of U.S. Soccer on behalf of one of the Senior National Teams to provide operational or technical support, as well as independent contractors operating under contract on behalf of one of the Senior National Teams to provide operational or technical support. The term excludes individuals engaged by U.S. Soccer on a fee-for-service arrangement in which U.S. Soccer pays the professionals for services provided at camps and matches and in which no contract is in place. Individuals operating under such a fee-for-service structure are referred to herein as "Service-Fee Professionals."

Each Senior National Team will seek to employ up to twenty-one (21) but not less than eighteen (18) Professional Positions to provide support services to the respective team ("Permissible Headcount Range").

All decisions regarding which type of service providers to fill the available Professional Positions, the skill sets needed, the minimum qualifications needed, and which candidates to hire for the Professional Positions, shall be at the discretion of U.S. Soccer, in consultation with each team's Head Coach and in compliance with Collective Bargaining Agreement obligations. Determination of the employment status of each individual (i.e., full time, part time, or independent contractor) will be at U.S. Soccer's discretion; however, in choosing between full-time or part-time, a Professional Position will be employed on a full-time basis, provided that, for legitimate operational and/or technical reasons, U.S. Soccer may hire an individual on a part-time basis within the Permissible Headcount Range. It is understood that a decision regarding part-time status shall not be made for the purpose of generating financial savings. U.S. Soccer will develop and maintain minimum qualifications required for each Professional Position that will be the same regardless of whether the Professional Position is to be hired for the USWNT or the USMNT. These qualifications will be included in any job listings for a Professional Position.

In addition to the Permissible Headcount Range for Professional Positions, each Senior National Team may engage up to an additional eleven (11) service providers per day, excluding physicians, at a given camp or match as Service-Fee Professionals. Such determinations will be made at the discretion of U.S. Soccer. U.S. Soccer may add a modest number of additional Service-Fee Professionals for World Cup

matches only.  U.S. Soccer will endeavor to draw from a consistent pool of Service-Fee Professionals when reasonably possible to provide consistency in support.

With respect to physicians, the Chief Medical Officer ("CMO") will provide medical support to both Senior National Teams.  In addition to the CMO, each Senior National Team will seek to maintain a National Team Physician Team, comprised of a coordinating physician and a pool of two to five additional physicians ("Pool Physicians").  The coordinating physician will be included in each Senior National Team's allotment of Professional Positions, but the Pool Physicians will not be considered as either Professional Positions or Service-Fee Professionals.  One physician (either the coordinating physician or a Pool Physician) will be present for each day of training and each match.  A second physician may be available in certain circumstances, such as for World Cup matches, to be determined by the CMO and the Senior National Team's coordinating physician.

Should a Senior National Team's General Manager determine that it is in the best interests of his or her team to maintain fewer or more Professional Positions and/or Service-Fee Professionals than outlined in this Policy, such a determination must be approved by the Sporting Director and Chief Executive Officer.  If the change is approved, then the General Manager for the other Senior National Team will be provided the opportunity to make the same adjustment for his or her team.

If financial considerations require a reduction in Professional Positions below the Permissible Range, an equal reduction will be made to the Professional Positions supporting both Senior National Teams.

Nothing in this policy affects individuals providing services for U.S. Soccer unrelated to the technical or operational needs of a Senior National Team, even if such services require travel to Senior National Teams camps or matches (e.g., U.S. Soccer employees attending a match to conduct fan surveys).

USWNT players may enforce the obligations of this policy according to the grievance and arbitration procedure set forth in their CBA.

This Policy will be in effect for four years.  U.S. Soccer may amend the Policy upon the consent of the exclusive collective bargaining representative for each Senior National Team and pursuant to the terms of any contractual obligation.

**Reporting:**

U.S. Soccer will provide the exclusive collective bargaining representative for the USWNT the information set forth in the Appendix within ten business days of the conclusion of each senior national team trip.  U.S. Soccer may either complete the form in its entirety or provide the information in an alternative fashion (e.g., by providing press releases containing some or all of the required information), so long as all required information is provided by the reporting deadline.

