Jeffrey L. Kessler (*pro hac vice*)
jkessler@winston.com
David G. Feher (*pro hac vice*)
dfeher@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue, New York, NY 10166
Tel:   (212) 294-6700
Fax:   (212) 294-4700

Cardelle B. Spangler (*pro hac vice*)
cspangler@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive, Chicago, IL 60601
Tel:   (312) 558-5600
Fax:   (312) 558-5700

Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
Lev Tsukerman (SBN: 319184)
ltsukerman@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, Los Angeles, CA 90071
Tel:   (213) 615-1700
Fax:   (213) 615-1750

Jeanifer E. Parsigian (SBN: 289001)
jparsigian@winston.com
**WINSTON & STRAWN LLP**
101 California St., 35th Floor, San Francisco, CA 94111
Tel:   (491) 591-1000
Fax:   (491) 591-1400

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| ALEX MORGAN, et al., | Case No. **2:19-CV-01717-RGK-AGR** |
|---|---|
| Plaintiffs, | Assigned to: Judge R. Gary Klausner |
| v. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| UNITED STATES SOCCER FEDERATION, INC., | Date:  April 12, 2021 Time: 9:00 a.m. Place: Courtroom: 850 |
| Defendant. | |

**TO THE COURT, ALL PARTIES, AND ALL ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 12, 2021 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 850 of the above-titled court, located at 255 East Temple Street, Los Angeles, California 90012, plaintiffs Alex Morgan, et al. (collectively, "Plaintiffs") will and hereby do move the Court, under Federal Rule of Civil Procedure 23, for an order:

1. Granting final approval of the proposed Class Action Settlement and Release of Working Conditions Claims, attached as Exhibit A to the accompanying Declaration of Jeffrey L. Kessler; and

2. Entering final judgment on Plaintiffs' pay-discrimination claims under Title VII and the Equal Pay Act for which this Court entered summary judgment in USSF's favor.

This motion is based upon this notice of motion, the accompanying memorandum of points and authorities, the accompanying declaration of Jeffrey L. Kessler, the accompanying proposed order, the accompanying proposed judgment, the records and files in this action, and any other written or oral submissions that may be presented at or before the hearing on this motion.

Pursuant to Local Rule 7-3, Defendant consents to this motion.

Dated: March 15, 2021                    WINSTON & STRAWN LLP


                                         By:  */s/ Jeffrey L. Kessler*
                                              Jeffrey L. Kessler
                                              David G. Feher
                                              Cardelle B. Spangler
                                              Diana Hughes Leiden
                                              Jeanifer E. Parsigian
                                              Lev Tsukerman

                                              *Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION.............................................................................................1

II.  FACTUAL BACKGROUND..........................................................................2

    A.  Plaintiffs' EEOC charges led to this lawsuit.........................................2

    B.  The parties engaged in thorough, extensive fact and expert discovery.....2

    C.  The parties engaged in extensive motion practice...............................3

        1.  Plaintiffs' JPML motion and USSF's motion to transfer. .............3

        2.  The Court certified three classes.................................................4

        3.  The parties moved for summary judgment. ................................4

III.  PROPOSED SETTLEMENT...........................................................................5

    A.  The parties engaged in extensive settlement negotiations.....................5

    B.  The settlement terms...........................................................................6

    C.  The scope of the release.......................................................................7

    D.  USSF provided notice under the Class Action Fairness Act...................8

    E.  The Court preliminarily approved the class action settlement. ...............8

    F.  The Court conditionally granted Plaintiffs' unopposed motion for entry of final judgment under Rule 54(b)..........................................10

    G.  Class counsel provided notice of the settlement; no member objected. ...........................................................................................10

IV.  ARGUMENT...............................................................................................11

    A.  The parties complied with the Class Action Fairness Act...................11

    B.  Class members received adequate notice. ...........................................12

    C.  The proposed settlement is fair, reasonable, and adequate and should thus be approved.....................................................................13

        1.  Despite Plaintiffs' conviction about their case, the proposed settlement provides immediate benefits and avoids the inherent risk, expense, and complexity of continued litigation. ...............................................................................14

        2.  The settlement also avoids any risk of losing class status...........15

        3.  The settlement terms are fair.................................................15

        4.  The extensive discovery record and this action's procedural posture both favor settlement. .................................................17

        5.  The Rule 23(b) classes are represented by skilled and experienced counsel who view the settlement favorably. ...........18

        6.  The government received adequate notice under CAFA but did not object...................................................................................19

        7.  The class members reacted favorably to the settlement..............20

        8.  The parties arrived at the settlement through extensive arm's-length negotiations. ...................................................20

V.  CONCLUSION............................................................................................21

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Alikhan v. Goodrich Corp.*,
No. 17-CV-6756-JGB-RAOx, 2020 WL 4919382 (C.D. Cal. June 25,
2020) ...........................................................................................................*passim*

6

7

*Contreras v. Worldwide Flight Servs., Inc.*,
No. 18-CV-6036-PSG-SSx, 2020 WL 2083017 (C.D. Cal. Apr. 1,
2020) ...............................................................................................14, 18, 20

8

9

*Dawson v. Hitco Carbon Composites, Inc.*,
No. 16-CV-07337-PSG-FFMx, 2019 WL 7842550 (C.D. Cal. Nov.
25, 2019) ........................................................................................14, 16, 19

10

11

*Herrera v. Fed. Express Corp.*,
No. 17-CV-2137-MWF-SHKx, 2020 WL 2951122 (C.D. Cal. Mar.
31, 2020) ................................................................................ 14, 17, 18, 21

12

13

14

*Jordan v. Michael Page Int'l, Inc.*,
No. 18-CV-1328-JVS-DFMx, 2020 WL 4919732 (C.D. Cal. July 2,
2020) ........................................................................................... 16, 17

15

16

*In re Linkedin User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ...............................................................*passim*

17

18

*Miller v. Wise Co., Inc.*,
No. 17-CV-00616-JAK-PLAx, 2020 WL 1129863 (C.D. Cal. Feb. 11,
2020) ................................................................................................... 20

19

20

21

*Nunez v. BAE Systems San Diego Ship Repair, Inc.*,
292 F. Supp. 3d 1018 (S.D. Cal. 2017) ............................................................ 18

22

23

*Patton v. Church & Dwight Co.*,
No. 18-CV-903-MWF-KKx, 2019 WL 6357266 (C.D. Cal. Aug. 6,
2019) ...........................................................................................................*passim*

24

25

*Smith v. Experian Info. Sols., Inc.*,
No. 17-CV-00629-CJC-AFMx, 2020 WL 6689209 (C.D. Cal. Nov. 9,
2020) ...............................................................................................15, 16, 20

26

27

28

ii

*Spann v. J.C. Penney Corp.*,
    211 F. Supp. 3d 1244 (C.D. Cal. 2016).....................................................*passim*

*Vasquez v. Packaging Corp. of Am.*,
    No. 19-CV-1935-PSG-PLAx, 2020 WL 6785650 (C.D. Cal. Aug. 17,
    2020) ...............................................................................................11, 13, 15

*In re Wells Fargo Collateral Prot. Ins. Litig.*,
    No. 17-CV-02797-AGK-ESx, 2019 WL 6219875 (C.D. Cal. Nov. 4,
    2019) ............................................................................................................ 21

**Statutes**

28 U.S.C.
    § 1332(d)................................................................................ 8, 11, 12, 19
    § 1715(b)........................................................................................... 12

29 U.S.C.
    § 206(d) .......................................................................................*passim*
    § 216(b) ................................................................................................4

42 U.S.C. § 2000e, et seq. ...........................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 23........................................................................*passim*

## I.   INTRODUCTION

Plaintiffs Alex Morgan, Becky Sauerbrunn, Carli Lloyd, and Megan Rapinoe, on behalf of the Rule 23 classes, seek final approval of a settlement with defendant United States Soccer Federation, Inc. ("USSF") for only their working-conditions claims. The parties have agreed to settle Plaintiffs' claims that USSF has discriminated against players on the United States Senior Women's National Soccer Team ("WNT") in their working conditions, in violation of Title VII, including with respect to field surfaces, personnel support, and hotel and travel accommodations.  At its core, the settlement will achieve equality in working conditions between members of the WNT and the members of the United States Senior Men's National Soccer Team ("MNT") going forward.  It does not, however, resolve the classes' pay-discrimination claims under either Title VII or the Equal Pay Act, which the Court dismissed on summary judgment and remain subject to appeal once final judgment is entered.

This Court preliminarily approved the parties' settlement, finding that it "appears to be fair, adequate, and reasonable" for purposes of that motion. Dkt. 293 at 5.  In doing so, the Court also found that the "settlement was the result of informed, non-collusive negotiations" after "extensive discovery proceedings and motion practice" and led by counsel from "world-renowned law firms."  *Id.* at 4.  The Court also conditionally granted Plaintiffs' unopposed motion for entry of final judgment on their pay-discrimination claims, pending final approval of the settlement. *Id.* at 7.  Since that time, class counsel served the Rule 23(b) classes with the approved class notice and settlement agreement.  The window for objections has since closed, without any class members objecting to the settlement.

The Court should now finally approve the parties' settlement for the following reasons.  First, the settlement represents a fair and reasonable deal that avoids the inherent risk, expense, and delay of further litigation.  Second, and as the Court noted, the agreement is the product of non-collusive negotiations led by experienced counsel

1  after substantial discovery and motion practice.  And third, without any objections to

2  the proposed settlement, the class members have reacted favorably to the agreement.

3      For these reasons, as detailed below, the Court should approve the settlement and

4  enter judgment on Plaintiffs' pay-discrimination claims.

5  **II.    FACTUAL BACKGROUND[1]**

6      **A.    Plaintiffs' EEOC charges led to this lawsuit.**

7      Plaintiffs are professional soccer players and members of the WNT.  In April

8  2016, the four class representatives here, Alex Morgan, Megan Rapinoe, Becky

9  Sauerbrunn, and Carli Lloyd, each filed a charge of discrimination against their

10  employer, USSF, with the Equal Employment Opportunity Commission alleging sex-

11  based discrimination. Dkt. 2.  The EEOC investigated the charges and ultimately issued

12  four right to sue letters in February 2019. *Id.*

13      On March 8, 2019, Plaintiffs filed their collective and class action complaint

14  against USSF asserting claims under the Equal Pay Act and Title VII for sex-based

15  discrimination in pay and under Title VII for sex-based discrimination in working

16  conditions, including with respect to field surfaces, personnel support, and hotel and

17  travel accommodations. *See* Dkt. 1.  USSF answered, denying liability.  Dkt. 42.

18      **B.    The parties engaged in thorough, extensive fact and expert discovery.**

19      The class representatives and class counsel vigorously pursued their claims

20  through extensive discovery.  From August 2019 through February 2020, Plaintiffs

21  served five sets of document requests containing 67 separate requests for production

22  and 16 interrogatories.  Dkt. 276-1 ¶ 8.  The parties produced tens of thousands of

23  documents.  *Id.*  They engaged in extensive negotiations regarding the scope and

24  substance of discovery and raised many discovery disputes with the Court during the

25  process. *Id.*

---

26
27  [1] Plaintiffs' motion for preliminary approval contains much of the factual background
    relevant to this motion for final approval.  *See* Dkt. 276 at 2–9.  Plaintiffs state those
28  facts relevant to final approval of the settlement.

The two sides also deposed nearly twenty fact witnesses. Dkt. 276-1 ¶ 9. Plaintiffs deposed seven USSF current and former employees, including former USSF Presidents Carlos Cordeiro and Sunil Gulati and Managing Director of Administration Tom King. *Id.* Plaintiffs also deposed key third-party sponsors Visa and Coke. *Id.* Likewise, USSF deposed ten witnesses, including all four class representatives and Becca Roux, the WNT union's Executive Director. *Id.*

Each side also retained highly credentialed experts. Plaintiffs retained three experts: Dr. Finnie Cook, an economist, Dr. Caren Goldberg, a human resource expert and consultant, and Dr. Roger Noll, a well-published economist and economics professor at Stanford University. *Id.* ¶ 11. On the other side, USSF also retained three experts: Phillip Miscimarra, a partner at the national law firm Morgan, Lewis & Bockius LLP, Carlyn Irwin, a senior advisor with the economics consulting firm Cornerstone Research, and Dr. Justin McCrary, an economist and professor at Columbia University. *Id.* ¶ 12. Each expert was deposed. *Id.* ¶ 10.

In the end, thousands of hours were ultimately spent on discovery, as the parties carefully developed the record on their respective claims and defenses. *Id.* ¶ 7.

### C. The parties engaged in extensive motion practice.

#### 1. Plaintiffs' JPML motion and USSF's motion to transfer.

Concurrent with the filing of the complaint, Plaintiffs filed a motion with the Judicial Panel on Multidistrict Litigation to transfer *Solo v. United States Soccer Federation*, Case No. 3:18-CV-05215-JD, to this Court from the Northern District of California. *See* Dkt. 9. USSF contested the motion with the JPML and it was ultimately denied. Dkt. 23.

Following that denial, USSF moved this Court for an order transferring venue to the Northern District of California based on the first-to-file rule. *See* Dkt. 46. The Court denied USSF's motion and retained the case. *See* Dkt. 56.

### 2. The Court certified three classes.

In September 2019, Plaintiffs moved to certify two classes under Rule 23 and one collective class under the Equal Pay Act. *See* Dkt. 64.  This Court granted Plaintiffs' motion and certified both a Rule 23(b)(2) injunctive relief class and a Rule 23(b)(3) damages class as follows:

> **Injunctive Relief Class:** All WNT players on the team at the date of the final judgment, or the date of the resolution of any appeals therefrom, whichever is later.
>
> **Damages Class:** All WNT players who were members of the WNT at any time from [June 11, 2015] through the date of class certification.

Dkts. 98 at 14–15; Dkt. 123.  The Court also conditionally certified a collective class under 29 U.S.C. § 216(b) for "[a]ll WNT players who were members of the WNT at any time from March 8, 2016 through the present." Dkt. 98 at 15.

The injunctive relief class seeks equal working conditions on a going-forward basis, while the damages class seeks, among others, back pay and punitive damages for pay discrimination.  The collective class too seeks back pay, but only with respect to pay-discrimination claims.  In certifying these three classes, the Court appointed Alex Morgan, Megan Rapinoe, Carli Lloyd, and Becky Sauerbrunn as class representatives and Winston & Strawn LLP as class counsel. *Id.*

### 3. The parties moved for summary judgment.

The parties filed cross-summary judgment motions early last year. *See* Dkts. 170, 171.  Plaintiffs moved for summary judgment on their pay-discrimination claims under both the Equal Pay Act and Title VII, while USSF moved for summary judgment on all of Plaintiffs' claims. On May 1, 2020, the Court denied Plaintiffs' summary judgment motion and granted in part USSF's motion. Dkt. 250.  The Court ruled for USSF on Plaintiffs' Title VII and Equal Pay Act pay-discrimination claims and on Plaintiffs' claim of unequal treatment for field surfaces. *Id.* at 21, 28.  The Court denied USSF summary judgment on Plaintiffs' working-conditions claims relating to unequal

treatment with respect to hotel accommodations, charter flights, and support personnel. *Id.* at 31.

Following summary judgment, although the trial on these remaining claims was ultimately postponed multiple times due to the global COVID-19 pandemic, the parties negotiated, drafted, and exchanged various pretrial filings, including witness lists, exhibit lists, and jury instructions. *See* Dkt. 276-1 ¶ 13.

## III.   PROPOSED SETTLEMENT

### A.   The parties engaged in extensive settlement negotiations.

Plaintiffs and USSF have had settlement discussions dating as far back as the EEOC's investigation of Plaintiffs' charges in 2016 in an attempt to resolve this matter prior to litigation.   Dkt. 276-1 ¶ 14.   After this lawsuit was filed, they continued to engage in settlement negotiations, formally and informally, including in a formal two-day mediation in August 2019 with both class representatives and senior USSF officials present.   *Id.*   The parties engaged in further informal settlement communications through the close of discovery and pre-trial preparation.   *Id.*

Following the Court's summary judgment ruling and multiple delays of the trial date due to COVID-19, the parties' settlement negotiations intensified.   From July through November 2020, the parties continually discussed a potential settlement of Plaintiffs' working-conditions claims, with the class representatives again playing an important role during negotiations.   *Id.* ¶ 15.   After several more virtual meetings in which substantial progress was made, the parties engaged in extensive informal negotiation through regular calls and correspondence during which they exchanged multiple drafts of a proposed settlement agreement and policy documents. *Id.* ¶ 16. The negotiations were led by class counsel at Winston & Strawn LLP with decades of collective experience with sports class action and employment matters.   *See* Dkt. 64-1 ¶¶ 5–15 (describing class counsel's experience in similar matters).   USSF too has been led by two prominent national law firms during negotiations, currently Latham & Watkins LLP and previously Seyfarth Shaw LLP.

Plaintiffs sought equality with the MNT, particularly in the subject working conditions where Plaintiffs believe there have been differences in favor of the MNT between the two national teams. *See* Dkt. 276-1 ¶ 16. During these months of talks, the parties spent significant time and effort negotiating and finalizing an agreement that would provide for equality of treatment with respect to the working conditions. *See id.* In reaching this settlement, Plaintiffs and their counsel recognized the immediate benefit to settling the working-conditions claims while avoiding the inherent uncertainty, delay, expense, and risk of continued litigation. *Id.* Settling these claims also paves the way for this Court to enter a final judgment on Plaintiffs' pay-discrimination claims, which can then proceed to appeal. *See* Declaration of Jeffrey L. Kessler ("Kessler Decl."), Ex. A ¶ 37.

**B.   The settlement terms.**

The parties have agreed to settle all of Plaintiffs' Title VII working-conditions claims.[2] *See generally* Kessler Decl., Ex. A. The crux of the agreement is that USSF will implement revised charter flight, venue selection, professional support, and hotel accommodation policies intended to create equality with the MNT moving forward in exchange for a release of liability on Plaintiffs' working-conditions claims.[3] Kessler Decl., Ex. A ¶¶ 27–30, 35. These policies will remain in effect for four years and will apply to all current and future WNT players. *Id.* ¶¶ 27–30. Moreover, if USSF and the MNT agree to a policy on any of these four topics that differs from the applicable policy agreed to here, the WNT players can opt to accept these new policies over the existing ones so that equality of treatment will be provided. *Id.* ¶ 33. Neither the Rule 23(b) classes nor the class representatives will receive any monetary compensation from the settlement. *See generally* Kessler Decl., Ex. A.

---

[2] The settlement does not redress Plaintiffs' pay-discrimination claims. Pursuant to the settlement agreement, USSF has agreed to the prompt entry of a final judgment with respect to the Plaintiffs' pay-discrimination claims under both Title VII and the Equal Pay Act, so that they can be promptly appealed. *See* Kessler Decl., Ex. A ¶ 37.

[3] USSF denies that it had not provided equal working conditions.

A brief description of each working-conditions policy for the WNT follows.

Charter Flight Policy.  USSF will provide an equal number of charter flights to the WNT and the MNT over the relevant period.  Kessler Decl., Ex. A, Ex. 2.

Venue Selection Policy.  USSF will follow specific guidelines in selecting venues to ensure WNT matches are played in top-tier venues.  Kessler Decl., Ex. A, Ex. 3.  This policy also requires that WNT matches be played on grass in almost all circumstances.  Id.

Professional Support Policy.  USSF will employ between 18 and 21 dedicated operational and technical support personnel for each national team.  Kessler Decl., Ex. A, Ex. 4.  USSF's Chief Medical Officer will also provide medical support for both teams.  Id.  The MNT and WNT will also each have a physician team, consisting of a lead coordinating physician and a pool of two to five additional physicians.  Id.

Hotel Accommodations Policy.  USSF will maintain comparable budgets for the WNT and the MNT for each fiscal year for hotel accommodations on a per-night, per-room basis.  Kessler Decl., Ex. A, Ex. 5.  USSF will follow specific guidelines in selecting hotel accommodations to ensure that the WNT stays in top-quality hotels.  Id.

Each policy also includes a reporting requirement so that the WNT players can monitor USSF's compliance.  Kessler Decl., Ex. A, Exs. 2–5.  The policies also provide for the Rule 23(b) classes to enforce USSF's obligations under the governing CBA's grievance and arbitration procedure.  Kessler Decl., Ex. A, Exs. 2–5.

Finally, as noted above, the parties agreed that if USSF and the MNT agree to a policy on any of these four topics that differs from the applicable policy agreed to here, the WNT players can opt to accept these new policies over the existing ones so that equality of treatment will be provided.  Kessler Decl., Ex. A ¶ 33.

## C.    The scope of the release.

In exchange for USSF agreeing to implement these four policies, Plaintiffs agreed to release their working-conditions claims against USSF.  Kessler Decl., Ex. A ¶¶ 16, 35(a).  More specifically, Plaintiffs agreed to release USSF from "[a]ny and all

claims … that were asserted in the Complaint and/or that could have been asserted in the Complaint based on the facts and/or allegations alleged in the Complaint that USSF discriminated against Plaintiffs and the Class Members on the basis of their sex by denying them working conditions equal to those of the players on the USMNT, including, but not limited to, equal playing, training, and travel conditions, and equal medical and training support personnel." Kessler Decl., Ex. A ¶ 16.  Importantly though, the released claims *exclude* "Count I of the Complaint, in which Plaintiffs claim a violation of the Equal Pay Act" and "that portion of Count II of the Complaint, in which Plaintiffs claim a violation of Title VII, that seeks redress for pay discrimination." *Id.* ¶ 16(a).  Plaintiffs intend to appeal the Court's summary judgment ruling on these pay claims.  The released claims also exclude acts or omissions after the settlement's effective date. *Id.* ¶ 16(b).

### D.   USSF provided notice under the Class Action Fairness Act.

The parties' settlement requires that within ten business days of the agreement's filing with the Court, "USSF shall serve upon the Attorney General of the United States and the appropriate state official in the state where any Class Member resides, as determined by USSF's records, a notice of the proposed Settlement in compliance with the requirements of the Class Action Fairness Act of 2005." Kessler Decl., Ex. A ¶ 36(b).  USSF counsel has represented to class counsel that on December 7, 2020, it provided notice to the appropriate state and federal officials under the Class Action Fairness Act ("CAFA") as the settlement requires.  Kessler Decl. ¶ 5.

### E.   The Court preliminarily approved the class action settlement.

Plaintiffs filed an unopposed motion to preliminarily approve the parties' class action settlement in December 2020. Dkt. 276. On January 11, 2021, the Court granted that motion. Dkt. 293. Several findings weighed in favor of preliminary approval. The Court found that the "settlement was the result of informed, non-collusive negotiations since the parties settled after months of extensive negotiations in which attorneys represented all parties and were helped by a mediator." *Id.* at 4.  The Court also

recognized that the "parties participated in extensive discovery proceedings and motion practice before settling," and that the parties were represented by "world-renowned law firms [that] have experience in class-action litigation." Dkt. 293 at 4.

On the settlement itself, the Court found that "the class representatives have not received preferential treatment"; noted that class counsel will not receive a fee award as part of the settlement; and agreed that the settlement's release is "not overly broad because it is limited to the working-conditions claims alleged in the complaint." Dkt. 293 at 5.[4]

The Court also approved the proposed class notice and its delivery method, finding that the notice "sufficiently informs the class members of: (1) the nature of the litigation and the settlement class; (2) the terms of the Settlement Agreement; (3) deadlines to object to the Settlement; (4) the consequences of taking or foregoing the various options available to class members; and (5) the date, time, and place of the Final Approval hearing." *Id*. Under the settlement terms and the Court's ruling, class counsel would "both mail and email copies of the class notice to all members." *Id*.

The Court then set the following deadlines and schedule:

| Event | Deadline |
| --- | --- |
| USSF to send class list | 14 calendar days after preliminary approval |
| Class counsel to send class notice | 21 calendar days after receiving class list |
| Last day for class members to object | 30 calendar days after initial mailing of class notice |
| File motion for final approval | 14 calendar days after objection period expires |
| Final approval hearing | April 12, 2021 at 9:00 a.m. |

*Id*. at 6, 7.

---

[4] The settlement reserves the right of counsel to seek a fee award at a later point in the litigation if the equal-pay claims are resolved in Plaintiffs' favor either through judgment or settlement. See Kessler Decl., Ex. A ¶ 61.

9

**F.     The Court conditionally granted Plaintiffs' unopposed motion for entry of final judgment under Rule 54(b).**

Concurrent with their motion for preliminary approval, Plaintiffs moved for entry of final judgment on their pay-discrimination claims under Title VII and the Equal Pay Act for which this Court entered summary judgment in USSF's favor.  Dkt. 277.  The Court conditionally granted the motion but held off on entering final judgment until "the settlement is officially approved." Dkt. 293 at 6–7.

**G.     Class counsel provided notice of the settlement; no member objected.**

Pursuant to the Court's preliminary approval order and the parties' settlement, USSF provided the class list on January 26, 2021.  Kessler Decl. ¶ 6.  The class list included, among others, the full name, last known home address, and last known email address of 66 class members.  *Id.*  On January 29, 2021, class counsel provided notice to each class member via first class mail.  *Id.* ¶ 7.  Each mailing contained one copy of the approved class notice and one copy of the settlement agreement.[5]  Kessler Decl. ¶ 7, Ex. A, Ex. 1.  That same day, class counsel also emailed the notice and agreement to 65 class members for whom USSF provided an email address with its class list; for one class member, Rachel Buehler, the class list noted her email address as "not available." Kessler Decl. ¶ 8.  Electronic notice to four class members was initially returned as undeliverable, but between January 29 and February 1, class counsel obtained alternate email addresses for these four members plus Ms. Buehler and emailed both the class notice and settlement agreement to these five individuals.  *Id.*  No other service emails were returned as undeliverable.  *Id.*  Only two mailings, to class members Jaelene Hinkle and Hope Solo, were returned as undeliverable initially—although there were no delivery issues with their service emails.  *Id.* ¶ 9.  Class counsel contacted USSF

---

[5] Pursuant to the approved class notice (Dkt. 274-2, Ex. 1 at 3), the settlement agreement served on each class member omitted the venue selection policy but advised class members to contact class counsel for additional details on this policy.  Kessler Decl., Ex. A, Ex. 1 at 3.  The other three policies were provided in full.  *Id.*

soon after to obtain an alternate mailing address for Ms. Hinkle, but USSF counsel advised that it was unable to locate another address for her. Kessler Decl. ¶ 9. Class counsel obtained an alternate service address for Ms. Solo and re-mailed the class notice and settlement to that address. *Id.* Together, notice was provided either by email or by mail to each of the 66 class members—with no delivery issues for an overwhelming majority of class members.

The class members' deadline to object to the settlement was March 1, 2021 (*i.e.*, 30 calendar days, rounded to the next business day, from the January 29, 2021 mailing date). Dkt. 293 at 6. To date, no class member has filed or submitted an objection to the settlement agreement. *See* Kessler Decl. ¶ 10.

## IV.   ARGUMENT

Courts engage in a three-step inquiry in approving class action settlements. *Alikhan v. Goodrich Corp.*, No. 17-CV-6756-JGB-RAOx, 2020 WL 4919382, at *4 (C.D. Cal. June 25, 2020). First, they assess "whether the parties have met notice requirements under the Class Action Fairness Act." *Id.* Second, they determine "whether the notice requirements of Federal Rule 23(c)(2)(B) have been satisfied." *Id.* And third, they decide whether the proposed class action settlements are fair, reasonable, and adequate. *Id.*; Fed. R. Civ. P. 23(e)(2). "In determining whether a proposed settlement should be approved, the Ninth Circuit has a 'strong judicial policy that favors settlement, particularly where complex class action litigation is concerned.'" *Vasquez v. Packaging Corp. of Am.*, No. 19-CV-1935-PSG-PLAx, 2020 WL 6785650, at *3 (C.D. Cal. Aug. 17, 2020) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

### A.   The parties complied with the Class Action Fairness Act.

CAFA requires that "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal

official." 28 U.S.C. § 1715(b).  The proposed settlement requires the same: "[w]ithin ten (10) business days following the filing of this Agreement with the Court, USSF shall serve upon the Attorney General of the United States and the appropriate state official in the state where any Class Member resides, as determined by USSF's records, a notice of the proposed Settlement in compliance with the requirements of the Class Action Fairness Act of 2005." Kessler Decl., Ex. A ¶ 36(b).  And a final approval order cannot issue until 90 days after the appropriate officials are served with this notice.  *See Alikhan*, 2020 WL 4919382, at *5 (citing 28 U.S.C. § 1715(d)).

Here, USSF counsel represented that it provided notice of the proposed settlement to the appropriate state and federal officials on December 7, 2020, as required by CAFA.  *See* Kessler Decl. ¶ 5. And the Court's final approval hearing will take place more than ninety days from that service date.  This requirement is thus met.  *See, e.g.*, *Alikhan*, 2020 WL 4919382, at *5 (CAFA notice requirements met where defense counsel represented that it "served notices in accordance with CAFA to the Attorney General of the United Sates and the Office of the Attorney General in all States where class members reside").

## B.    Class members received adequate notice.

"Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), and upon settlement of a certified class, '[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal.'" *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1254 (C.D. Cal. 2016) (citing Rule 23(e)(1)).   This Court approved the parties' agreed-upon class notice and delivery method.  Dkt. 293 at 5.  The approved notice advised class members on "(1) the nature of the litigation and the settlement class; (2) the terms of the Settlement Agreement; (3) deadlines to object to the Settlement; (4) the consequences of taking or foregoing the various options available to class members; and (5) the date, time, and place of the Final Approval hearing." *Id.*

Since then, class counsel served the settlement notice and the settlement agreement on all 66 class members by both first-class mail and by email. Although a small subset of service emails was returned as undeliverable, class counsel quickly identified alternate email addresses for those class members and re-served notice accordingly. And only one mailing was ultimately deemed undeliverable despite class counsel's efforts to identify an alternate address for that class member, Ms. Hinkle. Still, there were no delivery issues with the email notice to Ms. Hinkle. Together then, the class members received fair and adequate class notice of the settlement. *See, e.g.*, *Alikhan*, 2020 WL 4919382, at \*6 (notice adequate where administrator "completed notice in accordance with the procedures approved by the Court"); *Spann*, 211 F. Supp. 3d at 1255 (finding that "the class notice and the notice process fairly and adequately informed class members of the nature of the action, the terms of the proposed settlement," and the class members right to object or exclude themselves).

**C.    The proposed settlement is fair, reasonable, and adequate and should thus be approved.**

Courts consider a number of non-inclusive factors in deciding whether a settlement is fair, reasonable, and adequate, including: "(1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Patton v. Church & Dwight Co.*, No. 18-CV-903-MWF-KKx, 2019 WL 6357266, at \*3 (C.D. Cal. Aug. 6, 2019) (citation omitted). Courts balance and weigh these factors depending on the specific facts and circumstances of each case. *Alikhan*, 2020 WL 4919382, at \*5; *Vasquez*, 2020 WL 6785650, at \*12 (explaining that these factors are consistent with and still apply in light of recent amendments to Rule 23(e)(2)). "[T]he involvement of experienced class action counsel and the fact that the settlement agreement was reached

13

in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Patton*, 2019 WL 6357266, at *3 (discussing that a settlement cannot be the result of collusion among the parties).

1.   **Despite Plaintiffs' conviction about their case, the proposed settlement provides immediate benefits and avoids the inherent risk, expense, and complexity of continued litigation.**

In evaluating the strength of the case, Courts assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." *Spann*, 211 F. Supp. 3d at 1255.  "An important consideration in judging the reasonableness of a settlement is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Contreras v. Worldwide Flight Servs., Inc.*, No. 18-CV-6036-PSG-SSx, 2020 WL 2083017, at *3 (C.D. Cal. Apr. 1, 2020) (citation omitted).  "This factor is generally satisfied when plaintiffs must overcome barriers to make their case." *Dawson v. Hitco Carbon Composites, Inc.*, No. 16-CV-07337-PSG-FFMx, 2019 WL 7842550, at *3 (C.D. Cal. Nov. 25, 2019).  And in assessing risk and expense, courts consider the time and cost required by continued litigation. *Alikhan*, 2020 WL 4919382, at *6.

These related factors favor settlement for the same reasons.  While Plaintiffs are confident in the merits of their case—particularly after surviving summary judgment—the proposed settlement achieves precisely the equality of treatment that they sought in bringing their working-conditions claims and provides relief now as opposed to after a jury trial which would not be held until after COVID-19 restrictions are lifted.  Continued litigation would thus only add uncertainty to what would be certain and immediate relief that Plaintiffs envisioned when they first sued.  *See Herrera v. Fed. Express Corp.*, No. 17-CV-2137-MWF-SHKx, 2020 WL 2951122, at *4 (C.D. Cal. Mar. 31, 2020) (finding that "substantial recovery now" coupled with the uncertainties of litigation made both factors weigh in favor of final approval); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Generally, unless the settlement

1   is clearly inadequate, its acceptance and approval are preferable to lengthy and

2   expensive litigation with uncertain results." (citation omitted)).   Settlement now,

3   however, overcomes these uncertainties and the possibility of a loss at trial or on appeal.

4   *Patton*, 2019 WL 6357266, at *4 (continued litigation risks favored final approval

5   despite plaintiff's belief in the strength of her case).

6        And by doing so, both the Court and the parties save the significant time and

7   resources that come with a jury trial—favoring final approval even more.   *In re*

8   *Linkedin*, 309 F.R.D. at 587 ("Because continued litigation would be risky, costly,

9   complex, and long, this factor favors settlement."); *Alikhan*, 2020 WL 4919382, at *6

10  ("Without the Settlement Agreement, the parties would be required to litigate the merits

11  of the case—a process which the Court acknowledges is long, complex, and expensive.

12  Settlement of this matter will conserve the resources of this Court and the parties, thus

13  weighing heavily in favor of approval."); *Vasquez*, 2020 WL 6785650, at *3 ("Because

14  the Settlement Agreement eliminates the delay, costs, and uncertainty that further

15  litigation would create, this factor supports approval.").

16       At bottom, the agreement here "presents a fair compromise in light of the risks

17  and expense of continued litigation" and should thus be approved.   *Smith v. Experian*

18  *Info. Sols., Inc.*, No. 17-CV-00629-CJC-AFMx, 2020 WL 6689209, at *3 (C.D. Cal.

19  Nov. 9, 2020).

20            **2.      The settlement also avoids any risk of losing class status.**

21       While Plaintiffs believe the risk of de-certification is minimal, that risk supports

22  final approval and a resolution of Plaintiffs' working-conditions claims.   *See Spann*,

23  211 F. Supp. 3d at 1255 (despite court's certification prior to settlement, "risk that the

24  court could de-certify the class … weigh[ed] in favor of granting final approval").

25            **3.      The settlement terms are fair.**

26       When assessing this factor, courts consider "the complete package taken as a

27  whole, rather than the individual component parts." *Patton*, 2019 WL 6357266, at *4

28  (citation omitted).   Courts consider the settlement terms "in conjunction with 'factors

1   such as the risk of losing at trial, the expense of litigating the case, and the expected

2   delay in recovery (often measured in years).'" *Jordan v. Michael Page Int'l, Inc.*, No.

3   18-CV-1328-JVS-DFMx, 2020 WL 4919732, at *6 (C.D. Cal. July 2, 2020).

4          Considering the entire package here, the settlement is fair and reasonable for four

5   reasons.   First, it accomplishes Plaintiffs' goal of having equality with the male

6   members of the MNT in the subject working conditions. And the agreed-upon policies

7   will confer immediate and substantial benefit as USSF will move quickly to implement

8   them if the settlement is approved.   The policies themselves will also vastly improve

9   the day-to-day life of both current and future WNT players by enhancing travel,

10  professional support, and game-day playing surfaces. Second, the settlement preserves

11  Plaintiffs' ability to pursue their pay-discrimination claims and is thus appropriately

12  limited.  Third, under the settlement, if USSF and the MNT agree to a more favorable

13  policy in any of these areas during the four-year effective period, the WNT players will

14  have the option to adopt that MNT policy as their own—conferring another benefit and

15  ensuring equality on a going-forward basis. Fourth, and as discussed above, both parties

16  escape the inherent risks, expenses, and uncertainties that come with continued

17  litigation.

18         Taken together, and as other courts have found, because the settlement confers

19  "immediate and tangible benefit[s]" and "eliminates the risk that [Plaintiffs] could

20  receive less … or nothing at all, if the litigation continued," this factor supports final

21  approval.  *Smith*, 2020 WL 6689209, at *4 ("The Court also finds that the amount

22  offered is fair and reasonable, especially in light of the preceding discussion regarding

23  the risks, obstacles, and costs of further litigation."); *see also Jordan*, 2020 WL

24  4919732, at *6 ("Since Plaintiffs could risk losing on the merits and recovering less

25  than this amount should litigation continue, the Court finds that this factor weighs in

26  favor of final approval."); *Spann*, 211 F. Supp. 3d at 1256 (factor favored final approval

27  where the court previously concluded that the settlement "was fair, reasonable, and

28  adequate in light of the litigation risks in the case"); *Dawson*, 2019 WL 7842550, at *4

1 ("The Court considered the parties' respective opinions regarding the value and merits

2 of this case during the preliminary approval stage and continues to find that this amount

3 is appropriate in light of the challenges described above.").

4     **4.     The extensive discovery record and this action's procedural**

5     **posture both favor settlement.**

6     Courts are "more likely to approve a settlement if most of the discovery is

7 completed because it suggests that the parties arrived at a compromise based on a full

8 understanding of the legal and factual issues surrounding the case. The more discovery

9 completed, the more likely it is that the parties have 'a clear view of the strengths and

10 weaknesses of their cases.'" *Jordan*, 2020 WL 4919732, at *6. At its core, this factor

11 thus considers whether "the parties have sufficient information to make an informed

12 decision about settlement." *Patton*, 2019 WL 6357266, at *4 (citation omitted). The

13 amount of motion practice and briefing conducted, too, can support this factor. *See*

14 *Herrera*, 2020 WL 2951122, at *5 (considering the extent of motion practice); *In re*

15 *Linkedin*, 309 F.R.D. at 588 (same).

16     The well-developed discovery record on both sides here led to informed decisions

17 about settlement. Over the course of several months, the parties engaged in extensive

18 negotiations on the scope and substance of discovery—with some of those disputes

19 landing before the Court. These efforts resulted in tens of thousands of documents being

20 produced between the parties and nearly twenty fact depositions taken. Key witnesses

21 on both sides were deposed. For example, Plaintiffs deposed high-ranking USSF

22 members like former Presidents Carlos Cordeiro and Sunil Gulati, while USSF deposed

23 all four class representatives.

24     These substantial efforts allowed both parties to better evaluate the strengths and

25 weaknesses of their respective claims and defenses. As a result, both parties were

26 equipped with "ample information with which to make informed settlement decisions"

27 *Patton*, 2019 WL 6357266, at *4. And where, as here, "discovery was sufficiently

28 advanced to allow the parties to make an informed decision about settlement," this

factor favors final approval.  *Alikhan*, 2020 WL 4919382, at *7 (extensive document review, multiple sets of written discovery, and retention of an expert favored final approval); *see also Contreras*, 2020 WL 2083017, at *4 (factor supported final approval because parties "exchanged written discovery and initial disclosures, took several depositions, exchanged time and payroll records, and Plaintiff retained an expert").

The parties also engaged in significant motion practice.  They briefed, among others, a class certification motion, competing summary judgment motions, and several motions *in limine*.  *See* Dkts. 64, 170, 171, 202–16. This substantial motion practice— coupled with a robust discovery record—further supports final approval.  *See, e.g.*, *Herrera*, 2020 WL 2951122, at *5 (factor favored final approval because "[t]he parties conducted substantial discovery … and filed and opposed numerous dispositive and class related motions"); *In re Linkedin*, 309 F.R.D. at 588 (factor favored settlement where "the settlement comes after almost three years of litigation, which included the formal and informal exchange of documents, briefing on two motions to dismiss, consultation with and a declaration from an expert, formal mediation before a third-party neutral, extensive mediation briefing, and several months of settlement negotiations").

Taken together, the parties here used a well-developed discovery and litigation record to make informed decisions about settlement.

**5.    The Rule 23(b) classes are represented by skilled and experienced counsel who view the settlement favorably.**

Trials courts are "entitled to, and should, rely upon the judgment of experienced counsel for the parties." *Alikhan*, 2020 WL 4919382, at *7.  Indeed, "[g]reat weight is accorded to the recommendation of counsel … because the parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Spann*, 211 F. Supp. 3d at 1257 (citation omitted).  Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Nunez v. BAE*

*Systems San Diego Ship Repair, Inc.*, 292 F. Supp. 3d 1018, 1040 (S.D. Cal. 2017); *see also Dawson*, 2019 WL 7842550, at *5 ("The recommendations of plaintiff's counsel are given a presumption of reasonableness.").

Class counsel negotiated the proposed settlement after significant motion practice and with the benefit of months of discovery, and thus believes the agreement to be fair, reasonable, and in the Rule 23(b) classes' best interests. And as the Court recognized, "world-renowned law firms [that] have experience in class-action litigation" are guiding each side. Dkt. 293 at 4. Counsel's experience and views thus favor final approval. *See, e.g.*, *Dawson*, 2019 WL 7842550, at *5 ("The Court is satisfied that this experience has allowed Class Counsel to evaluate the merits of the claims and risks associated with prosecuting them through trial and appeal. The Court accordingly credits Counsel's determination that the settlement is 'fair, adequate, and reasonable' and finds that this factor weighs in favor of final approval."); *Spann*, 211 F. Supp. 3d at 1257 (factor supported final approval because class counsel, who were "experienced class action attorneys who prosecuted th[e] action vigorously," "recommend[ed] approval of the settlement"); *Patton*, 2019 WL 6357266, at *5 (factor favored approval because "Counsel have conducted reasonable informal discovery in this action and engaged in extensive negotiations before ultimately reaching and recommending this Agreement").

**6.      The government received adequate notice under CAFA but did not object.**

"'Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures.'" *In re Linkedin*, 309 F.R.D. at 588–89 (citations omitted). Here, USSF counsel represented that it provided notice of the proposed settlement to the appropriate state and federal officials under CAFA. Kessler Decl. ¶ 5. Because "[n]one of these officials have raised

any objections or concern regarding the settlement[,] … this factor favors the settlement." *In re Linkedin*, 309 F.R.D. at 588–89.

### 7. The class members reacted favorably to the settlement.

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Spann*, 211 F. Supp. 3d at 1257.

That presumption is true here because no class members have objected to the settlement. The class members thus view the settlement favorably, which in turn, supports final approval. *See, e.g.*, *Alikhan*, 2020 WL 4919382, at *8 (factor weighed in favor of approval where no class members objected and where only one class member requested to be excluded); *Smith*, 2020 WL 6689209, at *4 (factor supported final approval where no class members objected and thus the "class members' reaction to the settlement has been overwhelmingly positive"); *Contreras*, 2020 WL 2083017, at *5 (factor supported final approval where no class members objected); *Miller v. Wise Co., Inc.*, No. 17-CV-00616-JAK-PLAx, 2020 WL 1129863, at *5 (C.D. Cal. Feb. 11, 2020) ("A low proportion of opt-outs and objections 'indicates that the class generally approves of the settlement.'" (citation omitted)).

### 8. The parties arrived at the settlement through extensive arm's-length negotiations.

As detailed in Plaintiffs' preliminary approval motion (Dkt. 276 at 10–11), and previously recognized by this Court (Dkt. 293 at 10–11), the parties' settlement is the product of serious, non-collusive negotiations. The parties first discussed a global settlement almost five years ago when the dispute was before the EEOC, and after this lawsuit began, the parties engaged in additional formal and informal settlement talks, including with the help of a mediator. And as the Court recognized, "the parties intensified settlement efforts" following the Court's summary judgment ruling. Dkt. 293 at 2. Since that time, and with the benefit of comprehensive discovery, the parties had extensive negotiations—led on both sides by experienced and knowledgeable

1   counsel—to reach the agreed-upon policies here that resolve Plaintiffs' working-
2   conditions claims.

3   Like before, these is no "evidence to suggest that the settlement is not otherwise
4   the product of an arms-length negotiation." *Patton*, 2019 WL 6357266, at *3.   And
5   taken together, the parties' documented history of negotiations after significant
6   discovery and motion practice supports final approval. *See, e.g.*, *id.* ("The arms-length
7   nature of the negotiation resulting in the Agreement and the recommendation of
8   experienced class action counsel support final approval."); *Herrera*, 2020 WL 2951122,
9   at *4 (finding no collusion where class counsel was experienced, "the action was
10  vigorously litigated on both sides," and substantial discovery was conducted); *In re*
11  *Wells Fargo Collateral Prot. Ins. Litig.*, No. 17-CV-02797-AGK-ESx, 2019 WL
12  6219875, at *3 (C.D. Cal. Nov. 4, 2019) (finding no collusion where parties had
13  "actively and aggressively litigated" before settlement negotiations even began).

14  **V.   CONCLUSION**

15  For these reasons, the Court should approve the settlement and enter judgment
16  on Plaintiffs' pay-discrimination claims under Title VII and the Equal Pay Act.

17

18  Dated: March 15, 2021                    WINSTON & STRAWN LLP

19

20  By: */s/ Jeffrey L. Kessler*
         Jeffrey L. Kessler
21       David G. Feher
         Cardelle B. Spangler
22       Diana Hughes Leiden
         Jeanifer E. Parsigian
         Lev Tsukerman
23
         *Attorneys for Plaintiffs*
24

25

26

27

28

21