# EXHIBIT B

Jeffrey L. Kessler (*pro hac vice*)
jkessler@winston.com
David G. Feher (*pro hac vice*)
dfeher@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue, New York, NY 10166
Tel:   (212) 294-6700
Fax:   (212) 294-4700

Cardelle B. Spangler (*pro hac vice*)
cspangler@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive, Chicago, IL 60601
Tel:   (312) 558-5600
Fax:   (312) 558-5700

Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
Lev Tsukerman (SBN: 319184)
ltsukerman@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, Los Angeles, CA 90071
Tel:   (213) 615-1700
Fax:   (213) 615-1750

Jeanifer E. Parsigian (SBN: 289001)
jparsigian@winston.com
**WINSTON & STRAWN LLP**
101 California St., 35th Floor, San Francisco, CA 94111
Tel:   (491) 591-1000
Fax:   (491) 591-1400

*Attorneys for Plaintiffs*

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX MORGAN, et al., | **Case No. 2:19-CV-01717-RGK-AGR** |
| Plaintiffs, | Assigned to: Judge R. Gary Klausner |
| v. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND OF CLASS NOTICE** |
| UNITED STATES SOCCER FEDERATION, INC., | |
| Defendant. | Date:  TBD<br>Time: 9:00 a.m.<br>Place: Courtroom: 850 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on _____, 2022 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 850 of the above-titled court, located at 255 East Temple Street, Los Angeles, California 90012, plaintiffs Alex Morgan, et al. (collectively, "Plaintiffs") will and hereby do move the Court, under Federal Rule of Civil Procedure 23, for an order:

1. Granting preliminary approval of the proposed Class Action Settlement and Release of Pay-Discrimination Claims, attached as Exhibit A to the accompanying Declaration of Jeffrey L. Kessler;

2. Approving the Notice of Class Action Settlement, attached as Exhibit 1 to Exhibit A of the accompanying Declaration of Jeffrey L. Kessler; and

3. Scheduling a final approval hearing and certain other dates in connection with a final approval of the parties' proposed settlement.

This motion is based upon this notice of motion, the accompanying memorandum of points and authorities, the accompanying declaration of Jeffrey L. Kessler, the proposed order filed concurrently herewith, the records and files in this action, and any other written or oral submissions that may be presented at or before the hearing on this motion.

Pursuant to Local Rule 7-3, Defendant consents to this motion.

Dated: _____, 2022                         WINSTON & STRAWN LLP


                                            By: */s/ Jeffrey L. Kessler*
                                                Jeffrey L. Kessler

                                                *Attorneys for Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES
## TABLE OF CONTENTS

I.      INTRODUCTION.............................................................................................1

II.     FACTUAL BACKGROUND ..........................................................................2

    A.   Plaintiffs' EEOC charges lead to this lawsuit...........................................2

    B.   The parties engage in thorough, extensive fact and expert discovery. ......2

    C.   The parties engage in extensive motion practice. ......................................3

        1.    Plaintiffs' JPML motion and USSF's motion to transfer. ...............3

        2.    The Court certifies three classes. .....................................................4

        3.    The parties move for summary judgment..........................................4

    D.   The parties settle the working-conditions claims and the Court grants approval. .................................................................................................5

    E.   Plaintiffs appeal the Court's summary judgment ruling to the Ninth Circuit........................................................................................................6

III.    PROPOSED SETTLEMENT ........................................................................6

    A.   The parties engage in extensive settlement negotiations. .........................6

    B.   The settlement terms. ................................................................................7

    C.   The scope of the release. ...........................................................................9

IV.    THE PROCEDURE FOR CLASS NOTICE AND OBJECTIONS ........10

V.     LEGAL STANDARD ..................................................................................11

    A.   The legal standard for Rule 23 class settlements. ...................................11

    B.   The legal standard for Equal Pay Act collective action settlements........11

VI.    ARGUMENT ................................................................................................12

    A.   The proposed settlement satisfies each of the conditions for preliminary approval under Rule 23. .........................................................................12

        1.    The settlement is the product of serious, informed, non-collusive negotiations. .....................................................................................12

        2.    The settlement has no deficiencies. .................................................14

        3.    The agreement does not grant preferential treatment to either the class representatives or other class segments. ...............................14

        4.    The settlement falls within the range of possible approval. ..........15

    B.   The Court should also preliminarily approve the settlement under the Equal Pay Act..........................................................................................16

    C.   The proposed class notice is appropriate and should be approved..........17

    D.   The Court should approve the proposed scheduling order and set a date for a fairness hearing. ..............................................................................18

VII.   CONCLUSION ............................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Churchill Vill, L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ................................................................... 13

*Contreras v. Worldwide Flight Servs., Inc.*,
  No. 18-CV-6036-PSG-SSx, 2019 WL 8633664 (C.D. Cal. Sept. 30,
  2019) ........................................................................................... 9, 11, 12, 14

*In re Lenovo Adware Litig.*,
  No. 15-MD-02624-HSG, 2018 WL 6099948 (N.D. Cal. Nov. 21,
  2018) .................................................................................................... 10, 12

*Low v. Trump University, LLC*,
  881 F.3d 1111 (9th Cir. 2018) ................................................................. 13

*Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
  No. 19-CV-620-JGBKKx, 2020 WL 5044418 (C.D. Cal. May 7,
  2020) ........................................................................................................... 9

*Richards v. Chime Financial*,
  No. 19-CV-06864-HSG, 2020 WL 6318713 (N.D. Cal. Oct. 28, 2020) ............... 11

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................... 10

*Sherman v. CLP Res., Inc.*,
  No. 12-CV-11037-GW-PLAx, 2020 WL 2790098 (C.D. Cal. Jan. 30,
  2020) ......................................................................................................... 12

*Smith v. Experian Info. Sols., Inc.*,
  No. 17-CV-00629-CJC-AFM, 2020 WL 4592788 (C.D. Cal. Aug. 10,
  2020) ........................................................................................................... 9

*Spann v. J.C. Penny Corp.*,
  314 F.R.D. 312 (C.D. Cal. 2016) ...................................................... 11, 12

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................. 12

*Tinoco v. Hajoca Corp.*,
     No. 17-CV-6187-FMO-ASx, 2019 WL 4239130 (C.D. Cal. June 18,
     2019) ................................................................................................................11, 12, 13

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................1, 4, 13

## I.     INTRODUCTION

Plaintiffs Alex Morgan, Becky Sauerbrunn, Carli Lloyd, and Megan Rapinoe, on behalf of all Class Members[1] and all FLSA Collective Action Members[2], respectfully seek preliminary approval of a settlement with defendant United States Soccer Federation, Inc. ("USSF") with respect to the pay-discrimination claims in the case. The parties have agreed to settle Plaintiffs' pay gender discrimination claims against USSF under Title VII and the Equal Pay Act, which will resolve this case in its entirety. [3]

USSF has agreed to provide $22 million to Class Members and FLSA Collective Action Members and deposit $2 million into an escrow account to benefit Class Members and FLSA Collective Action Members in their pursuit of post-playing career goals and charitable efforts related to women's and girls' soccer.  Most importantly, USSF has agreed, going forward, to pay members of the United States Senior Women's National Team ("WNT") at a rate of pay equal to that afforded to members of the United States Senior Men's National Soccer Team ("MNT") for players' responsibilities in connection with friendlies, all other games and tournaments, and in the Men's and Women's World Cups.

The Court should grant preliminary approval of the parties' settlement for the following reasons:

First, this settlement is the culmination of numerous negotiations and talks between the parties dating back to 2016.  It is also the result of extensive fact and expert discovery followed by further negotiations, multiple formal mediations, and further communications involving the WNT players, key leaders at USSF, the U.S. Women's

---

[1] "Class" or "Class Members" means those members of the Title VII "Injunctive Relief Class" and the Title VII "Damages Class," as defined by the Court's November 8, 2019 Order Re: Plaintiffs' Motion for Class Certification (Dkt. No. 64).

[2] "FLSA Collective Action Members" means those members of the FLSA Collective Action as defined by the Court's November 8, 2019 Order Re: Plaintiffs' Motion for Class Certification (Dkt. No. 64).

[3] The parties previously settled Plaintiffs' working-conditions claims, and that settlement was approved by the Court. *See* Dkt. 305.

National Team Players Association ("USWNTPA"), and counsel.  Second, the settlement funds will be distributed fairly among the Class Members and FLSA Collective Action Members based on their play within the class periods.  Nor are there any incentive awards for class representatives.  Third, the settlement has no obvious deficiencies, as Plaintiffs are satisfied that it achieves their goal of equal pay.  And fourth, because it achieves the goal that Plaintiffs sought in filing the pay-discrimination claims, the settlement falls within the range of possible approval.

For these reasons, as detailed below, the Court should grant preliminary approval of the settlement, approve the class notice, and schedule a final approval hearing.

## II.     FACTUAL BACKGROUND

### A.      Plaintiffs' EEOC charges lead to this lawsuit.

Plaintiffs are professional soccer players and members of the WNT.  In April 2016, the four class representatives here, Alex Morgan, Megan Rapinoe, Becky Sauerbrunn, and Carli Lloyd, each filed a charge of discrimination against their employer, USSF, with the Equal Employment Opportunity Commission (EEOC) alleging sex-based discrimination.  Dkt. 2.  The EEOC investigated the charges and ultimately issued four right to sue letters in February 2019. *Id*.

On March 8, 2019, Plaintiffs filed their collective and class action complaint against USSF asserting claims under the Equal Pay Act and Title VII based on discrimination in pay and working conditions, including with respect to field surfaces, personnel support, and hotel and travel accommodations.  The working-conditions claims were filed exclusively under Title VII, because the Equal Pay Act, which is part of the Fair Labor Standards Act ("FLSA"), only applies to pay-discrimination claims. *See* Dkt. 1.  USSF answered, denying liability.  Dkt. 42.

### B.      The parties engage in thorough, extensive fact and expert discovery.

The class representatives vigorously pursued their claims through extensive discovery.  From August 2019 through February 2020, Plaintiffs served five sets of document requests containing 67 separate requests for production and 16

AmericasActive:16658140.7

interrogatories.   Kessler Decl. ¶ 11.   The parties produced tens of thousands of documents.   *Id*.   They engaged in extensive negotiations regarding the scope and substance of discovery and raised many discovery disputes with the Court during the process. *Id.*

On top of written discovery, the two sides deposed nearly twenty fact witnesses. *Id.* ¶ 12.   Plaintiffs deposed seven USSF current or former employees, including former USSF Presidents Carlos Cordeiro and Sunil Gulati and Managing Director of Administration Tom King.   *Id.*   Plaintiffs also deposed key third-party sponsors Visa and Coke.   *Id.*   Likewise, USSF deposed ten witnesses, including all four class representatives and Becca Roux, the WNT union's Executive Director.   *Id.*

Each side also retained highly credentialed experts.   Plaintiffs retained three experts: Dr. Finnie Cook, an economist, Dr. Caren Goldberg, a human resource expert and consultant, and Dr. Roger Noll, a well-published economist and economics professor at Stanford University. *Id.* ¶ 14.   On the other side, USSF also retained three experts: Phillip Miscimarra, a partner at the national law firm Morgan, Lewis & Bockius LLP, Carlyn Irwin, a senior advisor with the economics consulting firm Cornerstone Research, and Dr. Justin McCrary, an economist and professor at Columbia University. *Id.* ¶ 15.   Each expert was deposed.   *Id.* ¶ 13.

In the end, thousands of hours were ultimately spent on discovery, as the parties carefully developed the records on their respective claims and defenses.   *Id.* ¶ 10.

### C.   The parties engage in extensive motion practice.

#### 1.   Plaintiffs' JPML motion and USSF's motion to transfer.

Concurrent with the filing of the complaint, Plaintiffs filed a motion with the Judicial Panel on Multidistrict Litigation to transfer *Solo v. United States Soccer Federation*, Case No. 3:18-CV-05215-JD, to this Court from the Northern District of California. *See* Dkt. 9.   USSF contested the motion with the JPML and it was ultimately denied.   Dkt. 23.

Following that denial, USSF moved this Court for an order transferring venue to the Northern District of California based on the first-to-file rule.  *See* Dkt. 46.  The Court denied USSF's motion and retained the case.  *See* Dkt. 56.

### 2.    The Court certifies three classes.

In September 2019, Plaintiffs moved to certify two classes under Rule 23 and one collective class under the Equal Pay Act.  *See* Dkt. 64.  This Court granted Plaintiffs' motion and certified both a Rule 23(b)(2) injunctive relief class and a Rule 23(b)(3) damages class as follows:

> **Injunctive Relief Class:** All WNT players on the team at the date of the final judgment, or the date of the resolution of any appeals therefrom, whichever is later.

> **Damages Class:**  All WNT players who were members of the WNT at any time from [June 11, 2015] through the date of class certification.

Dkts. 98 at 14–15; Dkt. 123.  The Court also conditionally certified a collective class under 29 U.S.C. § 216(b) for "[a]ll WNT players who were members of the WNT at any time from March 8, 2016 through the present."  Dkt. 98 at 15.  Players who decided to opt into the Equal Pay Act collective action filed written consent.  *See* Dkts. 6, 16, 72, 129, 130, 131, 147, 150, 153, 155, 159.

The Rule 23(b) classes both seek relief under Title VII.  The injunctive relief class seeks equal working conditions on a going-forward basis, while the damages class seeks, among others, back pay and punitive damages for pay discrimination.  The collective class too seeks back pay, but only with respect to pay-discrimination claims. In certifying these classes, the Court appointed Alex Morgan, Megan Rapinoe, Carli Lloyd, and Becky Sauerbrunn as class representatives and Winston & Strawn LLP as class counsel.  *Id.*

### 3.    The parties move for summary judgment.

The parties filed cross summary judgment motions in February 2020.  *See* Dkts. 170, 171.  Plaintiffs moved for summary judgment on their pay-discrimination claims

4

AmericasActive:16658140.7

under both the Equal Pay Act and Title VII, while USSF moved for summary judgment on all of Plaintiffs' claims. *See id*. On May 1, 2020, the Court denied Plaintiffs' summary judgment motion and granted in part USSF's motion. Dkt. 250. The Court ruled for USSF on Plaintiffs' Title VII and Equal Pay Act pay-discrimination claims and on Plaintiffs' claim of unequal treatment for field surfaces. *Id.* at 21, 28. The Court denied USSF summary judgment on Plaintiffs' working conditions claims relating to unequal treatment with respect to hotel accommodations, charter flights, and support personnel. *Id.* at 31.

After the summary judgment order issued, Plaintiffs moved for entry of judgment under Rule 54(b) so that they could immediately appeal the Court's ruling. Dkt. 253. Plaintiffs simultaneously moved to stay the upcoming trial on the remainder of their claims pending resolution of their Rule 54(b) motion. Dkt. 254. This Court denied both motions. Dkts. 258, 266. Although the trial on these remaining claims was ultimately postponed multiple times due to the global COVID-19 pandemic, the parties negotiated, drafted, and exchanged various pretrial filings, including witness lists, exhibit lists, and jury instructions. *See* Kessler Decl. ¶ 16.

**D.** **The parties settle the working-conditions claims and the Court grants approval.**

On December 1, 2020, the parties agreed in principle to settle all of Plaintiffs' Title VII working-conditions claims ("Working Conditions Settlement").[4] Dkt. 276. The crux of the agreement was that USSF would implement revised charter flight, venue selection, professional support, and hotel accommodation policies intended to create equality with the MNT moving forward in exchange for a release of liability on Plaintiffs' working conditions claims. *Id*. Plaintiffs moved for preliminary approval of the Working Conditions Settlement, and the Court granted preliminary approval on January 11, 2021. Dkts. 276, 293. Plaintiffs subsequently filed a motion for final

---

[4] The Working Conditions Settlement did not redress Plaintiffs' pay-discrimination claims, the dismissal of which Plaintiffs later appealed. *See* Dkt. 308.

approval of the Working Conditions Settlement.  Dkt. 297.  On April 13, 2021, the
Court granted final approval of the Working Conditions Settlement, and entered final
judgment in the case, including on Plaintiffs' Title VII and Equal Pay Act pay-
discrimination claims.  Dkt. 305.

> **E.    Plaintiffs appeal the Court's summary judgment ruling to the Ninth
> Circuit.**

On April 14, 2021, Plaintiffs appealed the Court's summary judgment ruling on
Plaintiffs' Title VII and Equal Pay Act pay-discrimination claims.  Dkt. 308.  The appeal
was fully briefed and set for oral argument in the Ninth Circuit Court of Appeals on
March 7, 2022.  *See* Kessler Decl. ¶ 8.  On February 22, 2022, the parties filed a joint
motion to remove the appeal from the oral argument calendar and place the appeal in
abeyance because the parties agreed to a settlement in principle on the Title VII and
Equal Pay Act pay-discrimination claims.  *See* Kessler Decl. ¶ 8.  On February 24, 2022,
the Ninth Circuit granted the joint motion to remove the appeal from the oral argument
calendar, staying further proceedings pending finalization of the parties' settlement in
principle.  Dkt. 314.

## III.   PROPOSED SETTLEMENT

> **A.    The parties engage in extensive settlement negotiations.**

Plaintiffs and USSF have had settlement discussions dating back as far as the
EEOC's investigation of Plaintiffs' charges in 2016, in an attempt to resolve this matter
prior to litigation.  Kessler Decl. ¶ 17.  After this lawsuit was filed, they continued to
engage in settlement negotiations, formally and informally, including in a formal two-
day mediation in August 2019 with both class representatives and senior USSF officials
present.  *Id.*   The parties engaged in further informal settlement communications
through the close of discovery and pre-trial preparation.  *Id.*

Following the Court's summary judgment ruling and multiple delays of the trial
date due to COVID-19, the parties' settlement negotiations intensified.  *Id*.   After
approval of the Working Conditions Settlement and the subsequent appeal of the pay-

discrimination claims, the parties continued to engage in extensive discussions to resolve Plaintiffs' pay-discrimination claims. *Id*. The parties engaged in a full-day mediation in May 2021 exclusively relating to potential settlement of Plaintiffs' pay-discrimination claims. While the parties did not reach a settlement at the mediation, they continued to discuss a potential settlement of Plaintiffs' pay-discrimination claims, with the class representatives again playing an important role during negotiations. Kessler Decl. ¶ 18. The parties engaged in extensive informal negotiation through regular calls and correspondence, involving the class representatives, key USSF officials, and counsel. The USWNTPA and their counsel were also involved in these discussions, particularly as they related to ongoing collective bargaining negotiations between the WNT and USSF. *Id*. The parties exchanged multiple drafts of a proposed term sheet before coming to a settlement in principle, then negotiated a full settlement agreement based on the term sheet. *Id*. ¶ 19. The negotiations were led by class counsel with decades of collective experience with sports class action and employment matters. *See* Dkt. 64-1 ¶¶ 5–15 (describing class counsel's experience in similar matters). USSF too has been led by two prominent national law firms during negotiations, currently Latham & Watkins LLP and previously Seyfarth Shaw LLP.

Plaintiffs sought a rate of pay equal to that afforded to members of the MNT. *See* Kessler Decl. ¶ 19. During these months of talks, the parties spent significant time and effort negotiating and finalizing an agreement that Plaintiffs believe would provide for equal pay. *See id*. In reaching this settlement, Plaintiffs and their counsel recognized the immediate benefit to settling the pay-discrimination claims while avoiding the inherent uncertainty, delay, expense, and risk of the appeal and continued litigation. *Id*.

## B. The settlement terms.

The parties have agreed in principle to settle all of Plaintiffs' Title VII and Equal Pay Act pay-discrimination claims. *See generally* Kessler Decl., Ex. A. The crux of the agreement is that USSF will provide $22 million to the Class Members and the FLSA Collective Action Members, deposit $2 million in an escrow account to benefit

Class Members and the FLSA Collective Action Members in their pursuit of post-playing career goals and charitable efforts, and provide for equal pay going forward in exchange for a release of liability on Plaintiffs' pay-discrimination claims. Kessler Decl., Ex. A ¶¶ __. A brief description of these terms is set forth below:

Settlement Amount. USSF will provide $22 million to the Class Members and FLSA Collective Actions Members, paid in four equal interest-free installments to be divided among the Class Members and the FLSA Collective Action Members, after subtracting Plaintiffs' attorneys' fees and litigation costs in amounts and as allocated as specified by Plaintiffs, and in a manner to be proposed by Plaintiffs and approved by the Court. Kessler Decl., Ex. A ¶ _. The first installment of the $22 million payment (in the amount of $5.5 million) will be paid by USSF into an escrow account to be established by class counsel within fifteen business days after the new collective bargaining agreement ("New CBA") is entered into and ratified by members of the USWNTPA.

USSF will also deposit $2 million into an escrow account to benefit Class Members and the FLSA Collective Action Members in their pursuit of post-playing career goals and charitable efforts related to women's and girls' soccer. Kessler Decl., Ex. A ¶ _. The fund Board will establish procedures for Class Members and the FLSA Collective Action Members to apply for maximum financial awards of up to $50,000 for each Class Member and FLSA Collective Action Member, which may be used by that Class Member or FLSA Collective Action Member for school tuition, job training, coach training, referee licenses, training in high performance and sporting analytics, internships, investments in soccer-related charitable programs with which Class Members and FLSA Collective Action Members are involved, or other women's or girls' soccer-related activities of a Class Member or FLSA Collective Action Member after she has completed her playing career. Kessler Decl., Ex. A ¶ _. The $2 million payment for the fund will be made by USSF fifteen business days after the New CBA is entered into and ratified by members of the USWNTPA. Kessler Decl., Ex. A ¶ _.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Future Pay.</u>  USSF will provide an equal rate of pay to players, consistent with examples set forth in the agreement, for members of the WNT and members of the MNT for players' responsibilities in connection with friendlies, all other games and tournaments, and in the Men's and Women's World Cups. Kessler Decl., Ex. A ¶ _. The details of the equal pay to be received by WNT players will be determined by negotiations between USSF and the USWNTPA are embodied in the New CBA. Kessler Decl., Ex. A ¶ _.

### C.     The scope of the release.

In exchange for USSF's agreement to the settlement amount and equal pay going forward, Plaintiffs agreed to release their pay-discrimination claims against USSF. Kessler Decl., Ex. A ¶ _.  More specifically, Class Members agreed to release USSF from the "any and all claims, known or unknown, arising through the date of Final Approval, (i) that were asserted in the Complaint and/or that could have been asserted in the Complaint based on the facts and/or allegations alleged in the Complaint or (ii) that, based on the terms of the New CBA, USSF discriminated against Plaintiffs on the basis of their sex by paying them a lower rate of pay than the players on the USMNT. However, this provision will not constitute or affect a release of the plaintiff's claim under the Equal Pay Act asserted in *Solo v. United States Soccer Federation*, Case No. 3:18-cv-5215-JD".  Kessler Decl., Ex. A ¶ _.

Because there are certain members of the Title VII class that did not opt-in to the FLSA collective action, the settlement notice and the settlement checks will advise class members that "[i]f you have not previously opted-in to the collective action, by signing or cashing this check, you are consenting to join the collective action and affirm your release of the claims under the Fair Labor Standards Act."  This Court approved a similar release and notice to members of a Rule 23 class who had not opted in to a FLSA collective action in *Ernst v. Zogsports Holdings LLC*.  *See* Case No. 2-18-cv-09043-RGK, 2019 WL 13143664 (September 6, 2019).  The language of the notice makes clear that they may choose not to opt-in to the FLSA collective action and, thereby not

AmericasActive:16658140.7

release any claims they may have under the FLSA, by choosing not to sign or cash the check.

Plaintiffs will be deemed by operation of an order granting final approval to have agreed not to sue or otherwise make a claim against USSF for any released claims arising or accruing at any time before date of final approval.  Kessler Decl., Ex. A ¶ _. The release does not affect any claims *other* than pay-discrimination claims accruing at any time.  *Id*.

USSF also agreed to release Class Members and FLSA Collective Action Members from any and all counterclaims, known or unknown, that could have been asserted in response to the Complaint, through the date of final approval.  *Id*.

## IV.    THE PROCEDURE FOR CLASS NOTICE AND OBJECTIONS

The parties agreed that within fourteen days of preliminary approval, USSF will send class counsel a full and complete class list.  Kessler Decl., Ex. A ¶ _.  The class list will include each class member's full name, last known home address, last known email address, and dates of active employment with USSF as a class member.  Kessler Decl., Ex. A ¶ _.  Within 21 days thereafter, class counsel will both mail and email copies of the agreed-upon class notice to all Class Members and FLSA Collective Action Members.  Kessler Decl., Ex. A ¶ _, Ex. 1.  The class notice will advise Class Members and FLSA Collective Action Members who wish to object to the settlement that they can file a written objection with the Court within thirty days of mailing. Kessler Decl., Ex. A ¶ _, Ex. 1.  The notice will also advise that Class Members or FLSA Collective Action Members who fail to object will waive any such challenges. Kessler Decl., Ex. A ¶ _, Ex. 1.  The class notice also details what exactly any objection should contain, including the Class Member's or FLSA Collective Action Member's name, dates of USSF employment, basis for the objection, and whether the Class Members or FLSA Collective Action member intends to appeal at the final approval hearing.  Kessler Decl., Ex. A ¶ _, Ex. 1.  The proposed class notice informs Class

Members and FLSA Collective Action members that class counsel will make a reasonable request for attorneys' fees, which must be approved by the Court.

## V.    LEGAL STANDARD

### A.    The legal standard for Rule 23 class settlements.

At the preliminary stage, a court should grant approval of class settlement if it "[(1)] appears to be the product of serious, informed, non-collusive negotiations, [(2)] has no obvious deficiencies, [(3)] does not improperly grant preferential treatment to class representatives or segments of the class, and [(4)] falls within the range of possible approval." *Smith v. Experian Info. Sols., Inc.*, No. 17-CV-00629-CJC-AFM, 2020 WL 4592788, at *5 (C.D. Cal. Aug. 10, 2020) (citation omitted).  At this point, "[t]he settlement need only be <u>potentially</u> fair, as the [c]ourt will make a final determination of its adequacy at the hearing on the Final Approval." *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. 19-CV-620-JGBKKx, 2020 WL 5044418, at *2 (C.D. Cal. May 7, 2020) (emphasis in original) (citation omitted).  This Court need only determine at this stage that "the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final approval hearing." *Contreras v. Worldwide Flight Servs., Inc.*, No. 18-CV-6036-PSG-SSx, 2019 WL 8633664, at *5 (C.D. Cal. Sept. 30, 2019).

### B.    The legal standard for Equal Pay Act collective action settlements.

The Equal Pay Act is part of the FLSA and incorporates its enforcement mechanisms.  29 U.S.C. §§ 216(b), 256.  Unlike the analysis of a settlement under Rule 23, the Ninth Circuit has not provided explicit direction for assessing the fairness of a proposed FLSA settlement.  *See Pan v. Qualcomm Inc.*, No. 16-CV-01885-JLS-DHB, 2016 WL 9024896, at *9 (S.D. Cal. Dec. 5, 2016).  But district courts in this Circuit consider whether the settlement is a fair and reasonable resolution of a bona fide dispute.  *See Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014).  Once the court determines that a bona fide dispute exists, it applies the Rule 23(e) factors to assess the fairness of the proposed settlement, while recognizing that some factors do not apply

11

because of the inherent differences between class actions and "opt-in" FLSA actions. *Khanna v. Inter-Con Sec. Sys., Inc.*, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). "The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement." *Gamble v. Boyd Gaming Corp.*, 2017 WL 721244, at *4 (D. Nev. Feb. 23, 2017). Courts have found that if the settlement "passes muster" under the Rule 23 analysis, it also passes the standard governing FLSA collective actions. *Pan*, 2016 WL 9024896, at *10.

## VI.   ARGUMENT

### A.   The proposed settlement satisfies each of the conditions for preliminary approval under Rule 23.

All the requirements for preliminary approval under Rule 23 are met here.

#### 1.   The settlement is the product of serious, informed, non-collusive negotiations.

The lengthy, arm's-length negotiations through which the settlement was reached favors approval. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). Indeed, "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). This settlement is the product of serious, informed, negotiations, which afford it the presumption of fairness.

The parties first discussed settlement of both Plaintiffs' pay-discrimination and working-conditions claims four years ago when the dispute was before the EEOC. Kessler Decl. ¶ 17. After this lawsuit was filed, the parties had additional formal and informal discussions regarding potential settlement, including with the assistance of a mediator. *Id*. The Court's summary judgment order led to continued discussions as the parties tried to resolve Plaintiffs' working conditions claims. Kessler Decl. ¶ 18. After

approval of the Working Conditions Settlement and the subsequent appeal of the pay-discrimination claims, parties continued to engage in extensive discussions to resolve Plaintiffs' pay-discrimination claims. *Id.* The parties engaged in a full-day mediation in May 2021 exclusively relating to potential settlement of Plaintiffs' pay-discrimination claims. While the parties did not reach a settlement at the mediation, they continued to discuss a potential settlement of Plaintiffs' pay-discrimination claims, with the class representatives again playing an important role during negotiations. Kessler Decl. ¶ 18. The parties engaged in extensive informal negotiation through regular calls and correspondence, involving the class representatives, key USSF officials, and counsel. The USWNTPA and their counsel were also involved in these discussions, particularly as they related to ongoing collective bargaining negotiations between the WNT and USSF. *Id.* The parties exchanged multiple drafts of a proposed term sheet before coming to a settlement in principle, then negotiated a full settlement agreement based on the term sheet. *Id.* ¶ 19. The negotiations were led by class counsel with decades of collective experience with sports class action and employment matters. *See* Dkt. 64-1 ¶¶ 5–15. USSF too has been led by two prominent national law firms during negotiations.

At all times, Plaintiffs have been well informed on the merits of both their claims and USSF's defenses. Indeed, many months and countless hours were spent in discovery, with both sides nearly exhausting the number of depositions allowed under the Federal Rules and exchanging tens of thousands of documents. Plaintiffs' goal here was to build their case and better understand both the strengths and weaknesses of their claims. The class representatives were personally involved in the settlement negotiations and each of them have agreed to these settlement terms. Simply put, the parties' settlement is the culmination of substantial litigation and constant back-and-forth discussions by well-informed counsel, parties, and class representatives. And where, as here, Plaintiffs' substantial efforts to develop their case are accompanied by extensive, arm's-length negotiations and no evidence of any collusion, the facts favor

court approval.  *See, e.g.*, *Contreras*, 2019 WL 8633664, at *8 (this factor met where parties spent substantial time and effort on fact discovery and settlement negotiations thus "suggest[ing] that there was no collusion" and that parties were "well informed and had sufficient information to assess the merits of their claims"); *Bey v. Mosaic Sales Sols. U.S. Operating Co.*, LLC, No. 16-CV-6024-FMO-RAOx, 2019 WL 7940584, at *9 (C.D. Cal. June 20, 2019) (factor met where parties "had a sound basis for measuring the terms of the settlement against the risks of continued litigation" and where there was no evidence of fraud or collusion); *Tinoco v. Hajoca Corp.*, No. 17-CV-6187-FMO-ASx, 2019 WL 4239130, at *9 (C.D. Cal. June 18, 2019) (same).

### 2.    The settlement has no deficiencies.

Both sides agree that the settlement is fair, adequate, and reasonable to the Class Members with no obvious deficiencies.  USSF has agreed to provide $22 million to the Class Members, deposit $2 million in an escrow account to benefit Class Members' post-playing career goals and charitable efforts, and provide equal pay going forward. Plaintiffs believe that the settlement accomplishes Plaintiffs' goal of equalizing their rate of pay with that of their male counterparts.  It confers immediate and substantial benefit to Class Members as USSF will move swiftly to make payments after ratification of the New CBA and avoids the inherent delay and risk of continued litigation.  The settlement funds will be distributed fairly based on each class member's play with the WNT, and its release is limited only to the pay-discrimination claims that occurred through the date of Final Approval based on the terms of the New CBA.

### 3.    The agreement does not grant preferential treatment to either the class representatives or other class segments.

In considering this factor, courts examine whether there is a significant disparity in treatment between class representatives and other members such that a conflict of interest exists.  *See Spann v. J.C. Penny Corp.*, 314 F.R.D. 312, 328 (C.D. Cal. 2016). Courts will look for signs that "the 'self-interests' of 'certain class members [has] infect[ed] negotiations.'"  *Richards v. Chime Financial*, No. 19-CV-06864-HSG, 2020

WL 6318713, at *9 (N.D. Cal. Oct. 28, 2020) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).  In doing so, courts consider "the actions … taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort … expended in pursuing the litigation."  *Spann*, 314 F.R.D. at 328 (citation omitted).

This factor is met because each Class Member will receive an award based on her play with the WNT during the class periods.  Further, Class Members who are currently members of the WNT will benefit from receiving an equal rate of pay as that afforded to members of the MNT, and all Class Members will benefit from the $2 million fund.  Finally, there are no incentive awards or other different treatment for the class representatives.  Simply put, there are no conflicts of interest, or even the possibility of one.

### 4.    The settlement falls within the range of possible approval.

When assessing this factor, "courts focus on the substantive fairness and adequacy [of the settlement] and consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *Sherman v. CLP Res., Inc.*, No. 12-CV-11037-GW-PLAx, 2020 WL 2790098, at *10 (C.D. Cal. Jan. 30, 2020) (citation and quotation omitted); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (same).  Courts will consider not only the strength of the claims, but also the inherent risk with continued litigation.  *See In re Lenovo*, 2018 WL 6099948, at *8; *Contreras*, 2019 WL 8633664, at *8 (considering "risk of continued litigation … against the certainty and immediacy of recovery" (citation omitted)).  On top of that, courts also consider "whether a class action settlement contains an overly broad release of liability."  *Tinoco*, 2019 WL 4239130, at *10.

This settlement falls squarely within the Class Members' desired outcome. Plaintiffs brought their pay-discrimination claims to achieve a rate of pay equal to that afforded to players on the MNT and the settlement terms do just that—and not just for current WNT players, but for future ones too.  These terms will greatly improve the

15

day-to-day life of a WNT player by affording an equal rate of pay to that provided to MNT players, providing $22 million to the Class Members, and establishing an additional $ 2 million  fund to benefit Class Members in their post-playing career goals and charitable efforts.  While no punitive damages are being provided as part of the settlement, when balanced against the delay in receiving these benefits and the risk of ongoing litigation, the settlement is a very favorable outcome for the Classes.  *See Tinoco*, 2019 WL 4239130, at *9 (finding that when weighed against the risks and delay of continued litigation, "the benefits to the class fall within the range of reasonableness").

Indeed, at the time of the settlement, an appeal of this Court's summary judgment decision against the pay discrimination claims was pending before the Ninth Circuit and all parties faced uncertainty with respect to the outcome of that appeal.  In the face of that uncertainty, the settlement outcome, which provides for a substantial damages payment to the Classes and equal pay going forward, is well within the range of outcomes subject to approval by the Court.

**B.** **The Court should also preliminarily approve the settlement under the Equal Pay Act.**

Because the settlement meets the stricter Rule 23(e) standard for approval, it also passes muster under the Equal Pay Act/FLSA analysis.  *See Pan*, 2016 WL 9024896, at *10 (finding that because the proposed settlement passed muster under Rule 23 analysis, it also passed the standard governing FLSA collective actions).  The settlement represents a fair and reasonable resolution of a bona fide dispute over an FLSA claim.  First, a bona fide dispute exists because there is a legitimate question about the existence and extent of USSF's pay discrimination.  *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) ("A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability.")

Second, the settlement is fair and reasonable for the reasons set forth in sections VI.A.1-4.  The settlement is the result of arms-length negotiations between parties

AmericasActive:16658140.7

represented by experienced counsel.  *See Campanelli v. Hershey Co.*, No. C 08-1862 BZ, 2011 WL 3583597, at *1 (N.D. Cal. May 4, 2011) (finding settlement agreement fair and reasonable under the FLSA because of substantial payment that was the result of arms-length negotiations between parties represented by counsel).  Moreover, each FLSA Collective Action Member will receive notice and an opportunity to weigh in on the settlement.

> **C.     The proposed class notice is appropriate and should be approved.**

At the point of granting preliminary approval, the Court must also approve and direct notice "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B); *Low v. Trump University, LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018) ("The yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness." (citation omitted)).  Class notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted).  The notice should thus "provide sufficient information to allow class members to decide" how to proceed with respect to the settlement.  *Bey*, 2019 WL 7940584, at *12; *Tinoco*, 2019 WL 4239130, at *11 (notices sufficient "if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing" (citation omitted)).

The proposed class notice, filed concurrently herewith, meets all the requirements: it describes the litigation, it describes the terms of settlement, it is reasonably calculated to reach all affected Class Members and FLSA Collective Action Members through mail and email, and it explains how exactly any Class Members or FLSA Collective Action members can object to its approval.  It provides the clear guidance necessary to its recipients to decide how to proceed and should thus be approved.  *Contreras*, 2019 WL 8633664, at *11 (notice sufficient where it described,

17

AmericasActive:16658140.7

among others, the nature of action, terms of settlement, scope of classes, objection procedure, and final approval procedure).  Finally, courts have approved of notices similar to the notice here in settlements involving both Rule 23 classes and opt-in FLSA collectives.  *See, e.g.*, *Pan*, 2016 WL 9024896 at *10 (S.D. Cal. Dec. 5, 2016) (approving a single notice for an action involving Rule 23 class claims and Equal Pay Act FLSA collective claims).

> ### D.    The Court should approve the proposed scheduling order and set a date for a fairness hearing.

The parties propose the following schedule for distributing the class notice and for setting a final approval hearing:

| Event | Deadline |
|---|---|
| USSF to send class list | 14 calendar days after preliminary approval |
| Class counsel to send class notice, which includes link to dedicated website | 21 calendar days after receiving class list |
| Last day to file motion for attorneys' fees, costs, expenses, and service awards | 14 calendar days before objection period expires |
| Last day for class members to object | 30 calendar days after initial mailing of class notice |
| Last day to file motion for final approval | 14 calendar days after objection period expires |
| Final approval hearing | As the Court's schedule allows |

Under this schedule, the motion for final approval will be filed less than twelve weeks after the Court grants preliminary approval.  Plaintiffs request that the Court set a date for a final approval hearing at the time it grants preliminary approval so the final approval hearing information may be included in the notice to the Classes.

AmericasActive:16658140.7

## VII.  CONCLUSION

For all of these reasons, the Court should preliminarily approve the settlement, approve the content and plan for distribution of the class notice, and schedule a final approval hearing.

Dated: _____, 2022        WINSTON & STRAWN LLP

By: */s/ Jeffrey L. Kessler*
Jeffrey L. Kessler
David G. Feher
Cardelle B. Spangler
Diana Hughes Leiden
Jeanifer E. Parsigian
Lev Tsukerman

*Attorneys for Plaintiffs*

19

AmericasActive:16658140.7

# EXHIBIT 1

<u>**NOTICE OF CLASS AND COLLECTIVE ACTION SETTLEMENT**</u>

The United States District Court for the Central District of California has authorized this notice in the matter of *Alex Morgan, et al. v. United States Soccer Federation, Inc.*, Case No. 2:19-cv-01717-RGK-AGR.  This is not a solicitation from a lawyer.

**IF YOU ARE A CURRENT OR FORMER MEMBER OF THE U.S. SENIOR WOMEN'S NATIONAL SOCCER TEAM, THIS CLASS ACTION AND COLLECTIVE ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS.**

**PLEASE READ THIS NOTICE CAREFULLY.**

*Why Should You Read this Notice?*

A proposed settlement (the "Settlement") has been reached in the class and collective action lawsuit *Alex Morgan, et al. v. United States Soccer Federation, Inc.*, Case No. 2:19-cv-01717-RGK-AGR, which is pending in the United States District Court for the Central District of California (the "Action").  The purpose of this Notice of Class and Collective Action Settlement ("Notice") is to inform you of your rights and options in connection with the proposed Settlement. The proposed Settlement will resolve certain of the claims against defendant United States Soccer Federation, Inc. ("USSF").  The settlement agreement is included along with this Notice.

**AS A CLASS MEMBER OR COLLECTIVE ACTION MEMBER, YOU ARE ELIGIBLE TO RECEIVE RELIEF UNDER THE SETTLEMENT AND WILL BE BOUND BY THE RELEASE OF CLAIMS DESCRIBED IN THIS NOTICE AND THE SETTLEMENT AGREEMENT FILED WITH THE COURT.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Do Nothing and Receive the Benefits Conferred by the Settlement** | If you do nothing, you will be entitled to the benefits conferred by the Settlement.  You will also give up the right to pursue certain claims in a separate legal action against USSF.  See below for more information about the claims you will release. |
| **Object to the Settlement** | To object to the Settlement, you must submit a written statement explaining why you object to the Settlement. You may then explain your objections in person at the Settlement hearing. |

1

*What is this case about?*

Alex Morgan, Megan Rapinoe, Carli Lloyd, Becky Sauerbrunn, and twenty-four other members
of the United States Senior Women's National Soccer Team ("WNT") (called the "Plaintiffs" in
this notice) filed a lawsuit against USSF on March 8, 2019.  Plaintiffs alleged that USSF
discriminated against them on the basis of their sex by paying them less than their counterparts on
the United States Senior Men's National Soccer Team ("MNT") in violation of the Equal Pay Act
("EPA") and Title VII of the Civil Rights Act ("Title VII").  Plaintiffs also alleged that USSF
violated Title VII's prohibition on sex discrimination by denying them working conditions equal
to players on the MNT.

USSF denies that it did anything wrong and maintains that it has not discriminated against
Plaintiffs on the basis of sex in pay or working conditions.

On May 1, 2020, the Court ruled in favor of USSF on Plaintiffs' Title VII and EPA pay-
discrimination claims and on Plaintiffs' claim of unequal treatment for field surfaces under Title
VII.  Plaintiffs' working conditions claims for unequal hotel accommodations, charter flights, and
support personnel were not dismissed.  On December 1, 2020, the parties agreed in principle to
settle all of Plaintiffs' Title VII working-conditions claims ("Working Conditions Settlement").
On April 13, 2021, the Court granted final approval of the Working Conditions Settlement, and
entered final judgment in the case, including on Plaintiffs' Title VII and Equal Pay Act pay-
discrimination claims.  On April 14, 2021, Plaintiffs appealed the Court's ruling on Plaintiffs'
remaining Title VII and Equal Pay Act pay-discrimination claims to the Ninth Circuit of Appeals.
The parties' Settlement resolves both the trial court and appellate proceedings.

The parties disagree on the probable outcome of the case.  The Settlement is a compromise reached
after arm's-length negotiations between Plaintiffs and USSF through their attorneys.

*Who is affected by the proposed Settlement?*

On November 8, 2019, the Court certified an injunctive relief class and a damages class seeking
relief under Title VII for discrimination on the basis of sex in pay and working conditions as
follows:

> **Injunctive Relief Class**: All WNT players on the team at the date of the final judgment,
> or the date of the resolution of any appeals therefrom, whichever is later.

> **Damages Class**:  All WNT players who were members of the WNT at any time from June
> 11, 2015 through the date of class certification on November 8, 2019.

"Class" or "Class Members" means those members of the Title VII "Injunctive Relief Class" and
the Title VII "Damages Class," as defined by the Court's November 8, 2019 order.

The Court also conditionally certified a collective class under the Fair Labor Standards Act
("FLSA") for "[a]ll WNT players who were members of the WNT at any time from March 8, 2016
through [November 8, 2019]."  "FLSA Collective Action Members" means those members of the

FLSA Collective Action as defined by the Court's November 8, 2019 Order.  Written consents for players who decided to opt into the FLSA Collective Action have been filed with the court.

**_Who are the attorneys representing the parties?_**

The attorneys in this action are:

| **Class Counsel:** | **USSF's Counsel:** |
|---|---|
| Jeffrey L. Kessler | Jamie L. Wine |
| WINSTON & STRAWN LLP | LATHAM & WATKINS LLP |
| 200 Park Avenue | 885 Third Avenue |
| New York, New York 10166 | New York, NY 10022 |
| | |
| Cardelle Spangler | Michele D. Johnson |
| WINSTON & STRAWN LLP | LATHAM & WATKINS LLP |
| 35 West Wacker Drive | 650 Town Center Drive, 20th Floor |
| Chicago, Illinois 60601 | Costa Mesa, CA 92626 |

As a class member, you are being represented at no upfront cost by class counsel.

**_What are the Settlement Terms?_**

If the Court grants final approval of the Settlement, USSF will provide $22 million to the Class Members of the Damages Class and the FLSA Collective Action Members, deposit $2 million in an escrow account to benefit Class Members and the FLSA Collective Action Members in their pursuit of post-playing career goals and charitable efforts, and provide for equal pay going forward in exchange for a release of liability on Plaintiffs' pay-discrimination claims.  **The settlement funds will be distributed fairly among the Class Members of the Damages Class and FLSA Collective Action Members, as outlined further below.**  A brief description of these terms is set forth below:

Settlement Amount. USSF will provide $22 million to the Class Members of the Damages Class and FLSA Collective Actions Members ("$22 Million Payment"), paid in four equal interest-free installments to be divided among the Class Members of the Damages Class and the FLSA Collective Action Members, after subtracting Plaintiffs' attorneys' fees and litigation costs in a manner to be proposed by Plaintiffs and approved by the Court.  The first installment of the $22 million payment (in the amount of $5.5 million) will be paid by USSF into an escrow account to be established by class counsel within ten business days after the new collective bargaining agreement ("New CBA") is entered into, ratified by members of the U.S. Women's National Team Players Association ("USWNTPA"), and approved by the USSF Board of Directors.

USSF will also deposit $2 million into an escrow account ("$2 Million Fund") to benefit Class Members and the FLSA Collective Action Members in their pursuit of post-playing career goals and charitable efforts related to women's and girls' soccer.  The fund will be administered by a seven (7)-member Board with the USWNTPA appointing four (3) members, USSF appointing

three (3) members, and Class Counsel appointing one (1) member. The Board member Class Counsel appoints will vote only in the event needed to break a tie among the other Board members. The fund Board will establish procedures for Class Members and the FLSA Collective Action Members to apply for maximum financial awards of up to $50,000 for each Class Member and FLSA Collective Action Member, which may be used by that Class Member or FLSA Collective Action Member for school tuition, job training, coach training, referee licenses, training in high performance and sporting analytics, internships, investments in soccer-related charitable programs with which Class Members and FLSA Collective Action Members are involved, or other women's or girls' soccer-related activities of a Class Member or FLSA Collective Action Member after she has completed her playing career. The $2 million payment into the fund will be made by USSF ten business days after the New CBA is entered into and ratified by members of the USWNTPA.

Future Pay. USSF will provide an equal rate of pay to players, consistent with examples set forth in the Agreement, for members of the WNT and members of the MNT for players' responsibilities in connection with friendlies, all other games and tournaments, and in the Men's and Women's World Cups. The details of the equal pay to be received by WNT players are embodied in the New CBA. The settlement is contingent upon final approval by the Court.

You can read the terms in their entirety in the Settlement Agreement attached.

### What Claims Are Being Released by the Settlement?

Upon the Settlement becoming final, each class member shall be deemed to have unconditionally released USSF and certain other parties from certain claims.

The "Released Pay Claims" are the Equal Pay Act and Title VII claims asserted in the Action and any related gender pay-discrimination claims based on the same subject matter of the Action, through the date of the Court's final approval of this settlement, and any claims based on the terms of the New CBA that USSF discriminated against Plaintiffs on the basis of their sex by paying them a lower rate of pay than the players on the USMNT. Notwithstanding the language on the settlement checks, the Released Pay Claims exclude the plaintiff's claim under the Equal Pay Act asserted in *Solo v. United States Soccer Federation*, Case No. 3:18-cv-5215-JD.

Upon the Settlement becoming final, members of the Title VII Class Action and members of the FLSA Collective Action will be deemed to have unconditionally released USSF and its parent or subsidiary corporations; each of its present, former, or future owners, officers, directors, shareholders, partners, employees, insurers, successors, predecessors, contractors, assigns, and managing agents; and any and all present, former, or future agents, legal representatives, and/or attorneys of all the foregoing entities and individuals from the Released Pay Claims. FLSA Collective Action Members, other than the plaintiff in the currently pending case captioned *Solo v. United States Soccer Federation*, who cash their Settlement checks, including individuals who did not previously opt-in to the FLSA Collective Action, shall be deemed to have accepted this release. Class Members who did not previously opt-in to the FLSA Collective Action and who do not cash their Settlement checks will release any claims they may have under Title VII as described in the Settlement Agreement, but they will retain any claims they may have under the FLSA.

4

Upon the Settlement becoming final, USSF shall be deemed to have unconditionally released any and all counterclaims, known or unknown, that could have been asserted in response to the Complaint, through the date of the Court's final approval of this settlement.

**The Released Pay Claims do not include or cover any acts or omissions occurring <u>after</u> the Settlement becomes final.**

If you are entitled to a payment as described below, you will receive a check that states: This check is your payment in connection with the court-approved class action in *Alex Morgan et al. v. U.S. Soccer Federation*, Case No. 2:19-cv-01717-RGK (C.D. Cal.).  If you have not previously opted-in to the collective action, by signing or cashing this check, you are consenting to join the collective action and affirm your release of the claims under the Fair Labor Standards Act.

### *How will the $22 Million Payment be distributed?*

The $22 million settlement amount will be divided among the Class Members of the Damages Class and the FLSA Collective Action Members after subtracting Plaintiffs' attorneys' fees and litigation costs ("Damages Fund").  Each Class Member or FLSA Collective Action Member will receive a pro rata share of the Damages Fund based on their pro rata share of the total damages Plaintiffs sought in this lawsuit based on their expert's damages calculations.  In this lawsuit, Plaintiffs' expert calculated what each Class Member of the Damages Class or FLSA Collective Action Member would have received if she had been paid according to the terms of the U.S. Men's National Team's collective bargaining agreement.  Each Class Member of the Damages Class or FLSA Collective Action Member will receive the percentage of the Damages Fund equal to the percentage of the total damages that was attributable to her lost earnings.  Individual awards will be determined after the Court approves the Settlement and the distribution method described above.  The Settlement Administrator will determine the outcome of any objections to individual awards.

### *How much will the attorneys be paid?*

As is routine in class action and collective action cases, Class Counsel will request the Court for an award of attorneys' fees and expenses ("Fee and Expenses Award), which will be paid from the $22 Million Payment.  Class Counsel will ask the Court for the Fee Award based on their services in this litigation of 30% of the $22 Million Payment, in addition to expenses.

Any payment to the attorneys will be subject to Court approval, and the Court may award less than the requested amount.

### *What are my rights as a Class Member or Collective Action Member?*

As a Class Member or FLSA Collective Action Member, you may (A) do nothing and receive the benefits conferred to the class by the Settlement; or (B) object to the Settlement.

**Option A.  <u>Receive the Benefits Conferred by the Settlement.</u>**  If you wish to receive the benefits conferred by the Settlement, you need not take any action.  If the Court grants final approval of

the Settlement, the portion of the settlement amount will be distributed to you automatically and you will be bound by the release of the released claims as described above.

**Option B.  Object to the Settlement.**  If you believe the proposed Settlement is not fair, reasonable, or adequate in any way, you may object to it.  To object, you must file a written brief or statement of objection ("Notice of Objection") with the Clerk of the Court, United States District Court for the Central District of California, 255 East Temple Street, Los Angeles, CA 90012, and serve the Notice of Objection on class counsel and USSF's counsel at the following addresses:

Class Counsel
Cardelle Spangler
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601

USSF Counsel
Jamie L. Wine
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022

The Notice of Objection must be signed by you and state: (i) your full name, address, and telephone number; (ii) the dates of your employment at USSF; (iii) any Employee ID number; (iv) the basis for the objection; and (v) whether you intend to appear at the final approval hearing.  The Notice of Objection must be filed on or before [**30 days from mailing of notice**] and mailed to class counsel and counsel for USSF at the addresses listed above.  You can hire an attorney at your own expense to represent you in your objection or you may object yourself without an attorney.  Class counsel, however, will not represent you for purposes of objecting to the Settlement.  **Even if you submit an objection, you will be bound by the terms of the Settlement, including the release of released claims as set forth above, unless the Settlement is not finally approved by the Court.**

If you fail to make objections in the manner specified above, you will be deemed to have waived any objections and shall be foreclosed from making any objections (whether by appeal or otherwise) to the Settlement.  Class Members and FLSA Collective Action Members who do not submit a timely Notice of Objection will not have a right to appear at the final settlement approval hearing to have any objections heard by the Court.

***What is the next step in the approval of the Settlement?***

The Court will hold a hearing regarding the fairness, reasonableness, and adequacy of the proposed Settlement on [**INSERT DATE**] at [**INSERT TIME**] in Courtroom 850 of the Roybal Federal Building and Courthouse, located at 255 East Temple Street, Los Angeles, California, 90012 before the Hon. R Gary Klausner.  The final approval hearing may be postponed without further

notice to class members.  You are not required to attend the hearing to receive the benefits conferred to class members by the Settlement.

***How can I get additional information?***

Please review the Settlement Agreement, which is included along with this notice.  If you have questions, you may contact class counsel at the address listed above.

**PLEASE DO NOT CONTACT THE COURT DIRECTLY REGARDING THIS NOTICE OR THE SETTLEMENT.**