Jeffrey L. Kessler (*pro hac vice*)
jkessler@winston.com
David G. Feher (*pro hac vice*)
dfeher@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue, New York, NY 10166
Tel:   (212) 294-6700
Fax:   (212) 294-4700

Cardelle B. Spangler (*pro hac vice*)
cspangler@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive, Chicago, IL 60601
Tel:   (312) 558-5600
Fax:   (312) 558-5700

Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
Lev Tsukerman (SBN: 319184)
ltsukerman@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, Los Angeles, CA 90071
Tel:   (213) 615-1700
Fax:   (213) 615-1750

Jeanifer E. Parsigian (SBN: 289001)
jparsigian@winston.com
**WINSTON & STRAWN LLP**
101 California St., 35th Floor, San Francisco, CA 94111
Tel:   (491) 591-1000
Fax:   (491) 591-1400

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX MORGAN, et al., | **Case No. 2:19-CV-01717-RGK-AGR** |
| Plaintiffs, | Assigned to: Judge R. Gary Klausner |
| v. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND OF CLASS NOTICE** |
| UNITED STATES SOCCER FEDERATION, INC., | |
| Defendant. | Date:  July 25, 2022 |
| | Time: 9:00 a.m. |
| | Place: Courtroom: 850 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 25, 2022 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 850 of the above-titled court, located at 255 East Temple Street, Los Angeles, California 90012, plaintiffs Alex Morgan, et al. (collectively, "Plaintiffs") will and hereby do move the Court, under Federal Rule of Civil Procedure 23, for an order:

1. Granting preliminary approval of the proposed Class Action Settlement and Release of Pay Claims, attached as Exhibit A to the accompanying Declaration of Jeffrey L. Kessler;

2. Approving the Notice of Class and Collective Action Settlement, attached as Exhibit B to the accompanying Declaration of Jeffrey L. Kessler; and

3. Scheduling a final approval hearing and certain other dates in connection with a final approval of the parties' proposed settlement.

This motion is based upon this notice of motion, the accompanying memorandum of points and authorities, the accompanying declaration of Jeffrey L. Kessler, the proposed order filed concurrently herewith, the records and files in this action, and any other written or oral submissions that may be presented at or before the hearing on this motion.

Pursuant to Local Rule 7-3, Defendant consents to this motion.

Dated:  June 22, 2022            WINSTON & STRAWN LLP


                                 By:  */s/ Jeffrey L. Kessler*
                                      Jeffrey L. Kessler

                                 *Attorneys for Plaintiffs*

# MEMORANDUM OF POINTS AND AUTHORITIES
## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL BACKGROUND .................................................................................. 2

    A.   Plaintiffs' EEOC charges lead to this lawsuit. ........................................... 2

    B.   The parties engage in thorough, extensive fact and expert discovery. ...... 2

    C.   The parties engage in extensive motion practice. ...................................... 3

        1.   Plaintiffs' JPML motion and USSF's motion to transfer. ............... 3

        2.   The Court certifies three classes. .................................................... 4

        3.   The parties move for summary judgment. ........................................ 4

    D.   The parties settle the working-conditions claims and the Court grants approval. ................................................................................................... 5

    E.   Plaintiffs appeal the Court's summary judgment ruling to the Ninth Circuit. ...................................................................................................... 6

III.    PROPOSED SETTLEMENT ................................................................................. 6

    A.   The parties engage in extensive settlement negotiations. .......................... 6

    B.   The settlement terms. ................................................................................. 7

    C.   The scope of the release. ............................................................................ 9

IV.     THE PROCEDURE FOR CLASS NOTICE AND OBJECTIONS ....................... 10

V.      LEGAL STANDARD ........................................................................................... 11

    A.   The legal standard for Rule 23 class settlements. .................................... 11

    B.   The legal standard for Equal Pay Act collective action settlements. ....... 11

VI.     ARGUMENT ........................................................................................................ 12

    A.   The proposed settlement satisfies each of the conditions for preliminary approval under Rule 23. ............................................................................ 12

        1.   The settlement is the product of serious, informed, non-collusive negotiations. .................................................................................. 12

        2.   The settlement has no deficiencies. ............................................... 14

        3.   The agreement does not grant preferential treatment to either the class representatives or other class segments. ............................... 14

        4.   The settlement falls within the range of possible approval. .......... 15

    B.   The Court should also preliminarily approve the settlement under the Equal Pay Act. ......................................................................................... 16

    C.   The proposed class notice is appropriate and should be approved. .......... 17

    D.   The Court should approve the proposed scheduling order and set a date for a fairness hearing. ............................................................................... 18

VII.    CONCLUSION ..................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bey v. Mosaic Sales Sols. U.S. Operating Co., LLC*,
   No. 16-CV-6024-FMO-RAOx, 2019 WL 7940584 (C.D. Cal. June 20, 2019) ....................................................................................... 14, 17

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................................ 15

*Campanelli v. Hershey Co.*,
   No. 08-CV-1862-BZ, 2011 WL 3583597 (N.D. Cal. May 4, 2011) ................. 17

*Churchill Vill, L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ............................................................ 17

*Contreras v. Worldwide Flight Servs., Inc.*,
   No. 18-CV-6036-PSG-SSx, 2019 WL 8633664 (C.D. Cal. Sept. 30, 2019) ............................................................ 11, 14, 15, 18

*Gamble v. Boyd Gaming Corp.*,
   No. 13-CV-01009-JCM-PAL, 2017 WL 721244 (D. Nev. Feb. 23, 2017) ...................................................................................... 12

*Khanna v. Inter-Con Sec. Sys., Inc.*,
   No. S-09-2214-KJM, 2013 WL 1193485 (E.D. Cal. Mar. 22, 2013) ............... 12

*In re Lenovo Adware Litig.*,
   No. 15-MD-02624-HSG, 2018 WL 6099948 (N.D. Cal. Nov. 21, 2018) ...................................................................................... 12, 15

*Low v. Trump Univ., LLC*,
   881 F.3d 1111 (9th Cir. 2018) .......................................................... 17

*Nen Thio v. Genji, LLC*,
   14 F. Supp. 3d 1324 (N.D. Cal. 2014) ................................................ 11

*Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
   No. 19-CV-620-JGB-KKx, 2020 WL 5044418 (C.D. Cal. May 7, 2020) ...................................................................................... 11

*Pan v. Qualcomm Inc.*,
  No. 16-CV-01885-JLS-DHB, 2016 WL 9024896 (S.D. Cal. Dec. 5,
  2016) .......................................................................................11, 12, 16, 18

*Richards v. Chime Fin., Inc.*,
  No. 19-CV-06864-HSG, 2020 WL 6318713 (N.D. Cal. Oct. 28, 2020) ...........15

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .................................................................12

*Selk v. Pioneers Mem'l Healthcare Dist.*,
  159 F. Supp. 3d 1164 (S.D. Cal. 2016) ..............................................16

*Sherman v. CLP Res., Inc.*,
  No. 12-CV-11037-GW-PLAx, 2020 WL 2790098 (C.D. Cal. Jan. 30,
  2020) ....................................................................................................15

*Smith v. Experian Info. Sols., Inc.*,
  No. 17-CV-00629-CJC-AFM, 2020 WL 4592788 (C.D. Cal. Aug. 10,
  2020) ....................................................................................................11

*Spann v. J.C. Penney Corp.*,
  314 F.R.D. 312 (C.D. Cal. 2016)..................................................... 14, 15

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007)...............................................15

*Tinoco v. Hajoca Corp.*,
  No. 17-CV-6187-FMO-ASx, 2019 WL 4239130 (C.D. Cal. June 18,
  2019) .............................................................................14, 15, 16, 17

**Statutes**

29 U.S.C. § 216(b) ......................................................................................11

29 U.S.C. § 256 ..........................................................................................11

**Other Authorities**

Fed. R. Civ. P. 23 ..................................................................................*passim*

# I.    INTRODUCTION

Plaintiffs Alex Morgan, Becky Sauerbrunn, Carli Lloyd, and Megan Rapinoe, on behalf of all Class Members[1] and all FLSA Collective Action Members[2], respectfully seek preliminary approval of a settlement with defendant United States Soccer Federation, Inc. ("USSF") with respect to the pay-discrimination claims in the case. The parties have agreed to settle Plaintiffs' pay gender discrimination claims against USSF under Title VII and the Equal Pay Act, which will resolve this case in its entirety.[3]

USSF has agreed to provide $22 million to Class Members and FLSA Collective Action Members and an additional $2 million for a board-administered fund to benefit Class Members and FLSA Collective Action Members in their pursuit of post-playing career goals and charitable efforts related to women's and girls' soccer.   Most importantly, USSF has agreed, going forward, to pay members of the United States Senior Women's National Team ("WNT") at a rate of pay equal to that afforded to members of the United States Senior Men's National Soccer Team ("MNT") for players' responsibilities in connection with friendlies, all other games and tournaments, and in the Men's and Women's World Cups.

The Court should grant preliminary approval of the parties' settlement for the following reasons:

First, this settlement is the culmination of numerous negotiations and talks between the parties dating back to 2016.  It is also the result of extensive fact and expert discovery followed by further negotiations, multiple formal mediations, and further communications involving the WNT players, key leaders at USSF, the U.S. Women's National Team Players Association ("USWNTPA"), and counsel.     Second, the

---

[1] "Class" or "Class Members" means those members of the Title VII "Injunctive Relief Class" and the Title VII "Damages Class," as defined by the Court's November 8, 2019 Order Re: Plaintiffs' Motion for Class Certification (Dkt. No. 64).

[2] "FLSA Collective Action Members" means those members of the FLSA Collective Action as defined by the Court's November 8, 2019 Order Re: Plaintiffs' Motion for Class Certification (Dkt. No. 64).

[3] The parties previously settled Plaintiffs' working-conditions claims, and that settlement was approved by the Court. *See* Dkt. 305.

settlement funds will be distributed fairly among the Class Members and FLSA Collective Action Members based on their play within the class periods.  Nor are there any incentive awards for class representatives.  Third, the settlement has no obvious deficiencies, as Plaintiffs are satisfied that it achieves their goal of equal pay.  And fourth, because it achieves the goal that Plaintiffs sought in filing the pay-discrimination claims, the settlement falls within the range of possible approval.

For these reasons, as detailed below, the Court should grant preliminary approval of the settlement, approve the class notice, and schedule a final approval hearing.

## II.   FACTUAL BACKGROUND

### A.   Plaintiffs' EEOC charges lead to this lawsuit.

Plaintiffs are professional soccer players and members of the WNT.  In April 2016, the four class representatives here, Alex Morgan, Megan Rapinoe, Becky Sauerbrunn, and Carli Lloyd, each filed a charge of discrimination against their employer, USSF, with the Equal Employment Opportunity Commission (EEOC) alleging sex-based discrimination.  Dkt. 2.  The EEOC investigated the charges and ultimately issued four right to sue letters in February 2019. *Id*.

On March 8, 2019, Plaintiffs filed their collective and class action complaint against USSF asserting claims under the Equal Pay Act and Title VII based on discrimination in pay and working conditions, including with respect to field surfaces, personnel support, and hotel and travel accommodations.  Dkt. 1.  The working-conditions claims were filed exclusively under Title VII, because the Equal Pay Act, which is part of the Fair Labor Standards Act ("FLSA"), only applies to pay-discrimination claims. *See id*.  USSF answered, denying liability.  Dkt. 42.

### B.   The parties engage in thorough, extensive fact and expert discovery.

The class representatives vigorously pursued their claims through extensive discovery.  From August 2019 through February 2020, Plaintiffs served five sets of document requests containing 67 separate requests for production and 16 interrogatories.  Kessler Decl. ¶ 11.  The parties produced tens of thousands of

2

documents. *Id*. They engaged in extensive negotiations regarding the scope and substance of discovery and raised many discovery disputes with the Court during the process. *Id.*

On top of written discovery, the two sides deposed nearly twenty fact witnesses. *Id.* ¶ 12. Plaintiffs deposed seven USSF current or former employees, including former USSF Presidents Carlos Cordeiro and Sunil Gulati and Managing Director of Administration Tom King. *Id.* Plaintiffs also deposed key third-party sponsors Visa and Coke. *Id.* Likewise, USSF deposed ten witnesses, including all four class representatives and Becca Roux, the WNT union's Executive Director. *Id.*

Each side also retained highly credentialed experts. Plaintiffs retained three experts: Dr. Finnie Cook, an economist, Dr. Caren Goldberg, a human resource expert and consultant, and Dr. Roger Noll, a well-published economist and economics professor at Stanford University. *Id.* ¶ 14. On the other side, USSF also retained three experts: Phillip Miscimarra, a partner at the national law firm Morgan, Lewis & Bockius LLP, Carlyn Irwin, a senior advisor with the economics consulting firm Cornerstone Research, and Dr. Justin McCrary, an economist and professor at Columbia University. *Id.* ¶ 15. Each expert was deposed. *Id.* ¶ 13.

In the end, thousands of hours were ultimately spent on discovery, as the parties carefully developed the records on their respective claims and defenses. *Id.* ¶ 10.

**C.    The parties engage in extensive motion practice.**

**1.    Plaintiffs' JPML motion and USSF's motion to transfer.**

Concurrent with the filing of the complaint, Plaintiffs filed a motion with the Judicial Panel on Multidistrict Litigation to transfer *Solo v. United States Soccer Federation*, Case No. 3:18-CV-05215-JD, to this Court from the Northern District of California. *See* Dkt. 9. USSF contested the motion with the JPML and it was ultimately denied. Dkt. 23.

Following that denial, USSF moved this Court for an order transferring venue to the Northern District of California based on the first-to-file rule.  *See* Dkt. 46.  The Court denied USSF's motion and retained the case.  *See* Dkt. 56.

### 2.    The Court certifies three classes.

In September 2019, Plaintiffs moved to certify two classes under Rule 23 and one collective class under the Equal Pay Act.  *See* Dkt. 64.  This Court granted Plaintiffs' motion and certified both a Rule 23(b)(2) injunctive relief class and a Rule 23(b)(3) damages class as follows:

> **Injunctive Relief Class:** All WNT players on the team at the date of the final judgment, or the date of the resolution of any appeals therefrom, whichever is later.

> **Damages Class:**  All WNT players who were members of the WNT at any time from [June 11, 2015] through the date of class certification.

Dkts. 98 at 14–15; Dkt. 123.  The Court also conditionally certified a collective class under 29 U.S.C. § 216(b) for "[a]ll WNT players who were members of the WNT at any time from March 8, 2016 through the present."  Dkt. 98 at 15.  Players who decided to opt into the Equal Pay Act collective action filed written consent.  *See* Dkts. 6, 10, 16, 33, 72, 129, 130, 131, 132, 147, 150, 153, 155, 159.

The Rule 23(b) classes both seek relief under Title VII.  The injunctive relief class seeks equal working conditions on a going-forward basis, while the damages class seeks, among others, back pay and punitive damages for pay discrimination.  The collective class too seeks back pay, but only with respect to pay-discrimination claims. In certifying these classes, the Court appointed Alex Morgan, Megan Rapinoe, Carli Lloyd, and Becky Sauerbrunn as class representatives and Winston & Strawn LLP as class counsel.  Dkt. 98 at 15.

### 3.    The parties move for summary judgment.

The parties filed cross summary judgment motions in February 2020.  *See* Dkts. 170, 171.  Plaintiffs moved for summary judgment on their pay-discrimination claims

under both the Equal Pay Act and Title VII, while USSF moved for summary judgment on all of Plaintiffs' claims. *See id*. On May 1, 2020, the Court denied Plaintiffs' summary judgment motion and granted in part USSF's motion. Dkt. 250. The Court ruled for USSF on Plaintiffs' Title VII and Equal Pay Act pay-discrimination claims and on Plaintiffs' claim of unequal treatment for field surfaces. *Id.* at 21, 28. The Court denied USSF summary judgment on Plaintiffs' working-conditions claims relating to unequal treatment with respect to hotel accommodations, charter flights, and support personnel. *Id.* at 31.

After the summary judgment order issued, Plaintiffs moved for entry of judgment under Rule 54(b) so that they could immediately appeal the Court's ruling. Dkt. 253. Plaintiffs simultaneously moved to stay the upcoming trial on the remainder of their claims pending resolution of their Rule 54(b) motion. Dkt. 254. This Court denied both motions. Dkts. 258, 266. Although the trial on these remaining claims was ultimately postponed multiple times due to the global COVID-19 pandemic, the parties negotiated, drafted, and exchanged various pretrial filings, including witness lists, exhibit lists, and jury instructions. *See* Kessler Decl. ¶ 16.

### D.   The parties settle the working-conditions claims and the Court grants approval.

On December 1, 2020, the parties agreed in principle to settle all of Plaintiffs' Title VII working-conditions claims ("Working Conditions Settlement").[4] Dkt. 276. The crux of the agreement was that USSF would implement revised charter flight, venue selection, professional support, and hotel accommodation policies intended to create equality with the MNT moving forward in exchange for a release of liability on Plaintiffs' working-conditions claims. *Id*. Plaintiffs moved for preliminary approval of the Working Conditions Settlement, and the Court granted preliminary approval on January 11, 2021. Dkts. 276, 293. Plaintiffs subsequently filed a motion for final

---

[4] The Working Conditions Settlement did not redress Plaintiffs' pay-discrimination claims, the dismissal of which Plaintiffs later appealed. *See* Dkt. 308.

approval of the Working Conditions Settlement.  Dkt. 297.  On April 13, 2021, the Court granted final approval of the Working Conditions Settlement, and entered final judgment in the case, including on Plaintiffs' Title VII and Equal Pay Act pay-discrimination claims.  Dkt. 305.

### E.   Plaintiffs appeal the Court's summary judgment ruling to the Ninth Circuit.

On April 14, 2021, Plaintiffs appealed the Court's summary judgment ruling on Plaintiffs' Title VII and Equal Pay Act pay-discrimination claims. Dkt. 308.  The appeal was fully briefed and set for oral argument in the Ninth Circuit Court of Appeals on March 7, 2022.  *See* Kessler Decl. ¶ 6.  On February 22, 2022, the parties filed a joint motion to remove the appeal from the oral argument calendar and place the appeal in abeyance because the parties agreed to a settlement in principle on the Title VII and Equal Pay Act pay-discrimination claims. *See* Kessler Decl. ¶ 8.  On February 24, 2022, the Ninth Circuit granted the joint motion to remove the appeal from the oral argument calendar, staying further proceedings pending finalization of the parties' settlement in principle.  Dkt. 314.

### III.   PROPOSED SETTLEMENT

### A.   The parties engage in extensive settlement negotiations.

Plaintiffs and USSF have had settlement discussions dating back as far as the EEOC's investigation of Plaintiffs' charges in 2016, in an attempt to resolve this matter prior to litigation.  Kessler Decl. ¶ 17.  After this lawsuit was filed, they continued to engage in settlement negotiations, formally and informally, including in a formal two-day mediation in August 2019 with both class representatives and senior USSF officials present.  *Id.*  The parties engaged in further informal settlement communications through the close of discovery and pre-trial preparation.  *Id.*

Following the Court's summary judgment ruling and multiple delays of the trial date due to COVID-19, the parties' settlement negotiations intensified.  *Id.* ¶ 18.  After approval of the Working Conditions Settlement and the subsequent appeal of the pay-

discrimination claims, the parties continued to engage in extensive discussions to resolve Plaintiffs' pay-discrimination claims. *Id.* ¶ 19. The parties engaged in a full-day mediation in May 2021 exclusively relating to potential settlement of Plaintiffs' pay-discrimination claims. *Id.* ¶ 20. While the parties did not reach a settlement at the mediation, they continued to discuss a potential settlement of Plaintiffs' pay-discrimination claims, with the class representatives again playing an important role during negotiations. *Id.* The parties engaged in extensive informal negotiation through regular calls and correspondence, involving the class representatives, key USSF officials, and counsel. *Id.* ¶ 21. The USWNTPA and their counsel were also involved in these discussions, particularly as they related to ongoing collective bargaining negotiations between the WNT and USSF. *Id.* The parties exchanged multiple drafts of a proposed term sheet before coming to a settlement in principle, and then negotiated a full settlement agreement based on the term sheet. *Id.* ¶ 22. The negotiations were led by class counsel with decades of collective experience with sports class action and employment matters. *See* Dkt. 64-1 ¶¶ 5–15 (describing class counsel's experience in similar matters). USSF too has been led by two prominent national law firms during negotiations, currently Latham & Watkins LLP and previously Seyfarth Shaw LLP. Kessler Decl. ¶ 22.

Plaintiffs sought a rate of pay equal to that afforded to members of the MNT. *See* Kessler Decl. ¶ 23. During these months of talks, the parties spent significant time and effort negotiating and finalizing an agreement that Plaintiffs believe would provide for equal pay. *See id.* In reaching this settlement, Plaintiffs and their counsel recognized the immediate benefit to settling the pay-discrimination claims while avoiding the inherent uncertainty, delay, expense, and risk of the appeal and continued litigation. *Id.*

## B.      The settlement terms.

The parties have agreed in principle to settle all of Plaintiffs' Title VII and Equal Pay Act pay-discrimination claims. *See generally* Kessler Decl., Ex. A. The crux of the agreement is that USSF will provide $22 million to the Class Members and the

FLSA Collective Action Members, $2 million in an escrow account to benefit Class Members and the FLSA Collective Action Members in their pursuit of post-playing career goals and charitable efforts, and equal pay going forward in exchange for a release of liability on Plaintiffs' pay-discrimination claims. Kessler Decl., Ex. A ¶¶ 29–31. A brief description of these terms is set forth below:

Settlement Amount. USSF will provide $22 million to the Class Members and FLSA Collective Actions Members, paid in four equal interest-free installments to be divided among the Class Members and the FLSA Collective Action Members, after subtracting Plaintiffs' attorneys' fees and litigation costs in amounts and as allocated as specified by Plaintiffs, and in a manner to be proposed by Plaintiffs and approved by the Court. Kessler Decl., Ex. A ¶ 29(a). The first installment of the $22 million payment (in the amount of $5.5 million) was paid by USSF into an escrow account established by class counsel on June 1, 2022. *See id.*

USSF deposited $2 million into an escrow account on June 1, 2022 to be used to benefit Class Members and the FLSA Collective Action Members in their pursuit of post-playing career goals and charitable efforts related to women's and girls' soccer. *See* Kessler Decl., Ex. A ¶ 29(b). The fund Board will establish procedures for Class Members and the FLSA Collective Action Members to apply for maximum financial awards of up to $50,000 for each Class Member and FLSA Collective Action Member, which may be used by that Class Member or FLSA Collective Action Member for school tuition, job training, coach training, referee licenses, training in high performance and sporting analytics, internships, investments in soccer-related charitable programs with which Class Members and FLSA Collective Action Members are involved, or other women's or girls' soccer-related activities of a Class Member or FLSA Collective Action Member after she has completed her playing career. *Id.*

Future Pay. USSF and the USWNTPA entered into a new collective bargaining agreement ("New CBA"), which has been approved by USSF's Board and ratified by the members of the USWNTPA. The New CBA provides an equal rate of pay,

consistent with examples set forth in the agreement, for members of the WNT and members of the MNT for players' responsibilities in connection with friendlies, all other games and tournaments, and in the Men's and Women's World Cups.  *See* Kessler Decl., Ex. A ¶ 30.  The details of the rates of pay are embodied in the New CBA.  *See* Kessler Decl., Ex. A ¶ 30(b).

### C.   The scope of the release.

In exchange for USSF's agreement to the settlement amount and equal pay going forward, Plaintiffs agreed to release their pay-discrimination claims against USSF. Kessler Decl., Ex. A ¶ 31.  More specifically, Class Members agreed to release USSF from the "any and all claims, known or unknown, arising through the date of Final Approval, (i) that were asserted in the Complaint and/or that could have been asserted in the Complaint based on the facts and/or allegations alleged in the Complaint or (ii) that, based on the terms of the New CBA, USSF discriminated against Plaintiffs on the basis of their sex by paying them a lower rate of pay than the players on the USMNT. However … this provision will not constitute or affect a release of the plaintiff's claim under the Equal Pay Act asserted in *Solo v. United States Soccer Federation*, Case No. 3:18-cv-5215-JD."  Kessler Decl., Ex. A ¶ 18.

Because there are certain members of the Title VII class that did not opt in to the FLSA collective action, the settlement notice and the settlement checks will advise class members that "[i]f you have not previously opted-in to the collective action, by signing or cashing this check, you are consenting to join the collective action and affirm your release of the claims under the Fair Labor Standards Act."  Kessler Decl., Ex. A ¶ 32. This Court approved a similar release and notice to members of a Rule 23 class who had not opted in to a FLSA collective action in *Ernst v. Zogsports Holdings LLC*.  *See* Case No. 18-CV-09043-RGK, Dkts. 64, 70.  The language of the notice makes clear that they may choose not to opt in to the FLSA collective action and, thereby not release any claims they may have under the FLSA, by choosing not to sign or cash the check.

Plaintiffs will be deemed by operation of an order granting final approval to have agreed not to sue or otherwise make a claim against USSF for any released claims arising or accruing at any time before date of final approval.  Kessler Decl., Ex. A ¶ 31. The release does not affect any claims *other* than pay-discrimination claims accruing at any time.  *Id*.

USSF also agreed to release Class Members and FLSA Collective Action Members from any and all counterclaims, known or unknown, that could have been asserted in response to the Complaint, through the date of final approval.  Kessler Decl., Ex. A ¶ 33.

## IV.   THE PROCEDURE FOR CLASS NOTICE AND OBJECTIONS

The parties agreed that within fourteen days of preliminary approval, USSF will send class counsel a full and complete class list.  Kessler Decl., Ex. A ¶ 36.  The class list will include each class member's full name, last known home address, last known email address, and dates of active employment with USSF as a class member.  Kessler Decl., Ex. A ¶ 7.  Within 21 days thereafter, class counsel will both mail and email copies of the agreed-upon class notice to all Class Members and FLSA Collective Action Members.  Kessler Decl., Ex. A ¶ 37, Ex. B (Class Notice).  The class notice will advise Class Members and FLSA Collective Action Members who wish to object to the settlement that they can file a written objection with the Court within thirty days of mailing.  Kessler Decl., Ex. A ¶ 38, Ex. B.  The notice will also advise that Class Members or FLSA Collective Action Members who fail to object will waive any such challenges.  Kessler Decl., Ex. A ¶ 38, Ex. B.  The class notice also details what exactly any objection should contain, including the Class Member's or FLSA Collective Action Member's name, dates of USSF employment, basis for the objection, and whether the Class Member or FLSA Collective Action Member intends to appear at the final approval hearing.  Kessler Decl., Ex. A ¶ 38, Ex. B.  The proposed class notice informs Class Members and FLSA Collective Action Members that class counsel will make a request for $6.6 million in attorneys' fees, plus approximately $1,319,127 in expenses

10

and \$50,000 in anticipated settlement administration costs—amounts subject to the Court's approval—and that those who wish to object to the request can file a written objection with the Court.  Kessler Decl., Ex. A ¶ 38, Ex. B.

## V.    LEGAL STANDARD

### A.    The legal standard for Rule 23 class settlements.

At the preliminary stage, a court should grant approval of class settlement if it "[(1)] appears to be the product of serious, informed, non-collusive negotiations, [(2)] has no obvious deficiencies, [(3)] does not improperly grant preferential treatment to class representatives or segments of the class, and [(4)] falls within the range of possible approval." *Smith v. Experian Info. Sols., Inc.*, No. 17-CV-00629-CJC-AFM, 2020 WL 4592788, at *5 (C.D. Cal. Aug. 10, 2020) (citation omitted).  At this point, "[t]he settlement need only be <u>potentially</u> fair, as the [c]ourt will make a final determination of its adequacy at the hearing on the Final Approval." *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. 19-CV-620-JGB-KKx, 2020 WL 5044418, at *2 (C.D. Cal. May 7, 2020) (emphasis in original) (citation omitted).  This Court need only determine at this stage that "the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final approval hearing." *Contreras v. Worldwide Flight Servs., Inc.*, No. 18-CV-6036-PSG-SSx, 2019 WL 8633664, at *5 (C.D. Cal. Sept. 30, 2019).

### B.    The legal standard for Equal Pay Act collective action settlements.

The Equal Pay Act is part of the FLSA and incorporates its enforcement mechanisms.  29 U.S.C. §§ 216(b), 256.  Unlike the analysis of a settlement under Rule 23, the Ninth Circuit has not provided explicit direction for assessing the fairness of a proposed FLSA settlement.  *See Pan v. Qualcomm Inc.*, No. 16-CV-01885-JLS-DHB, 2016 WL 9024896, at *9 (S.D. Cal. Dec. 5, 2016).  But district courts in this Circuit consider whether the settlement is a fair and reasonable resolution of a bona fide dispute. *See Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014).  Once the court determines that a bona fide dispute exists, it applies the Rule 23(e) factors to assess

the fairness of the proposed settlement, while recognizing that some factors do not apply because of the inherent differences between class actions and "opt-in" FLSA actions. *Khanna v. Inter-Con Sec. Sys., Inc.*, No. S-09-2214-KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). "The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement." *Gamble v. Boyd Gaming Corp.*, No. 13-CV-01009-JCM-PAL, 2017 WL 721244, at *4 (D. Nev. Feb. 23, 2017). Courts have found that if the settlement "passes muster" under the Rule 23 analysis, it also passes the standard governing FLSA collective actions. *Pan*, 2016 WL 9024896, at *10.

## VI.  ARGUMENT

### A.  The proposed settlement satisfies each of the conditions for preliminary approval under Rule 23.

All the requirements for preliminary approval under Rule 23 are met here.

#### 1.  The settlement is the product of serious, informed, non-collusive negotiations.

The lengthy, arm's-length negotiations through which the settlement was reached favors approval. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). Indeed, "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). This settlement is the product of serious, informed, negotiations, which afford it the presumption of fairness.

The parties first discussed settlement of both Plaintiffs' pay-discrimination and working-conditions claims more than five years ago when the dispute was before the EEOC. Kessler Decl. ¶ 17. After this lawsuit was filed, the parties had additional formal and informal discussions regarding potential settlement, including with the

assistance of a mediator. *Id*. The Court's summary judgment order led to continued discussions as the parties tried to resolve Plaintiffs' working-conditions claims. Kessler Decl. ¶ 18. After approval of the Working Conditions Settlement and the subsequent appeal of the pay-discrimination claims, the parties continued to engage in extensive discussions to resolve Plaintiffs' pay-discrimination claims. *Id*. ¶ 19. The parties engaged in a full-day mediation in May 2021 exclusively relating to potential settlement of Plaintiffs' pay-discrimination claims. *Id*. ¶ 20. While the parties did not reach a settlement at the mediation, they continued to discuss a potential settlement of Plaintiffs' pay-discrimination claims, with the class representatives again playing an important role during negotiations. *Id*. The parties engaged in extensive informal negotiation through regular calls and correspondence, involving the class representatives, key USSF officials, and counsel. *Id*. ¶ 21. The USWNTPA and their counsel were also involved in these discussions, particularly as they related to ongoing collective bargaining negotiations between the WNT and USSF. *Id*. The parties exchanged multiple drafts of a proposed term sheet before coming to a settlement in principle, and then negotiated a full settlement agreement based on the term sheet. *Id*. ¶ 22. The negotiations were led by class counsel with decades of collective experience with sports class action and employment matters. *See* Dkt. 64-1 ¶¶ 5–15. USSF too has been led by two prominent national law firms during negotiations.

At all times, Plaintiffs have been well informed on the merits of both their claims and USSF's defenses. Indeed, many months and countless hours were spent in discovery, with both sides nearly exhausting the number of depositions allowed under the Federal Rules and exchanging tens of thousands of documents. Plaintiffs' goal here was to build their case and better understand both the strengths and weaknesses of their claims. The class representatives were personally involved in the settlement negotiations and each of them has agreed to these settlement terms. Simply put, the parties' settlement is the culmination of substantial litigation and constant back-and-forth discussions by well-informed counsel, parties, and class representatives. And

where, as here, Plaintiffs' substantial efforts to develop their case are accompanied by extensive, arm's-length negotiations and no evidence of any collusion, the facts favor court approval. *See, e.g.*, *Contreras*, 2019 WL 8633664, at *8 (this factor met where parties spent substantial time and effort on fact discovery and settlement negotiations thus "suggest[ing] that there was no collusion" and that parties were "well informed and had sufficient information to assess the merits of their claims"); *Bey v. Mosaic Sales Sols. U.S. Operating Co., LLC*, No. 16-CV-6024-FMO-RAOx, 2019 WL 7940584, at *9 (C.D. Cal. June 20, 2019) (factor met where parties "had a sound basis for measuring the terms of the settlement against the risks of continued litigation" and where there was no evidence of fraud or collusion); *Tinoco v. Hajoca Corp.*, No. 17-CV-6187-FMO-ASx, 2019 WL 4239130, at *9 (C.D. Cal. June 18, 2019) (same).

### 2.     The settlement has no deficiencies.

Both sides agree that the settlement is fair, adequate, and reasonable to the Class Members with no obvious deficiencies.  USSF has agreed to provide $22 million to the Class Members, deposit $2 million in an escrow account to benefit Class Members' post-playing career goals and charitable efforts, and provide equal pay going forward. Plaintiffs believe that the settlement accomplishes Plaintiffs' goal of equalizing their rate of pay with that of their male counterparts.  It confers immediate and substantial benefit to Class Members and avoids the inherent delay and risk of continued litigation. The settlement funds will be distributed fairly based on each class member's play with the WNT, and its release is limited only to the pay-discrimination claims that occurred through the date of final approval based on the terms of the New CBA.

### 3.     The agreement does not grant preferential treatment to either the class representatives or other class segments.

In considering this factor, courts examine whether there is a significant disparity in treatment between class representatives and other members such that a conflict of interest exists.  *See Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 328 (C.D. Cal. 2016). Courts will look for signs that "the 'self-interests' of 'certain class members [have]

14

1   infect[ed] negotiations.'" *Richards v. Chime Fin., Inc.*, No. 19-CV-06864-HSG, 2020

2   WL 6318713, at *9 (N.D. Cal. Oct. 28, 2020) (citing *In re Bluetooth Headset Prods.*

3   *Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).  In doing so, courts consider "the actions

4   … taken to protect the interests of the class, the degree to which the class has benefitted

5   from those actions, and the amount of time and effort … expended in pursuing the

6   litigation." *Spann*, 314 F.R.D. at 328 (citation omitted).

7          This factor is met because each Class Member will receive an award based on

8   her play with the WNT during the class periods.  Further, Class Members who are

9   currently members of the WNT will benefit from receiving an equal rate of pay as that

10  afforded to members of the MNT, and all Class Members will benefit from the $2

11  million fund.  Finally, there are no incentive awards or other different treatment for the

12  class representatives.   Simply put, there are no conflicts of interest, or even the

13  possibility of one.

14                    **4.      The settlement falls within the range of possible approval.**

15         When assessing this factor, "courts focus on substantive fairness and adequacy

16  [of the settlement] and consider plaintiffs' expected recovery balanced against the value

17  of the settlement offer." *Sherman v. CLP Res., Inc.*, No. 12-CV-11037-GW-PLAx,

18  2020 WL 2790098, at *10 (C.D. Cal. Jan. 30, 2020) (citation and quotation omitted);

19  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (same).

20  Courts will consider not only the strength of the claims, but also the inherent risk with

21  continued litigation. *See In re Lenovo*, 2018 WL 6099948, at *8; *Contreras*, 2019 WL

22  8633664, at *8 (considering "risk of continued litigation … against the certainty and

23  immediacy of recovery" (citation omitted)).   On top of that, courts also consider

24  "whether a class action settlement contains an overly broad release of liability." *Tinoco*,

25  2019 WL 4239130, at *10.

26         This settlement falls squarely within the Class Members' desired outcome.

27  Plaintiffs brought their pay-discrimination claims to achieve a rate of pay equal to that

28  afforded to players on the MNT and the settlement terms do just that—and not just for

current WNT players, but for future ones too.  These terms will greatly improve the
day-to-day life of a WNT player by affording an equal rate of pay to that provided to
MNT players, providing $22 million to the Class Members, and establishing an
additional $ 2 million fund to benefit Class Members in their post-playing career goals
and charitable efforts.  While no punitive damages are being provided as part of the
settlement, when balanced against the delay in receiving these benefits and the risk of
ongoing litigation, the settlement is a very favorable outcome for the Classes.  *See
Tinoco*, 2019 WL 4239130, at *9 (finding that when weighed against the risks and delay
of continued litigation, "the benefits to the class fall within the range of
reasonableness").

Indeed, at the time of the settlement, an appeal of this Court's summary judgment
decision against the pay-discrimination claims was pending before the Ninth Circuit
and all parties faced uncertainty with respect to the outcome of that appeal.  In the face
of that uncertainty, the settlement outcome, which provides for a substantial damages
payment to the Classes and equal pay going forward, is well within the range of
outcomes subject to approval by the Court.

**B.** **The Court should also preliminarily approve the settlement under the
Equal Pay Act.**

Because the settlement meets the stricter Rule 23(e) standard for approval, it also
passes muster under the Equal Pay Act/FLSA analysis.  *See Pan*, 2016 WL 9024896, at
*10 (finding that because the proposed settlement passed muster under Rule 23 analysis,
it also passed the standard governing FLSA collective actions).   The settlement
represents a fair and reasonable resolution of a bona fide dispute over an FLSA claim.
First, a bona fide dispute exists because there is a legitimate question about the existence
and extent of USSF's pay discrimination.  *Selk v. Pioneers Mem'l Healthcare Dist.*, 159
F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) ("A bona fide dispute exists when there are
legitimate questions about the existence and extent of Defendant's FLSA liability."
(citation and quotation omitted)).

Second, the settlement is fair and reasonable for the reasons set forth in sections VI.A.1–4.   The settlement is the result of arms-length negotiations between parties represented by experienced counsel.  *See Campanelli v. Hershey Co.*, No. 08-CV-1862-BZ, 2011 WL 3583597, at *1 (N.D. Cal. May 4, 2011) (finding settlement agreement fair and reasonable under the FLSA because of substantial payment that was the result of arms-length negotiations between parties represented by counsel).  Moreover, each FLSA Collective Action Member will receive notice and an opportunity to weigh in on the settlement.

### C.    The proposed class notice is appropriate and should be approved.

At the point of granting preliminary approval, the Court must also approve and direct notice "in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B); *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018) ("The yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness." (citation omitted)).  Class notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted). The notice should thus "provide sufficient information to allow class members to decide" how to proceed with respect to the settlement. *Bey*, 2019 WL 7940584, at *12; *Tinoco*, 2019 WL 4239130, at *11 (notices are sufficient "if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing" (citation omitted)).

The proposed class notice, filed concurrently herewith, meets all the requirements: it describes the litigation, it describes the terms of settlement, it is reasonably calculated to reach all affected Class Members and FLSA Collective Action Members through mail and email, it explains class counsel's expected request for attorneys' fees ($6.6 million, or 30% of the $22 million fund) and costs (approximately

$1,319,127 in expenses and $50,000 in anticipated settlement administration costs), and it explains how exactly any Class Members or FLSA Collective Action Members can object to the settlement's approval or class counsel's fee request.  It provides the clear guidance necessary to its recipients to decide how to proceed and should thus be approved.  *Contreras*, 2019 WL 8633664, at \*11 (notice sufficient where it described, among others, the nature of action, terms of settlement, scope of classes, objection procedure, and final approval procedure).  Finally, courts have approved notices similar to the notice here in settlements involving both Rule 23 classes and opt-in FLSA collectives.  *See, e.g.*, *Pan*, 2016 WL 9024896, at \*10 (approving a single notice for an action involving Rule 23 class claims and Equal Pay Act/FLSA collective claims).

### D.    The Court should approve the proposed scheduling order and set a date for a fairness hearing.

The parties propose the following schedule for distributing the class notice and for setting a final approval hearing:

| Event | Deadline |
| --- | --- |
| USSF to send class list | 14 calendar days after preliminary approval |
| Class counsel to send class notice | 21 calendar days after receiving class list |
| Last day for class members to object | 30 calendar days after initial mailing of class notice |
| Last day to file motion for attorneys' fees, costs, and expenses | 14 calendar days after objection period expires |
| Last day to file motion for final approval | 14 calendar days after objection period expires |
| Final approval hearing | As the Court's schedule allows |

Under this schedule, the motion for final approval will be filed less than twelve weeks after the Court grants preliminary approval.  Plaintiffs request that the Court set

a date for a final approval hearing at the time it grants preliminary approval so that the final approval hearing information may be included in the notice to the Classes.

## VII.   CONCLUSION

For all of these reasons, the Court should preliminarily approve the settlement, approve the content and plan for distribution of the class notice, and schedule a final approval hearing.

Dated:  June 22, 2022                     WINSTON & STRAWN LLP

By:  */s/ Jeffrey L. Kessler*
     Jeffrey L. Kessler
     David G. Feher
     Cardelle B. Spangler
     Diana Hughes Leiden
     Jeanifer E. Parsigian
     Lev Tsukerman

     *Attorneys for Plaintiffs*