Jeffrey L. Kessler (*pro hac vice*)
jkessler@winston.com
David G. Feher (*pro hac vice*)
dfeher@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue, New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700

Cardelle B. Spangler (*pro hac vice*)
cspangler@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive, Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700

Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com
Lev Tsukerman (SBN: 319184)
ltsukerman@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750

Jeanifer E. Parsigian (SBN: 289001)
jparsigian@winston.com
**WINSTON & STRAWN LLP**
101 California St., 35th Floor, San Francisco, CA 94111
Tel: (491) 591-1000
Fax: (491) 591-1400

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ALEX MORGAN, et al.,

Plaintiffs,

v.

UNITED STATES SOCCER FEDERATION, INC.,

Defendant.

**Case No. 2:19-CV-01717-RGK-AGR**

Assigned to: Judge R. Gary Klausner

**DECLARATION OF JEFFREY L. KESSLER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES**

Date: December 12, 2022
Time: 9:00 a.m.
Place: Courtroom: 850

I, Jeffrey L. Kessler, hereby declare, under penalty of perjury, as follows:

1. I am a partner and Co-Executive Chairman of Winston & Strawn LLP, co-lead counsel for Plaintiffs and the certified classes in this matter. I am also the former co-chair of the firm's Sports Law Practice. I have personal knowledge of the facts set forth herein and if called upon to testify thereto, I could and would do so.

2. I submit this declaration, together with the attached exhibits, in support of Plaintiffs' motion for attorneys' fees and expenses.

3. In its order certifying the Rule 23(b)(2) and 23(b)(3) classes and the collective action (Dkt. 98), the Court appointed my firm as class counsel in this matter.

4. My and my colleagues' qualifications and extensive experience in class action, sports, and employment matters are described in detail in my declaration in support of Plaintiffs' class certification motion. *See* Dkt. 64-1. I have attached here as **Exhibit 1** biographies for the primary team of Winston & Strawn attorneys leading Plaintiffs' case. These lawyers are all experienced employment, commercial litigation, and/or sports lawyers. Indeed, Winston & Strawn has one of the leading sports law practices in the country. Members of the Winston & Strawn litigation team for this case have been involved in some of the most important sports cases of the last three decades and are considered among the most prominent practitioners in this field. Attached here as **Exhibit 2** are materials about Winston & Strawn's employment and sports law practices that provide additional information about the firm's well-recognized expertise and capabilities.

5. As detailed more fully below, Winston & Strawn attorneys were extensively involved in all aspects of this litigation. Winston & Strawn attorneys took the lead on nearly every aspect of litigation before this Court, including: organizing and completing document review; drafting discovery requests and responses; corresponding with defense counsel; leading meet-and-confer discussions with opposing counsel that governed document production, depositions, scheduling, and all other manner of discovery disputes; taking and defending depositions; working with experts; drafting

nearly every motion, opposition, and written submission filed with the Court (including on USSF's motion to transfer, class certification, and summary judgment) and handling all related work including legal research, discussion of briefing strategy, and editing drafts; preparing this case for trial; and negotiating and finalizing settlement with USSF. These efforts are described in more detail below.

## PRE-LAWSUIT INVESTIGATION

6. Before filing suit, Winston & Strawn attorneys thoroughly investigated the merits of Plaintiffs' gender-discrimination claims. Winston & Strawn attorneys specifically: (1) conducted informational interviews with current and former WNT players; (2) scrutinized the terms of USSF's collective bargaining agreements with WNT and MNT players; (3) analyzed the complicated pay structures in USSF's various CBAs; (4) assessed USSF's historical treatment of its senior national teams in their working conditions; (5) familiarized themselves with the market for and interest in both men's and women's international soccer; (6) developed legal theories grounded in provable facts; (7) corresponded with USSF's counsel on the merits of Plaintiffs' discrimination claims; and (8) represented the four named plaintiffs in their complaint and subsequent investigation before the EEOC, which was a prerequisite to filing the claims in this litigation.

## SUMMARY OF DISCOVERY EFFORTS

7. Discovery in this case took place for seven months from August 2019 through February 2020. During this time, Plaintiffs served five sets of document requests containing 67 requests for production and 16 interrogatories. USSF served interrogatories and over two dozen document requests. Winston & Strawn attorneys prepared and acted to enforce Plaintiffs' document requests and interrogatories. Winston & Strawn attorneys also worked with Plaintiffs to gather documents and to prepare Plaintiffs' responses to USSF's requests.

8. The parties produced tens of thousands of documents. Winston & Strawn attorneys spent substantial time collecting, reviewing, and making privilege,

confidentiality, and responsiveness determinations for thousands of potential documents to be produced to USSF. To do so, Winston & Strawn attorneys devised a multi-step review protocol. Class counsel prepared and produced a 121-page, 1,000-document-plus privilege log for Plaintiffs' productions. To limit cost, the firm relied on in-firm "review" attorneys and professionals who specialize in e-Discovery and bill at substantially lower hourly rates to assist with document review. Winston & Strawn associates (with partner oversight) worked with this review team to ensure an efficient document review and production process.

9. Class counsel also reviewed and analyzed the thousands of documents that USSF produced. Reviewing such voluminous document productions and analyzing which documents supported Plaintiffs' case (including by identifying the best evidence for use at depositions, trials, and motions) was a major undertaking.

10. The parties engaged in extensive negotiations regarding the scope and substance of discovery and raised many discovery disputes with the Court during the process. Discovery negotiations involved numerous calls and correspondence with USSF's counsel. They also involved extensive discussions on appropriate search terms and custodians that the parties would apply to their document collection. Winston & Strawn attorneys devised and cross-checked search terms and custodians, testing terms with the assistance of Winston & Strawn's e-Discovery team, to ensure an efficient and thorough document production.

11. The parties deposed nearly twenty fact witnesses, with Plaintiffs deposing seven USSF witnesses including former USSF Presidents Carlos Cordeiro and Sunil Gulati; the former Chief Commercial Officer, Jay Berhalter; the Managing Director of Administration, Tom King; the former Head Coach of the WNT, Jill Ellis; the Chief Financial Officer, Pinky Raina; and Senior Counsel Greg Fike. Plaintiffs also deposed third parties Visa and Coke, which are USSF sponsors. USSF deposed ten fact witnesses, including all four class representatives and Becca Roux, the WNT union's Executive Director.

12. Plaintiffs retained and Winston paid the fees for three experts: Dr. Finnie Cook, an economist; Dr. Caren Goldberg, a human resource expert and consultant; and Dr. Roger Noll, a well-published sports economist and economics professor at Stanford University. Collectively, Plaintiffs' experts prepared and submitted six expert reports (covering opening, rebuttal, and supplemental reports). Class counsel worked closely with these experts as they drafted their reports, formulated their analyses, and sought additional information as the case developed. Winston & Strawn attorneys assisted Plaintiffs' experts in identifying and gathering the relevant materials for their expert analyses. USSF deposed each of Plaintiffs' experts. Class counsel prepared Plaintiffs' experts for their depositions.

13. USSF retained three experts: Phillip Miscimarra, a partner at the national law firm Morgan Lewis, & Bockius LLP; Carlyn Irwin, a senior advisor with the economics consulting firm Cornerstone Research; and Dr. Justin McCrary, an economist and professor at Columbia University. Mr. Miscimarra and Dr. McCrary opined on the parties' collective bargaining process and agreements plus issues on federal labor law, while Ms. Irwin analyzed revenue and compensation issues. Class counsel analyzed the reports from each USSF expert. Class counsel also deposed each USSF expert.

14. Class counsel spent thousands of hours on fact and expert discovery with the goal of carefully developing a strong record on the parties' claims and defenses.

15. This case required a thorough analysis of the collective bargaining history between USSF, on one hand, and the WNT and MNT player unions, on the other, going back nearly a decade. This history yielded multiple collective bargaining agreements that required a side-by-side analysis to identify pay and treatment disparities. This entailed multi-year comparisons of MNT and WNT players' compensation; their modes of transportation and hotel accommodations; their venue surface conditions; USSF's spend on player airfare, hotels, and meals; and overall team performance.

**TRIAL PREPARATION AND THE WORKING-CONDITIONS SETTLEMENT**

16. In the first half of 2020, class counsel spent significant time and resources preparing for trial on both Plaintiffs' pay and non-pay claims. This included briefing motions in limine (with class counsel drafting 11 such motions and preparing oppositions for USSF's 5 motions in limine) and negotiating, drafting, and exchanging pretrial submissions, including witness lists, deposition designations and counter designations, exhibit lists (which entailed coordinating Plaintiffs' efforts to identify such exhibits and to review USSF's exhibits for objections), and jury instructions.

17. Even after the Court dismissed Plaintiffs' pay-discrimination claims, class counsel continued trial preparation on the surviving working-conditions claims.

18. Plaintiffs (with class counsel at the helm for them) have discussed settlement of their pay and working-conditions claims dating back to the EEOC's investigation of Plaintiffs' charges in 2016. After this lawsuit was filed, Plaintiffs and USSF had a formal two-day mediation with JAMS in August 2019, with class counsel, class representatives, and senior USSF officials and counsel present. The parties engaged in further informal settlement communications through the close of discovery and pretrial preparation.

19. From July through November 2020, the parties again discussed settlement of Plaintiffs' working-conditions claims. This included several formal virtual meetings plus extensive informal negotiation through regular calls and correspondence. The parties also exchanged multiple drafts of a proposed settlement agreement and policy documents. During these months, class counsel spent significant time negotiating and finalizing an agreement that would provide for equality in the WNT players' working conditions.

**THE PAY-CLAIMS SETTLEMENT**

20. After the parties settled Plaintiffs' working-conditions claims, Plaintiffs appealed the Court's summary judgment ruling to the Ninth Circuit. Class counsel

worked closely with co-counsel, Mayer Brown, in fully briefing that appeal and preparing for the then-scheduled March 7, 2022 oral argument.

21. After appealing to the Ninth Circuit, the parties continued to engage in extensive settlement discussions to resolve Plaintiffs' pay-discrimination claims. Class counsel led those efforts for the classes. These efforts included a full-day mediation in May 2021 that, while unsuccessful in resolving the claims, led to continued dialogue and calls. These informal calls and correspondence led to repeated back-and-forth exchanges of proposed term sheets.

22. The parties agreed to a settlement of Plaintiffs' pay-discrimination claims in February 2022. This was just weeks before the parties' Ninth Circuit oral argument, which class counsel was simultaneously preparing for. The months of settlement negotiations surrounding Plaintiffs' pay-discrimination claims required substantial time and effort.

**ATTORNEYS' FEES**

23. Class counsel entered into a contingency fee agreement with Plaintiffs. The 28 individual Plaintiffs and class counsel agreed that counsel would be awarded 30% of the total proceeds recovered on behalf of the players, after the reimbursement of expenses, subject to court approval, with the remaining 70% paid to the players.

24. Class counsel's recovery of attorneys' fees and costs was thus contingent entirely on the outcome of this litigation: if Plaintiffs took nothing, class counsel would take nothing.

25. The fees by class counsel incurred from attorneys, paralegals, and e-Discovery through April 6, 2022 totaled $11,496,079 (i.e., $11,330,196 for partners, of counsel, associates, and paralegals plus $165,883 from the e-Discovery team). A more detailed explanation and breakdown is set forth below.

26. From the inception of this case (including Winston & Strawn's pre-filing investigation) through April 6, 2022, Winston & Strawn lawyers and paralegals have invested 15,986.7 hours over a three-year-plus span. The value of that time, using the

historic hourly billing rates of the firm at the time the services were rendered, is $11,330,196. The rates used to calculate these figures are the usual and customary hourly rates charged for each attorney or staff member's services at Winston & Strawn at the applicable time.

27. Detailed below is a list of Winston & Strawn attorneys and paralegals who worked on the case, along with their applicable historical rates and total hours worked for each year of the case. On December 6, 2019, Judge Nathanael Cousins found, in another litigation, that Winston & Strawn's billing rates "rang[ing] from $85 per hour for review attorneys to $1,515 for certain partners … are reasonable." *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 14-MD-02541-CW-NC, 2019 WL 12194763, at *3 (N.D. Cal. Dec. 6, 2019), *adopted* (Feb. 24, 2020).

| **Calendar Year 2019** | | | | |
|---|---|---|---|---|
| **Timekeeper** | **Role** | **Historical Rate** | **Hours** | **Value Added** |
| Parsigian, Jeanifer | Associate | $805 | 1010.9 | $813,775 |
| Edmondson, Kerrie | Associate | $540 | 1205.3 | $650,835 |
| Spangler, Cardelle | Partner | $850 | 628.4 | $534,098 |
| Kessler, Jeffrey | Partner | $1,515 | 322.0 | $487,830 |
| Schanowski, Eric | Associate | $540 | 662.4 | $357,696 |
| Tsukerman, Lev | Associate | $570 | 523.9 | $298,623 |
| Feher, David | Partner | $1,245 | 206.5 | $257,093 |
| Sherman, Scott | Associate | $570 | 443.7 | $252,909 |
| Washington, Drew | Associate | $580 | 280.1 | $162,458 |
| Leiden, Diana | Partner | $860 | 183.1 | $157,466 |
| Obi, Shawn | Associate | $805 | 133.3 | $107,307 |
| Metz, Dina | Paralegal | $330 | 294.8 | $97,284 |
| Kyritsopoulos, Corinne | Paralegal | $310 | 250.5 | $77,655 |
| Hampton, Ian | Associate | $755 | 63.3 | $47,792 |
| Markarian, Lara | Associate | $580 | 77.6 | $45,008 |
| Pichardo-Ley, Erika | Paralegal | $160 | 251.3 | $40,208 |
| Bily, Sarah | Associate | $660 | 48.1 | $31,746 |
| Cole, Eva | Partner | $1,070 | 24.8 | $26,536 |
| Ostrander, Benjamin | Associate | $695 | 1.2 | $834 |
| Abing, Carol | Paralegal | $325 | 1.2 | $390 |
| Cruz, Erick | Paralegal | $265 | 0.5 | $133 |
| **Grand Total** | | | **6,612.8** | **$4,447,673** |

| Calendar Year 2020 | | | | |
|---|---|---|---|---|
| **Timekeeper** | **Role** | **Historical Rate** | **Hours** | **Value Added** |
| Parsigian, Jeanifer | Associate | $885 | 961.5 | $850,928 |
| Kessler, Jeffrey | Partner | $1,600 | 392.6 | $628,160 |
| Tsukerman, Lev | Associate | $660 | 910.1 | $600,666 |
| Sherman, Scott | Associate | $660 | 801.1 | $528,726 |
| Spangler, Cardelle | Partner | $890 | 566.5 | $504,141 |
| Edmondson, Kerrie | Associate | $610 | 702.6 | $428,586 |
| Leiden, Diana | Partner | $930 | 422.2 | $392,646 |
| Schanowski, Eric | Associate | $590 | 510.2 | $301,018 |
| Feher, David | Partner | $1,315 | 196.0 | $257,740 |
| Washington, Drew | Associate | $580 | 419.0 | $243,020 |
| Bily, Sarah | Associate | $760 | 260.5 | $197,980 |
| Kyritsopoulos, Corinne | Paralegal | $315 | 605.0 | $190,575 |
| Momand, Marjon | Associate | $580 | 290.7 | $168,606 |
| Markarian, Lara | Associate | $580 | 277.9 | $161,182 |
| Obi, Shawn | Associate | $885 | 176.1 | $155,849 |
| Metz, Dina | Paralegal | $335 | 372.9 | $124,922 |
| Pichardo-Ley, Erika | Paralegal | $185 | 496.6 | $91,871 |
| Hudgens, Johanna | Associate | $810 | 86.4 | $69,984 |
| Edwards, Sandra | Partner | $1145 | 38.0 | $43,510 |
| Kellerman, Dillon | Associate | $580 | 21.2 | $12,296 |
| Coberly, Linda | Partner | $1,165 | 8.0 | $9,320 |
| Skridul, Robert | Paralegal | $350 | 2.5 | $875 |
| Ostrander, Benjamin | Associate | $790 | 0.5 | $395 |
| Abing, Carol | Paralegal | $330 | 1.0 | $330 |
| Skogg, Gregory | Paralegal | $350 | .3 | $105 |
| **Grand Total** | | | **8,519.4** | **$5,963,429** |

| Calendar Year 2021 | | | | |
|---|---|---|---|---|
| **Timekeeper** | **Role** | **Historical Rate** | **Hours** | **Value Added** |
| Kessler, Jeffrey | Partner | $1,695 | 135.0 | $228,825 |
| Parsigian, Jeanifer | Partner | $955 | 100.9 | $96,360 |

| Calendar Year 2021 | | | | |
|---|---|---|---|---|
| **Timekeeper** | **Role** | **Historical Rate** | **Hours** | **Value Added** |
| Tsukerman, Lev | Associate | $735 | 112.8 | $82,908 |
| Spangler, Cardelle | Partner | $965 | 83.7 | $80,771 |
| Edmondson, Kerrie | Associate | $660 | 52.0 | $34,320 |
| Feher, David | Partner | $1,315 | 14.3 | $18,805 |
| Sherman, Scott | Associate | $735 | 9.7 | $7,130 |
| Leiden, Diana | Partner | $990 | 5.6 | $5,544 |
| Lemajeur, Shannon | Associate | $580 | 8.2 | $4,756 |
| Kyritsopoulos, Corinne | Paralegal | $325 | 7.2 | $2,340 |
| Washington, Drew | Associate | $610 | 1.7 | $1,037 |
| **Grand Total** | | | **531.1** | **$562,794** |

| Calendar Year 2022 | | | | |
|---|---|---|---|---|
| **Timekeeper** | **Role** | **Historical Rate** | **Hours** | **Value Added** |
| Kessler, Jeffrey | Partner | $1,795 | 51.1 | $91,725 |
| Feher, David | Partner | $1,415 | 42.5 | $60,138 |
| Edmondson, Kerrie | Associate | $810 | 72.7 | $58,887 |
| Parsigian, Jeanifer | Partner | $1,060 | 28.9 | $30,634 |
| Momand, Marjon | Associate | $725 | 40.6 | $29,435 |
| Leiden, Diana | Partner | $1,080 | 26.8 | $28,944 |
| Spangler, Cardelle | Partner | $995 | 27.2 | $27,064 |
| Tsukerman, Lev | Associate | $875 | 17.5 | $15,313 |
| Sherman, Scott | Associate | $875 | 8.3 | $7,263 |
| Wimer, Ruth | Partner | $1,285 | 2.3 | $2,956 |
| Gordon, Amy | Partner | $1,225 | 1.3 | $1,593 |
| DalSanto, Matthew | Of Counsel | $1,050 | 1.3 | $1,365 |
| Kyritsopoulos, Corinne | Paralegal | $340 | 2.9 | $986 |
| **Grand Total** | | | **323.4** | **$356,300** |

28. Copies of contemporaneously made individual attorney and staff time records, which would require a significant investment of resources to review and redact

for attorney-client privileged communications and attorney work product, are available. All of the time submitted was recorded contemporaneously in accordance with the firm's billing system.

29. Winston & Strawn's hourly rates are adjusted annually to comport with the legal marketplace for comparable firms. Winston & Strawn monitors prevailing market rates in the regions where it works, including the Central District of California, taking into account attorneys of comparable skill, experience, and qualification. The firm maintains a number of internal metrics to benchmark its rates relative to those charged by competitor firms. The rates reflected in this application were also the standard billing rates these timekeepers offered for their services for other matters throughout the United States, including in the Central District of California.

30. Winston & Strawn's e-Discovery team invested an additional 1,932.9 hours to assist with discovery efforts (largely reviewing documents to be produced). The value of that time, using the historic hourly billing rates of the firm at the time the services were rendered, is $165,883.

31. Winston & Strawn has excluded from its fee calculations certain timekeepers who worked only limited hours or only for short periods of time, for the sake of being conservative and making sure that any possible inefficiencies are eliminated. The amount of fees excluded on this basis is about $129,549 and covers work performed by practice attorneys, law clerks, and others.

32. Winston & Strawn has also excluded from its lodestar calculation any attorneys' fees incurred after April 6, 2022.

33. The total fees incurred by attorneys (partners, of counsel, and associates), paralegals, and e-Discovery through April 6, 2022 totals $11,496,079 (i.e., $11,330,196 from partners, of counsel, associates, and paralegals plus $165,883 from e-Discovery). This was class counsel's lodestar.

**EXPENSES**

34. During the pendency of this case (through April 5, 2022), Winston & Strawn advanced a range of expenses necessary for the prosecution of this matter, totaling $1,319,127. A significant portion of these costs (about $756,345) covered necessary expert fees for Plaintiffs' three expert witnesses. The costs for which Winston & Strawn seeks reimbursement are the types of costs that would be paid by a Winston & Strawn employment or sports litigation client that hires the firm by the hour. Outside of expert fees, Winston & Strawn incurred costs for, among other things: two mediations, computerized legal research, transcripts and court reporters, airfare, lodging, meals, and copying. Winston & Strawn also incurred a variety of Electronic Discovery Services costs, separate from the review attorney fees discussed above. These Electronic Discovery Services costs covered, among other things: forensic data collection, data extraction from images, forensic analysis, Relativity loading and processing, and custodian filtering.

35. Below is a chart summarizing these litigation costs.

| Cost Description | Amount |
|---|---|
| Expert, Consultation, and Evaluation Fees | $756,345 |
| Electronic Discovery Services | $195,972 |
| Computerized Legal Research | $64,775 |
| Color Copies | $44,584 |
| Transcript Fees | $44,520 |
| JAMS Mediation Fees | $34,250 |
| Airfare | $31,474 |
| Bracewell Mediation Fees | $30,929 |
| Professional/Consulting Fees | $29,196 |
| Lodging | $15,934 |
| Translation Fees | $13,339 |
| Court Costs and Fees | $11,952 |
| Court Reporter | $11,024 |
| Travel – Long Distance Transportation | $7,329 |
| Business Meals | $6,956 |
| Litigation Support Services | $3,391 |

| | |
|---|---|
| Messenger Services | $2,679 |
| Overtime Transportation | $2,257 |
| Business Center Services | $2,044 |
| Document Imaging & OCR | $1,924 |
| Travel – Local Transportation | $1,713 |
| Business Meals – Conference Room Services | $1,263 |
| Air Courier | $808 |
| Overtime Meals | $785 |
| Computer Docket System | $674 |
| Telecommunication Services | $567 |
| Video/Equipment Rental Expense | $515 |
| Postage | $462 |
| Other Travel Expense | $447 |
| Secretarial Overtime | $425 |
| Filing and Other Fees | $400 |
| Copy Center Charges | $59 |
| Document Retrieval | $58 |
| Media Duplication | $45 |
| Publication/Subscription Fees | $20 |
| Certified Copies | $15 |
| **Grand Total** | **$1,319,127** |

36. Copies of invoices and contemporaneously made records evidencing these costs are available.

37. Counsel also seeks reimbursement of $50,000 in anticipated settlement administration costs. This $50,000 in anticipated costs will cover costs for settlement administration over the period in which the four annual settlement payments by USSF will be made and then distributed to class members.

38. Class counsel seeks to incrementally and proportionately collect its Court-awarded fees as USSF makes its yearly $5.5 million settlement installment payments, after expenses are reimbursed to class counsel out of the first settlement installment.

39. As of the date of this Declaration, only one class member, Hope Solo, has objected to the pay-claims settlement. Hope Solo also objected to class counsel's fees and costs request. *See* Dkt. 325.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 1st day of November 2022 in New York, New York.

*/s/ Jeffrey L. Kessler*
Jeffrey L. Kessler