# EXHIBIT 5 TO SETTLEMENT AGREEMENT

# REDACTED VERSION OF DOCUMENT

# PROPOSED TO BE FILED UNDER SEAL

**SENIOR NATIONAL TEAM CAMP REPORT**

| Camp dates: | FIFA WINDOW?  Yes ☐  No ☐ Partially ☐ |
|---|---|

| Training camp dates: | |
|---|---|
| Location (City, State [if US], Country): | Training Venue: |
| Hotel Name:<br>USSF wholly organized and paid for?<br>Yes ☐  No ☐ | Means of travel to venue / location:<br>Team Charter ☐ Team Commercial Flight ☐<br>Non-air travel ☐ Individual travel ☐ |

| Dates in Match #1 location: | Opponent: |
|---|---|
| Location (City, State [if US], Country): | Type (WC, friendly, etc.):<br>USSF controlled?  Yes ☐  No ☐ |
| Venue: | Natural grass ☐  Grass Overlay ☐  Turf ☐ |
| Hotel Name:<br>USSF wholly organized and paid for?<br>Yes ☐  No ☐ | Means of travel to location/ venue:<br>Team Charter ☐ Team Commercial Flight ☐<br>Non-air travel ☐ Individual travel ☐ |

| Dates in Match #2 location: | Opponent: |
|---|---|
| Location (City, State [if US], Country): | Type (WC, friendly, etc.):<br>USSF controlled?  Yes ☐  No ☐ |
| Venue: | Natural grass ☐  Grass Overlay ☐  Turf ☐ |
| Hotel Name:<br>USSF wholly organized and paid for?<br>Yes ☐  No ☐ | Means of travel to location / venue:<br>Team Charter ☐ Team Commercial Flight ☐<br>Non-air travel ☐ Individual travel ☐ |

| Dates in Match #3 location: | Opponent: |
|---|---|
| Location (City, State [if US], Country): | Type (WC, friendly, etc.):<br>USSF controlled?  Yes ☐  No ☐ |
| Venue: | Natural grass ☐  Grass Overlay ☐  Turf ☐ |
| Hotel Name:<br>USSF wholly organized and paid for?<br>Yes ☐  No ☐ | Means of travel to location / venue:<br>Team Charter ☐ Team Commercial Flight ☐<br>Non-air travel ☐ Individual travel ☐ |

(add additional boxes if there are additional matches)

## ROSTER

1.
2.
3.
4.
5.
6.
7.
8.
9.
10.
11.
12.
13.
14.
15.
16.
17.
18.
19.
20.
21.
22.
23.
24.
25.
26.
27.
28.
29.

**USSF DELEGATION LIST**

|     | NAME | TITLE/POSITION | EMPLOYMENT STATUS * | DATES IN CAMP |
|-----|------|----------------|---------------------|---------------|
| 1.  |      |                |                     |               |
| 2.  |      |                |                     |               |
| 3.  |      |                |                     |               |
| 4.  |      |                |                     |               |
| 5.  |      |                |                     |               |
| 6.  |      |                |                     |               |
| 7.  |      |                |                     |               |
| 8.  |      |                |                     |               |
| 9.  |      |                |                     |               |
| 10. |      |                |                     |               |
| 11. |      |                |                     |               |
| 12. |      |                |                     |               |
| 13. |      |                |                     |               |
| 14. |      |                |                     |               |
| 15. |      |                |                     |               |
| 16. |      |                |                     |               |
| 17. |      |                |                     |               |
| 18. |      |                |                     |               |
| 19. |      |                |                     |               |
| 20. |      |                |                     |               |
| 21. |      |                |                     |               |
| 22. |      |                |                     |               |
| 23. |      |                |                     |               |
| 24. |      |                |                     |               |
| 25. |      |                |                     |               |
| 26. |      |                |                     |               |
| 27. |      |                |                     |               |
| 28. |      |                |                     |               |
| 29. |      |                |                     |               |
| 30. |      |                |                     |               |

* Employment status = 1. Full-time, shared across WNT and MNT; 2. Full-time with WNT or MNT; 3. Part-time; 4. Independent Contractor, or 5. Service-Fee.

If any hotel at which the USWNT stayed is not on the USWNT list of preferred hotels, provide an explanation for why the hotel was used:

If the number of Professional Positions employed to support the USWNT is below 18, or the number of Professional Positions employed to support the USMNT is above 21, provide an explanation for why USSF employed that number of Professional Positions (note: individuals that provide operational or technical services for either the WNT or the MNT count as a Professional Position, even if he or she did not travel on this trip):

For USMNT trips, if the number of Service-Fee positions exceeded 11, provide an explanation for why USSF used that number of Service-Fee positions: